IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION



LITTLE ROCK SCHOOL DISTRICT             PLAINTIFF

V.      NO. LR-C-82-866

PULASKI COUNTY SPECIAL SCHOOL
DISTRICT NO. 1, ET AL.            DEFENDANTS

MRS. LORENE JOSHUA, ET AL.           INTERVENORS

KATHERINE KNIGHT, ET AL.           INTERVENORS

## PCSSD'S MOTION TO APPROVE NEW SCHOOL SITE

The PCSSD for its motion, states:

1. In its post-unitary commitments recently filed with this Court for approval, the PCSSD pledged to construct a new elementary school in the southeast sector.

2. Pursuant to the Desegregation Plan dated April 29, 1992, the PCSSD established a biracial building committee including representatives from the Office of Desegregation, all as specified at page 81 of the Plan.

3. The committee spent several weeks evaluating possible sites before recommending a site located at the northwest corner of 145th Street and Highway 67/167 proximate to the Siemen's facility.

4. Counsel for the PCSSD is informed that the ODM has been appropriately involved in the site selection process.

5. This process began some time ago with the view toward closing Bates Elementary and simply shifting that student population to the new facility. As matters have evolved, the PCSSD now proposes to close both Bates and Fuller Elementaries

108803-v1

and combine that student enrollment at the new site with no change of geo codes. The PCSSD believes that by simply moving these enrollments to a new facility, that its proposal is race neutral and will have no negative impact upon its current desegregation efforts. However, at the same time, approval of this site will enable these present student bodies to enjoy the conveniences and benefits of a new school facility.

6. Attached as Exhibit A are the original offer and acceptance, including special conditions and the outstanding counter offer. Special Condition 2 d. provides that approval of this Court is necessary to finalize this transaction.

7. We further wish to advise the Court that there are current active discussions at the district level which, if finalized, would cause the configuration of the building to be constructed on this site to be that for kindergarten through 5th grade. To accomplish this, Fuller Junior School would be reconfigured for 6th through 8th grades and Mills High School would be converted to grades 9 through 12. The district has, of course, made no final decisions regarding this, but the district felt the Court should be aware of these discussions and deliberations. If and when a decision to change the configuration is made, an appropriate filing with this Court will also be made.

WHEREFORE, the PCSSD prays that the school site described herein be approved and that, upon completion of the new facility, that the present Bates and Fuller Elementary Schools be approved for closing.

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2200
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442

By _____
M. Samuel Jones III (76060)
Attorneys for Pulaski County Special
School District

2

## CERTIFICATE OF SERVICE

On June ____9____, 1999, a copy of the foregoing was served by U.S. mail on each of the following:

Mr. John W. Walker
John W. Walker, P.A.
1723 Broadway
Little Rock, Arkansas 72201

Mr. Christopher Heller
Friday, Eldredge & Clark
2000 First Commercial Building
Little Rock, Arkansas 72201

Ms. Ann Brown
ODM
Heritage West Building, Suite 510
201 East Markham Street
Little Rock, Arkansas 72201

Mr. Richard W. Roachell
Roachell and Street
First Federal Plaza
401 West Capitol, Suite 504
Little Rock, Arkansas 72201

Mr. Timothy Gauger
Assistant Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201

Mr. Stephen W. Jones
3400 TCBY Tower
425 West Capitol Avenue
Little Rock, Arkansas 72201

M. Samuel Jones III

THE HATHAWAY GROUP
100 MORGAN KEEGAN DRIVE, SUITE 120
LITTLE ROCK, ARKANSAS 72202
(501) 663-5400

# OFFER & ACCEPTANCE

1. BUYER & SELLER: Pulaski County Special School District, hereinafter referred to as "Buyer," offers to buy, subject to the terms set forth herein, the below described property from The Dorothy Ensminger Trust, hereinafter referred to as "Seller."

2. PROPERTY DESCRIBED AS: Approximately 22.569 acres, being part of Tracts 27 and 28, Holman Acres, Pulaski County, Arkansas, more particularly described on Exhibit B attached..

3. PURCHASE PRICE: The Buyer will pay $135,400.00 for the property, payable all in cash at closing.

4. SPECIAL CONDITIONS: Buyer's Offer is conditioned upon satisfaction of the Special Conditions attached hereto on Exhibit A.

5. EARNEST MONEY: Buyer herewith tenders a check for $3,000.00 to be deposited upon acceptance as earnest money which shall apply to purchase price or closing costs. Earnest money shall be held in escrow by The Hathaway Group. If title requirements are not fulfilled, or if those Special Conditions providing for an earnest money refund are not satisfied, the earnest money deposit shall be refunded to Buyer. If Buyer fails to fulfill his obligations or if, after all conditions have been met, Buyer fails to close this transaction, the earnest money may, at the sole and exclusive option of the Seller, be retained by the Seller as liquidated damages. Alternatively, Seller may return the earnest money and assert all legal or equitable rights which may exist as a result of Buyer's breach of contract.

6. CONVEYANCE: Conveyance shall be made to Buyer, or as directed by Buyer, by general warranty deed, except it shall be subject to recorded restrictions and easements, if any, which do not materially affect the property.

7. TITLE INSURANCE: Within twenty-one (21) days of acceptance, Seller shall furnish to Buyer a commitment for an American Land Title Association (ALTA) owner's title insurance policy in the amount of the purchase price issued by a company authorized to insure title to real property in the State of Arkansas and which company is reasonably acceptable to Buyer.

   Where the title commitment shows special exceptions to title other than those standard exceptions contained in the ALTA commitment form, and where such special exceptions relate to restrictions, conditions, defects or other matters which would interfere with Buyer's use or adversely affect the value of the premises, then within fourteen (14) days of delivery of the title commitment, Buyer shall deliver written notice thereof to Seller. Such notice shall state specifically those exceptions to which Buyer objects. All objections not specifically enumerated within such a timely delivered notice shall be deemed to be waived by Buyer.

   Within fourteen (14) days of Buyer's delivery of notice of objections to Seller, Seller may cure such objections or have the exceptions waived or removed by the title company issuing the commitment. If, within such fourteen (14) day period, Seller fails to cure and/or have waived such objections and exceptions, or within that period, Seller delivers written notice to Buyer that it will not so cure, then, within three (3) days from delivery of such notice from Seller or the end of the period within which Seller may cure (whichever is applicable), Buyer shall have the option to:

   a. Terminate this agreement by delivering written notice thereof to Seller, in which event all sums paid or deposited by Buyer shall be returned to Buyer; or

   b. Purchase the premises subject to such objections and exceptions with no reduction in the purchase price; or

   c. Agree to extend the closing date for thirty (30) days, to give Seller additional time to cure such objections.

   If Buyer fails to deliver notice of termination or grant an extension of the closing date within that period, the objections shall be deemed to be waived and this condition shall be satisfied.

   Seller shall furnish the committed owner's title insurance policy as soon as practicable after closing, and shall pay all expenses related to the owner's title insurance policy.

EXHIBIT A

8. PRORATIONS: Taxes and special assessments due on or before closing shall be paid by Seller. Any deposits on rental property are to be transferred to Buyer at closing. Insurance, current general taxes and special assessments, rental payments, utilities, and any interest on assumed loans shall be prorated at closing unless otherwise specified herein.

9. CLOSING: Closing shall occur at such time as mutually agreed by the parties, provided that the date shall be no later than August 31, 1999, unless such requirement is waived in writing by both parties and a new date substituted therefor. Unless otherwise agreed by Buyer and Seller, transaction costs will be paid by the party indicated below:

| Seller: | Buyer: |
|---|---|
| Title examination or search fees, | Premium for mortgagee's title insurance policy, |
| Premium for owner's title insurance policy, | Recording fees, |
| IRS notification form, | Preparation of loan documents, |
| Preparation of conveyance documents, | One-half of escrow fees, |
| One-half of escrow fees, | One-half of documentary stamps, |
| One-half of documentary stamps, | Other charges customarily paid by Buyer. |
| Other charges as customarily paid by Seller. | |

10. POSSESSION: Possession shall be delivered to Buyer upon the closing date.

11. ATTACHED FIXTURES AND EQUIPMENT: Unless specifically excluded herein, all attached fixtures and equipment, if any, are included in the purchase price.

12. INSPECTIONS AND REPAIRS: Buyer certifies that Buyer has inspected or will inspect the property and is not relying upon any warranties, representations or statements of any agent or Seller as to age or condition of improvements, other than those specified herein.

13. RISK OF LOSS: If prior to closing of this transaction the improvements on the property shall be destroyed or materially damaged by fire or other casualty, this contract shall, at the option of the Buyer, be null and void. If Buyer shall elect, in the event of such loss, that the contract shall be performed, he shall be entitled to the proceeds of insurance applicable to the loss for use in repairing said loss.

14. MISCELLANEOUS:

    a. This Offer and Acceptance shall be governed by the laws of the State of Arkansas.

    b. This Offer and Acceptance, including all exhibits, contains the complete agreement between the parties and cannot be varied except by written agreement by the parties. The parties agree that there are no oral agreements, understandings, representations or warranties which are not expressly set forth herein.

    c. Any portion of this Offer and Acceptance not otherwise consummated at closing will survive the closing of this transaction as a continuing agreement by and between the parties.

    d. This Offer and Acceptance shall inure to the benefit of and bind the parties hereto and their respective heirs, representatives, successors, and assigns.

    e. Time is of the essence with respect to this Offer and Acceptance.

15. ACCEPTANCE: The term "acceptance" as used herein shall mean the later of the two dates on which this Offer and Acceptance is signed by Seller or Buyer, as indicated by their signatures below, which later date shall be the date of final execution and agreement by the parties hereto. If any date or deadline provided for herein falls on Saturday, Sunday, or a holiday, the applicable date shall be the next business day.

16. AGENCY: By virtue of The Hathaway Group's Exclusive Listing Agreement with Seller covering this Property, and The Hathaway Group's Exclusive Agency agreement with Buyer, dated March 15, 1999, Seller and Buyer hereby acknowledge and agree that the Listing/Selling Agent Firm and all licensed personnel associated with the Listing/Selling Agent Firm are representing both Buyer and Seller in the purchase and sale of the above referenced Property and that Listing/Selling Agent Firm has been and is now the agent of both Seller and Buyer with respect to this transaction. Seller and Buyer have both consented to, and hereby confirm their consent to agency representation of both parties. Further, Seller and Buyer:

   a. agree that the Listing/Selling Agent Firm shall not disclose to either Buyer or Seller any personal, financial or other confidential information concerning the other party without the express written consent of that party. This restriction does not include information actually known by Listing/Selling Agent Firm which must, at Listing/Selling Agent Firm's discretion, be disclosed.

   b. acknowledge notification that when Listing/Selling Agent Firm represents both parties, a conflict of interest can arise, and Seller and Buyer further agree to forfeit their individual right to receive the undivided loyalty of Listing/Selling Agent Firm. It is understood, however, that Listing/Selling Agent Firm is obligated to treat each party fairly and equitably.

   c. waive any claim now or hereafter arising out of any conflicts of interest from Listing/Selling Agent Firm representing both parties. Buyer and Seller acknowledge the Listing/Selling Agent Firm disclosed that the Listing/Selling Agent Firm represents both parties in this transaction, and Buyer and Seller have given their consent to this representation before entering into this Offer and Acceptance.

   d. agree that Listing/Selling Agent Firm's fee shall be paid by Seller only.

17. **EXPIRATION OF OFFER:** This offer shall expire unless accepted in writing by Seller before 5:00 p.m. on June 8, 1999.

**SELLING AGENT FIRM:**
The Hathaway Group

_____
Jeffrey R. Hathaway - Agent

**BUYER:**
Pulaski County Special School District

_____   6-3-99
Dr. Donald M. Stewart      Date

_____
Supervising Broker

_____
Date

The above offer is accepted _____, 1999 at _____ AM/PM. We agree to pay the below named agent a fee for professional services rendered in securing said offer, as specified in a separate listing agreement. If for any reason the earnest money provided for herein is forfeited by Buyer under the provisions hereof, same shall be divided equally between Seller and Listing Agent Firm after payment of incurred expenses.

**LISTING AGENT FIRM:**
The Hathaway Group

**SELLER:**
The Dorothy Ensminger Trust

_____   _____
J.E. Hathaway, Jr. - Agent                Date

_____   _____
Supervising Broker                        Date

3

# EXHIBIT A
## SPECIAL CONDITIONS

1. Within twenty-one (21) days after acceptance, Seller shall provide to Buyer, at Seller's expense, a current survey of the property, prepared by a Registered Land Surveyor. The survey shall show:
   a. the boundaries of the property;
   b. the legal description of the property;
   c. all existing easements and rights-of-way (setting forth the book and page number of the recorded instruments creating the same), alleys, streets, and roads;
   d. all existing improvements located on the property, including buildings, fences, parking lots, sidewalks, power lines, etc.;
   e. any encroachments from or over adjacent properties;
   f. the area of the property, expressed as a number of acres, carried out to three decimals;
   g. the surveyor's certification;
   h. that it is prepared for the benefit of Pulaski County Special School District, The Dorothy Ensminger Trust, and The Hathaway Group, Inc.;
   i. an accurate metes and bounds description;
   j. the area, if any, (expressed as a number of acres, carried out to three decimals) and perimeter of that portion of the property within the official 100 year floodplain, as established by the public authorities having jurisdiction thereover; and
   k. the exact location and size of all utilities (sewer, water, gas and electric) that would serve the Property.

2. Buyer shall have sixty (60) days after acceptance to do the following:
   a. Conduct an engineering and general feasibility study and satisfy itself that the property, in Buyer's sole opinion, is suitable for Buyer's intended use.
   b. Satisfy itself that the zoning of the property, as determined by Pulaski County or other appropriate jurisdiction, will allow the construction of an elementary school.
   c. Obtain the approval of the Pulaski County Special School District Board, authorizing this purchase.
   d. Obtain the approval of the United States District Court, Eastern District of Arkansas, Western Division, authorizing this purchase.
   
   If Buyer fails to remove this condition in writing within sixty (60) days after acceptance, this Offer and Acceptance shall be void and the earnest money shall be promptly refunded to Buyer, and Buyer and Seller shall have no further obligation to each other.

3. Seller hereby represents to Buyer that to the best of Seller's knowledge:
   a. the property is not the subject of any judicial or administrative notice or action relating to hazardous waste or environmental contamination;
   b. Seller has received no notice of any claim or violation of any law or regulation having to do with environmental protection;
   c. no hazardous or toxic substances have been stored, processed, or disposed of on the property during the period that Seller has owned the property;
   d. no underground storage tanks are located on the property;
   e. no portion of the property has been classified as a wetland.

4. Seller warrants that all utilities, including gas, electric, water and sewer are presently installed to a boundary of the property.

4

## EXHIBIT B



### PROPERTY DESCRIPTION

Part of Tracts 37 and 38 Holman Acres, Pulaski County, Arkansas, more particularly described as:

Commencing at the intersection of the North right-of-way line of East 145th Street and the West right-of-way line of Dineen Drive; thence along said West right-of-way line North 00° 19' 40" East 373.17 feet to the POINT OF BEGINNING; thence North 89° 51' 40" West 304.52 feet; thence South 00° 04' 30" West 353.40 feet to a point on the Easterly right-of-way line of U.S. Highway No. 65-167; thence along said right-of-way line the following four (4) bearings and distances: 1) North 23° 34' 30" West 110.29 feet; 2) North 89° 38' 57" West 651.02 feet; 3) North 53° 38' 43" West 118.96 feet; 4) North 03° 30' 57" West 834.05 feet; thence South 89° 55' 00" East 1192.13 feet to a point on the West right-of-way line of Dineen Drive; thence along said right-of-way South 00° 19' 40" West 318.35 feet; thence continuing along said right-of-way on a curve to the right having a radius of 715.66 feet, an arc distance of 199.85 feet and a chord which bears South 08° 17' 51" West 199.20 feet; thence continuing along said right-of-way South 16° 20' 46" West 20.00 feet; thence continuing along said right-of-way on a curve to the left having a radius of 715.79 feet, an arc distance of 200.05 feet and a chord which bears South 08° 38' 27" West 199.40 feet; thence continuing along said right-of-way South 00° 09' 32" West 25.90 feet to the POINT OF BEGINNING, containing 22.569 acres, more or less.

# COUNTER OFFER

Date: Monday, June 07, 1999

The offer to purchase the real property described as approximately 22.569 acres, being part of Tracts 27 and 28, Holman Acres, Pulaski County, Arkansas, submitted by Pulaski County Special School District, dated June 3, 1999, is not accepted in its present form, but the following counter offer is hereby submitted:

1. Paragraph 6, Conveyance, shall be amended so as to delete the word general and to replace it with the word special preceding the words warranty deed.
2. Paragraph 1 of Exhibit A shall be amended by deleting the first sentence and inserting the following: "Within fourteen (14) days after Buyer has removed Special Condition 2, Seller shall provide to Buyer, at Seller's expense, a current survey of the property, prepared by a Registered Land Surveyor. In the alternative, Buyer may obtain said survey at Buyer's expense at any time during the sixty (60) day feasibility study period described below and, in the event of closing, Seller shall credit Buyer for the cost of the survey provided that Seller has pre-approved in writing the cost of the survey. In the event Buyer selects this alternative and Buyer fails to close, Buyer shall pay for the survey but shall provide Seller with a copy of the survey."
3. Paragraph 4 of Exhibit A shall be amended so as to delete the word warrants and insert the word represents.

**OTHER TERMS:** All other terms as provided in the initial offer are to remain the same, except those amended above.

**FEE:** Seller agrees to pay the below named Listing Agent Firm a fee as per a separate agreement for professional services rendered in securing said offer. If for any reason the earnest money provided for herein is forfeited by Buyer under the provisions hereof, same shall be divided equally between Seller and Listing Agent Firm.

**RIGHT TO ACCEPT OTHER OFFERS:** Seller reserves the right to accept any other offer prior to receipt of written acceptance of this counter offer by Listing Agent Firm.

**EXPIRATION:** This counter offer shall expire unless written acceptance is received by Listing Agent Firm before 5:00 p.m. on June 10, 1999.

**LISTING AGENT FIRM:**
The Hathaway Group

_____
Agent

**SELLER:**
The Dorothy Ensminger Trust

_____  06/07/99
                                   Date

_____
Supervising Broker

_____
                                   Date

The above counter offer is accepted _____, 1999 at _____ AM/PM.

**SELLING AGENT FIRM:**
The Hathaway Group

_____
Agent

**BUYER:**
Pulaski County Special School District

_____
Dr. Donald M. Stewart              Date

_____
Supervising Broker

_____
                                   Date