FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
OCT 11 2002
JAMES W. McCORMACK
By: DE

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

LITTLE ROCK SCHOOL DISTRICT PLAINTIFF

V. No. 4:82CV00866 WRW/JTR

PULASKI COUNTY SPECIAL SCHOOL DISTRICT NO. 1, ET AL. DEFENDANTS

MRS. LORENE JOSHUA, ET AL. INTERVENORS

KATHERINE KNIGHT, ET AL. INTERVENORS

**ORDER**

On September 24, 2002, Joshua Intervenors ("Joshua") filed: (a) a Substituted Motion for Reconsideration (docket no. 3678),[1] which asks me to revisit many aspects of the September 13, 2002 Memorandum Opinion (docket no. 3675) ("Memorandum Opinion") declaring the Little Rock School District ("LRSD") to be unitary with regard to all aspects of its operations under the Revised Plan (CX 871), except for § 2.7.1; and (b) a Motion for New Trial or in the Alternative Motion for Relief from Judgment or Order (docket no. 3677). On October 7, 2002, LRSD filed a Response to Joshua Intervenors' Substituted Motion for Reconsideration and Motion for New

[1] On September 23, 2002, Joshua filed their first Motion for Reconsideration (docket no. 3676), which contained numerous errors. The next day, September 24, 2002, Joshua filed a second Motion for Reconsideration, which corrected most of those errors. I will consider this second motion as a Substituted Motion for Reconsideration, although it was not so designated. As a matter of fact, a motion for reconsideration is not recognized in the Federal Rules of Civil Procedure. They are, however, commonly filed and ruled upon in this jurisdiction--and I will hew to this custom.



Trial (docket no. 3682).[2]

After an initial review of Joshua's Substituted Motion for Reconsideration and Motion for New Trial, I considered summarily denying both motions on the ground that each of the arguments in support of reconsideration or a new trial is without any apparent merit. I believe that my 174-page Memorandum Opinion fully and accurately sets forth the relevant history of this case and that my detailed Findings of Fact and Conclusions of Law are amply supported by the record and controlling legal authority. In short, I have given this case my best shot, and, if counsel for Joshua believe I have erred, they should appeal my decision to the Court of Appeals for the Eighth Circuit. Thus, *on the merits,* Joshua's arguments raise nothing that warrants comment beyond my stating I find they are without any factual support or legal foundation. However, to the extent that a number of Joshua's arguments tend to torque the Memorandum Opinion out of shape, and are supported only by speculation and personal innuendo, I think it best to set the record straight.

First, Joshua suggests that I improperly "faulted" Joshua for failing to present evidence

---

[2]Under Rule 7.2(b) of the Local Rules, LRSD's Response to Joshua's Substituted Motion for Reconsideration was due eleven days from September 24, 2002, and its Response to Joshua's Motion for a New Trial was due eleven days from September 23, 2002. Because Joshua's Substituted Motion for Reconsideration and Motion for New Trial were served on counsel for LRSD pursuant to Fed. R. Civ. P. 5(b)(2)(B) (mail) and (D) (electronic means), an additional three days must be added to LRSD's eleven days. *See* Fed. R. Civ. P. 6(e). Thus, LRSD had fourteen days to respond to those motions, making its Response to Joshua's Motion for New Trial due on or before October 7 and its Response to Joshua's Substituted Motion for Reconsideration due on or before October 8. As indicated previously, LRSD filed its Response to both those Motions on October 7.

In a letter dated October 9, 2002, Joshua's counsel asked me to strike LRSD's Response to those two motions because it was not filed within *eleven days*. Because Joshua's counsel overlooked Fed. R. Civ. P. 5(b) and 6(e), they miscalculated the deadline for the filing of LRSD's Response to be October 4. Therefore, their request to strike that Response is denied.

on the March 19, 2001 Agreement between LRSD and the Arkansas Department of Education (CX 548). Substituted Motion for Reconsideration at 2. To the contrary, the Findings of Fact explicitly state that:

> The March 19, 2001 Agreement between the ADE and LRSD is unrelated to the question of whether LRSD has substantially complied with its obligations under the Revised Plan. It is important, too, that Joshua did *not* raise that issue as part of its challenge to LRSD's request for an immediate declaration of unitary status.

Memorandum Opinion at 149, ¶ 17 (emphasis in original). Thus, although Joshua introduced CX 548 into evidence,[3] I expressly did *not* consider it in deciding the *unrelated* question of whether LRSD had substantially complied with its obligations under the Revised Plan. Nowhere in my Memorandum Opinion do I "fault" Joshua for failing to produce evidence regarding the March 19, 2001 Agreement between LRSD and ADE--a subject that clearly was *not* before me in the hearings on unitary status.

Second, Joshua contends that I should not have addressed "the involvement of the ODM with respect to issues which were litigated before Judge Wright and Judge Wilson . . . [because] the competence of the ODM, the quality of the ODM reports, [and] the budget of the ODM . . . were not before the Court in evidentiary form."[4] Substituted Motion for Reconsideration at 2, 6-7, and 10. The ODM, an employee of the district court, has monitored LRSD's compliance

---

[3]It strikes me as a little strange that *Joshua* introduced the March 19, 2001 Agreement into evidence during the hearing on unitary status and now argues, in their Substituted Motion for Reconsideration, that the document is *irrelevant* to the question of whether LRSD substantially complied with its obligations under the Revised Plan. I agree that the document is irrelevant to the issue of substantial compliance, but this begs the question of why Joshua chose to introduce the document into evidence in the first place. I remain puzzled.

[4]For the record, my Memorandum Opinion does *not* consider "the competence of the ODM."

with its obligations under the 1990 Settlement Agreement, the 1992 Desegregation Plan, and the Revised Plan. Because the ODM works for the court, all of its budgets, as well as all of the reports it has prepared over the years, have been filed and are *part of the record in this case.* Historically, all of the parties and the court have used ODM reports, to the extent they were relevant, during the many hearings that have taken place since 1991.

After being assigned this case in January of 2002, I carefully reviewed the entire record. In doing so, I examined the ODM's annual budgets from 1990 to date. I was troubled by the large increases in the ODM's budget over that period of time. I was also troubled by the large sums of money that I discovered had been paid to the attorneys for *both* Joshua *and* the three school districts.[5] While attorneys are unquestionably necessary in school desegregation cases, it is the school children who ultimately are disadvantaged by *unnecessary* or *exorbitantly high* litigation costs. Thus, I believe that it was entirely appropriate for me to express my views on the ODM's rapidly escalating budgets,[6] which are part of the record in this case, and the total amount of money that has been paid to *all* of the attorneys in this case during the last ten to fifteen years. As footnote 58 makes clear, my concern is with the enormous amount of money that has been paid to the *entire professional group*--the ODM, the attorneys for LRSD, PCSSD, NLRSD, and Joshua. As I thought my admonition made clear on page 44 of the Memorandum Opinion, I believe the issue of the money paid to the professional group is important because "I understand the meaning of being careful with a dollar, and I expect the professional group to keep that

---

[5]In most long-running school desegregation cases that have been decided in the last ten years, courts have expressed dismay over the high cost of school litigation. I now know why.

[6]*See* Memorandum Opinion at 26-27.

important point fixed in their minds from here on out." Why Joshua's counsel seriously contend that I should not have addressed a subject of such obvious importance is beyond me.

In the same vein, Joshua's counsel argue that I should not have commented on the quality of the ODM's June 14, 2000 Report of Disciplinary Sanctions in LRSD (docket no. 3366). Joshua's counsel used that Report extensively in his examination of various LRSD employees who testified during the hearings on unitary status. Joshua's decision to use that Report, *one of the Court's own documents*, in his examination of witnesses on the issue of student discipline, required me to read and carefully analyze that document. In doing so, I discovered patent deficiencies which rendered the Report of little use to the court or the parties in trying to determine the cause for African-American students being over-represented in disciplinary proceedings. Thus, in my discussion of the history of this litigation (Memorandum Opinion at 47-50), I was obliged to point out the flaws in the ODM's Report of Disciplinary Sanctions. I note that Joshua does not deny those flaws--they simply object to my noting them.

In my Findings of Fact on the issue of student discipline, I again commented on the ODM's Report of Disciplinary Sanctions, which was prepared for *the express purpose of being used by the court* in monitoring and evaluating LRSD's compliance with the Revised Plan. In light of that fact, I believe I would have been remiss if I had not closely scrutinized the ODM's Report in deciding whether LRSD had substantially complied with those sections of the Revised Plan dealing with student discipline. Otherwise, what is the role of the Judge?

Finally, and perhaps most importantly on this point, *none* of my Findings of Fact on the issue of whether LRSD substantially complied with its obligations regarding student discipline were based on anything contained in the ODM's Report of Disciplinary Sanctions. Rather, my

findings simply pointed out that, because the Report failed to develop a proper statistical model for evaluating the data on student discipline, its conclusions were based on pure speculation--making the Report of no use to the court or the parties in evaluating the cause for African-American students in LRSD receiving a disproportionate number of suspensions. *See* Memorandum Opinion at 105-07, ¶¶ 24-26.

Third, Joshua's counsel take general exception to my discussion of the attorneys' fees that have been paid in this case during the last twenty years and particular exception to my allegedly erroneous finding "that the Joshua counsel, including the Legal Defense Fund counsel, were paid more than $3,750,000 for their work between 1987 and the present time." Substituted Motion for Reconsideration at 3. The amount that Joshua's counsel have been paid, to date, in attorneys' fees is a *matter of public record.* As pointed out in footnote 58 of my Memorandum Opinion, these attorneys' fees are as follows: $3,150,000 paid to Joshua's counsel under the 1990 Settlement Agreement;[7] $700,000 paid by LRSD to Joshua's counsel for monitoring work performed after December 12, 1990, and before July 1, 1998 (*see* Exhibit 7 to docket no. 3581); and $124,861 paid by LRSD to Joshua's counsel for monitoring work performed under the Revised Plan between July 1, 1998, and January 2001 (*see* Exhibit 8 to docket no. 3581). Thus, based entirely on the evidence in the record, without any need for me to speculate or make assumptions, Joshua's counsel have been paid, to date, $3,974,861 in attorneys' fees--this is more than $3,750,000.

In footnote 58 of my Memorandum Opinion, I hazard what I admit to be a "guess" that, since 1990, the attorneys' fees that LRSD, PCSSD, and NLRSD have paid to their own attorneys

---

[7] *LRSD v. PCSSD*, 921 F.2d 1371, 1390 (8th Cir. 1990).

"totals at least $4,000,000." Joshua's counsel clearly lack standing to complain about my "guess" regarding the aggregate amount of attorneys' fees paid to counsel for the three school districts--an estimate that LRSD has *not* challenged. In light of these *undisputed facts*, I seriously question how Joshua's counsel can make the statement that "counsel Walker does not accept the court's conclusion that he has directly benefitted from the perpetuation of this case." Substituted Motion for Reconsideration at 9. With all due respect to Mr. Walker, I am having a hard time escaping the conclusion that he has been "directly benefitted" by receiving millions of dollars in attorneys' fees in this case.

Fourth, Joshua's counsel, without citing *any supporting facts*, accuse me of "a predisposition which could only have come from previous attitudes regarding the role of lawyers in this long-standing case";[8] "negative attitudes toward lawyers who are involved with and associated with this case";[9] and "a bias or hostility toward Joshua's counsel."[10] Although this should go without saying, I want to remind Joshua's counsel that, while I ruled against them on five of the six arguments they advanced, this does *not* mean that I harbor any bias against or hostility toward them.[11] For the record, I have no "predispositions," "negative attitudes," or "bias or hostility" toward Joshua's counsel.

I did indeed express dismay over the attorneys' fees that have been paid to *all* of the

---

[8]Motion for Reconsideration at 2.

[9]Motion for Reconsideration at 3.

[10]Motion for Reconsideration at 7.

[11]"The Judge must not like me" is a refrain usually sung by lawyers who have just been called to the bar--when a lawsuit doesn't turn out exactly as they had wanted. Experienced lawyers generally resist the temptation to raise this claim.

attorneys in this case--I believe that was a subject that called for comment during my discussion of the long history of this case. Likewise, the concerns I expressed about LRSD's decision to pay Joshua's counsel $700,000 for performing monitoring work for which Judge Wright ruled Joshua's counsel had already been paid (docket no. 2821) and the $48,333.33 per year that LRSD agreed to pay Joshua's counsel for performing monitoring work under the Revised Plan are directly supported by detailed citations to the record[12]--not speculation or conjecture--and also deserved to be mentioned in my review of the history of this case. As I stated in the Memorandum Opinion, counsel for *both* LRSD *and* Joshua should have done a better job of documenting the reasons for the payment of these attorneys' fees and the precise role of Joshua's counsel in receiving monthly payments from LRSD to monitor its compliance with the Revised Plan. However, in reaching that conclusion, I was guided entirely by the plain facts contained in the record and not by any "preconceived ideas" or a "bias or hostility toward Joshua's counsel."

Fifth, Joshua argues that: (a) because I discuss the *fact* that the ODM's staff and budget have more than doubled since its creation, I am implicitly criticizing "Judge Wright's actions and the Court of Appeals for requiring the creation of the office in the first place";[13] (b) I "may be signaling that [I] want to end the role of the ODM as that role was established and created by the Eighth Circuit";[14] and (c) I may be trying to infer that "Joshua take over the role of ODM with respect to monitoring at a rate of approximately $49,000 per year."[15] No one could fairly read the

---

[12]*See* Memorandum Opinion at 33-35 and 38-44.

[13]Motion for Reconsideration at 6.

[14]Motion for Reconsideration at 7.

[15]Motion for Reconsideration at 7.

Memorandum Opinion as stating anything within shouting distance of these three farfetched notions.

As I *repeatedly* noted in my Memorandum Opinion, Judge Wright did an outstanding job of presiding over this case for eleven long years, during which time she faithfully and skillfully decided well over a thousand motions. Nowhere do I implicitly or explicitly direct *any criticism* toward her.[16]

Likewise, my Memorandum Opinion makes it clear that I believe it was a good idea for the Eighth Circuit to create the ODM so that the district court and the Eighth Circuit could ensure that each of the three school districts complied with their many desegregation obligations. Obviously, it is important for the ODM to *continue* its monitoring work until each of the three school districts is declared to be unitary and released from further supervision by the court. At this point, my only concern is that the ODM operate as frugally and efficiently as possible in going forward with its monitoring of the now much less onerous single remaining compliance issue for LRSD and the desegregation obligations that remain in effect for NLRSD and PCSSD. Finally, Joshua's counsel are *absolutely correct* that, in my Memorandum Opinion, there "surely cannot be an inference that Joshua was [to] take over the role of ODM with respect to monitoring at a rate of approximately $49,000 per year . . . ." There is no such "inference" or "implication."

Sixth, Joshua argues that they should be allowed to present additional evidence of LRSD's alleged noncompliance with other sections of the Revised Plan. Substituted Motion for Reconsideration at 10-11. In support of this argument, Joshua alleges that "the court previously

---

[16]I do not understand how counsel can possibly discern (or divine) any such criticism in the Memorandum.

instructed Joshua not to present any of that evidence [on LRSD's alleged failure to substantially comply with its obligations regarding faculty and staff, student assignment, special education and related programs, parental involvement, and school construction and closing]." This is not true. It is an after-the-fact assertion.

On May 9, 2002, I entered an Order (docket no. 3598) explaining in detail how I intended to proceed in conducting up to five days of hearings on the remaining issues Joshua had raised in their challenge to LRSD's request for unitary status. Four pages of that Order were devoted to discussing what transpired during the December 11, 2001 hearing before Judge Wright, which was held to discuss the remaining grounds for Joshua's challenge to LRSD's substantial compliance with the Revised Plan. *Id.* at 9-12. The May 9 Order pointed out that, during the December 11 hearing, Joshua's counsel attempted to raise numerous *new* grounds for challenging LRSD's alleged noncompliance *after* they had rested their case on what they viewed as their three strongest grounds--lack of good faith, failure to comply with obligations related to African-American achievement, and student discipline. Judge Wright ruled that Joshua could present evidence on three remaining grounds for noncompliance: advanced placement courses; guidance counseling; and extracurricular activities. In addition, she ruled Joshua could present additional evidence of LRSD's alleged lack of good faith, but only to the extent that evidence was related to advanced placement courses, guidance counseling, and extracurricular activities. Judge Wright also made it clear that, after she had heard the evidence on these three remaining areas of alleged noncompliance, she would decide the question of unitary status. Joshua's counsel responded: "*That's fine, Your Honor.*" (Docket no. 3597 at 36-37.)

Consistent with Judge Wright's ruling during the December 11, 2001 hearing, the May 9

Order provided that I planned to conduct up to five days of additional hearings on unitary status, during which Joshua would be allowed to present evidence of LRSD's alleged noncompliance with its obligations related to advanced placement courses, guidance counseling, and extracurricular activities. In addition, I allowed Joshua to present noncumulative evidence related to: (a) LRSD's lack of good faith, but only to the extent that it was related to advanced placement courses, guidance counseling, and extracurricular activities; and (b) how LRSD's alleged failure to comply with its obligations regarding advanced placement, guidance counseling, and extracurricular activities adversely affected the academic achievement of African-American students (docket no. 3598 at 13-14).

I hardly see how the May 9 Order could have been any clearer in setting forth the precise ground rules regarding Joshua's three remaining challenges to LRSD's substantial compliance with the Revised Plan. Joshua's counsel raised *no objection* to the May 9 Order, and, after completing three additional days of evidentiary hearings on July 22-24, 2002, Joshua's counsel *rested* their case challenging whether LRSD should be declared unitary.

Under these circumstances, there is no basis for Joshua's counsel to argue that the court "instructed" them not to present evidence of LRSD's alleged noncompliance with numerous other provisions of the Revised Plan. Joshua's counsel *agreed*, flat footedly, to the ground rules for conducting the hearings on unitary status, including the *six specific areas* of the Revised Plan under which they challenged LRSD's substantial compliance. It is far too late for Joshua to argue that they should be allowed to engage in piecemeal litigation by raising additional grounds for attacking LRSD's substantial compliance with the Revised Plan. Again--one last time--the grounds delineated by Judge Wright and me, *and* agreed to by *all* counsel, were fully litigated.

I do not know how to put it any more plainly than that.

IT IS THEREFORE ORDERED that Joshua's Substituted Motion for Recons

be and it is hereby DENIED.

IT IS FURTHER ORDERED that Joshua's Motion for a New Trial or in the A

Motion for Relief from Judgment or Order be and it is hereby DENIED.

DATED this day 11TH of October, 2002.

Wm R. Wilson Jr.
UNITED STATES DISTRICT JUDGE

THIS DOCUMENT ENTERED ON DOCKET SHEET IN COMPLIANCE WITH RULE 58 AND/OR 79(a) FRCP ON 10/11/02 BY D Jones