UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| LITTLE ROCK SCHOOL DISTRICT | | PLAINTIFF |
| v. | No. 4:82-cv-866 BSM | |
| PULASKI COUNTY SPECIAL SCHOOL DISTRICT NO. 1, et al. | | DEFENDANTS |
| MRS. LORENE JOSHUA, et al. | | INTERVENORS |
| KATHERINE KNIGHT, et al. | | INTERVENORS |

## PULASKI COUNTY SPECIAL SCHOOL DISTRICT'S SUPPLEMENT TO MOTION *IN LIMINE* REGARDING ODM REPORTS

Pulaski County Special School District ("PCSSD") for its supplement to motion *in limine* regarding ODM Reports states as follows:

The references below are to the dates of the ODM Reports about which objections are made including the respective page numbers.

**March 18, 1998**

Pages 5 through 8 of this report are a lengthy social commentary and essay on discipline, family values, differences among groups in society and similar matters. While the commentary may be accurate in many respects, it is nevertheless not refereed by the evidence process that controls court proceedings. Accordingly, it should not be considered authoritative for any analysis, particularly relating to discipline, that may present itself in this case. For instance, at page 5 the former monitor writes:

> As a civilization, we need authority for socialization. Cultures use
> all forms of authority, including legitimate control, coercion, and
> outright force. Authority must be tempered with empathy, for
> without empathy, authority can degenerate into bullying or escalate

1

into tyranny. Without empathy, people view other living beings as objects who exist merely to serve their own needs or as a nuisance that interferes with meeting their own self-centered ends.

At page 100 the ODM author states that no school district should have an out-of-school suspension rate approaching 50% for any portion of its student population. However empathetic the statement might be, it is unsupported by any references to peer reviewed authority, social science or other similar authority.

**May 31, 2002**

At page 104 of this report, in a discussion concerning the District's formulation for determination of schools with atypically high discipline rates, the former ODM monitor noted:

> We are troubled by the District's proposed method because it allows the definition of an acceptable rate to float up and down like a cork riding on the fluctuating waters of discipline: the more the District metes out discipline sanctions, the more acceptable high rates become.

**May 8, 2003**

In discussing the 340 then empty seats at Clinton, Crystal Hill and Baker Interdistrict schools as of 2002-2003, the ODM recommended at page 24 that the PCSSD:

> 5. Explore the possibility of increasing the number of seats reserved for transferring students at the interdistrict schools, thus promoting the schools' racial balance as well as harvesting the financial rewards of fuller schools and the M-to-M incentives.

This recommendation is an example of an impossibility. Even though three interdistrict schools had empty seats at that particular point in time, the percentages at Clinton and Crystal Hill did not permit the transfer of any additional black children from LRSD or NLRSD. Rather, what was needed to accommodate any additional black children was the addition of PCSSD white children; otherwise, further reservation of seats for transferring students, which are limited

and remain limited to black students, would not have "promot[ed] the schools' racial balance" because it would have made them blacker than they already were.

**September 17, 2008**

In discussing advanced placement, gifted and talented and honors programs at page 7, the ODM stated:

> Four of the seven middle schools did not meet the standard of proportional enrollment of black students in Pre-Advanced Placement courses, and none of the six high schools met the standard of proportional enrollment of black students in Advanced Placement.

However, as will be discussed in our proposed findings of fact and conclusions of law, the ODM is describing here a "failure" to meet an internal standard that is not mentioned anywhere in Plan 2000. It is respectfully submitted that the ODM should be monitoring Plan 2000, not what may be more rigorous standards which the PCSSD imposes upon itself.

In discussing the reservation of seats at Chenal interdistrict school at page 8 and page 28 the ODM noted:

> PCSSD will operate Baker Elementary, Clinton Elementary, Crystal Hill Elementary, and any new elementary school which may be constructed in the Chenal Valley areas as interdistrict schools. (Pg. 2, E.1.a)
>
> PCSSD opened Chenal Elementary School in August 2008 with 100 seats reserved for LRSD students. Enrollment on opening day was 493 students. Capacity was 550.

It is a mathematical truism that 100 seats falls within the definition of reserving "up to one-half" of the seats at Chenal Elementary. Logically, "up to one-half" does not mean that one-half of the seats must be reserved. Also, it is undisputed that of the 100 seats reserved, no more than 98 were ever filled. Further, it was also undisputed at trial that even though 100 seats were "reserved" additional space remained available to transferring students had they elected to apply

1463524.1

for and qualify for an interdistrict transfer. It is respectfully submitted that the criticism heaped upon the PCSSD by the ODM in this respect is misplaced and the Joshua Intervenors attempt to exploit the misplaced criticism should be rejected by this court.

At page 21, under the heading of "Staff" the ODM criticizes the PCSSD for changing the designation of Assistant Superintendent for Desegregation and for doing so without court approval. What the ODM neglects to mention is that nothing in Plan 2000 requires the PCSSD to apply for court approval for job position changes or changes in job descriptions; there is simply nothing in Plan 2000 even implying such an obligation. Accordingly, objection is made to the "facts" stated at page 21 of this report and the PCSSD believes this court should ignore the commentary which has no legal significance. (This criticism is repeated in the December 15, 2006 report at page 3.) Plan 2000 is a desegregation plan, not a "full employment" plan.

At page 22, also under the heading of "Staff" the ODM criticizes the lack of a definition for a racially identifiable school. Again, Plan 2000 requires no such "definition." It is unfair to criticize it for not defining such a school, particularly when any such definition would likely amount to an impermissible quota.

At page 29 under the heading of "Facilities" the ODM baldly states that:

> The district has added to the capacity of existing schools by the use of portables without either notification of the Court or the Joshua Intervenors as required by the plan.

No one advanced any proof at trial and neither is there any evidence contained within the ODM report in question as to where such portables were allegedly added without notification to the Joshua Intervenors. This court should brush aside this undocumented allegation.

As part of its conclusion at page 31, the ODM lamented, without citation to authority, treatise or scholarly works that:

4

> Sad to say, PCSSD has not made a dent in the growing discipline problems in its schools. No school should have suspension rates for any group of students that even approach 50%, much less exceed that percentage, yet in some PCSSD schools, black males have suspensions rates above that level.

While this rate is statistically high, it unfortunately corresponds to the poverty levels articulated by free lunch statistics for this group of students. The court should reject the unsupported observation of the ODM which, the district submits, transcends the ODM's appropriate role of simply objectively monitoring compliance or lack thereof without engaging in undocumented hyperbole.

Finally, this particular ODM report concludes by stating:

> Finally, the district remains stalled in negotiations with the Joshua Intervenors concerning issues of noncompliance with its plan. The lack of progress with the Justice Department and Joshua, coupled with the lack of attention to the district's multicultural needs, and the failure to even attempt to operate Chenal Interdistrict Elementary as a racially-balanced school, raises the spectre of bad faith. This would further suggest that PCSSD is not presently in the posture to either seek or be awarded unitary status by the district court.

It has not and has never been the role of the ODM to make legal evaluations of whether or not a district should or should not seek unitary status or should or should not be granted unitary status. This "finding" of the ODM should likewise be disregarded.

WHEREFORE, PCSSD prays for the relief sought in the supplemental motion *in limine* regarding ODM Reports and for all proper relief.

1463524.1

       Respectfully submitted,

       MITCHELL, WILLIAMS, SELIG,
        GATES & WOODYARD, P.L.L.C.
       425 West Capitol Avenue, Suite 1800
       Little Rock, Arkansas 72201
       Telephone: (501) 688-8800
       Facsimile: (501) 688-8807
       E-mail: sjones@mwsgw.com

       */s/ M. Samuel Jones, III*
       M. Samuel Jones III (76060)

       *Attorneys for Pulaski County Special School District*


## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

- **Mark Terry Burnette**
  mburnette@mbbwi.com
- **John Clayburn Fendley , Jr**
  clayfendley@comcast.net
- **Christopher J. Heller**
  heller@fec.net
- **Office of Desegregation Monitor**
  paramer@odmemail.com
- **Scott P. Richardson**
  scott.richardson@arkansasag.gov,agcivil@arkansasag.gov
- **John W. Walker**
  johnwalkeratty@aol.com,lorap72297@aol.com,jspringer@gabrielmail.com


       */s/ M. Samuel Jones, III*

I hereby certify that on April 5, 2010, I mailed the document by United States Postal Service to the following non CM/ECF participants.

Mr. Robert Pressman
22 Locust Avenue
Lexington, Massachusetts 02173

Judge H. David Young
C255 Richard Sheppard Arnold U. S. Courthouse
500 West Capitol Avenue
Little Rock, Arkansas 72201

/s/ M. Samuel Jones, III
M. Samuel Jones III (76060)
Attorneys for Defendant PCSSD
MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
Telephone: (501) 688-8800
Facsimile: (501) 688-8807
sjones@mwlaw.com