IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

LITTLE ROCK SCHOOL DISTRICT, *et al.*　　　　　　PLAINTIFFS

v.　　　　　　　　　No. 4:82-cv-866-DPM

NORTH LITTLE ROCK SCHOOL DISTRICT, *et al.*　　DEFENDANTS

LORENE JOSHUA, *et al.*　　　　　　　　　　　　INTERVENORS

ORDER

1. A few months back, the Court ruled that it needed more facts and more argument on the charter-school issues before it could decide that part of the pending LRSD/Joshua motion to enforce the 1989 Settlement Agreement against Arkansas. *Document No. 4608, at pp. 7-8.* A group of open-enrollment charter schools has moved to intervene, either as a matter of right or with permission. LRSD, PCSSD, NLRSD, and Joshua oppose intervention. Arkansas has not responded. This case has seen its share of disputes about adding parties. *Compare LRSD v. PCSSD*, 738 F.2d 82 (8th Cir. 1984) (*per curiam*) (Knight intervenors, representatives of classroom teachers, allowed in), *with LRSD v. PCSSD*, 378 F.3d 774 (8th Cir. 2004) (Bollen Group, residents seeking a Jacksonville splinter district, refused intervention).

The charter schools offer their proposed complaint in intervention and response (as amended) to the LRSD/Joshua motion. *Document No. 4626–2.* Their proposal is illuminating. They respond briefly to the motion. But the prospective intervenors seek more than the opportunity to be heard against the LRSD/Joshua motion; the charter schools seek declarations that the 1989 Settlement Agreement, the Magnet Stipulation, and the Majority-to-Minority Voluntary Transfer Stipulation are all unconstitutional and unenforceable. Most of their proposed complaint elaborates this new constitutional challenge.

The Court grants the charter schools' motion in part and denies it in part. They may intervene to oppose that part of the LRSD/Joshua motion dealing with them. Because Arkansas adequately represents the charter schools' interests, the intervention is by permission rather than of right. The case will benefit from the charter schools' participation on the motion to enforce. Their participation, however, is limited to opposing that motion. The charter schools' proposed constitutional offensive against the 1989 Settlement Agreement and related Stipulations comes too late in the case. It would unfairly prejudice the other parties, and belatedly refocus the litigation at a newcomer's insistence, to bring these new constitutional issues front and

center now. As other briefing in the case shows, the current parties plan on bringing these issues forward sooner rather than later. The Court welcomes the charter schools' participation in one important slice of the case. But the Court rejects their effort to lead an eleventh-hour reorientation of this long-running dispute.

**2.** The first threshold issue is standing. "[T]he Constitution requires that prospective intervenors have Article III standing to litigate their claims in federal court." *Mausolf v. Babbitt*, 85 F.3d 1295, 1300 (8th Cir. 1996). The charter schools must demonstrate injury, causation, and redressability. *Ibid.* If LRSD and Joshua prevail on their motion, then these schools' charters will be affected — and affected adversely from their perspective. LRSD and Joshua seek, among other things, to limit enrollment increases at the charter schools and amend their charters. *Document No. 4440, at pp. 5-6*. If the Court denies the LRSD/Joshua motion, the charter schools' alleged imminent injury will be redressed. So they have standing to be heard on the motion to enforce. *Mausolf*, 85 F.3d at 1301.

**3.** The second threshold issue is timeliness. Any intervention, whether by right or by permission, must be timely. *Planned Parenthood of the Heartland*

*v. Heineman*, 2011 WL 6265773, at *1–2 (8th Cir. 16 December 2011); *American Civil Liberties Union of Minnesota v. Tarek ibn Ziyad Academy*, 643 F.3d 1088, 1093–94 (8th Cir. 2011). Timeliness is the sum of all the circumstances. *Mille Lacs Band of Chippewa Indians v. State of Minnesota*, 989 F.2d 994, 998 (8th Cir. 1993).

- The charter schools' request to be heard against the LRSD/Joshua motion is timely. LRSD moved to enforce in May 2010; Joshua joined the motion; and Arkansas promptly responded, urging denial. *Document Nos. 4440, 4463, & 4465*. There the matter sat for about eight months because the parties were focused instead on the unity-status proceedings about NLRSD and PCSSD. When LRSD started discovery on charter-school issues in February 2011, this Court stopped it with a stay. In August 2011, this Court denied the motion to enforce as a matter of law on *Lakeview* claims about transportation funding and directed discovery and further argument about charter schools and another issue. *Document No. 4608, at pp. 7–10.* The charter schools sought intervention one month later.

They acted promptly after this Court began to move forward on the charter-school issues. This was before any of the new discovery had been

done. Of course the charter schools had known about the motion to enforce for fifteen months. But Arkansas had thoroughly argued why the motion should be summarily denied on charter schools, and it was reasonable to wait and see if the Court would agree. As the charter schools point out, their alleged injury moved from hypothetical to imminent when the Court decided it needed more facts and more argument, and perhaps an evidentiary hearing, before decision. Finally, the charter schools' delay worked no prejudice on the other parties. This branch of the case was dormant. Having informed its discretion with all the material considerations, *American Civil Liberties Union*, 643 F.3d at 1094, the Court concludes that the charter schools sought timely intervention on the motion to enforce.

- But the charter schools' constitutional attack on the 1989 Settlement Agreement and related Stipulations is untimely. The parties made these agreements decades ago. The Court of Appeals approved the parties' comprehensive settlement. *LRSD v. PCSSD*, 921 F.2d 1371 (8th Cir. 1990). Following that mandate, this Court did too. *Document No. 1418*. And, as modified through the years of litigation, these consent decrees have guided and are guiding the case. *See generally, LRSD v. PCSSD*, 237 F. Supp. 2d 988

(E.D. Ark. 2002). This litigation has progressed too far based on the parties' court-approved agreements for the charter schools to appear and lead a belated charge against the consent decrees. *American Civil Liberties Union*, 643 F.3d at 1094–95.

The charter schools undoubtedly knew about this litigation in general, and about the 1989 Settlement Agreement and Stipulations in particular, at the schools' creation. LRSD contends that the Arkansas statutes governing charter schools, and the application for a charter, bring the schools and their charters within this Court's reach in this case. That legal argument may or may not be correct. At the minimum, the statutes and the application notified would-be charter schools about the intersection between their charters and this case. The prospective intervenors got their charters from Arkansas in 1999, 2002, 2003, 2006, 2007, 2008, and 2010. *Document No. 4626-2, at pp. 5–8*. All but one of the schools had been on notice about this litigation for several years before attempting intervention. *American Civil Liberties Union*, 643 F.3d at 1094–95.

The charter schools offer no good reason for waiting until now to challenge the 1989 Settlement Agreement and related Stipulations. Of course

these schools did not exist when the parties made their agreements and the courts approved and adopted them. Until LRSD and Joshua attacked charter schools in their motion to enforce, the schools say they simply had no reason to be in the case. This is a true but insufficient explanation. Defending against the motion is one thing; challenging the parties' decades-old settlement and this Court's consent decrees is another. The charter schools have offered no adequate explanation why they delayed their constitutional attack until now. *American Civil Liberties Union*, 643 F.3d at 1094–95.

The final consideration is the delay's potential prejudice to the parties. *Ibid*. It would be significant. The charter schools want to revisit long-settled matters. And they want to take charge of the main litigation issues. The other parties would be forced to respond immediately to the charter schools' new constitutional challenges. But this is not the time to focus on those challenges and the charter schools are not the parties to spearhead them. For example, if the Court eventually denies LRSD and Joshua relief on the charter-school issues, then the charter schools (as they acknowledge) would have no standing to stay in the case. *Document No. 4640, at p. 13*. Finally, LRSD, Joshua, and Arkansas have joined in suggesting a *Grutter* review of the 1989

-7-

Settlement Agreement. *Document No. 4608, at p. 10; see Grutter v. Bollinger*, 539 U.S. 306, 339, 342 (2003). The Court has received a round of briefs on this issue, including a proposed brief from the charter schools. The Court is considering those issues. And while Arkansas's views are not identical to the charter schools', the Court is convinced that the constitutionality of the consent decrees will be adequately ventilated soon by the current parties. The three school districts and the State put aside their disagreements on constitutional issues long ago and pledged to work together toward eliminating the vestiges of segregation insofar as possible. These parties, with the Court's superintending control, must finish the job.

Consent decrees are part contract and part court order. *LRSD*, 921 F.2d at 1387. They are not, strictly speaking, judgments. And so the Court has not applied the general rule against intervention after judgment, which requires a strong showing of entitlement and of justification for not seeking relief sooner. *Planned Parenthood of the Heartland*, 2011 WL 6265773 at *2. But given the age of the decrees the charter schools want to attack, and the late stage of the litigation, perhaps the general rule should apply. In any event, considering the standard factors, the charter schools' proposed constitutional

-8-

attack on the 1989 Settlement Agreement, the M-to-M Stipulation, and the Magnet Stipulation simply comes too late to be made by them at this moment in the case.

4.  With timeliness resolved, the remaining issues are whether the charter schools have the right to be heard against the LRSD/Joshua motion or, if not, whether the Court should grant them permission to be heard. If the charter schools have an interest that "may as a practical matter" be impaired or impeded by the motion, and if their interest is not adequately represented by existing parties, then the Court "must" allow intervention of right. FED. R. CIV. P. 24 (a)(2); *see also LRSD*, 738 F.2d at 84–85. If the charter schools have a claim or defense sharing common questions of law or fact with the motion, and if intervention would not unduly delay or prejudice existing parties, then the Court "may permit" intervention. FED. R. CIV. P. 24 (b)(1) & (3). The Court must apply Rule 24 liberally and practically, resolving doubts in favor of intervention. *U.S. v. Union Electric Co.*, 64 F.3d 1152, 1158 (8th Cir. 1995).

- The charter schools have an interest in their contracts with Arkansas, their charters. The LRSD/Joshua motion targets those charters. LRSD and Joshua may prevail, in the end, on their argument that these contracts are

premised on the charter schools not hampering, delaying, or negatively affecting public school districts' desegregation efforts. *E.g.*, ARK. CODE. ANN. § 6-23-106(c). But this conclusion cuts deep into the merits of the motion to enforce. The issue, at this point, is not whether the charter schools "interests *will* be impaired in the ongoing action[;]" the issue is whether the charter schools have shown that "disposition of the action *may* as a practical matter impair their interests." *LRSD*, 738 F.2d at 84 (emphasis original and quotation omitted). They have. LRSD and Joshua's request that the charter schools' enrollments be limited and their charters amended permits no other conclusion. *CRI, Inc. v. Watson*, 608 F.2d 1137, 1140 n.2 (8th Cir. 1979).

Usually prospective intervenors bear a "minimal" burden in showing that their interest may not be adequately represented by existing parties. *LRSD*, 738 F.2d at 84. "[B]ut the burden is greater if the named party is a government entity that represents interests common to the public. We presume that the government entity adequately represents the public, and we require the party seeking to intervene to make a strong showing of inadequate representation[.]" *LRSD*, 378 F.3d at 780. Two examples from earlier in this case illustrate the governing law.

When this Court was crafting an inter-district remedy, the three school districts could hardly be expected to represent adequately their teacher-employees' interests in their jobs and their contracts. So the Knight intervenors were allowed into the case. *LRSD*, 738 F.2d at 84–85. But when Arkansas tried to create a Jacksonville splinter district from the PCSSD, the Bollen Group of supporting residents was denied intervention. *LRSD*, 378 F.3d at 780–81. The Bollen Group's interest was sufficiently aligned with the State's; and the residents' different views about litigation strategy and objectives did not make the State's presumptively adequate representation inadequate. *Ibid.* The charter schools say they are like the Knight teachers; LRSD says they are like the Bollen Group.

Neither precedent fits our circumstances exactly. While the charter schools have contracts like the teachers did, Arkansas and the charter schools are not adverse. They are joined in the common cause of discharging the State's constitutional obligation to provide all children with adequate educational opportunities. ARK. CONST. art. 14, § 1. The charter schools are neither employees nor the unions that represent them—interests across the bargaining table from the school districts. The charter schools' property

-11-

interest in their contracts with the State is real and valuable; but it is different in kind and in quality from the treaty-based hunting and fishing rights of Indians and the real property rights of landowners. *Compare Mille Lacs Band*, 989 F.2d at 999–1001.

The schools' charters are creatures of statute, subject to change on certain terms, and the schools' educational work is subject to plenary State oversight — it could hardly be otherwise given the public work being done by these private entities. Each charter school's individual interest is, in one sense, narrower than Arkansas's and the Arkansas Department of Education's. But viewed as a whole, these schools' interests must align with the State's sovereign interest in educating children. Consider the General Assembly's intent as expressed in the first section of the Arkansas Charter Schools Act of 1999. These are "public schools," operating independently of local school districts but subject to State control, created to improve student learning by expanding educational opportunities through innovation. ARK. CODE. ANN. § 6–23–102.

Perhaps the best measure of whether Arkansas will adequately represent the charter schools' interests is in what the State has done thus far.

More than half of Arkansas's forty-three page brief against the motion to enforce argued the virtues, benefits, and desegregation-neutral aspects of the open enrollment charter schools in Pulaski County. *Document No. 4465, at pp. 10-32*. The State even invoked *Parents Involved in Community Schools v. Seattle School District No. 2*, 551 U.S. 701 (2007), and its potential applicability. The State did not respond to the recent motion to intervene. That silence may mean many things. Arkansas's earlier brief, however, speaks unequivocally and comprehensively against the motion to enforce. It reads as if the charter schools were themselves arguing against the motion. Arkansas is committed to the ongoing experiment with charter schools; and this commitment means adequate representation of the charter schools in this case. Like the Bollen Group, the charter schools have not overcome the presumption that Arkansas adequately represents their interests. *LRSD*, 378 F.3d at 780–81. Therefore, they are not entitled to intervene as of right.

- The charter schools also seek permissive intervention. FED. R. CIV. P. 24 (b)(1)(B); *South Dakota v. United States Dept. of Interior*, 317 F.3d 783, 787 (8th Cir. 2003). No persuasive argument has been offered against allowing these parties to join the case for the limited purpose of opposing the part of the

motion to enforce that concerns them. The charter schools satisfy the Rule's requirements: their response was timely; they have a defense to the motion involving common questions of law and fact; and allowing them to participate in this part of the case will not unduly delay the litigation or prejudice the original parties' rights. FED. R. CIV. P. 24 (b)(1) & (3). This part of the case is just beginning. The prospective intervenors have pledged to meet the Court's existing deadlines. While there will be some catch up in discovery, this is the Court's fault for not deciding the charter schools' motion more promptly. Any prejudice or duplication will come at the margin.

Why allow the charter schools to intervene with permission when they may not do so of right?  Four reasons.  First, they satisfy the Rule's requirements. Second, this is the practical result, resolving doubts in the charter schools' favor, which precedent requires. Third, if the Court is wrong about the adequacy of the State's representation, then the charter schools will be present and can fill the gap. Fourth, permissive intervention will give the Court the benefit of these intervenors' important views, while channeling their participation to the already-joined issue that affects them. The Court therefore exercises its discretion to give the charter schools a limited, though

important, role so this case will keep moving forward fairly and efficiently.

FED. R. CIV. P. 24 (Advisory Committee Notes, 1966 Amendment).[*]

\* \* \*

The charter schools' amended motion to intervene, *Document No. 4620*, is granted in part and denied in part.  The charter schools should file their proposed complaint in intervention, omitting their constitutional challenges and requests for declaratory judgment, and their proposed response to the motion to enforce by 15 January 2012.  They should, if possible, file a joint responding statement of material facts with Arkansas in March.  They may join the State's responding brief, or file their own.

So Ordered.

*[signature]*
D.P. Marshall Jr.
United States District Judge

29 December 2011

---

[*]   Though the Advisory Committee's Note speaks of the Court's authority to limit the role of intervenors of right, the Rule is silent on that score.  The commentators are divided. 7C WRIGHT, MILLER, & KANE, FEDERAL PRACTICE & PROCEDURE § 1922 (3d ed. 2005). And the Eighth Circuit has not decided the issue. The Court's authority to limit the role of permissive intervenors, however, is well settled. *Ibid.*