IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**LITTLE ROCK SCHOOL DISTRICT,**              **PLAINTIFFS**
*et al.*

v.            No. 4:82-cv-866-DPM

**NORTH LITTLE ROCK SCHOOL DISTRICT,**        **DEFENDANTS**
*et al.*

**LORENE JOSHUA, et al.**                     **INTERVENORS**

BRIEF ON STAFFING ISSUES

Jacksonville/North Pulaski School District (JNPSD), through its attorneys Scott P. Richardson and Patrick D. Wilson, states as follows for its Brief on Staffing Issues:

A. **Request for Clarification as to the Desegregation Obligations that JNPSD is Inheriting.**

The Final Settlement Agreement in this case provides as follows for the Jacksonville/North Pulaski School District (JNPSD): "Any . . . newly created school district in Pulaski County [e.g. JNPSD] shall be considered a party to and bound by this Agreement." Final Settlement Agreement para. E.1. The Court's August 21, 2014, Consent Judgment retained "jurisdiction as necessary should a Jacksonville/North Pulaski Area School District be created by the State." DE# 5063, Consent Judgment para. 5. The State Board of Education on November 13, 2014, "order[ed] the creation of the JNPSD." DE# 5075-1, Exhibit 1 to Report and Request for Status Conference Jointly Presented by Joshua and PCSSD. The Court's December 22, 2014, Order approving the plan for detachment provides that

1

"JNPSD will assume all of PCSSD's desegregation obligations in the establishment and operation of the new district." DE # 5088, Order para. 1.

In general, this language has been assumed to mean that, once created, JNPSD would become bound to Plan 2000 and any court orders requiring specific actions of PCSSD or releasing PCSSD from portions of Plan 2000. A difference of opinion has arisen between JNPSD and PCSSD as to a particular practice in relation to the area of staffing. The Joshua Intervenors have seized upon this difference of opinion and brought the issue to the Court. It centers on JNPSD's attempted selection of an Assistant Superintendent for Human Resources and Support Services.

>Plan 2000 provides as follows for the hiring of administrators in PCSSD:
>
>The PCSSD shall recruit applicants for each available administrative position, by internal and external means, in a manner designed to communicate, broadly, its availability and to develop a racially diverse pool of applicants. The Assistant Superintendent for Desegregation shall, with the cooperation of the Assistant Superintendent for Personnel, be informed of the make-up of each such applicant pool and they shall have the authority to direct that additional recruitment take place prior to the offering of the position to a particular applicant.

Plan 2000 p. 6, para. L(1). There are no other controlling provisions in Plan 2000 regarding hiring of administrators. The two most recent court opinions on this provision affirm that this paragraph requires only what is stated within it. DE # 4507, Findings of Fact and Conclusions of Law p. 83-85; 2011 WL 1935332 p. 42 *LRSD v. State of Arkansas*, 664 F.3d 738, 754-755 (8th Cir. 2011). That is, in relation to administrative positions, Plan 2000 requires a broadly communicated recruitment effort, a racially diverse pool of applicants, and that is it.

2

Consent decrees, like Plan 2000, are interpreted similar to contracts. *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 958 (8th Cir. 2002). It must be read as written. Additional terms cannot be added to it nor can existing terms be replaced with different terms "no matter how much of an improvement it would make in effectuating the decree's goals." *LRSD v. State of Arkansas*, 664 F.3d 738, 747 (8th Cir. 2011) *quoting EEOC v. N.Y. Times Co.*, 196 F.3d 72, 78 (2nd Cir. 1999).

Here, the two positions for Assistant Superintendents at JNPSD were publicly and internally advertised through PCSSD's human resources department. See DE # 5058-1 14 Aug. 2014 Hearing Ex. 1, p. 1-2 (describing PCSSD's practice for advertising open administrative positions). At the end of that advertising process, a racially diverse pool of applicants for both positions was obtained. The pool for the Assistant Superintendent for Human Resources and Support Services position included three African-American applicants and four white candidates. At this point, JNPSD had achieved compliance with the terms of Plan 2000. See DE # 5144, Joshua Intervenors' Memorandum Concerning the JNPSD Assistant Superintendent Position, p. 3, 10 (agreeing that PCSSD and JNPSD complied with Plan 2000 regarding this position).

PCSSD has practices, however, that go beyond the requirements of Plan 2000 for recruitment for administrative positions. See DE # 5058-1 p. 2. PCSSD will convene a bi-racial committee to interview applicants for administrative positions. Id. Each of the interviewers score the applicants in the interview. The scores are tabulated and the "interview committee submits a letter to the human resources

3

department summarizing their activities and recommending their chosen candidate." Id., see also Ex. __, Interview Committee Letter.  At this point, the District Superintendent may deny the committee's recommendation or approve the recommendation.  Id.

To be clear, there are no written policies at PCSSD mandating what happens after compliance with Plan 2000.  The August 14, 2014, hearing exhibit is as much of a writing as JNPSD could find documenting the process.  According to the hearing exhibit, once the interview committee makes its "recommendation" the final decision as to who to hire rests with the Superintendent. It makes no mention of second interviews or any other additional actions.

With regard to the JNPSD Assistant Superintendent for Human Resources and Support Services position, the interview committee's recommendation was submitted by the PCSSD human resources department to the incoming JNPSD Superintendent (Mr. Tony Wood) for his decision on who to hire.  The interview committee's scoring separated the top two candidates by only two points.  Mr. Wood reviewed the application packets of each applicant and chose to hire the second highest scoring applicant based primarily on two factors: the applicant's prior experience working in a school district central office and working at the Arkansas Department of Education as Director of Federal Programs.[1]  Ex. ___, Wood letter to JNPSD Board.

---

[1] The Joshua Intervenors argue that crediting an applicant's qualifications beyond the minimum posted job requirements somehow unfairly disadvantages other applicants.  This argument lacks merit.  The logical implication

4

PCSSD has taken the position that Mr. Wood's decision was "inconsistent with PCSSD's well-established hiring practices and customs for implementing Plan 2000." DE # 5130-1 p. 8. In particular, PCSSD states that "[i]n past instances of close votes, [it] has proposed additional interviews for the narrowly separated applicants." Id. This practice is not documented in any formal policy, procedure, or other writing. PCSSD apparently takes the position that this practice is mandated under Plan 2000, and that the Superintendent does not maintain discretion to decide whom to hire. This position is in conflict with the August 14, 2014 letter. DE # 5058-1.

In a second letter, PCSSD took this position a step further and suggested to the Commissioner of Education that when an African-American applicant was the highest scoring interviewee, the Districts were required to hire the applicant. PCSSD also stated that the Superintendent's discretion to chose an applicant other than the top scoring applicant "would only come into play if the committee ranked a non-black applicant higher than an equally qualified black applicant, not the other way around." DE # 5030-1, p. 20-21. This position is not supported by either Plan 2000 or the law in this case.

As noted above and in PCSSD's August 14, 2014, letter the only federal mandates in the hiring of administrators deal with advertising of positions and racial diversity of the applicant pool. Moreover, the Eighth Circuit has explained

---

of this argument is that a district could only hire an applicant who held the specific requirements of the job posting; i.e. more qualified candidates need not apply. This argument should be set aside.

5

what PCSSD must show to implement an affirmative action plan to give preferential treatment to minority groups in hiring:

> An affirmative action policy is valid if the policy is remedial and narrowly tailored to meet the goal of remedying the effects of past discrimination. A policy may be considered remedial if the employer has identified a manifest imbalance in the work force. A policy may be shown to be remedial through evidence that it was implemented in adherence to a court order, whether entered by consent or after litigation. But a policy may not unnecessarily trammel the rights of non-minorities, and it must be intended to attain a balance, not to maintain one.

*Humphries v. Pulaski County Special Sch. Dist.*, 580 F.3d 688, 695-696 (8th Cir. 2009)(internal citations omitted). After reviewing Plan 2000, the Eighth Circuit in *Humphries* concluded that Plan 2000 did not support the District's position that "its policies were remedial." *Id.* at 696. That is, with regard to administrative positions, Plan 2000 does not require racial preferences in hiring administrators at PCSSD.

The Eighth Circuit went on to state that it was an open question whether the PCSSD's policies "were remedial because they addressed a manifest racial imbalance in the District's work force." *Id.* at 696. Two years later, however, the Eighth Circuit credited PCSSD's showing that "the percentage of [PCSSD's] administrators and staff who are black exceeds the percentage of the relevant labor market that is black." *LRSD v. State of Arkansas*, 664 F.3d at 754. And, one year ago, PCSSD represented to this Court that it had remedied any "manifest imbalance" that existed in the administrative positions at the District. DE # 5058-1; *see Hill v. Ross*, 183 F.3d 586, 590 (7th Cir. 1999)(noting that in order to show that reliance on an affirmative action plan is pretextual plaintiff need only show (i) that the terms of the plan do not support the racial preference and (ii) that the hiring

6

authority denies having engaged in discrimination prior to the decision in question); *Ricci v. DeStefano*, 557 U.S. 557, 582 (2009)(holding that "government actions to remedy past racial discrimination . . . are constitutional only where there is a strong basis in evidence that the remedial actions were necessary"). Accordingly, PCSSD's assertion that racial preferences are required in hiring of administrators is questionable at best.

Administrative positions for the JNPSD central office present an additional complicating factor. Until after the State Board of Education created the JNPSD in November 2014, there was no JNPSD central office. The hiring for the two Assistant Superintendent positions in April and May this year was the first time anyone had been hired for these newly created positions. If JNPSD's hiring decisions had been carried out, the District would have one African-American and one white assistant superintendent. For this newly created governmental unit, there is no history of prior discrimination to justify racial preferences in hiring. *See Wygant v. Jackson Bd. Of Educ.*, 476 U.S. 267, 274 (1986)(noting that the Supreme "Court has insisted upon some showing of prior discrimination by the governmental unit involved before allowing limited use of racial classifications in order to remedy such discrimination"). While PCSSD may have an arguable basis to apply racial preferences in favor of minority applicants, it is difficult to conceive of how JNPSD could justify such racial preferences in hiring for its newly created central office.

Even so, PCSSD overrode JNPSD's hiring decision on this basis. It insisted that its desegregation obligations required racial preferences in hiring and that

7

JNPSD must also apply those racial preferences. The basic fact situation is this: JNPSD compared the qualifications of the two applicants that scored the highest in the interview process. It then made a decision based on the qualifications of the two applicants to offer the position to the second highest scoring candidate. The highest scoring applicant was African-American and the second highest was white. Assuming those facts to be true JNPSD's question for the Court is, essentially: with regard to administrative positions, do Plan 2000 and the desegregation obligations that JNPSD is inheriting require JNPSD to hire the applicant that the interview committee scores highest? Or, can JNPSD take the interview committee's scoring as a recommendation for hire in the administrative position and make a decision based on the applicants' qualifications without regard to race?

The Joshua Intervenors focus on a question of whether Dr. Guess has the authority to make decisions regarding desegregation under the agreement filed at DE # 5080-1. This is not the issue that concerns JNPSD. The question that JNPSD raises relates to what the JNPSD's desegregation obligations are going forward. JNPSD's position is that once it complied with Plan 2000 the ultimate decision as to who to hire was no longer a desegregation issue. PCSSD and the Joshua Intervenors take the position that it was a desegregation issue. JNPSD does not find authority in this case for that position. *See LRSD v. State of Arkansas*, 664 F.3d at 754 (noting that hiring "outcomes alone are insufficient" to demonstrate compliance with Plan 2000). That is, the desegregation obligations that JNPSD is inheriting in this case do not require race-conscious decisions in the hiring of

8

administrators. So, in terms of the two questions posed in the preceeding paragraph, JNPSD's position is that the answer to the first question is "no" and the answer to the second question is "yes." But if JNPSD's desegregation obligations do require race-conscious hiring decisions for administrative positions, JNPSD needs to have clear authority for that position. Accordingly, JNPSD requests clarification of its desegregation obligations in this area. *Missouri v. Jenkins*, 515 U.S. 70, 101 (1995)(stating that school districts "are entitled to a rather precise statement of their obligations under a desegregation decree")(internal quotes and citations omitted).

### B.  Update on JNPSD's Staffing Generally

The remainder of this brief will update the Court as to the progress of other staffing issues in the newly-created JNPSD. For the 2015-16 school year the certified and classified staff working in the JNPSD continue to be employed by PCSSD. Accordingly, the staffing decisions for this school year were largely made by PCSSD. On or about May 28, 2015, PCSSD adopted its JNPSD Detachment Certified and Classified Policies. These are the so-called "dual-seniority center" policies.

With regard to staffing decisions in the JNPSD, the District and PCSSD will work together to address any issues that arise during the school year with regard to staffing. PCSSD, as the employing agency, retains the ultimate authority to take action on the contracts it holds with employees working in JNPSD. When and if vacancies occur, the two districts will work together to address those vacancies.

9

The process of changing the authority to employ staff from PCSSD to JNPSD for the 2016-17 school year will begin in early 2016. In broad terms, the parties anticipate that PCSSD will release its employees in the JNPSD seniority center from their employment contracts, and JNPSD will engage a process of hiring staff to work in the school district in the 2016-17 school year. The details of that transition are under consideration. JNPSD is beginning the process of developing staffing policies to manage the transition consistent with federal law, state law, and its desegregation obligations. Once those policies are finalized they will be shared with this Court.

WHEREFORE, the JNPSD requests clarification of its desegregation obligations under Plan 2000 and all other relief to which it is entitled.

Respectfully Submitted,

By: /s/ Patrick D. Wilson (99073)
WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, AR  72201
(501) 371-0808
FAX: (501) 376-9442
E-MAIL: pwilson@wlj.com

and

/s/ Scott P. Richardson  (2001208)
McDaniel, Richardson, & Calhoun PLLC
1020 West 4th St., Suite 410
Little Rock, AR 72201
501.235.8336
501.588.2104 fax
scott@mrcfirm.com

Attorneys for Jacksonville/North Pulaski School District

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

All Counsel of Record

/s/ Scott P. Richardson