IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

LITTLE ROCK SCHOOL DISTRICT,
et al.                                                                                                  PLAINTIFFS

v.                                      Case No. 4:82-cv-866-DPM

PULASKI COUNTY SPECIAL SCHOOL DISTRICT,
et al.                                                                                                  DEFENDANTS

LORENE JOSHUA, et al.                                                               INTERVENORS

<u>Joshua Intervenors' Memorandum Concerning the Remaining
Remedial Obligations and the Two Agreements</u>

  PCSSD, JNPSD, and then Joshua Intervenors sponsored an agreement regarding detachment issues; the Court approved it by an Order on December 22, 2014. [#'s 5088, 5080-1] PCSSD and JNPSD, without the participation of Joshua, entered a second agreement concerning detachment issues and Plan 2000. The districts presented this second agreement to the State Board of Education, which approved it on August 18, 2015. [# 5145 at 1] The two districts then presented the second agreement to this Court, in a Report filed by PCSSD counsel. [# 5145] This submission was "for the information, consideration, and comments of the Court and the Joshua Intervenors at the August 20, 2015 status conference." [# 5145 at 1] At some points, the new agreement identifies the effective date of a provision as "Beginning with State Board approval of the agreement . . . ." [New Agreement at 9, paras. 10, [A] and [B]].

  The proffered Agreement contains in paragraph 2. the following language: The

1

parties' intention is to make the present document as all-inclusive and complete as they can. In so doing, however, they do not intend to reject all that has gone before. Therefore, the preliminary agreement will control only as to subjects not dealt with herein, and to the extent that it does not conflict with this document." This approach is wholly inadequate and fraught with litigative peril. The text of these two documents totals 18 and 3-4 pages. The second document has 5 and 1-2 pages of attachments.

The provisions of Plan 2000, concerning areas where remedial obligations remain, are the necessary focal point of the litigation. Joshua addresses each active area of the case. In general, Joshua's position is that the need for Dr. Guess to exercise "Captain of the Ship" authority remains. Elements of the new agreement are discussed in the section of the memorandum addressing the Plan 2000 topic to which the new agreement language relates. Several other aspects of the new agreement are discussed thereafter. Joshua did not find it necessary to discuss all provisions of the new agreement.

Section F. Discipline

Through June 30, 2016, PCSSD will continue to be responsible for implementation of the 6 elements of Plan 2000. This responsibility will extend to all schools, including the 9 schools identified as within the territory of the JNPSD. [New Agreement, Exh. A] During the current school year, Joshua anticipates work with PCSSD regarding involvement of the criminal justice system in student discipline matters, including in schools within the territory of JNPSD.

Regarding discipline obligations, the following provisions of the Court-approved agreement should govern during 2015-16. "[T]he new district and PCSSD shall operate as a single unit under Arkansas law in the same manner as before the creation of JNPSD."

2

[# 5080-1 at para. 1] "Dr. Jerry Guess, in his capacity as PCSSD superintendent, continues to act in this litigation for and on behalf of PCSSD with no obligation to consult with, or report to, the Commissioner in regard to [this] desegregation [issue]." [# 5080-1 at para. 5] Should a dispute arise regarding implementation in the discipline area of Plan 2000, the following standard in the original agreement applies: ". . . all decisions directly related to unitary status and other desegregation issues are within the purview and discretion of PCSSD and its superintendent, subject to consultation with Joshua and ultimate approval by the Court." [3 5080-1 at para. 9]

If JNPSD desires to change the content of the student handbook substantively, as of 2016-17, staff should consult with Joshua on this topic during the current school year. See Plan 2000, Section F. (6) ["Handbook for Student Conduct and Discipline"].

Section M. Achievement

Through June 30, 2016, PCSSD will continue to be responsible for implementation of the Plan 2000 achievement initiative. This responsibility will extend to all schools, including the 9 schools and the PRE-K Center identified as within the territory of the JNPSD. [New Agreement, para. 12. and Exh. A]. Captain of the Ship authority on the part of Dr. Guess, as described above, should apply to the achievement area during 2015-16.

It would appear that the process would benefit from discussion by Joshua and representatives of the two districts regarding the parameters of the achievement obligations. It is appropriate to include JNPSD in such a discussion because there is no indication that a ruling of unitary status in this area will occur before July 1, 2016.

In paragraph 10. [B] of the new agreement regarding "all instructional programs to

3

be delivered in JNPSD during the 2016-17 fiscal year," the words "including any necessary, preliminary steps in the 2015-16 year" require explanation. [At p. 9] In paragraph 10.[C] of the new agreement, the following sentence appears: "The JNPSD superintendent may opt to have PCSSD forego certain expenditures related to JNPSD that are budgeted and would otherwise be expended." This provision is much too open-ended to be approved without explanation. Dr. Guess' overarching authority should apply to any such properly tailored provision.

Section H. School Facilities

The much-needed high quality implementation/compliance in this area requires consideration of multiple factors. These are [i] the requirements of Plan 2000;  [ii] Judge Miller's findings of facility inequality and discrimination, affirmed on appeal; [iii] the agreement of PCSSD and Joshua to "Plan B," approved by this court's Order of January 12, 2015 [#5091] and  [iv] other facility issues in PCSSD;  [v] the requirement of Arkansas law that each school district develop a Facilities Master Plan, which includes a schedule by school of maintenance and repair activities, identification of committed projects,  and a description of planned new projects with costs and priorities [Ark. Code Ann. 6-21-806(a)(1); 6-21-806(b)(1); (2)(A); (7)(A); (9); see also 6-21-806(a)(2) ["Arkansas Public School Academic Facilities Manual"];  [vi] the  State funding program for supporting school construction in local districts [the "Partnership Program"], which includes the requirement of having a Facilities Master Plan [Ark. Code Ann. 6-20-2507(a); 6-20-2507(b)(1)(A)]; [vii]   <u>the provisions of the new agreement regarding facilities for the JNPSD [#5145, para. 10[A], [D] at 9-10]</u>; and [viii] this Court's Order of August 20, 2015, requiring three  meetings of Joshua, PCSSD, and JNPSD "on facilities-related issues"

and providing that the December 2015 status conference "will focus on facilities." [#5154]

In order to comply with the statutory Facility Master Plan requirements, PCSSD should have documents showing, by school, including those in the territory of the JNPSD, scheduled maintenance and repair activities during 2015-16. [Ark. Code Ann.6-21-806(b)(1)]  On February 1, 2013, PCSSD filed a Status Report  regarding the status of Plan 2000 implementation. [# 4814]  Exhibit 2 contained a lengthy list of what were there termed "Building Fund Projects (12-13)."  One or more projects was undertaken at eight of the nine schools to be a part of the JNPSD. [Id.] The Status Report filed by JNPSD on August 19, 2015 refers to such projects by the phrase "sustainment, restoration and modernization projects. . . ." See  #5153 at 3 and Exh. 1 at 1 [paras. 1 and 2 of text]. Maintenance activities by janitorial and "fix it" staff and these construction projects, although less substantial than a new school or addition, help to fulfill  the cleanliness, attractiveness, and equality mandates of Section H.(1) of Plan 2000. Dr. Guess should have the "Captain of the Ship" authority, set forth above, regarding these activities in schools within JNPSD in 2015-16. In accord with the Court's requirement of openness and communication in this area, PCSSD should promptly provide the parties a list of the projects planned for 2015-16.

The new agreement refers to "facility sustainment, restoration, and modernization (SRM) projects" in para. 10.[D], indicating  that the JNPSD superintendent will have a role on the PCSSD Board which designs and oversees this program.  [#5145 at 10]  With the understanding that Dr. Guess will be "Captain of the Ship in 2015-16 for maintenance and these projects, Joshua accepts this participation.

With regard to the Section H.(1) equality mandate, after discussing the evidence,

5

Judge Miller concluded : "Simply put, the facilities in Pulaski County are not equal. Children who live in predominantly black zones of the district attend older and smaller schools that are less instructionally functional and are less aesthetically attractive. Yet children from the Maumelle and Chenal Valley area are privileged to attend newer, state-of-the art schools." [#4814 at 77]  Judge Miller 's discussion of the evidence included reference to deficient schools in Jacksonville, concluding: "Moreover, given the deteriorating facilities in Jacksonville, it seems Pulaski County does not care whether it provides equal facilities to all of the students in the district." [Id.] The Court of Appeals affirmed Judge Miller's ruling that PCSSD had not implemented Plan 2000, Section H. LRSD v. PCSSD, 664 F.3d 738, 751-53 (8thCir. 2011).

In "Plan B," approved by the Court in an Order on January 12, 2015 [#5091], Joshua and PCSSD reached agreement on steps to address Mills High School and Fuller Middle School in the Southeast quadrant of PCSSD. Joshua has concerns about implementation of this project, which are being discussed. They relate to this sentence of the Plan B agreement: " Joshua counsel will be involved in any planning and other activity undertaken regarding Facilities."[#5084 at 4]. PCSSD concedes that more needs to be done to address the Plan 2000 equality mandate.  In its "PCSSD Facilities Master Plan Strategy 2015," PCSSD wrote the following regarding its two remaining elementary schools, which were for African American students only in the dual system days, College Station and Harris: " . . . absent a complete replacement, facility parity is not attainable." [#5153 at Exh. 1 at p. 1] Addressing these schools is also the subject of discussions between Joshua and PCSSD.

Section 10[A] of the new agreement provides: "Beginning with State Board

6


<u>approval of this agreement</u>, JNPSD shall assume responsibility for 2017-19 State Academic Facilities Partnership funding for JNPSD school facilities. [emphasis added]" This text and the content of the JNPSD Status Report [#5153 at 2-4] evidence that JNPSD has, before approval by this Court, assumed responsibility for preparation of the Facilities Master Plan for JNPSD and subsequent applications for partnership funding.

    Joshua cannot agree to elimination of Dr. Guess' overarching authority, as described above, during 2015-16 with regard to development of the Facilities Master Plan or Partnership Funding application for JNPSD. Exhibit 1 to the JNPSD Status Report, filed on August 19, 2015, shows that there was a "Jacksonville-North Pulaski School District Preliminary Master Facilities Plan  January 2015," with considerable content on plans for schools within the JNPSD . [#5153, Exh. 1 at 1-5] The JNPSD did not provide this plan to Joshua at the May 27, 2015 meeting, or at any time before its recent filing. Joshua notes also its exclusion from participation in discussions where it could have given input on fairness and non-discrimination in identification of a pool of architects and other consultants, to be considered for selection for roles in the development of JNPSD facility plans. Recently, Joshua has been invited to attend interviews of the finalists for these roles previously identified.

    The Court has signaled the need for and ordered change. Joshua understands that JNPSD and PCSSD must, hereafter, provide promptly to Joshua documents concerning, for JNPSD: evaluation of facilities, concepts/plans for facility projects – even if subject to change, potential costs, communications with the Department of Defense, purchase of property, ideas on a millage vote., and drafts of materials for the State. Good faith communication on these and related topics must be the rule at the meetings required by

the Court. The parties' will also need to address whether JNPSD's share of partnership funds and the funds from a JNPSD millage vote will, alone, be adequate to address the new district's massive facility needs, a product to a substantial degree of racial discrimination, according to the law of the case.

Finally, neither keeping Dr. Guess fully informed , nor allowing PCSSD input will necessarily preclude JNPSD staff and their consultants, fairly chosen, from the major role in the JNPSD facility realm. Decision-making by Dr. Guess will occur only if a circumstance[s] warrants his exercise of Captain of the Ship authority.

<u>Section L. Staff</u>

Regarding Section L., Joshua maintains that Dr. Guess should retain in 2014-15 his Captain of the Ship authority, as previously described, as to paragraphs (1) through (4). The content of the new agreement in paragraph 14[B] and Exhibit C justifies this position.

Paragraph 14.[B] refers to "[JNPSD's]  staffing plan" previously submitted to the Commissioner of Education. The plan is said to "[commit] JNPSD to comply with the desegregation obligations in PCSSD's Plan 2000." This plan should be made available. The agreement states: "The JNPSD has <u>begun selecting</u> key staff to work during the 2015-16 school year as the district prepares for detachment. [emphasis added]" To what positions does this refer? What procedures and criteria will be used in the selection process? The agreement states: "JNPSD will select principals by early 2016 and will begin the process of staffing schools . " Again, Joshua has questions not answered by the agreement. What is the current racial make-up by school of the principals and assistant principals.  What procedures and criteria will be used in the selection process? What is

meant by the words: "begin the process of staffing the schools."

Joshua Intervenors' most serious concerns arise from the following provisions. These are concerns relating to both JNPSD and PCSSD.

Section 10[B] provides:

" . . . . Beginning early 2016, <u>PCSSD will implement</u> its Reduction in Force Policy. Any PCSSD employee will have the opportunity to apply for any position in JNPSD for which he or she is qualified. Applications will be screened by JNPSD staff and interviews scheduled. JNPSD reserves the right to hire the best-qualified candidates without regard to previous employment in PCSSD." [emphasis added]

Exhibit C titled "JNPSD Detachment – Certified" provides in paragraphs 6.-- 8.:

6. On or before May 1, 2016, PCSSD will issue notice of non-renewal of the 2015-16 contract to all employees then assigned to the JNPSD schools identified in para 2. The reason for the non-renewal will be to prevent the automatic renewal of such persons" PPCSSD contracts on May 1, 2016. Employees subject to the non-renewal will not be placed on a recall list.

7. The uninterrupted employment of former PCSSD personnel by JNPSD will be a matter solely within the discretion of JNPSD and the former PCSSD employees. However, former PCSSD employees not employed by JNPSD will be eligible to apply for vacant positions for the 2016-17 school year in PCSSD.

8. To the extent this policy produces outcomes that conflict with or undermine PCSSD's efforts to comply with plan 2000, and specifically Section L. Staffing, the administration shall have discretion to transfer employees from one seniority center to another if such a transfer would further PCSSD's efforts to obtain unitary status.

The portion of Exhibit C titled "JNPSD Detachment – Classified" includes in paragraphs 6.-8. the same text with regard to classified employees.

These provisions portend/do not rule out wholesale changes in the now racially integrated work forces of the two districts, a consequence of Plan 2000 implementation. This is before Section L. unitary status. The information needed to evaluate these provisions is absent. These provisions should not be approved at this time, if ever in their

entirety.

PCSSD needs to supply its reduction in force policy; the positions to be affected; by school and work other station , the racial make-up of this work force; and any projection of the impact of the planned use of the policy. This information may prompt other data requests.

The language as to JNPSD describes the district building a work force from point zero, with the exception of the few persons already employed, despite the progress made by virtue of Plan 2000 implementation. For example, the "[PCSSD] 2014-15 Annual Personnel Hiring and Deployment Report April 10, 2015" reflects a total of 93.30 Black certified personnel in the 9 schools to be a part of the JNPSD ; this figure includes "teachers and administrators." [At Appendices IV-VI] The point zero approach is incompatible with Plan 2000, Section L. Sections L.(2)-(3) provide for the building of the corps of black teachers, including in particular categories, over time, not starting over from point zero before unitary status has been achieved. This is an extreme example of the "we are a new district without a history approach," which the Court has declined to accept.

Section N. Monitoring

Dr. Guess should have during 2015-16 Captain of the Ship authority, as described above, regarding monitoring. Several other points require mention.

In preparing for 2016-17, JNPSD will need to comply with the elements of Section N.(1), regarding monitoring, compliance efforts, and staff with desegregation responsibilities.. Joshua's access rights to records and staff, set forth in N.(2), will apply to JNPSD as of 2016-17.

Finally, Joshua has yet to receive from PCSSD the final report on discipline during 2014-15.

<u>Other Areas</u>

Paragraph 7., headed "Governance of JNPSD During and after the Transition Period, is unclear generally and, particularly, as to its scope. [At p. 4]

Paragraph 8. refers to work to be done as to "determin[ing] revenue needed to support facilities improvements." [At p. 4] This is among the facilities information which should be shared promptly.

The "published . . . budget and necessary tax levy to support operation of JNPSD for the 2016-17 school year should be made available." [Paragraph 9.[D] at 6]

<u>Conclusion</u>

Additional work is necessary before Court approval and implementation of the second agreement.

Respectfully submitted,

/s/ John W. Walker

JOHN W. WALKER, P.A.
1723 Broadway
Little Rock, Arkansas 72206
501-374-3758
501-374-4187 (facsimile)
Email: johnwalkeratty@aol.com

Robert Pressman
22 Locust Avenue
Lexington, MA  02421

Austin Porter
PORTER LAW FIRM
323 Center Street
 Little Rock, Arkansas   72201

11

## CERTIFICATE OF SERVICE

I do hereby state a copy of the foregoing has been filed utilizing the CM/ECF system wherein a copy will be automatically served on all counsel of the record on this 31st day of August, 2015.

/s/ John W. Walker