**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
MAY 13 2020
JAMES W. McCORMACK, CLERK
By:_____ DEP CLERK

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

LITTLE ROCK SCHOOL DISTRICT, et al.                          Plaintiffs

v.                    Case No:    4:82-cv-00866-DPM

PULASKI COUNTY SPECIAL SCHOOL DISTRICT, et al.               Defendants

EMILY McCLENDON, TAMARA EACKLES, VALERIE
STALLINGS, TIFFANY ELLIS, and LINDA MORGAN                   Intervenors

### MEMORANDUM IN SUPPORT OF
### MOTION TO INTERVENE

#### Statement of Facts

On October 24, 2019, Pulaski County Special School District ("PCSSD") filed its notice

of unitary status with this Court (doc. 5533). Intervenors filed their Response (doc.

5543) on November 22, 2019. In preparation for the July 14, 2020, trial of PCSSD's status,

Intervenors conducted depositions of PCSSD Cabinet Members and administrative employees.

(See generally Parties' Amended Joint Status Report filed May 4, 2020 (doc. 5595)). Included

among those deposed was Dr. Janice Warren ("Dr. Warren"), Assistant Superintendent for

Equity and Pupil Services. During that deposition, assertions were made by the Intervenors and

questions were raised regarding Dr. Warren's performance of her duties under PCSSD

Desegregation Plan 2000 ("Plan 2000"). Indeed, the Intervenors suggested that she was

responsible for the inequitable construction of Mills High School ("Mills"). (See Deposition of

Dr. Warren, April 8, 2020, *LRSD v. PCSSD*, 4:82-cv-00866-DPM, pp. 94 lines 5-14, 155-156.)

Those allegations coupled with similar allegations in unsigned, undated documents produced by

two members of the PCSSD Board of Education ("Board") in response to a Request for the

Production of Documents in *Warren v. McNulty*, et al., 4:19-cv-00855-BSM, persuaded Dr.

Warren that intervening in this action pursuant to Rule 24(a)(2) of the Federal Rules of Civil

Procedure ("Rule 24") was necessary.  (See PCSSD: Warren bates no. 002-003, 154)

A.                        INTERVENTION AS A MATTER OF RIGHT

       The Eighth Circuit has consistently directed that intervention pursuant to Rule 24(a)(2) is

to be liberally construed with doubts in favor of the applicant.  Turn Key Gaming, Inc. v. Oglala

Sioux Tribe, 164 F.3d 1080 (8th Cir. 1999); U.S. v. Union Elec. Co., 64 F.3d 1152 (8th Cir.

1995).

       Rule 24 provides, in relevant part, that

       On timely motion, the court must permit anyone to intervene who:  . . .

       (2) claims an interest relating to the property or transaction that is the subject of the

       action, and is so situated that disposing of the action may as a practical matter impair or

       impede the movant's ability to protect its interest, unless existing parties adequately

       represent that interest.

Thus, Dr. Warren must establish: (1) her application or Motion to Intervene is timely, (2) that she

claims an interest relating to the transaction that is the subject of this action, (3) disposing of this

action "may" impair or impede her ability to protect her interest, and (4) that her interests are not

"adequately" represented by parties to this lawsuit.

       1.       Dr. Warren's Application to Intervene Is Timely.

       Three factors determine the timeliness of an application to intervene.

Dr. Warren's application or motion passes each of these requirements:  the reason for any delay

by the proposed intervenor in seeking intervention, the status of the litigation before the motion

2

to intervene is filed, and the likely prejudice the delay in seeking intervention may cause to other parties if intervention is allowed. U.S. v. Union Elec. Co., 64 F.3d 1152 (8th Cir. 1995).

   a.   Reason for any delay in seeking to intervene.

   Between August 2017 and September 5, 2017, thirty to sixty days after her appointment as Interim Superintendent, Dr. Warren reported to PCSSD attorney Sam Jones and the Board that this Court's directive regarding District facilities and been violated in Derrick Scott's development of the District's facilities in predominately White versus predominately Black communities. PCSSD's attorney reported the discriminatory practices to this Court in a status report on September 5, 2017.  On September 8, 2017, this Court requested the Court Expert, Margie L. Powell, to report on the equality of construction of the Mills *High* School and Robinson *Middle* School sports facilities.  During this time frame, Derrick Scott, the Executive Director of Operations, tendered his resignation.

   In March of 2018, Dr. Warren applied for the permanent position of PCSSD Superintendent.  Although she was included among the group of nine top candidates by the educational search firm that conducted the superintendent search, the Board did not offer Dr. Warren the opportunity to interview as a finalist.  As stated in her complaint filed on October 23, 2019, she believes the Board denied her the right to interview, as a qualified employee, in retaliation of her notice to the PCSSD's attorneys and, thereby, this Court of Derrick Scott's discriminatory construction of Mills and in violation of her protected statuses as a black female.

   On February 17, 2020, the Board, as individual defendants, served their Responses to Dr. Warren's First Request for the Production of Documents.  Included in their responses were two unsigned, undated documents asserting that Dr. Warren is "partially responsible for any disparity

in the building of Mills"[1] and "None of this would be over budget would have happen if she
would have done her job in Equity Services."[2] Discovery, addressing these allegations, is
underway in *Warren v. McNulty*. Discovery ends June 22, 2020.

In this case, the Court set the trial of the issues raised by the discriminatory construction
of Mills for July 14, 2020. In preparation for that trial, Dr. Warren was deposed on April 8,
2020; discovery in this action ended May 1, 2020. Dr. Warren's application for intervention is
filed two months before the trial of the issues that concern her, other cabinet members, and
administrative personnel, and thirty-four days after her deposition, her first notice that her
performance was an issue in this matter (Action #1). No delay resulted in the filing of this
application for intervention. Dr. Warren has been proactive in determining the need to intervene
and in preparing her request.

        b.     The status of the litigation before the motion to intervene is filed.

The current status of this litigation is perfect for Dr. Warren's intervention. The parties to
this action completed its status hearing on May 6, 2020; discovery is completed; the parties are
preparing for trial and may attempt settlement options during the period remaining before trial.
It is the latter possibility that drives Dr. Warren's insistence on intervention, the potential for a
settlement and the issuance of a consent decree that may include findings of fact that adversely
impact the employment rights of PCSSD cabinet members, including Dr. Warren, and other
administrative personnel. Dr. Warren's application is timely.

        c.     The likely prejudice the delay in seeking intervention may cause to
                other parties if intervention is allowed.

---

[1] Releme Production, PCSSD; Warren Pg. No. 003.

[2] Gillen Production, PCSSD; Warren Pg. No. 154.

4

Dr. Warren's intervention has not been delayed and should not result in any delay in the anticipated trial. Discovery in her employment discrimination case ends June 22, 2020. Evidence that might be used in her employment discrimination case to address her performance is available for use in this matter. This evidence will supplement any offered on the performance by the cabinet and other administrative personnel. As a result, this Court will have a more accurate picture of what happened rather than a distorted one-sided presentation by the Intervenors. Legal counsel for Dr. Warren does not need and will not request a continuance to prepare but rather is prepared to address the issues of Dr. Warren's performance in the July 2020 trial. No prejudice results to the parties and the Court's goal of a fair and truthful resolution of the dispute among the parties results from Dr. Warren's intervention.

2.    Dr. Warren claims an interest relating to the transaction that is the subject of this action.

Even though an application for intervention is timely, Rule 2(a)(2) mandates that the applicant must have an interest relating to the property or transaction that is the subject of the action. PCSSD is a corporate body that acts by and through its Board, cabinet, and employees. Ark. Code Ann. §§ 6-13-102, -109 (school superintendent), -118 (disbursing officer), -653 (board review and approval of salary increases). In determining the performance and breach by PCSSD of Plan 2000, as it pertains to facilities, student achievement, and student discipline, Dr. Warren's performance, Derrick Scott's performance, and the performance of similarly situated cabinet members and administrative personnel -- nonparties -- are the subject of the July 2020 trial. These nonparties hold an employee-interest in this lawsuit. This employee-interest is the opportunity to continue their employment, to prevent the blemishing of their employment records, and, from Dr. Warren's perspective, to prevent the creation in this action (Action #1) of findings that may be used as defenses against her in Action #2. See, e.g., *Little Rock School*

5

*Dist. v. Pulaski Special School Dist. No. 1*, 738 F.2d 82 (8th Cir. 1984) (reversing the district court's denying of intervention by teachers' associations). This parochial employment interest held by Dr. Warren and other administrative personnel isn't speculative or collateral but is a direct and legally recognized interest. *U.S. v. Union Elec. Co.*, 64 F.3d 1152, 1161 (8th Cir. 1995). Although harm to this interest may be contingent upon the outcome in this matter, the interest itself isn't contingent. Adverse findings in this case may be used by the Board to terminate current cabinet members and administrators.[3] Even if their interest is contingent such an interest is sufficient for the purposes of intervention. *U.S. v. Union Elec. Co.*, 64 F.3d 1152, 1162 (8th Cir. 1995); see, e.g., *United States v. C. M. Lane Lifeboat Co.*, 25 F.Supp. 410 (E.D.N.Y. 1938). Dr. Warren and her colleagues have a protectable interest in this case.

3. Disposing of this action "may" impair or impede Dr. Warren's ability to protect her substantial and direct interest in this action and her employment discrimination case.

Given the effect of the principles of collateral estoppel, disposing of this action (Action #1) whether by judgment or consent decree may impair or impede Dr. Warren's ability to protect her rights in her employment discrimination suit (Action #2) and may impair the employment rights and interests of other cabinet members and administrative personnel. Indeed, it is the possibility that a consent decree, with agreed to findings of fact adverse to innocent administrative personnel, that may inflict the greatest harm to the direct and substantial employment rights of nonparty-cabinet members and administrative employees.

The entry of a consent decree does not require the resolution of the issue of any administrative employee's performance. A consent decree in Action #1 only requires the negotiated terms among the parties and the intent to preclude or foreclose future litigation of an

---

[3] This is the Board that in its infancy, six and a half months on the job, terminated a six-year term Superintendent and legal counsel who were marching towards unitary status in 2017.

issue. *Coates v. Kelley*, 957 F.Supp. 1080, 1086 (E.D. Ark 1997) (determining that the Eighth Circuit Court would embrace the application of collateral estoppel from a consent decree based on a finding of consent of the parties to preclude litigation). Unless a consent decree is expressly limited, the intent of the consenting parties to foreclose further litigation may be established by the express terms of the decree or settlement agreement or by the record in the case. *Coates v. Kelley*, at 1084-1085. "[T]hose issues reasonably foreseeable at the time of the agreement may be precluded." *Coates v. Kelley*, at 1085, 1087 (holding the nature of the litigation (action #1) and the language of settlement agreement in action #1 barred the plaintiff's claims (action #2) against nonparties to action #1). An attempt to relitigate the issues within the scope of any consent decree in this case may not only subject parties to this action, those in privity with a party, and but also reasonably foreseeable nonparties to the doctrine and principles of collateral estoppel.

        a.      Dr. Warren is in privity with PCSSD.

Dr. Warren has a contractual relationship with PCSSD. In the context of *res judicata* and *collateral estoppel,* "privity" is not limited to a connection or relationship between contracting parties. "Privity" entails "a relationship close enough to bind both parties by a judgment involving only one party." *Coates v. Kelley*, at 1085, *quoting, In re Monument Record Corp*, 71 B.R. 853, 860 (M.D. Tenn. 1987). Here, Dr. Warren, other cabinet members, and administrative employees are not only in a contractual relationship but also represent and act on PCSSD's behalf. PCSSD, a body corporate, acts by and through its agents and employees. Their actions may result in benefits to and liability for PCSSD. Consequently, the principles of *collateral estoppel* may be used to impede or impair rights that Dr. Warren, other cabinet members, and administrative personnel have in other actions.

### 4. Dr. Warren's Interests Are Not "Adequately" Represented by Parties To This Lawsuit.

Finally, intervention is available as a matter of right only if the interests of the applicant aren't "adequately" represented by the parties. Despite the numerous attorneys and law firms participating in this action, none represent the interest of the PCSSD's cabinet members or administrative personnel. At the status hearing, PCSSD has two law firms and four lawyers representing its interests; none of these are responsible for advocating for the rights, interests, or concerns of cabinet members or administrative employees. Children and families within the District have legal counsel advocating for their rights and protection. Neither Dr. Warren nor other administrators are represented; the existing parties are adverse to her interests and those of other administrators. Consequently, "the applicant must be allowed to intervene" rather than being placed in a position of testing, collaterally, the validity of any judgment or consent decree issued. The Late Charles Alan Wright & Mary Kay Kane, 20 Fed. Prac. & Proc. Deskbook § 80 (2d ed. April 2019).

B.        Alternatively, Dr. Warren Should Be Permitted to Intervene

An applicant who makes a timely motion may be permitted to intervene if the applicant has a claim or defense that shares with the main action a common question of law or fact. Fed. Rule. Civ. Pro 24(b)(B). As established, herein, Dr. Warren's motion to intervene is timely. (supra, ¶ 1(a)-(c), pp. 2-5.) She has a claim or defense that shares with this action a common question or law or fact, the performance of her responsibilities under Plan 2000.

Although a question solely within discretion of this Court, permissive intervention should be granted if no delay or prejudice results to the parties, the applicant's interest is not represented by the parties, the policy goals of judicial economy and conservation of judicial resources are advanced, and there are common questions of law and fact. Dr. Warren has demonstrated the

absence of delay (supra, ¶ 1(a), pp. 3-4) and the absence of prejudice (supra, ¶ 1(c), pp. 4-5) from her intervention. Likewise, she has established that her interest and those of other cabinet members and administrators are not adequately represented (supra, ¶ 4, pp. 7-8). If her request to intervene is denied, the resolution of the common question of the performance of innocent, faithful, responsible, and hardworking cabinet members and administrators may be left to conjecture, especially if the existing parties enter a consent decree that forecloses current administrators from protecting their employment interests.

Finally, policy goals of judicial economy and conservation of judicial resources are advanced by litigating in one lawsuit the issue the performance of innocent, faithful, responsible, and hardworking cabinet members and administrators. Denying intervention may result in multiple lawsuits by those who have no voice in this lawsuit.

Respectfully submitted this 13th day of May 2020,

Sarah Howard Jenkins
Arkansas Bar #97046
Attorney for Movant/Intervenor
SARAH HOWARD JENKINS, PLLC
P.O. Box 242694
Little Rock, Arkansas 72223
Phone: (501) 406-0905
sarah@shjenkinslaw.com (email)

## CERTIFICATE OF SERVICE

I, Sarah Howard Jenkins, hereby certify that on this 13th day of May, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sends notification of such filing to any CM/ECF participants including:

Amanda G. Orcutt
Devin R. Bates
MITCHELL, WILLIAMS, SELIG
425 West Capitol Avenue, Suite 1900
Little Rock, Arkansas 72201

Scott Richardson
McDaniel Richardson & Calhoun
1020 W. Fourth Street Suite 410
Little Rock, Arkansas 72201
ATTORNEYS FOR JACKSONVILLE/
NORTH PULASKI SCHOOL DISTRICT

Jay Bequette
Cody Kees
BEQUETTE, BILLINGSLEY & KEES, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201-3469
Email: jbequette@bbpalaw.com
Email: ckees@bbpalaw.com
ATTORNEYS FOR PCSSD

Austin Porter Jr., No. 86145
PORTER LAW FIRM
323 Center Street, Suite 1035
Little Rock, Arkansas 72201
Telephone: 501-244-8200
Facsimile: 501-372-5567
Email: Aporte5640@aol.com

Robert Pressman
Attorney at Law
22 Locust Avenue
Lexington, Massachusetts
Email:pressmanrp@gabriel.com

Shawn G. Childs
Lawrence A. Walker
JOHN W. WALKER, P.A.
1723 S. Broadway
Little Rock, Arkansas 72206
501-374-3758
Fax: 501-374-4187
Email: tonywalkeratty@gmail.com
ATTORNEYS FOR INTERVENORS

Sarah Howard Jenkins
Sarah Howard Jenkins