IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LITTLE ROCK SCHOOL DISTRICT                                                    PLAINTIFF

VS.                                CASE NO. 4:82-CV-00866 DPM

PULASKI COUNTY SPECIAL SCHOOL
DISTRICT, ET AL.                                                                DEFENDANTS

EMILY MCCLENDON, ET AL.                                                  INTERVENORS

INTERVENORS' BRIEF IN OPPOSITION TO
DR. JANICE WARREN'S MOTION TO INTERVENE

Introduction

The remaining parties in this long-standing desegregation case are scheduled to have a trial to determine the defendants' motion for unitary status. This case is scheduled for unitary status trial to start during the week of July 14, 2020 lasting until the end of the month of July for the Pulaski County Special School District's motion for unitary status. The parties will then reconvene starting October 5, 2020 to determine the motion for unitary status as filed by Jacksonville North Pulaski County School District. At this late date, Dr. Janice Warren, the Associate Superintendent of the Pulaski County Special School District has filed a motion to intervene in this case, having so filed on May 13, 2020. For the reasons as stated herein, the Court should deny the motion to intervene.

Statement of Facts

This case was filed back in 1982 by the Little Rock School District seeking certain remedies against the Pulaski County Special School District and the North Little Rock School District contending that the defending school districts committed certain constitutional violations

that adversely affected the Little Rock School District's ability to desegregate its schools. After determining that the Little Rock School District could not adequately protect the interests of black children, the trial court granted the Joshua Intervenors' motion to intervene in this case.

Dr. Warren became employed by the Pulaski County Special School District in July 2012. (**See Deposition of Dr. Janice Warren attached herein as Exhibit "A", p. 5**). Dr. Warren had been recruited by then superintendent Dr. Jerry Guess, who was appointed to serve as the superintendent during the time that the Pulaski County Special School District (PCSSD) was under state control due to fiscal distress. Dr. Warren was hired as the Director of Elementary Education in July 2012. (**Warren's depo., p. 14**). Dr. Warren later became the Assistant Superintendent for Equity and Pupil Services. (**Warren's depo, p. 6**). In that position, part of Dr. Warren's job responsibilities was to ensure that the district was operating in compliance with *Plan 2000*. (**Warren's depo., pp. 22**). Dr. Jerry Guess resigned from the PCSSD on July 18, 2017. (**Warren's depo., p. 19**). When Dr. Guess left the PCSSD, Dr. Warren was appointed to serve as interim superintendent. (**Warren's depo., p. 19**).

It was brought to Dr. Warren's attention by a parent that there existed disparities in the Mills and Robinson athletic facilities during August/September 2017. Dr. Warren asked Will Reid, the Director of Information Technology, to go to the school to take some video footage of the two (2) facilities. (**Warren's depo., pp. 119-120**). Dr. Warren stated that when Mr. Reid brought the video footage to her, he stated that "Janice, we are in %#$ trouble." Dr. Warren stated that after seeing the video footage of the two (2) schools, she realized that the district was out of compliance with Plan 2000 obligation when it came to equality of the facilities. (**Warren's depo., p. 121**). Dr. Warren stated that after she saw the video footage of the two (2) athletic facilities, one at Mills and one at Robinson, she was convinced that the facilities were not equal, and that

2

this was a *Plan 2000* violation. (**Warren's depo., p. 122**). Dr. Warren also testified that she could not believe that the district spent the same amount of money on constructing a Middle School (Robinson), as was spent on building a new high school (Mills). Dr. Warren stated that a high school needed more resources than a middle school, because a high school needed laboratories for science and chemistry, and other departments, that are not needed in a middle school. (**Warren's depo., p. 128**). Dr. Warren stated that she spoke with the football coach at Mills, after the school was almost completed, and he was initially excited about the new athletic facilities at Mills. Dr. Warren stated that she then invited the Mills coach to take a tour of Robinson's facilities, and he came back sad and dejected, because he saw the inherent inequities between the two facilities. (**Warren's depo., p. 129**).

Dr. Warren stated that after seeing the video footage, she contacted the board members, and the attorney for the district, Sam Jones, to report what she had found. (**Warren's depo, pp. 122-123**). At the time that Dr. Warren discovered the Plan 2000 violation in September 2017, the PCSSD Board of Education had seven (7) members – five (5) Caucasian and two (2) African-American. Dr. Warren stated that when everyone saw the video footage, they all walked away with the same impression, that the facilities were not equal and that the district had a problem. (**Warren's depo., p. 123**). After Dr. Warren had a conversation with Sam Jones, and told him about the inequities of the facilities, he filed a supplemental report with the Court. Prior to this information coming to Dr. Warren's attention, Mr. Jones had just filed a report with the court indicating that the PCSSD had made good faith efforts. (**Warren's depo., p. 124**). Mr. Jones filed a report with the court bringing this matter to the Court's attention, and the district was investigating the matter. [**Doc.# 5322**]. After this report was filed with the Court, Judge Marshall directed Margie Powell to go out and look into the matter, and report back to the Court. (**Warren's**

**depo., p. 125**). Dr. Warren also testified that Derek Scott developed a plan for changing attendance zones and feeder patterns. While his presentation suggested neutrality, when it actually occurred, Dr. Warren became aware that the changes were suppressing the school enrollment in schools in the Southeast sector in the PCSSD, and she was very concerned. (**Warren's depo., p. 126-27**).

Dr. Warren applied for the superintendent's position in March 2018, but the district selected Dr. McNulty for the position effective July 1, 2018. When Dr. McNulty was selected as the superintendent, Dr. Warren was demoted to her previous position of Assistant Superintendent. (**Warren's depo., p. 20**).

When Dr. Warren was not selected for the Superintendent's position, she filed a lawsuit against the Pulaski County Special School District, which was filed on September 23, 2019. *See* Janice Hargrove Warren v. Charles McNulty, et al., United States District Court No. 4:19-CV-00655 BSM. In Dr. Warren's lawsuit, she contends that she was discriminated against based on her sex and race, and that she was the victim of retaliation, when she was not selected for the superintendent's position.[1] This case is set for a jury trial during the week of November 16, 2020.

Statement of Law

On May 13, 2020, Dr. Warren filed her motion to intervene in the case at bar. Dr. Warren contends that she should be allowed to intervene in the present action as a matter of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure. Dr. Warren contends that the desegregation case has brought into question her performance as well as the performance of others who are similarly situated. Dr. Warren also contends that the outcome of this action could, "given the principles of collateral estoppel, impair or impede her ability to protect her rights in her

---

[1] Dr. Warren was not included in the final interviews for the superintendent's position; the three finalists were all males, two African-Americans and one Caucasian.

employment discrimination suit," as well as the rights and interests of other cabinet members of Dr. McNulty. [**Doc. # 5600, p. 3**]. Dr. Warren further contends that she should be allowed to intervene in this action to protect herself and other cabinet members, who are innocent, and who in good faith tried to perform their duties under Plan 2000. [**Doc. #5600, p. 7**]. For the following reasons, Dr. Warren should not be allowed to intervene in this case.

Rule 24 of the Federal Rules of Civil Procedure provides as follows:

(a) – INTERVENTION OF RIGHT – On timely motion, the court must permit anyone to intervene who:
(1)	is given an unconditional right to intervene by a federal statute; or
(2)	claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
 (b) PERMISSIVE INTERVENTION.
	(1)	*In General*. On timely motion, the court may permit anyone to intervene who:
		(A)	is given a conditional right to intervene by a federal statute; or
		(B)	has a claim or defense that shares with the main action a common question of law or fact.
	(2)	*By a Government Officer or Agency*. On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:
		(A)	a statute or executive order administered by the officer or agency; or
		(B)	any regulation, order, requirement, or agreement issued or made under the statute or executive order.
	(3)	*Delay or Prejudice*. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.
(c)	NOTICE AND PLEADING REQUIRED. A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.

Timeliness

In order to be allowed to intervene in an action, the movant must file a timely motion to intervene. In the present action, Dr. Warren became employed by the Pulaski County Special School District (PCSSD) in July 2012. In September 2017, Dr. Warren became aware that the PCSSD was not in good faith, performing its remaining obligations under *Plan 2000*. Dr. Warren stated that when she became employed by the PCSSD in July 2012, she became familiar with *Plan 2000*, after she was handed the plan by her predecessor Dr. Brenda Bowles. (**Warren's depo., p. 17**). Some two and a half years after becoming aware that the PCSSD was not faithfully complying with *Plan 2000*, Dr. Warren now wants to intervene in the present action.

In considering whether a motion is timely, the court looks at all of the circumstances of the case. "In determining timeliness, three factors that bear particular consideration are the reason for any delay by the proposed intervenor in seeking intervention, how far the litigation has progressed before the motion to intervene is filed, and how much prejudice the delay in seeking intervention may cause to other parties if intervention is allowed." *Id*. United States, et al. v. Union Electric, et al., 64 F.3d 1152 (8th Cir. 1995). In one case, it was found that the intervenor had been monitoring the trial for two (2) years, and then sought to intervene in the case; however, the Court held that was not timely, and was an excessive delay. *See* Arkansas Elec. Energy Consumers, 772 F.2d. at 403. If the application for intervention was not timely file, it must be denied. United States, et al. v. Union Electric, et al., 772 F.2d at 1159. Dr. Warren has attended many court proceedings, and if memory serves correctly has even provided testimony. Dr. Warren's job duties consist of monitoring the activities that have taken place in the pending desegregation case.

A.      Delay for Intervention

Again, whatever concerns that Dr. Warren had about the PCSSD not faithfully complying with *Plan 2000*, were brought to her attention in September 2017. Her concerns were further confirmed when on or about November 14, 2017, the PCSSD announced that they were hiring a search committee to hire a new superintendent. This was announced after the Court Expert – Margie Powell, filed a report with the Court about the inequities in the Mills High School and Robinson Middle School projects in her November 9, 2017 report. Dr. Warren also stated that the President of the PCSSD Board of Education – Dr. Linda Remele was upset over the fact that Dr. Warren had brought these *Plan 2000* violations to light, because Dr. Remele told Dr. Warren that "we do not air our dirty laundry in public." (*See* Janice Hargrove Warren v. Charles McNulty, et al., United States District Court No. 4:19-CV-00655 BSM, **Doc. # 1, p. 21**). By not being granted an interview for the superintendent's position, which was filled in April or May 2018, certainly Dr. Warren was aware that the PCSSD was not happy over the fact that she "aired" the district's "dirty laundry" in public. Dr. Warren had plenty of time to file a motion to intervene, but waited until May 13, 2020. The parties are scheduled to commence trial in this matter July 14, 2020.

B.      Length of the Litigation

This case started in 1982 – almost twenty-eight (28) years before the motion to intervene.

C.      Prejudice that Might Be Caused

If the Court grants the motion to intervene, certainly the parties will be prejudiced by it. The Court scheduled the trial on unitary status back in July 2018. The parties have focused their energies toward this endeavor. Allowing intervention, will force the parties to somewhat shift their focus. The Court has already given the parties a limited amount of time to try this case. The moving party has so many days, and the intervenors have so many days. Counsel for intervenors

advised the Court that the case involving Pulaski County should take about a month to try, and the Court stated that is not going to happen. When ask if we could have three (3) weeks, the Court said "no." However, the Court stated that the case will start on July 14, 2020, and will go through July 2020, which is about three (3) weeks. If Dr. Warren were allowed to intervene in this matter, with her attorney participating, this would cause prejudice to the parties, because this case is being tried under a tight schedule already.

Therefore, for the above-mentioned reasons, the Court should find that Dr. Warren's motion to intervene in this matter is not timely, and should deny the motion on that basis alone.

Financial Interest

Dr. Warren next argues that the outcome of the desegregation case could bring harm to her pending discrimination case against the PCSSD. In other words, Dr. Warren is stating that she must be allowed to intervene in order to protect her discrimination case that she brought against the PCSSD for not selecting her for the superintendent's position. This same financial interest argument was rejected by the Eighth Circuit in the case of Medical Liability Mutual Insurance Company v. Alan Curtis, et al., 485 F.3d 1006, 1008 (8th Cir. 2007).

In the case of Medical Liability Mutual Insurance Company v. Alan Curtis, et al., 485 F.3d 1006, 1008 (8th Cir. 2007), the representative of the estate of a lady who died in a nursing home tried to intervene in a federal declaratory action filed by the insurance company of the nursing home that was being sued in a separate state court proceeding. The intervenor argued that it had a financial interest in the outcome of the declaratory judgment proceeding. The insurance company sued the nursing home in the federal declaratory relief action, trying to get out of covering the death of the decedent. The Eighth Circuit affirmed the lower court's decision to deny intervention. The Court held that the intervenor did not have a right to intervene pursuant to Rule 24(a)(2)

because she did not have a "cognizable interest" in the action. "An interest is cognizable under Rule 24(a)(2) only where it is 'direct, substantial, and legally protectable.' United States v. Union Elec. Co., 64 F.3d 1152, 1161 (8th Cir. 1995). An economic interest in the outcome of the litigation is not itself sufficient to warrant mandatory intervention. Curry v. Regents of the Univ., 167 F.3d 420, 422-23 (8th Cir. 1999).'" Medical Liability Mutual Insurance Company v. Alan Curtis, et al., 485 F.3d 1006, 1008 (8th Cir. 2007).

> In our circuit, a party seeking to intervene must establish Article III standing in addition to the requirements of Rule 24. Mausolf v. Babbitt, 85 F.3d 1295, 1300 (8th Cir. 1996). To demonstrate standing, a plaintiff must clearly allege facts showing an injury in fact, which is an injury to a legally protected interest that is 'concrete, particularized, and either actual or imminent.' Curry v. Regents of the Univ. of Minn. 167 F.3d 420, 422 (8th Cir. 1999). The purpose of the imminence requirement is 'to ensure that the allege injury is not too speculative . . . [and] that the injury is certainly impending.' Lujan v. Defenders of Wildlife, 504 U.S. 555, 564 n. 2, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (quotation omitted). The plaintiff must also show that the alleged injury is fairly traceable to the defendant's conduct and that a favorable decision will likely redress the injury. Id. at 560-61, 112. S. Ct. 2130.

United States, et al. v. Metropolitan St. Louis Sewer District, et al., 569 F.3d 829, 833-834 (8th Cir. 2009).

Missouri Industrial Energy Consumers (MIEC) is an association of businesses that was formed to address issues of utility services on behalf of its members. MIEC consists of several businesses. Metropolitan St. Louis Sewer District (District) serves 1.4 million customers in the greater St. Louis area. The United States and the State of Missouri filed a lawsuit against the District contending that it was discharging raw sewage in waterways, in violation of the Clean Water Act. The lawsuit contends that the District had antiquated pipes, and that the system was inadequate, and that it was poorly maintained. A coalition known as the Missouri Coalition for the Environment Foundation (Coalition), which is a non-profit organization that is dedicated to

preserving and enhancing the state's environment, filed a motion to intervene, that was not opposed.

MIEC filed a motion to intervene in the action contending that it wanted to be a part of any settlement discussions, negotiations, mediations, hearings, trials. MIEC stated that it wanted to intervene because it was concerned that any consent decree, or settlement could result in rate increases for its members. The trial court denied the motion to intervene, because it determined that MIEC lacked Article III standing.

The Eighth Circuit reasoned that MIEC could not intervene, because there was no environmental injury that it stated on behalf of its members. The Court also noted that it was not germane to MIEC's purpose to protect the environment. The Court also reasoned that MIEC could not establish intervention as a matter of right. Rule 24(a)(2) provides that anyone can intervene if they can establish that they "claim[] an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." 569 F.3d at 838-839. The Court also stated that "[g]eneral economic interests are not protectable and cannot serve as the basis for intervention." 569 F.3d at 839. "A ratepayer's interest in reasonable fees is not legally protectable." 569 F.3d at 839.

> The purpose of intervention is to 'promote[] the efficient and orderly use of judicial resources by allowing persons, who might otherwise have to bring a lawsuit on their own to protect their interests or vindicate their rights, to join an ongoing lawsuit instead.' Mausolf, 85 F.3d at 1300. Judicial efficiency is not promoted by allowing intervention by a party with no interest upon which it could seek judicial relief in a separate lawsuit.'

United States, et al. v. Metropolitan St. Louis Sewer District, et al., 569 F.3d 829, 833-834 (8th Cir. 2009).

Dr. Warren has filed a separate action against the PCSSD alleging that she was a victim of discrimination and retaliation when she was not selected for the superintendent's position. Her separate lawsuit must stand on its own bottom. The fact that Dr. Warren chose to pursue a separate cause of action flies in the face of "judicial economy." There will be no judicial efficiency in allowing her to intervene in the present action. If she is allowed to intervene, will she dismiss her separate discrimination lawsuit?

In filing its motion for unitary status, the PCSSD has taken the position that its officials, both past and present have faithfully performed their duties in implementing *Plan 2000*. Nowhere in the present action has PCSSD thrown Dr. Warren under the proverbial "school bus." Intervenors contend that implementation efforts over time do not justify any ruling favorable to the PCSSD. The intervenors rely on the evidence pertaining to the remaining obligations, relevant in an official liability contest. Furthermore, the PCSSD has the burden of proof that its officials, including Dr. Warren, have faithfully complied with its implementation responsibilities as it relates to the district's remaining obligations under *Plan 2000*. The PCSSD and Dr. Warren are singing from the same sheet of music. It is true that Dr. Warren talked about the inequities of the facilities as it relates to the Mills' construction, as compared to Robinson Middle School, Maumelle High School, and now Sylvan Hills High School. Dr. Warren stated that comparing Mills High School to Robinson Middle School was like comparing "apples to oranges." (**Warren's depo., p. 138**). Dr. Warren also testified that when you compare Mills High School to the new Sylvan Hills High School, there is "no comparison." (**Warren's depo., p. 139**). Dr. Warren stated that when she presented the video to other district officials, they all walked away with the impression that there was definitely an inequity between the two (2) facilities, and that the district was in trouble. (**Warren's depo., p. 123**).

This is not like the case that the Knight Intervenors were faced with. A group of teachers were allowed to intervene in the present action, because part of the remedy that the trial judge was considering was whether to consolidate the three (3) school districts: Little Rock School District, Pulaski County Special School District, and North Little Rock School District. The Eighth Circuit held that if that were to occur, then the teacher's unions would have been adversely impacted in their ability to represent their members. <u>Little Rock School District v. Pulaski County Special School District No. 1, et al.</u>, 738 F.2d 82 (1984).

> Under Fed.R.Civ.P. 24(a)(2), a timely motion for leave to intervene 'shall' be granted 'when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest ins adequately represented by existing parties.'

738 F.2d at 84.

The Court also observed that the school districts could "hardly be expected to litigate with the interest of their employees with uppermost in their minds." 738 F.2d at 84.

Again, movant has a pending lawsuit for race discrimination in a totally separate case. There is nothing that can happen in the case at bar, that would "impair or impede" that cause of action. Again, the movant will testify that although she had the responsibility to monitor the facilities as it relates to Plan 2000, she was unable to do so, because Derek Scott did not directly report to her, he reported to Dr. Guess, then superintendent. (**Warren's depo., pp. 155-156**).

Intervenors direct the Court's attention to *Plan 2000* Section N. (1) and (2). Three observations: 1) the Plan requires that there be an "Assistant Superintendent for Desegregation;" 2) according to the Plan text, "he (or she) and his (or her) staff [are to] focus their monitoring and compliance efforts on the specific elements of the Plan . . ." ---- which includes, as a major element,

Part H.  "school facilities"; 3) as evidenced by the parties' activities through the years, the requirements of N. (1)-(2) are not in any respect one-time in nature.

Since July 2012, Dr. Warren has served as the Assistant Superintendent for Equity and Pupil Services for the PCSSD.  This position is the "Assistant Superintendent for Desegregation," unless the District wishes to acknowledge longstanding and continuing violation of *Plan 2000*, a default in this regard.  It is obvious that for Plan 2000 compliant activity to occur, Dr. Warren's position should have involved monitoring of the New Mills University project.  Before Dr. Warren became superintendent, Dr. Guess gave the authority to develop the Mills and Robinson campuses to Derek Scott, then Executive Director of Operations. (**See Court's Expert Report p. 2 – filed herein as Docket No. 5343 attached herein as Exhibit "B"**).  Intervenors' preparation to date, evidences no conduct of Dr. Warren that had any negative effect on the size and quality of the New Mills High School at any point.

In conclusion, the Court should deny the movant's motion to intervene as a matter of right, as well as deny the motion to intervene pursuant to Rule 24(b).  To allow the movant to intervene in this cause of action, will cause significant delay.  The parties are literally on the eve of trial.

Respectfully submitted,

Austin Porter Jr., No. 86145
PORTER LAW FIRM
323 Center Street, Suite 1035
Little Rock, Arkansas 72201
Telephone: 501-244-8200
Facsimile: 501-372-5567
Email: aporte5640@aol.com

Robert Pressman
22 Locust Avenue
Lexington, MA  02421
Telephone: 781-862-1955

Email: pressmanrp@gmail.com

Shawn G. Childs
Lawrence A. Walker
JOHN W. WALKER, P.A.
1723 S. Broadway
Little Rock, Arkansas 72206
Telephone: 501-374-3758
Facsimile: 501-374-4187

johnwalkeratty@aol.com
schilds@gabrielmail.com
lwalker@jwwlawfirm.com

ATTORNEYS FOR INTERVENORS

## CERTIFICATE OF SERVICE

    I, Austin Porter Jr., do hereby certify that a copy of the foregoing pleading was electronically filed with the Clerk of the United States District Court for the Eastern District of Arkansas, on this 26th day of May 2020, by using the CM/ECF system, which is designed to send notification of such filing to the following person:

M. Samuel Jones III.
Devin R. Bates
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, PLLC
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201

sjones@mwlaw.com
dbates@mwlaw.com

Jay Bequette
Bequette, Billingsley & Kees, P.A.
Attorneys at Law
425 West Capitol Avenue, Suite 3200
Little Rock, Arkansas 72201-3469

jbequette@bbpalaw.com

Sarah Howard-Jenkins
Attorney at Law

Scott P. Richardson
McDaniel, Richardson & Calhoun
1020 West 4th Street, Suite 410
Little Rock, Arkansas 72201

scott@mrcfirm.com

P. O. Box 242694
Little Rock, Arkansas 72223

sarah@shjenkinslaw.com

Attorney for Movant

                                                     Austin Porter Jr.