**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**LITTLE ROCK SCHOOL DISTRICT**                                           **PLAINTIFF**

**V.**                                     **NO. 4:82-cv-866-DPM**

**PULASKI COUNTY SPECIAL SCHOOL**
**DISTRICT NO. 1, ET AL.**                                               **DEFENDANTS**

**EMILY McCLENDON, ET AL.**                                            **INTERVENORS**

**PULASKI COUNTY SPECIAL SCHOOL DISTRICT'S BRIEF IN SUPPORT OF ITS
MOTION *IN LIMINE* TO LIMIT ARGUMENT AND EVIDENCE ABOUT FACILITIES**

For the reasons outlined in PCSSD's contemporaneously filed brief in support of its motion for unitary status, determining good faith substantial compliance with Section H of Plan 2000 is a narrow question at this juncture. *See* "Section E: PCSSD is Unitary on Facilities" incorporated herein by reference. While the standard to maintain "equal, clean, safe, attractive facilities across the district" is a guide star, it is not overly specific.[1] With the purpose of fleshing out what this standard looks like when implemented, the parties engaged in an arm's length negotiation and prepared a roadmap by which to reach full unitary status. Now, the Court need only determine if that roadmap has been followed, but should not rewrite it or start over. This roadmap has the effect of narrowing the inquiry to be made at the upcoming trial. As such, the Court should enter an order *in limine* limiting the argument and evidence to be presented on the issue of facilities to conform with that stipulation.

---

[1] *But see* comment and objection in footnote no. 17 of PCSSD's Brief in Support of its Motion for Unitary Status, incorporated herein by reference.

1

A.      **The Significance of the 2014 Joint Motion to Amend Plan 2000.**

A joint motion to amend Plan 2000 (the "Joint Motion" or the "Stipulation") was filed

wherein the parties represented to the Court:

> PCSSD'S quest for ***full unitary status*** through cooperation with Joshua demands
> an alternative commitment, a Plan B as it were, to remediate that need in the event
> of a negative vote on the aforesaid millage increase. Therefore, PCSSD commits to
> the *circa* $50,000,000.00 new Mills High School, and the *circa* $5,000,000.00
> conversion of existing Mills to a middle school, regardless of the success of the
> millage election. It is the intention of this Plan B commitment to bind PCSSD
> irrevocably, regardless of its future governance and administration, to the
> construction of a replacement facility for Mills, to begin promptly after any millage
> election.

(Doc. 5084, p. 3) (emphasis added). The Stipulation of full unitary status was emphasized in the

penultimate sentence of the Joint Motion, which stated that this was a plan to "make PCSSD fully

constitutional." (Doc. 5084, p. 4). Although this Joint Motion contained several alternative plans,

it is undisputed that this is the one that came to be controlling by virtue of a negative vote on the

contemplated millage increase.

The Joint Motion to amend Plan 2000 contained what was effectively a merger/integration

clause, stating that "[a]ll earlier plans and studies adopted pursuant to Plan 2000, Section H (School

Facilities), should be considered negated to the extent they are inconsistent with PCSSD's

undertakings and agreements contained herein." (Doc. 5084, p. 1). In other words, what matters

for this trial is whether the requirements of the Joint Motion were met. The standard "equal, clean,

safe, attractive facilities" was effectively reduced to currency in an agreed bargain accepted by the

Court. Specifically, "equal" and "attractive" facilities as contemplated by Section H of Plan 2000

are somewhat subjective metrics, so as per the terms of the Joint Motion these were given meaning

by PCSSD's commitment to spending $55,000,000.00 on the Mills schools.

Specifically on the subject of good faith regarding facilities, Intervenors made stipulations that control the issue:

> The provisions of this motion are intended to demonstrate PCSSD's good faith in addressing and remediating the unconstitutional disparities that exist as to its facilities. Joshua accepts and agrees that the PCSSD general plan commitments, and particularly its specific irrevocable obligations pertaining to new and improved high school and middle school facilities in the predominantly black southeast quadrant of PCSSD, are, indeed, substantial evidence of PCSSD's good faith in removing its constitutional deficiencies regarding facilities.

(Doc. 5084, pp. 1-2). The above quoted language effectively makes *good faith* a defined term under the binding contract. The Court accepted the Joint Motion. (Doc. 5091). (*See also* Expert Margie Powell's analysis on the Joint Motion, Doc. 5087).

In evaluating whether PCSSD has substantially complied in good faith with Plan 2000 as modified by the Joint Motion, the Court must inquire about whether PCSSD constructed a new Mills High School for $50,000,000.00 and whether PCSSD converted the Mills Middle School project for $5,000,000.00. PCSSD carries the burden of proof to show that it (1) built the Mills facilities, and (2) spent $50,000,000.00 and $5,000,000.00 respectively. These are the only legally significant remaining questions. All other inquiries and questions go beyond the scope of the Joint Motion as reviewed and accepted by the Court. All other inquiries are effectively irrelevant because they cannot reasonably inform the Court of whether PCSSD constructed a new Mills High School for $50,000,000.00 and whether PCSSD converted the Mills Middle School project for $5,000,000.00.

**B.      Allowing Intervenors to Open the Door on Irrelevant Facilities Issues Will Unnecessarily Expand the Scope of This Trial and Frustrate Judicial Efficiency.**

Overlooking this critical threshold issue and seeking to effectively unwind the Stipulation made in the 2014 Joint Motion, Intervenors conducted broad, unrestricted discovery that was at best a fishing expedition. Rather than obstreperate discovery with arguments over what is relevant under Federal Rule of Civil Procedure 26—admittedly an expansive definition for discovery purposes—PCSSD worked collaboratively to provide Intervenors with documents responsive to all facilities related inquiries. However, this issue now moves from one of discovery under the rules of procedure to one of admissibility under the rules of evidence. The rules of evidence set a higher bar than Rule 26. Federal Rule of Evidence 401 defines evidence as relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Under Federal Rule of Evidence 402, relevant evidence is generally admissible, but "Irrelevant evidence is not admissible."

Discovery has revealed that Intervenors intend to try this case with complete disregard for the relief awarded in the Joint Motion. This is another quintessential example of Intervenors' proclivity toward "scope creep"—repeatedly attempting to obtain modifications, concessions, et cetera, not included in the requirements of Plan 2000 and amendments interpreting the same. For example, according to the Intervenors' discovery responses they plan to call as witnesses at trial two different architects involved in the design and construction of PCSSD faculties. Also, Intervenors spent significant time requesting facilities master plans, detailed blue prints, change orders, and many other construction and design related documents. They see this case centered around the locations of water fountains and lockers, the adequacy of health and choir classrooms, the location of file cabinets, the sufficiency of ground signage on school grounds, comparisons of gyms and practice facilities, and upgrades to trophy cases, among many other issues. (Docs. 5528,

5537). In stark contrast to this laundry list, the legally narrow inquiry undertaken by this Court is fixed by the Joint Motion: (1) whether PCSSD constructed a new Mills High School for $50,000,000.00 and (2) whether PCSSD converted the Mills Middle School project for $5,000,000.00. Those are the controlling questions, and to be deemed relevant at trial, evidence must be of consequence in determining those narrow issues. Everything else cannot be relevant as a matter of law because the facts would not be of consequence in determining the action as required by Evidence Rule 402.

Allowing Intervenors to open the door on the question of other issues—for example, what change orders were signed and when and by whom and why—would necessarily open the door to a host of other questions. For example, the following was previously included in a statement on the docket:

> Most of the substantial decisions that resulted in commencement of construction of Mills High Schools, the Mills Middle School conversion, Robinson Middle School, and the construction at the Sylvan Hills High School site were made and approved by the Commissioner of Education while PCSSD was under the control of the State of Arkansas and functioned with the Commissioner of Education as its school board. The Arkansas Department of Education implemented a "sustainment, restoration and modernization" plan (the SRM) that resulted in the current construction projects. These projects were approved by Commissioner Johnny Key during March of 2016.

(Doc. 5533, p. 19). Additionally, in its October 2019 response to Intervenors' Comments Concerning Facilities, PCSSD stated:

> As an initial and salient point instructive throughout this submission, it should be noted that on July 1, 2011 the Arkansas State Board of Education took control of PCSSD, and the district remained under state control until 2016.

(Doc. 5537, p. 1). Days after submitting the aforementioned filings, counsel for PCSSD received a sternly worded letter from the ADE General Counsel in which she alleged that these statements

were "erroneous." Further, the letter stated in part that "…any approval that the Commissioner gave concerning PCSSD facilities projects during the period at issue was perfunctory..."

PCSSD repeats herein these statements *not* for the truth of the matter asserted, but merely to offer a proverbial peak behind the curtain. By shaping an order *in limine* designed to limit the trial on facilities to the legally controlling questions as defined by the Joint Motion, the Court can wisely focus the parties on what matters. However, allowing Intervenors to present argument and evidence about who made what facilities decisions, when, on what information, and why—could place PCSSD into the position of needing to offer rebuttal argument and evidence on all of Intervenors' sundry facilities related complaints, among other issues. All of this would ultimately be irrelevant to the controlling question, which stems from a legal interpretation of the Joint Motion.

## C.   Traditional Contract Principles Bar Intervenors from Impermissibly Expanding the Scope of the Trial on Facilities.

Intervenors should also specifically be excluded from making arguments and introducing evidence about facilities at College Station, Harris, and any location other than those expressly addressed by the Joint Motion. The Joint Motion is effectively a contract. Over the years, the Eighth Circuit has largely reviewed deviations from the controlling desegregation plans as contracts. Where parties make an agreement controlling the outcome of the case, its metes and bounds should be contractually enforced by the terms of the agreement. *See Little Rock Sch. Dist. v. Armstrong*, 359 F.3d 957, 967 (8th Cir. 2004). Largely in keeping with this contractual understanding of agreements reached, there is a history in this case of adhering to the contractual terms struck between Intervenors and the districts when revising a desegregation plan. *See e.g.*, (Doc. 3675, p. 166, *aff'd sub nom. Little Rock Sch. Dist. v. Armstrong*, 359 F.3d 957 (8th Cir.

2004)) (Judge Billy Roy Wilson explaining that "***traditional contract principles*** bar Joshua from arguing...") (emphasis added).

At the time that Intervenors and PCSSD negotiated over the obligations assumed by the Joint Motion, Intervenors did not insist on new or renovated facilities at College Station, Harris, or any other school. They did not insist on a promise covering the specific features of Mills High School that have now become the subject of their myriad complaints. (*Compare* Doc. 5528 *with* Docs. 5084 and 5091). This argument applies to essentially every facilities issue that Intervenors are desperately trying to make the center point of their case on facilities.

If other facilities or other obligations were arguably part of Plan 2000, the time for raising any such argument was in 2014 prior to the filing of the Joint Motion. *See United States v. City of Fort Smith,* 760 F.2d 231, 233–34 (8th Cir. 1985) ("[w]e note that, for purposes of enforcement, consent decrees are to be construed as contracts"); *Southern Pipe Coating, Inc. v. Spear & Wood Manufacturing Co.,* 235 Ark. 1021, 363 S.W.2d 912, 914 (1963) ("one party to a contract who, with knowledge of a breach by the other party, continues to accept benefits under the contract, and suffers the other party to continue in performance thereof, waives the right to insist on the breach"); *Stephens v. West Pontiac–GMC, Inc.,* 7 Ark. App. 275, 647 S.W.2d 492, 493 (1983). Intervenors accepted benefits under this amendment to Plan 2000, extracting the promise of a new Mills High School and a renovated Mills Middle School, and indeed seeing PCSSD deliver on those promises. Therefore, in accordance with the legal principle that consent decrees are construed as contracts, and that continuing to accept benefits under a contract without objecting waives the right to insist on the breach, Intervenors are now limited by the contractually binding language of the Stipulation in the Joint Motion.

Through contract interpretation principles, the Joint Motion speaks to what is included and what is absent. By expressly including certain schools—Mills High School, Robinson High School, Sylvan Hills High School, Mills Middle School, Robinson Middle School—and excluding any other named school or other specific dollar amount or facilities requirement, the Joint Motion implies exclusion of all others. *See Chicago Title Ins. Co. v. Ark. Riverview Dev., LLC*, 573 F. Supp. 2d 1152, 1165, No. 4:07-CV-00554-JLH (E.D. Ark. 2008) (noting the "rule of contract interpretation is expression unius est exclusion alterius*,* which provides that the mention in a contract of one or more of a class of things implies the exclusion of all members of the class that were not mentioned") (citing *Provident Life & Acc. Ins. Co. v. Williams,* 858 F.Supp. 907, 911 (W.D. Ark. 1994)). Allowing Intervenors to present argument and evidence about water fountains, change orders, College Station facilities, et cetera, would be tantamount to a post hoc revision of the contractual terms in the Joint Motion in conflict with rules of contract construction.

Moreover, the only legally relevant questions under Rules 401 and 402 on which evidence may be admitted are (1) whether PCSSD constructed a new Mills High School for $50,000,000.00 and (2) whether PCSSD converted the Mills Middle School project for $5,000,000.00. If Intervenors are allowed to stray beyond this narrow inquiry, they will necessarily open the door on an untold amount of irrelevant fact issues that could not affect the outcome as a matter of law. This would create a sideshow at trial, potentially necessitating many hours of rebuttal from PCSSD. The scope of the trial is set as per the terms of the Joint Motion.

**D.      Intervenors Should be Precluded from Arguing, Claiming or Introducing Testimony or Other Evidence that PCSSD's *"Good Faith"* can be Ascertained in Any Way Other than the Contractually Agreed Definition.**

To the extent that the cases defining "good faith" over the years have never developed a clearly accepted legal definition, then it is proper for the Court to look to the stipulation of the

parties to their understanding of what is meant by "good faith." The parties' mutual understanding of "good faith" should be given weight. This of course is not submitted to trump all federal precedent on the subject, merely to inform the Court what "good faith" means at this juncture.

Accordingly in this case, "good faith" is effectively a defined term under the 2014 Joint Motion, and Intervenors should not now be permitted to alter the legally controlling definition. The parties settled on a negotiated and mutually agreeable definition of what PCSSD would need to do to demonstrate "good faith." (Doc. 5084, pp. 1-2) ("The provisions of this motion are intended to demonstrate PCSSD's good faith in addressing and remediating the unconstitutional disparities that exist as to its facilities."). Intervenors cannot dispute that they made the conscious decision to include a definition of "good faith" in the 2014 Joint Motion. Any attempt at disproving PCSSD's good faith is limited to the definition contractually agreed upon.

The fact that the terms of the Joint Motion define "good faith," rather other argument and evidence, is clear and unambiguous. This requires no judicial construction of what is meant by "good faith" under this contract. Intervenors' attempt to alter, enlarge, or expand the interpretation of the defined term "good faith" is legally flawed. All references to "good faith" inconsistent with the agreed definition should be barred at trial. Fed. R. Evid. 402.

Under Arkansas law, "[e]very word in the agreement must be taken to have been used for a purpose, and no word should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument." *Byme, Inc. v. Ivy*, 367 Ark. 451, 458–59, 241 S.W.3d 229, 236 (2006) (quotations and citations omitted). "[W]hen [a] term is clearly defined, this court need not interpret it." *E B Mgmt. Co., LLC v. Houston Specialty Ins. Co.*, 2019 Ark. App. 294, 10, 577 S.W.3d 408, 414 (2019), *reh'g denied* (July 17, 2019). A motion *in limine* is an appropriate avenue through which to prevent a party from

effectively rewriting a defined term under a contract through the introduction of inconsistent evidence. *See Imperial Trading Co. v. Travelers Prop. Cas. Co. of Am.*, No. CIV.A. 06-4262, 2009 WL 2408410, at *2 (E.D. La. July 29, 2009) (granting a defendant's motion *in limine* to prevent plaintiff from effectively seeking, through the introduction of evidence, to redefine "Business income" where "'Business income' is a contractually defined term.")

PCSSD will be severely prejudiced if Interveners are permitted to offer evidence of an alleged lack of "good faith" based on an alternative definition of this term because PCSSD completed its end of the $55,000,000.00 bargain in part based on Intervenors' representation that this would show "good faith." Since substantial compliance in good faith is the relevant legal standard, allowing Intervenors to present such argument and evidence could impermissibly allow it to enter the case where the parties agreed it would not.

E.    **Intervenors' Conspiracy Theories Demonstrate the Propriety of an Order *in Limine* Confining Argument and Evidence to the Legally Relevant and Controlling Issues.**

Discovery has demonstrated that Intervenors see the facts of this case as an orchestrated plot that resulted in constructing allegedly unequal facilities that had nothing to do with budget constraints and instead were instituted with insidious racist motives. In other words, Discovery has suggested that Intervenors seek to transmogrify the narrow 2014 Joint Motion into a full blown case about an alleged conspiracy theory. Bereft of evidential support and lacking a nexus to the current reality, Intervenors' entire facilities argument is an elaborate foray into revisionist history designed to change or hide from the undeniable fact that the parties had a deal, the Court approved it, and PCSSD delivered on its end of the $55,000,000.00 bargain. Rather than face this reality, Intervenors have once again engaged in "scope creep."

Due to the controlling language of the Joint Motion, this entire conspiracy theory is irrelevant to the issue at hand of whether PCSSD constructed a new Mills High School for

$50,000,000.00 and whether PCSSD converted the Mills Middle School project for $5,000,000.00. *See* Fed. R. Evid. 402 & 402. Assuming, arguendo, that there was a massive conspiracy as Intervenors allege, it would be completely irrelevant to the controlling inquiry as a matter of law. The Joint Motion and the Court's approval of it, effectively reduce this issue to an objective inquiry rather than a subjective one, accounting for "good faith" in a contractually defined manner. As such, evidence and argument about an alleged conspiracy are irrelevant and should be excluded at trial.

**F.      Conclusion.**

It is axiomatic that the 2014 Joint Motion cannot be binding solely on PCSSD, lest the entire agreement be an illusory promise. In other words, PCSSD agreed to have its "feet [held] to the fire with respect to following through on its commitment to the patrons in the southeast quadrant"—that commitment being the expenditure of $55,000,000.00. The consideration for this significant financial commitment was achieving full unitary status on certain terms defined by the Joint Motion. The Court should enter an order *in limine* limiting all argument and evidence on facilities to answering the following two questions: (1) whether PCSSD constructed a new Mills High School for $50,000,000.00, and (2) whether PCSSD converted the Mills Middle School project for $5,000,000.00. Everything else is irrelevant.

Respectfully submitted,

Devin R. Bates (2016184)
M. Samuel Jones III (76060)
Amanda G. Orcutt (2019102)
MITCHELL, WILLIAMS, SELIG,
    GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
Telephone:  (501) 688-8800
Facsimile:  (501) 688-8807
sjones@mwlaw.com
dbates@mwlaw.com
aorcutt@mwlaw.com

*and*

Jay Bequette (87012)
Cody Kees (2012118)
BEQUETTE BILLINGSLEY & KEES, P.A.
425 West Capitol Ave., Suite 3200
Little Rock, Arkansas 72201
Telephone:  (501) 374-1107
Facsimile:  (501) 374-5092
jbequette@bbpalaw.com
ckees@bbpalaw.com

***Attorneys for Pulaski County Special School District***