**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

LITTLE ROCK SCHOOL DISTRICT, et al.                              Plaintiffs

v.            Case No:       4:82-cv-00866-DPM

PULASKI COUNTY SPECIAL SCHOOL DISTRICT, et al.          Defendants

EMILY McCLENDON, TAMARA EACKLES, VALERIE
STALLINGS, TIFFANY ELLIS, and LINDA MORGAN            Intervenors

<u>MOVANT-INTERVENOR'S MEMORANDUM
IN SUPPORT OF HER REPLY</u>

The parties to the above-captioned matter object to Movant's ("Dr. Warren's") request to intervene for several asserted reasons including timeliness of the motion, absence of the requisite interest, and the lack of standing. Each of these objections and others will be addressed in turn. Because standing is a jurisdictional issue affecting this Court's power to hear her claims, Dr. Warren commences her Reply with standing.

A.      STANDING

Justiciability is a condition precedent to the exercise of a Federal Court's Article III power to hear and adjudicate cases and controversies. *National Parks Conservation Ass'n v. EPA*, 759 F.3d 969, 974 (8th Cir 2014) (risk of direct financial harm establishes injury in fact). *Cottrell v. Laboratories*, 874 F.3d 154 (3rd Cir. 2017) (economic and financial waste from the size of eye therapy drops a basis for Article III standing) (citing Supreme Court authority recognizing financial or economic interests as legally protected interests for purposes of the

1

standing doctrine). Justiciability doctrines, the what, the when, and the who of Federal Court litigation, are foundational considerations of a Federal Court's subject-matter jurisdiction. Russell W. Galloway, *Basic Justiciability Analysis*, 30 Santa Clara L. Rev. 912 (1990); see also *Cottrell* at 162. Richard D. Freer and Edward H. Cooper, 13B Fed. Prac. & Proc. Juris. (Wright & Miller) ("Fed. Prac. & Proc.") § 3531.15 (3d ed. April 2020). Standing is the "who" of Federal Court litigation, "who" may invoke the Article III power of a Federal Court to determine the merits of its claim. Standing jurisprudence extends beyond the Article III justification to include prudential limitations or self-restraints on a court's role in resolving disputes.

The Supreme Court has criticized this extension and described it as contradictory to the federal courts' *unflagging obligation* to decide cases within its jurisdiction. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126, 134 S. Ct. 1377, 1386, 188 L. Ed. 2d 392 (2014) (addressing plaintiff's standing based on claims for sales losses and injury to its commercial reputation under Lanham Act) (emphasis added); 13B Fed. Prac. & Proc. Juris. § 3531 (3d ed. April 2020), 33 Fed. Prac. & Proc. Judicial Review § 8331 (2d ed. April 2020). Furthermore, the Supreme Court defined the scope of prudential limitations as (1) the general prohibition on a litigant's raising another person's legal rights, *inapplicable here;* (2) the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, *inapplicable here;* and (3) the requirement that a plaintiff's complaint falls within the zone of interests protected by the statutory law invoked, *inapplicable here*. *Lexmark Int'l,* at 126. As demonstrated below, Dr. Warren has standing pursuant to Article III standards; she is not foreclosed because of prudential considerations from this litigation.

    1.  <u>Dr. Warren did not waive the right to establish standing</u>.

Dr. Warren did not expressly assert standing in her motion to intervene. That omission is not a waiver of the right to establish standing or a bar to demonstrating standing. Because standing and other justiciability doctrines are jurisdictional, a litigant's failure to raise or establish standing does not constitute a waiver and any court, including the Supreme Court, may raise the issue *sua sponte,* on appeal. *Wittman v. Personhuballah*, 136 S. Ct. 1732, 195 L.Ed.2d 37 (2016); *U.S. v. Hays*, 515 U.S. 737, 115 S. Ct. 2431 (1995) ("[W]e are required to address standing even if the courts below have not passed on it, and even if the parties fail to raise the issue."); *Friends of Boundary Waters Wilderness v. Thomas*, 53 F.3d 881 (8th Cir. 1995)(the district court erred in concluding that the party's entering into a settlement waived objections to standing); *Goos v. I.C.C.*, 911 F.2d 1283 (8th Cir. 1990)(standing raised for the first time on appeal and must be considered); 13B Fed. Prac. & Proc. Juris. § 3531.15 (3d ed. April 2020), Fed. R. Civ. Pro. 12(h)(1). If an independent basis for standing is required for her intervention, Dr. Warren is free to demonstrate it.

> 2. <u>An Intervenor of right need only establish standing if she seeks additional relief beyond that requested by another party</u>.

When Dr. Warren filed her motion to intervene, Dr. Warren did not assert her standing to intervene. Given the well-recognized general rule reflected in existing case authority involving multiple plaintiffs or intervenors or parties, Dr. Warren reasoned that standing was not an issue for this thirty-eight-year-old litigation with numerous litigants and intervenors. To avoid delay, Dr. Warren did not allege her standing or that standing was unnecessary for her.

The question set for trial July 14, 2020, is PCSSD's Notice Concerning Unitary Status. PCSSD asserts its good faith and substantial performance of Plan 2000. (See Doc. 5533.) Intervenors argue PCSSD has not produced evidence of effective good faith compliance with Plan 2000. (See Doc. 5543, at 12.) The relief sought by PCSSD is this Court's determination of

its substantial performance of its duties under Plan 2000. The Intervenors seek a determination of PCSSD's noncompliance with Plan 2000, remedies for Plan 2000 inequities, and continued supervision by this Court. Thus, there are three issues before this Court: 1) has PCSSD substantially performed its obligations under Plan 2000, 2) if not, why not, and 3) should remedial relief be granted.

As a corporate body, PCSSD's performance must occur through its cabinet members, administrative personnel, and employees. In her motion to intervene, Dr. Warren asks this Court to determine and declare that she and other innocent cabinet members and administrative personnel substantially performed their duties under Plan 2000. Dr. Warren is not seeking relief that is additional to or different from that being sought by the parties. Rather, Dr. Warren is asking the Court to declare the findings it must make to reach its conclusion that PCSSD has or has not substantially performed its duties under Plan 2000. Dr. Warren seeks to protect herself and other innocent nonparty cabinet members and administrative employees from a judgment or consent decree that fails to reflect their good faith performance, as distinguished from the misappropriation or misapplication of State funds by wrongdoers. The omission of findings regarding her good faith substantial performance and that of other innocent, cabinet members, and administrators creates an imminent risk of reputational injury for her, other cabinet members, and administrative personnel. In its Notice Concerning Unitary Status, PCSSD suggests that there are facts unknown to the Court that PCSSD will disclose. (Doc 5533 at 8). Are these facts that expose wrongdoers' conduct that constitute bad faith performance of PCSSD's obligation under Plan 2000? If so, Dr. Warren is only asking that any judgment or consent decree reflect her good faith performance and that of other innocent cabinet members and administrative employees. Dr. Warren is not seeking additional relief and, therefore, need

not establish standing in her own right as long as a litigant has standing. "At least one plaintiff must have standing to seek each form of relief requested . . . . For all relief sought, there must be *a* litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff [sic], or an intervenor of right." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 198 L.Ed.2d 64 (2017)(an intervenor of right must demonstrate Article III standing when it seeks *additional* relief beyond that requested by the plaintiff)(emphasis added);[1] *National Wildlife Federation v. Agricultural Stabilization and Conservation Service, 955 F.2d 1199* (8th Cir. 1992) (where one plaintiff establishes standing to sue, the standing of other plaintiffs is immaterial); 13A Fed. Prac. & Proc. Juris. § 3531 (3d ed. April 2020). Although PCSSD is the captioned defendant, both PCSSD and the Intervenors are seeking relief in the trial set for July 14, 2020. Dr. Warren does not question the standing of either to invoke the power of this Court to address the merits of their claims; therefore, Dr. Warren's standing is "immaterial." *National Wildlife Federation, supra.*

   3. <u>Dr. Warren meets the requirements for Article III standing in her own right</u>.

"Current decisions express the Article III requirements by demanding a 'personal stake' that will make the plaintiff an effective litigant." 13A Fed. Prac. & Proc. Juris. § 3531, text and notes nn.12.50-14 (3d ed. April 2020). This "personal stake" is established by demonstrating (1) an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the

---

[1] Movant notes that both PCSSD and Intervenors failed to include a *but see* citation to *Town of Chester*, *supra.*, for the Court's reflection as mandated by Ark. R. of Prof. Conduct 3.3(a)(2). "A lawyer shall not knowingly: (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel."

defendant; and (3) it is likely, that the injury will be redressed by a favorable decision. 13A Fed. Prac. & Proc. Juris. § 3531, text and notes nn.64-66 (3d ed. April 2020).

    a. <u>Dr. Warren has an injury in fact that is concrete, particularized, and imminent.</u>

The actual injury must be an "injury in fact," or "direct," or "distinct and palpable" or "the impairment of a legal right." An actual or threatened injury to reputation is distinct and palpable. *Shukh v. Seagate Technology LLC.*, 803 F.3d 659 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 2512 (2016) (holding that a concrete and particularized reputational injury provides a basis for Article III standing); *National Collegiate Athletic Ass'n v. Governor of New Jersey*, 730 F.3d 208, 220-224 (3rd Cir. 2013) (the gambling activity sanctioned by the proposed New Jersey law *threatens* to cause the Leagues reputational harm amongst their fans and the public); and *Foretich v. U.S.*, 351 F.3d 1198, 1209-1216 (D.C. Cir. 2003) (reputational injury from an unexpired and unretracted governmental action as a basis for Article III standing). Dr. Warren's injury is the threatened impairment of her reputation as an educational professional, the impairment of current and future employability as an educational professional, and impairment of her ability to prosecute her employment discrimination claims.

Dr. Warren has a prime interest and personal stake in the assessment of PCSSD's performance of its obligations under Plan 2000 not only as a cabinet member but also as an educational professional with an impeccable record of district-level supervision throughout the State of Arkansas. A finding in a judgment or consent decree that PCSSD misappropriated or misapplied State funds or willfully disregarding this Court's prior order without distinguishing the source of the wrongful conduct from that of the good faith efforts of innocent cabinet members and administrators is a concrete and particularized harm to Dr. Warren's reputational interests and those of other current and former cabinet members and administrators. An adverse

impact on reputation produces both pecuniary and economic consequences, both substantive bases for Article III standing. *Vermont Agency of Nat. Resources v. United States*, 529 U.S. 765, 772-77, 120 S. Ct. 1858, 146 L.Ed.2d 836 (2000) (the economic interest of an assignee enforcing its assignor's claim held the basis for standing); *National Parks Conservation Ass'n v. EPA*, 759 F.3d 969, 975 (8th Cir 2014) (risk of direct financial harm establishes injury in fact).

For Dr. Warren, the allegations by PCSSD in her employment discrimination suit regarding her role in the Mills High School inequities may not be subject to litigation because of the effect of the principles of collateral estoppel on a judgment or consent decree by this Court, foreclosing a right of recovery there. The Intervenors belatedly asserted that no evidence exists that Dr. Warren's conduct impacted the size and quality of Mills High School. (Doc. 5606 at 13) However, prior allegations stated in a deposition may be asserted in other cases. Fed. R. of Civ. Pro. 32 and Ark. R. of Civ. Pro. 32. Dr. Warren's injury is concrete, particularized, and imminent or threatened.

      b. <u>The injury is fairly traceable to the challenged action of the defendant</u>.

Second, a causal link must exist between the injury in fact and the conduct of the defendant. The injury must be "fairly traceable to the defendant's conduct." *National Parks Conservation Ass'n v. EPA*, 759 F.3d 969 (8th Cir 2014). "Causation is no more than a conduit from the choice of remedy to the derivative definition of injury." 13A Fed. Prac. & Proc. Juris. § 3531.5 (3d ed. April 2020). Is there a bridge between Dr. Warren's imminent reputational injury and the acts or inaction of PCSSD? Yes! Is there a conduit from Dr. Warren's choice of remedy and her imminent reputational injury? Yes! Dr. Warren's threatened reputational injury is a byproduct of PCSSD's failure to disclose to this Court the source of its wrongdoing in the performance of its obligations under Plan 2000. Dr. Warren's choice of remedy is a declaration

that she and other innocent cabinet members and administrators in the district leadership team substantially performed their duties in good faith.  Is there a bridge between this choice of remedy and the threatened reputational injury?  Yes!  The exercise of this Court's remedial powers in granting the requested redress eliminates the threatened injury.  A declaration of good faith performance of Dr. Warren and other members the district's leadership team will negate the potential reputational injury and address the baseless allegations asserted in her employment discrimination suit.

      PCSSD might argue that a third party's action was the initial cause or a necessary element of any threatened reputational injury.  The defendant raised a similar argument in *National Collegiate Athletic Ass'n*, *supra*.  The court rejected the contention recognizing the defendant as an "indirect" cause of the injury in fact.  In *National Collegiate Athletic Ass'n*, a conglomerate of professional and collegiate sports leagues ("Leagues") sued the State of New Jersey to halt the State's proposed plan to legalize betting on sporting activities.  New Jersey argued the Leagues lacked standing. The Leagues asserted a threaten reputational injury would result from increased betting on their events and from the increased incentives to rig games.  New Jersey responded that activity by third parties, gamblers and players, was necessary before the alleged injury in fact would occur. Therefore, its legislation of a legalized betting statute was not the cause of the purported injury. Rejecting the contention, the Third Circuit held:  "That a third party's action may be necessary to complete the complained-of harm does not negate the existence of an injury in fact from the Sports Wagering Law or negate causation and redressability." *National Collegiate Athletic Ass'n*, *supra*, at 222.  Likewise, the mere fact that a third party's conduct produced or initiated the circumstances that motivated PCSSD's inaction or nondisclosure does

not negate the reputational injury, the injury in fact, from PCSSD's handling of those circumstances. Here, the causal link is direct rather than indirect.

                    c.      <u>A favorable decision must redress the injury</u>.

Having established an injury in fact traceable to the defendant's actions, the question of the court's ability to redress the harm remains. The court's decision must redress the injury, provide remedial benefit. If not, the plaintiff or intervenor lacks standing. *National Parks Conservation Ass'n v. EPA*, 759 F.3d 969, 975 (8th Cir 2014). Dr. Warren's threatened reputational injury is redressable by this Court's decision. Dr. Warren seeks a declaration of her good faith performance of her obligations under Plan 2000; if proven, that declaration eliminates any risk of reputational injury. This Court can provide a remedial benefit. Therefore, Dr. Warren has Article III standing to intervene.

      4.      No Prudential Limitations Bar Dr. Warren's Intervention

The Supreme Court defined the scope of prudential limitations as (1) the general prohibition on a litigant's raising another person's legal rights, *inapplicable here;* (2) the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, *inapplicable here;* and (3) the requirement that a plaintiff's complaint falls within the zone of interests protected by the law invoked, *inapplicable here*. PCSSD's inaction and nondisclosure may adversely impacted others. Dr. Warren is raising and protecting her legal right to be free of reputational injury. Dr. Warren's threatened reputational injury is not a generalized grievance applicable to the public that can be addressed by the representative branches. This Court's remedial power is needed to prevent harm to Dr. Warren's concrete, particularized, threatened reputational injury at risk in this litigation.

Finally, the third prudential limitation on standing facilitates the goals Congress sought to protect with its enactment. Is the plaintiff who invokes a statutory or constitutional protection within the zone of interests the statutory or constitutional enactment were drawn to protect? 13A Fed. Prac. & Proc. Juris. § 3531.7 (3d ed. April 2020). The matter before this Court on July 14, 2020, is a question of contractual performance rather than a statutory or constitutional protection. Therefore, this prudential limitation is likewise inapplicable to Dr. Warren's motion to intervene. Dr. Warren's standing, whether inherent because of the standing of the parties, *sub juice,* or pursuant to Article III, has been demonstrated. Dr. Warren's motion to intervene should be granted.

### B. TIMELINESS

The Intervenors vehemently assert that Dr. Warren's motion to intervene is untimely. (Doc 5606, at 6-8) The Intervenors suggest that Dr. Warren waited two years before seeking to intervene. This argument misses the mark. Intervention, as permitted by Fed. R. Civ. Pro. 24(a)(2) requires the *convergence* of four factors: (1) timeliness, (2) an interest relating to the transaction that is the subject of the action, (3) disposing of the action may impair or impede movant's ability to protect its interest, and (4) movant's interest are not adequately protected by existing parties. Until all four factors meet or coalesce, a motion to intervene is premature. The Intervenors urge that Dr. Warren's right to intervene arose when the inequities in the Mills High School construction were first revealed. Although Dr. Warren's employee-interest existed in September of 2017, she was not "so situated" in September of 2017 that disposing of this action would impair or impede her ability to protect her interest. Indeed, on April 8, 2020, Dr. Warren noticed that her interest in the transaction of this case might be impaired, and her rights in her employment discrimination case hindered.

Furthermore, "The question for determining the timeliness of the motion to intervene is whether existing parties may be prejudiced by the delay in moving to intervene, not whether the intervention itself will cause the nature, duration, or disposition of the lawsuit to change." *U.S. v. Union Elec. Co.*, 64 F.3d 1152, 1162 (8th Cir. 1995). The Intervenors stress that Dr. Warren's intervention will prejudice the existing parties because they only have three weeks to try this case. "If Dr. Warren were allowed to intervene in this matter with her attorney participating, this would cause prejudice to the parties, because this case is being tried under a tight schedule already." (Doc. 5606, at 8) The Intervenors fail to demonstrate the reason an additional attorney creates prejudice for the other parties. Is Dr. Warren's attorney inefficient; is there a need for numerous additional witnesses? How does the additional attorney's presence create prejudice? The Intervenors fail to provide that answer. As demonstrated in her Memorandum in Support of her motion, Dr. Warren's motion to intervene is timely. She will not rehash that demonstration here. (See Doc. 5601, at 2-5.)

    C.    <u>Dr. Warren has a direct, recognized, substantial, and legally protectable interest in this case.</u>

PCSSD and Intervenors argue that Dr. Warren's employee-interest is a financial or economic one and, thereby, fails to satisfy the required protectable interest. Their analyses are imprecise. No blanket prohibition exists for an economic interest that is direct, recognized, substantial, and legally protectable. Indeed, the nature of the protectable interest in several of the cases cited by both parties is economic or financial one. Their authority support Dr. Warren's point: *U.S. v. Metropolitan St. Louis Sewer Dist.*, 569 F.3d 829 (8th Cir. 2009) (intervenor's asserted financial interest was not bound up with the subject matter of the litigation and was not legally protectable); *Medical Liability Mut. v. Alan Curtis LLC*, 485 F.3d 1006 (8th Cir. 2007) (intervention denied: movant did *not* have a beneficial, financial, interest in the insurance

11

policies that were the subject of litigation; movant's interest was in the funds subsequently available if the insurer was liable under its policies--the interest here was in the outcome of the case not the subject of the case); *U.S. v. Union Elec. Co.*, 64 F.3d 1152 (8th Cir. 1995) (financial interest--under CERCLA the non-settling potentially responsible parties' right to contribution or reimbursement for cleanup costs for hazardous substances); *Curry v. Regents of University of Minnesota*, 167 F.3d 420 (8th Cir. 1999) (distinguishing an economic interest that was not a legally protectable interest).

Dr. Warren's employee-interest is an interest in the subject of the July 14, 2020, trial, the substantial performance of PCSSD's obligations under Plan 2000.  The issue of her performance of her duties as a cabinet member were again restated in the Intervenor's Response.  The Intervenors state there is "no evidence that Dr. Warren's conduct that had any negative effect on the size and quality of the New Mills High School at any point." Yet, they continue to suggest that she failed to monitor the construction. (Doc. 5606, at 13)  Dr. Warren's performance of her duties is a legally protectable interest under general principles of contract law, the law governing PCSSD's performance of its Plan 2000.[2]  Her employee-interest is not a contingent right, and relates directly to the transaction, Plan 2000.

      D.    <u>Disposing of this matter "may" impair or impede Dr. Warren's ability to protect her interest</u>.

---

[2] PCSSD asserts that the Eighth Circuit has not recognized an "employee interest."  (Doc. 5607 at 1).  But see *Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 315, 105 S. Ct. 725, 727, 83 L. Ed. 2d 678 (1985) (employee's interest in employer's records sought in response to IRS subpoena for investigating employee's tax liability was not legally protectible, in that case, and affirmed the denial of the employee's motions for intervention); Jenkins v. Macy, 357 F.2d 62 (8th Cir. 1966)(The Supreme Court has indicated that due process should be utilized to protect a public employee's interest in his employment).

PCSSD in its Response argues that Dr. Warren's concern regarding the effects of a judgment or consent decree in this case on her employment discrimination case is without support. (Doc. 5607 at 5). PCSSD failed to include in its analysis the precedential value of *Coates v. Kelley*, 957 F.Supp. 1080, 1086 (E.D. Ark 1997). There, this Court determined that the Eighth Circuit Court *would* embrace the application of collateral estoppel from a consent decree based on a finding of the consent of the parties to preclude further litigation. Consent may be found in the express terms of the decree or settlement agreement or the record in the case. Furthermore, those issues reasonably foreseeable at the time of the agreement is made may also be precluded. *Coates v. Kelley*, at 1085. PCSSD also failed to discuss the inherent limitation in its cited authority, *U.S. V. Brekke*, 97, F.3d 1043, 1049 (8th Cir. 1996). "The United States Court of Appeals for the Eighth Circuit affirmed this position in *U.S. v. Brekke*, wherein it held that, 'the issue-preclusive effect of a prior civil action […] *ordinarily* does not arise from a consent judgment; it is appropriate *only if it is clearly shown that the parties intended to foreclose a particular issue in future litigation.*' 97 F.3d 1043, 1049 (8th Cir. 1996)" (emphasis added). "Ordinarily" means "usually" or "most of the time." It does not mean "always" or "on every occasion." PCSSD's argument is nothing more than a "slight of hand" seeking to mislead this Honorable Court. *Coates v. Kelley*, from this Court, must be dealt with forthrightly! In her motion to intervene and supporting memorandum, Dr. Warren demonstrated the risks she faces if a judgment or consent decree in this case is interpreted to foreclose further litigation (Doc. 5601 at 6-7).

E. LACK OF ADEQUATE REPRESENTATION.

They restate that Dr. Warren did not monitor the construction; suggesting that she breached her duty of performance. (Doc. 5606 at 13) The Intervenors do not tell us what they

expected or required. Did they expect her to measure the square footage of the foundation or determine the width of hallways and classrooms as construction progressed? With these allegations, Dr. Warren cannot expect her employer's adversary to protect her interests. The Intervenors want to demonstrate that PCSSD inequitably constructed Mills High School; a conclusion that is patent. The Intervenors do not care who or why the construction was inequitable. Dr. Warren's interests must be adequately protected. Once she received notice as Interim Superintendent of the inequities in executing the Mills High School project, Dr. Warren directed immediate modifications and enhancements of the faulty execution.

On the other hand, PCSSD has not disclosed how or who or why the construction was inequitably executed. Are those the unknown facts that will be disclosed? Who is PCSSD's intended scapegoat? PCSSD's failure to construct Mills High School and Robinson Middle School in an equitable fashion has been established before this Court. (Court Expert's Report, doc. 5343.) Given the patent discriminatory results in the construction of Mills High and Robinson Middle facilities, counsel for PCSSD in advocating for PCSSD may enter into settlements and consent decrees rather than litigate the quality of PCSSD's performance. While conserving PCSSD's resources, this approach may fail to protect nonparty-employee interests, such as defending the quality of their performance as it relates to this Action (Action #1).

Counsel for PCSSD have no duty to defend Dr. Warren or the actions of those cabinet members and administrative personnel who are not parties to this action. Any allegation or suggested nonperformance asserted against cabinet members and administrative employees -- who did not engage in discriminatory conduct, who had no knowledge of the misappropriation or misapplication of State funds in the construction -- that go unanswered becomes a weapon not

only against Dr. Warren in her employment discrimination action (Action #2) but also a weapon against her employment rights and those of other innocent cabinet members and administrators. The existing parties cannot adequately protect Dr. Warren's employee-interest. Her motion to intervene must be granted.

    F.     Permissive Intervention

In her motion to intervene, Dr. Warren argued, alternatively, for permissive intervention into this action. She demonstrated that her motion to intervene was timely (Doc. 5601 ¶ 1(a)-(c), pp. 2-5); she asserted a claim or defense that shares with this action a common question of law or fact. That common question of law or fact is her good faith substantial performance of her responsibilities under Plan 2000. Dr. Warren demonstrated the absence of delay (Doc. 5601, ¶ 1(a), pp. 3-4) and the absence of prejudice from her intervention (Doc. 5601, ¶ 1(c), pp. 4-5). She established that her interest and those of other cabinet members and administrators are not adequately represented (Doc 5601, ¶ 4, pp. 7-8).

Finally, she asserted that the policy goals of judicial economy and conservation of judicial resources are advanced by litigating in one lawsuit, this action, the issue the performance of innocent, faithful, responsible, and hardworking cabinet members and administrators. Denying intervention may result in multiple lawsuits by those who have no voice in this lawsuit. Dr. Warren implores the exercise of this Court's discretion in granting, alternatively, permissive intervention.

For the foregoing reasons and those stated in her motion to intervene and memorandum in support, Dr. Warren respectfully request to intervene in this action.

                      Respectfully submitted this 2nd day of June 2020,

                            Sarah Howard Jenkins
                            Arkansas Bar #97046

<div style="text-align: right">

Attorney for Movant/Intervenor
SARAH HOWARD JENKINS, PLLC
P.O. Box 242694
Little Rock, Arkansas 72223
Phone: (501) 406-0905
sarah@shjenkinslaw.com (email)

</div>

**CERTIFICATE OF SERVICE**

I, Sarah Howard Jenkins, hereby certify that on this 2nd day of June, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sends notification of such filing to any CM/ECF participants including:

| | |
|---|---|
| Amanda G. Orcutt<br>Devin R. Bates<br>MITCHELL, WILLIAMS, SELIG<br>425 West Capitol Avenue, Suite 1900<br>Little Rock, Arkansas 72201 | Scott Richardson<br>McDaniel Richardson & Calhoun<br>1020 W. Fourth Street Suite 410<br>Little Rock, Arkansas 72201<br>ATTORNEYS FOR JACKSONVILLE/<br>NORTH PULASKI SCHOOL DISTRICT |
| Jay Bequette<br>Cody Kees<br>BEQUETTE, BILLINGSLEY & KEES, P.A.<br>425 West Capitol Avenue, Suite 3200<br>Little Rock, AR 72201-3469<br>Email: jbequette@bbpalaw.com<br>Email: ckees@bbpalaw.com<br>ATTORNEYS FOR PCSSD | |
| Austin Porter Jr., No. 86145<br>PORTER LAW FIRM | Robert Pressman<br>Attorney at Law |

323 Center Street, Suite 1035
Little Rock, Arkansas 72201
Telephone: 501-244-8200
Facsimile: 501-372-5567
Email:  Aporte5640@aol.com

Shawn G. Childs
Lawrence A. Walker
JOHN W. WALKER, P.A.
1723 S. Broadway
Little Rock, Arkansas 72206
501-374-3758
Fax: 501-374-4187
Email: tonywalkeratty@gmail.com
ATTORNEYS FOR INTERVENORS

22 Locust Avenue
Lexington, Massachusetts
Email:pressmanrp@gabriel.com

<u>Sarah Howard Jenkins</u>
Sarah Howard Jenkins