IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LITTLE ROCK SCHOOL DISTRICT                          PLAINTIFF

v.                    Case No. 4:82-cv-00866-DPM

PULASKI COUNTY SPECIAL
SCHOOL DISTRICT, ET AL                               DEFENDANTS

EMILY MCCLENDON, ET AL.                              INTERVENORS

Intervenors' Brief Responding to PCSSD's Motion *in Limine* to
Limit Argument and Evidence About Facilities

[A] Introduction

PCSSD contends that Intervenors' counsel bargained away, for

"currency,"  Intervenors' right to seek  facilities relief  rooted in the "equal"

standard of Plan 2000, other than the  completion of the two Mills projects

and  expenditure of their  "circa" amounts. The district's argument for

unitary status, which encompasses the entirety of Plan 2000 Section H.,

lacks merit. In brief, the "Plan B" remedy supplemented Plan 2000 Sec.

H.(2), by adding two projects to the H.(2) list, without terminating

Intervenors' right to seek additional facilities relief, regarding the two Mills

schools or other schools,  based upon the "equal" requirement of H.(1).

The Court entered, in January 2015,  an Order approving the joint

motion to supplement.  The Court is the best judge of the impact of that

1

Order on the scope of Intervenors' ability to secure additional facilities relief based upon the "equal" provision. Intervenors contend that the Court's subsequent conduct, particularly during the hearing on September 24, 2018, evidences the Court's interpretation, one supporting Intervenors' position. Intervenors also rely on other conduct of the Court, as well as conduct of the parties, both over a long time period. PCSSD argues as if these events did not occur.

PCSSD contends that "in holding a trial to determine if PCSSD is fully unitary in the area of facilities, Section H of Plan 2000, the inquiry to be conducted is a narrow question at this juncture." [5619 at 1]  The claimed "narrow inquiry" is --- "(1) whether PCSSD constructed a new Mills High School for $50,000,000 and (2) whether PCSSD converted the [sic] Mills Middle School project for $5,000,000." [At 2]  The district relies on an interpretation of the "[Joint] Motion to Supplement Plan 2000 as it Pertains to Facilities," particularly its "Plan B." The Court on January 12, 2015, approved the joint motion to supplement. [See 5084 (motion) and 5091 (Order)]  Plan B, a less extensive proposal, came to the fore when the millage vote failed. PCSSD relies on a limited portion of the joint motion text. [5619 at 1, 2]

2

[B.]   Remaining Facilities  Issues as Identified on Sept. 24, 2018

Following its textual quotations,  PCSSD does some preaching  (or screeching): "Intervenors conducted broad, unrestricted discovery that was at best a fishing expedition, and moreover showed a complete disregard for the watershed moment in this case presented  by the parties joint motion to amend Plan 2000 heretofore summarized. The discovery goes way beyond the scope of the remaining issues to be tried." [5619 at 2; emphasis added]

Intervenors point out, respectfully,  that PCCSD is asserting that the Court  also "showed a complete disregard for the watershed moment" when on September 24, 2018, his Honor  made rulings on  and discussed many elements  of "Intervenors' Motion for Facilities Relief in the PCSSD." See Docs. 5403, 5406, 5407 (motion and brief).

The Court, drawing on school visits,  made comparisons of  Maumelle High School,  new Mills University High School and Robinson Middle School [5565 at 13--24]   The Court also recognized the need, thereafter, for comparison of the quality of the then-emerging Sylvan Hills projects with new Mills University High School.  [At 24, 32]  Late in the hearing, the Court: stated: "Mills is – has this advantage of the auditorium, but the Robinson Middle School is just a phenomenal facility, We'll see how that all plays out in the mix as the case continues." [At 32]  Regarding "whether the

Harris and College Station Elementary Schools should be replaced,  [the Court stated] that's reserved for a later date. I don't know. And I'll need proof about that." [5565 at 25]  The Court denied Intervenors' request for an independent expert, saying "For better or for worse, y'all are stuck with me." [At 23]

 PCSSD  counsel spoke during  this hearing, following the bench ruling. He made no argument like the one now made. [At 25-27, 32-35] He discussed new Mills , new Robinson comparison issues. [At 25-27]  At one point,  he offered to develop the plan for the next school tour, to  be undertaken by the Court and  the parties and to begin at College Station Elementary School.  [At 33]

After PCSSD counsel addressed the Court, the Court defined his task. "Ultimately the Court's call as y'all know, under the law is a clear one, if not simple: Is the district unitary in facilities? Has it made a good-faith effort to substantially comply with this plan obligation to have equal, clean, safe, attractive facilities across the district?" [5565 at 27-28] This formulation occurred with the Court having the benefit of exposure to case developments both before the entry of the order approving the joint motion to supplement --- and for 3 years and 8 and 1-2 months thereafter.

The Court entered an Order briefly summarizing its rulings.  [5444

(Sept. 25, 2018)]  These included that "PCSSD must file a facilities report by 1 December 2018 and every sixty days thereafter." The oral ruling referenced "a report  . . . about these facility issues involving Robinson and Mills ." [5565 at 23]  PCSSD recently  filed a tenth such report , like all others it also included developments in the Sylvan Hills projects.  [Doc. 5612]

Intervenors submit that much other conduct is worthy of consideration and overall supportive of their position and that of the Court on September 24, 2018.

[C.]  <u>The Filing and Approval of the Joint Motion  [Dec. 2014/ Jan. 2015]</u>

 PCSSD writes (not in quotes) [5619 at 1]: "On December 15, 2014, PCSSD and Intervenors filed their Joint Motion to Amend Section H of Plan 2000. Doc. 5084) ." The actual caption reads: "Motion to Supplement Plan 2000 As It Pertains to Facilities." [Doc. 5084 at 1]

The  joint motion was discussed during a hearing on December 18, 2014, with Ms. Moore and Messrs. Rogers and Jones representing the district. Mr. Walker spoke first. His remarks included references to remedies for "Harris Elementary School" [ Transcript at 31]; "some of the historically segregated facilities that were never equalized" [at 32]; "So the effort here is to have equal facilities throughout the district, including the detached part

of the district" [at 33]; and  "a situation where the needs are across the district and are not just in Maumelle and Sherwood." [Transcript at 34] Mr. Walker referenced constitutional standards.  [31-32] References to the Constitution appear in the joint motion as well.  [Doc. 5084 at 1, 2, and 4 (four references)]

Next, the Court said: "Anything else from the district on the facilities issue? MR. ROBERTS: No, Your Honor."  [At 34]  Thus, PCSSD counsel did not disagree with Mr. Walker regarding the range of open facility concerns, or mention of a Constitutional standard.

The Court then requested Ms. Powell to write "a letter report . . .," "look[ing] at Document 5084 and the parties' current proposal, about their plan A and plan B. . . ." [At 34] The Court stated: "But I would appreciate your expertise and your institutional knowledge on whether Dr. Guess and the district's plan, plan A and plan B, <u>whether it would be a substantial step</u> toward accomplishing or addressing the facilities issues you have listed and noted and explored for many years."  [34-35; emphasis added]  The Court did not posit whether implementation of  either plan  would complete  the facility remedy, or do so to the extent practicable.

On January 12, 2015,  the  Court  approved the motion to supplement. [Doc. 5091] It did not follow a bench ruling. The Court did not write an

6

opinion. Compare Doc. 5187 (Jan. 14, 2016) (re JNPSD facility obligations).

[D.] <u>Events from December 16, 2015 through October  31, 2019</u>

[1]The Court held a status conference on December 16, 2015.  It included references to the PCSSD facilities relief and issues. Mr. Richardson suggested a view of the  PCSSD relief  focusing on the dollar amounts. [Transcript at 26-27] Mr. Walker responded: ". . . [W]e haven't addressed whether Plan B supplements Plan A, but Plan B is an interim makeshift plan. It is not a substitute plan,  so that we have not reneged on the replacement for College Station or for Harris and quality for all of the schools and facilities."  [At 34]  Mr. Pressman mentioned College Station and Harris and Mr. Richardson's comment."  [At 37-38]  Offered by the Court the opportunity "to add anything," Mr. Roberts said: "It is my understanding that the county district does not acknowledge that it is presently obligated to replace both those elementary facilities, primarily due to declining enrollment and the question – the jury is out on exactly what to do is my understanding of our position."  [At 38] PCSSD counsel did not suggest that approval of the joint motion  or implementation of Plan B had ended Intervenors' opportunity to pursue relief regarding College Station,  Harris, or other Intervenor facility concerns, including any based on later events. His Honor expressed no such view.

[2] A PCSSD letter from Ms. Moore to Mr. Walker on October 21, 2016, described in detail the Mills University High School, Robinson Middle School, and old Mills High School renovation projects then underway. It stated in part: "Plan B was silent as to what other projects would be undertaken other than the construction of Mills and conversion of existing Mills, but PCSSD always recognized that the construction of Mills alone would not earn it unitary status in facilities." See Exhibit A at 4.

[3] On September 5, 2017, PCSSD filed a Supplemental Status Report. It discussed issues which had arisen regarding indications that athletic facilities at Robinson Middle School could be superior to those at new Mills High School.  [At 1]

[4] On September 8, 2017, the Court directed the Court Expert to report on whether the sports complex at Mills High School is equal to the one located on the site of the Robinson Middle School campus."  [5343 at 2]

[5] PCSSD's October 9, 2017, Special Status Report to Court, responsive to  the  Order of Sept. 8, 2017,stated that upon completion the new Mills and new Robinson projects "should be equal to the facilities constructed at Maumelle High School and the Mills and Robinson projects should be substantially equal one to the other."  [5337 at 2]  The report also compared the overall quality of the athletic facilities at new Mills and new

Robinson.  [5337 at 6]

[6] Intervenors' facility report of  October 24, 2017,  also responsive to the   Sept. 8, 2017 Order , raised  the  College Station and Harris replacement issue, citing recognition in the 2015 PCSSD  Preliminary Facility Master Plan, as to each,  that "absent a complete replacement, facility parity is not attainable."   [Doc.  5338 at  4] A PCSSD response was limited to the statement that "as the facilities plan referenced several times by Joshua indicates, and as has been represented on the record  in open court, PCSSD has no current plans to replace either or both College Station and Harris." [ Doc. --- at 9 (11-20-17)]

[7] On July 4-5, 2018, Intervenors filed "Intervenors' Motion for Facilities Relief in the PCSSD" [Docs. 5406 and 5407] and a supporting memorandum. [Doc. 5403] Each submission raised multiple Intervenor facility concerns, well beyond mere completion of the two Mills projects with an expenditure total  satisfying Plan B.

[8] An Order of July 17, 2018, followed the parties' "suggestions  about the schools tour." The Court wrote that "based on the parties' developing dispute about facilities, it's clear to the Court that a visit to all the schools mentioned in the joint report would be helpful." The Court listed the seven schools identified by the parties  and  proposed that visits to  Sylvan Hills

High School, College Station Elementary, and Harris Elementary occur during the second tour.  [Doc. 5411 at 1]

[9] On September 24, 2018, the hearing previously described,  which, included  the Court's bench ruling and comments by counsel and the Court, occurred.  An event occurring the next day is also of note; on September 25, 2018, the Court released its ruling on JNPSD unitary status issues, including on facilities. The opinion cited the <u>Freeman v. Pitts</u> "to the extent practicable standard" and again applied it in addressing JNPSD facility issues. [5445 at 2, 4-7  In total, these events evidence a Court view that by including the word "equal," Plan 2000 incorporated a facilities standard circa a constitutional standard, or even one broader. See also Doc. 5187 (relying on word "equal"  in JNPSD facility context.

[10]  On October 3, 2018, <u>Joshua and PCSSD, jointly,</u> proposed a schedule for visiting four sites, including College Station and Harris. [5447 at 1] The Court approved the "Joint proposed schedule" on October 3rd. [Doc. 5448] These tours , including of College Station and Harris, took place on November 1, 2018.

[111Mr. Walker's February 7, 2019 letter, to Mr. Jones sought responses on multiple facilities issues, including again "the absence of any proposals to address College Station and Harris Elementary Schools." See

Exhibit B.  Again, Mr. Jones gave no "this train has left the station"
response.  On March 7, 2019, he answered: "It remains the position of the
District that it is premature to undertake any final planning regarding
College Station and Harris Elementary Schools."  See Exhibit C (includes
responses to new Mills concerns raised by the Court on September 24, 2018
and Intervenors).

[12] Intervenors' October 15, 2019  critique of the first six PCSSD 60-
day  facility reports noted that the six reports submitted as of that time
"[did]  not mention College Station or Harris Elementary Schools." The
memorandum also  quoted  the response of  Mr. Jones' in his  letter of March
7, 2019.  [5228 at 12] PCSSD's response to Intervenors' critique, filed on
October 31, 2019, submitted by Mr. Jones and Mr. Bates, states: "It remains
the position of the District that it is premature to undertake any final
planning regarding College Station and Harris Elementary Schools." [Doc.
5537 at 8]

In sum, the events of September 24, 2018 do not stand alone regarding
identification of the scope of remaining, open facility issues.

[E.]  January 31, 2020: "A Sea Change"

On January 31, 2020,  PCSSD "responded" to an  interrogatory drafted
by Mr. Porter, beginning "Relative to the construction of Mills University,

please identify each and every design flaw and/or construction flaw that has

been brought to the attention of said district. For each design flaw or

construction flaw, please provide the following: [four sub-parts followed]

[emphasis added]."   The answer set forth  four pages and 13 paragraphs of

largely non-responsive text, with the last paragraph reading:

> Intervenors allege that College Station or Harris Elementary Schools are absent  from the conversation. (Doc. 5528-6, p. 13). It remains the position of the district that it is premature to undertake any final planning regarding College Station and Harris Elementary Schools,  and that amendments to Plan 2000 exclude them. [emphasis added]

This was 5 years and 2 weeks after the Court's approval of the motion

to supplement. As shown, many events relevant in determining the scope of

remaining issues, occurred in this period.

[F] Intervenors' Argument , Including Waiver

After a lengthy period of discussion of facility issues at the September

24, 2018 hearing, the Court made this statement: "Ultimately the Court's

call as y'all know, under the law is a clear one, if not simple: Is the district

unitary in facilities? Has it made a good-faith effort to substantially comply

with this plan obligation to have equal, clean, safe,  attractive facilities

across the district?" [5565 at 27-28]  PCSSD is arguing, in substance, that in

making this statement, and in  overall management of  the facilities aspects

of the case, after approving the joint motion, the Court didn't know what it

had decided. PCSSD counsel were likewise in the dark. Intervenors do not

accept this view. Case developments regularly involved facility issues, each occasion an opportunity to consider whether the issue remained open after the motion to supplement ruling.

If the matter is so clear that it justifies the angry tone of the PCSSD papers, it should have been pressed long ago. Both the Court and staff and Intervenors counsel have expended much time and effort since the Court's ruling. An upshot of the current PCSSD argument is that  much of this time was wasted, including that of its own counsel. The Court recently denied Intervenors' motion regarding the Court expert. The Court referenced the failure to present Intervenors' issue to the Court in a timely manner. Fairness warrants the same approach here. See Doc. 5587 at 2 (PCSSD's Response to Intervenors' motion regarding the Court expert states: "Intervenors  waived their ability to question  Ms. Powell's neutrality , having raised formally this argument  for the first time in six years on the eve of trial after numerous opportunities to complain.")

The Court, based upon the subsequent conduct, decided that implementation of Plan B would be a step along the path to full unitary status, but alone not a completion of the journey. Counsel are reluctant, absent a Court request, to furnish  a supporting interpretation, but do so .

The joint motion to supplement [5091] describes Plan A as far more

extensive than Plan B. The agreement states, regarding Plan A: "The parties agree that this facilities improvement plan, upon achieving substantial probability of completion, will constitute a substantial step towards facilities unitary status for that part of PCSSD remaining after the Jacksonville--North Pulaski detachment." [At 3; emphasis added] The agreement thereby describes the broader plan as "a substantial step," important progress, thus not alone sufficient to reach the required end point.

PCSSD emphasizes a part of paragraph B., beginning in the third line. It includes this text: ". . . PCSSD's quest for full unitary status through cooperation with Joshua demands an alternative commitment, a Plan B as it were . . . ." In two ways, the chosen text identifies Plan B as identifying an alternative approach to provide an important step, not a final solution, upon a negative millage vote. The word "quest" is employed. A "quest' is a "long search for something that is difficult to find, or an attempt to achieve something difficult." [Definition in the Cambridge English Dictionary [on line] ]. Second, paragraph 5. of the joint motion deals, expressly, with "cooperation with Joshua." It provides: "Joshua counsel will be involved in any planning and other activity undertaken regarding facilities." This text does not limit cooperation to completion of the two Mills projects.  [Doc. 5084 at 4, para. 5]

The parties references in the joint motion to remediating or removing constitutional disparities or deficiencies may also play a role in how the Court determined the weight to be given to the approval and implementation of Plan B.  With the parties  incorporating constitutional standards in their agreement, approving this step does not for this Court, express agreement that the district, upon completion of these two projects, will have fulfilled its obligation to satisfy fully the "equal" requirement, as defined by the Court. Regarding the Court's standard, see also Transcript of March 16, 2016 at 40.

[G.] <u>PCSSD's Belated Contention Regarding Plan 2000 H.(1) Lacks Merit</u>

PCSSD contends that  Section H.(1) does not apply to new construction.  See 5620 at 1, fn. 1 and 5622 at 47, n. 17 (only applies to "existing" construction").

This interpretation is foreclosed by the rulings of Judge Miller, the Court of Appeals, and this Court. Doc. 4507 at 73, 75-78; <u>LRSD v. State of Arkansas</u>, 664 F.3d at 751-53; Doc.  5187 (Jan. 14, 2016).  These decisions, in including consideration of new construction,  provide a reasonable meaning to the provision in a case addressing equality of opportunity. Discrimination in new facilities can both provide lesser  educational in an objective sense

and communicate stigmatizing messages [ see Doc. 5565 at 18], as well as

cause difficulties for staff.  Finally, the real-life meaning of PCSSD's

alternative interpretation is difficult to fathom.

Conclusion

The Motion should be denied.

Respectfully submitted,

/s/ Austin Porter, Jr.
Austin Porter, Jr. - # AB86145
PORTER LAW FIRM
323 Center Street, Suite 1300
Little Rock, Arkansas 72201
501-244-8200


Robert Pressman
22 Locust Avenue
Lexington, MA  02421
781-862-1955

Shawn G. Childs
Lawrence A. Walker
JOHN W. WALKER, P.A.
1723 Broadway
Little Rock, Arkansas  72206
(501) 374-3758
(501) 374-4187

Attorneys for Intervenors

**CERTIFICATE OF SERVICE**

I, Austin Porter Jr., do hereby certify that a copy of the foregoing pleading was
electronically filed with the Clerk of the United States District Court for the Eastern

District of Arkansas, on this 15th day of June 2020, by using the CM/ECF system, which
is designed to send notification of such filing to the following person:

M. Samuel Jones III.

Scott P. Richardson

Devin R. Bates

McDaniel, Richardson & Calhoun

MITCHELL, WILLIAMS, SELIG,

1020 West 4th Street, Suite 410

GATES & WOODYARD, PLLC

Little Rock, Arkansas 72201

425 West Capitol Avenue, Suite 1800

Little Rock, Arkansas 72201

scott@mrcfirm.com

sjones@mwlaw.com
dbates@mwlaw.com

Jay Bequette
Cody Kees
Bequette, Billingsley & Kees, P.A.
Attorneys at Law
425 West Capitol Avenue, Suite 3200
Little Rock, Arkansas 72201-3469

jbequette@bbpalaw.com
ckees@bbpalaw.com

Austin Porter Jr.