IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LITTLE ROCK SCHOOL DISTRICT                           PLAINTIFF

v.                    Case No. 4:82-cv-00866-DPM

PULASKI COUNTY SPECIAL
SCHOOL DISTRICT, ET AL                                 DEFENDANTS

EMILY MCCLENDON, ET AL.                                INTERVENORS

<u>Intervenors' Response to the District's Motion Regarding
the Burden of Proof</u>

The PCSSD and JNPSD motion sets forth 14 paragraphs and three exhibits and contends that their contents justify a ruling that Intervenors have the burden of proof regarding the achievement, discipline and monitoring issues. The districts assert that a contract approach applies. Intervenors deny that the factors cited, whether considered singly or as a whole, warrant this conclusion. The PCSSD and JNPSD approach ignores the decisional and other history of this case, including that the districts are seeking the modification by termination of a consent decree, which the PCSSD actively sought, requiring the implementation of Plan 2000 as the desegregation remedy for the PCSSD, after joining with Joshua in the formulation of that Plan. This response and the accompanying brief establish that PCSSD and JNPSD have the burden of proof. Intervenors

1

rely upon multiple legal concepts.

Intervenors respond:

[1] Intervenors deny that the contentions made in paragraphs (1.) through (14.) of the Motion warrant the result sought. As a first response, Intervenors note the districts' ignoring the reality that the appellate court for this Circuit has held in this case that PCSSD is a constitutional violator and has the burden of proof regarding compliance with the elements of Plan 2000, which became the desegregation remedy for the district by virtue of a consent decree. LRSD v. State of Arkansas, 664 F.3d 738 (8th Cir. 2011). This decision followed by about 11 years the decision in Jenkins v. State of Missouri, 216 F.3d 720, 725 (8th Cir. 2000) (*en banc*), cited by the districts in paragraph [7.]. In addition, the cited language of Jenkins did not discuss a consent decree, which a party is moving to terminate.

[2] Regarding Paragraph [1], Intervenors also state: "deny." There is no statement that the cited decisions discussed the parties' ability to establish enforceable remedial steps by settlement and consent decrees. The cited "flow from" text from the Milliken and Missouri v. Jenkins decisions is one source of remedial principles establishing the propriety of the agreed-upon remedies which became enforceable by reason of formation of consent decrees.

2

[3] Regarding paragraphs [2.] and [3.], Intervenors also state "deny." Properly construed, Brown v. Board of Education, 347 U.S. 483, 493-94 (1954) determined that PCSSD was "constitutionally deficient in the area of student achievement . . . ." Intervenors also state that enforceable consent decrees encompass these three Plan 2000 obligation categories.

[4.] Regarding paragraph [4.] intervenors deny the averments as stated and state the following. In responding to discovery, Intervenors focus was on the fact that the obligations in these three Plan 2000 categories are enforceable by reason of a consent decree encompassing an agreed upon plan. Given the districts' focus on the point, Intervenors have reconsidered and developed the view regarding Brown I stated in the preceding paragraph. See LRSD v. PCSSD, 921 F.2d 1371, 1380 (8thCir. 1990) (". . . already existing legal obligations for the equal and integrated education of black children.").

[5.] Regarding paragraph [5.], denied as stated. See paragraph [4.]. Intervenors also state that the enforceability of the obligations in these three areas is established by a "consent decree" falling within the various categories of documents said to be searched.

[6.] The implied import of paragraph 6 is denied. First. Nothing about the identification of the "Green factors" in that decision forecloses remedies

3

addressing other elements of school operations. Supreme Court decisions establish that the Green factors do not define the outer limit of permissible areas of remedies. See Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 18 (1971) ("among the most important indicia of a segregated system"; not the only indicia); Freeman v. Pitts, 503 U.S. 467, ---- (1992) ("It was an appropriate exercise of its discretion for the District Court to address the elements of a unitary system discussed in Green, to inquire whether other elements ought to be identified, and to determine whether minority students were being disadvantaged in ways that required the formulation of new and further remedies to insure full compliance with the court's decree.") Furthermore, nothing in these decisions foreclosed addressing such issues by an agreed upon plan and a consent decree.

[7.]  Paragraph [7.] is denied. This statement does not account for the Court of Appeals decision in this case affirming Judge Miller's approach to burden of proof (district subject to burden of proof). See paragraph [1.] above. In addition, the conclusion stated does not account for this case history: the district participates jointly with the class in formulating a remedial plan; the district secures its inclusion in a consent decree; and the district later moves to modify the consent decree by its termination, and is subject to the established rule that a party seeking to modify a consent

decree bears the burden of proof. Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 383-84, 390 (1992).

[8.] Paragraph [8.] is denied. These issues entered the case by way of agreed to, enforceable consent decrees. See the next paragraphs [9.] through [11.].

[9.] Since May 1, 1992, consent decrees have identified the desegregation remedy applicable to the PCSSD. Judge Wright's Order of May 1, 1992 [ Doc. 1587] established the remedy as the very comprehensive Interdistrict Plan of LRSD, PCSSD, and NLRSD (to a lesser extent) and a separate PCSSD plan. [At 4-14] The May 1, 1992 Order established consent decrees. Knight v. PCSSD, 112 F. 3d 953, 954 (8th Cir. 1997). The accompanying brief shows the process, mirroring the approach Brown II sought to engender, generally, which yielded the Interdistrict Plan. The plan addressed not only the Green factors, without highlighting them, but also achievement, discipline, monitoring and other topics. Significantly, the brief also demonstrates that the participants in formulating the plan, with knowledge of the "local school problems" evidenced in the phenomenon of transitioning to mixed race student and staff populations in schools, over almost 30 years, selected Plan provisions with support in the remedial principles set forth in Supreme Court decisions.

[10.] Judge Wright's Orders of February 22, 2000 and March 20, 2000 modified the consent decree to establish Plan 2000 as the desegregation remedy for PCSSD (and more recently also JNPSD). Her Honor found that its content reflected the joint effort of Joshua and PCSSD and that it would be a more effective plan, which the Court would enforce if necessary. [Docs. 3337 at 4, 7, 3347] Judge Wright's ruling followed the filing of "PCSSD's Motion for Approval of Plan 2000" [3309 (Nov. 17, 1999)] and "PCSSD's Brief in Support of Plan 2000" [3310 (Nov. 17, 1999]. These papers establish with absolute clarity that PCSSD requested Judge Wright to modify the existing "consent decree" to establish Plan 2000 as the desegregation remedy. The PCSSD papers do not discuss the contract approach now advanced by the districts.

[11.] This is another instance of failing to recognize the importance of voluntary undertakings. On this occasion, it is PCSSD's and JNPSD's omission. Compare <u>LRSD v. PCSSD</u>, 921 F.2d 1371, 1383 (8th.Cir. 1990) (Part II, paragraph 2).

[12.] Paragraph [9.] is denied. This matter involves a consent decree requiring implementation of Plan 2000 provisions. As noted, PCSSD and JNPSD as the parties seeking to modify the consent decree by its termination has the burden of proof. <u>Rufo, supra.</u>

6

[13. Paragraph 10. Denied in part as written. In this proceeding, Intervenors maintain that PCSSD and JNPSD have the burden of proof to show compliance with all elements of the cited and other Plan 2000 obligations at issue. Intervenors also maintain that PCSSD and JNPSD will be unable to do so. With this preface, Intervenors accept the submitted sentence.

[14. Paragraph 11 is denied. The situation cited is distinguishable. The LRSD plan, there at issue, placed the burden of proof on the party challenging compliance. That is not the case here.

[15.] Paragraph 12 is denied. There is no missing link in the legal approaches on which Intervenors rely.

[16.] Paragraph 13. PCSSD and JNPSD filed a brief.

[17.] Paragraph 14. PCSSD and JNPSD attached the documents listed. The documents do not undermine any Intervenor legal approach, as discussed above and in the accompanying brief. The documents further evidence the districts' erroneous focus, given the history of the case. The documents in Exhibit C do relate to PCSSD's long ignoring <u>Brown I and Brown II</u> and its very poor compliance once some steps began.

[18.] WHEREFORE clause. The requested relief should be denied.

[19.] Considerations of fairness may also be considered in allocation of

the burden of proof. Keyes v. School District No. 1, 413 U.S. 189, 209 (1973). Two factors apply here. PCSSD and JNPSD have superior access to documents and the personnel involved in Plan 2000 implementation. Over time, PCSSD was, in an overall sense, a serious "constitutional violator." This factor may stand alone, or further support a ground previously discussed.

[20.] Issues regarding termination of this Court's supervision of Plan 2000 requirements have, in this case, been approached or resolved by reference to unitary status principles. [4507 at 1-2; LRSD, 664 F.3d at 748-757. That should continue to be the case. E.g., 5502 (July 18, 2019); 5599 (May 11, 2020).

[21.] PCSSD never challenged the content of the consent decrees as unlawful. How could the district have done this? Its representatives, in each instance, participated voluntarily with Joshua in the formulation of the remedial standards. Its representatives, in each instance, participated voluntarily with Joshua in seeking Court approval of the agreed upon standards. These joint efforts were successful in each instance, with court approval and the formulation of a consent decree occurring. The contract approach now advanced is wholly without merit, and waived in any event.

## Conclusion

The districts should also have the burden of proof on the achievement, discipline and monitoring issues.

Respectfully submitted,

/s/ Austin Porter, Jr.
Austin Porter, Jr. - # AB86145
PORTER LAW FIRM
323 Center Street, Suite 1300
Little Rock, Arkansas 72201
501-244-8200

Robert Pressman
22 Locust Avenue
Lexington, MA  02421
781-862-1955

Shawn G. Childs
Lawrence A. Walker
JOHN W. WALKER, P.A.
1723 Broadway
Little Rock, Arkansas 72206
(501) 374-3758
(501) 374-4187