IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| **LITTLE ROCK SCHOOL DISTRICT** | | **PLAINTIFF** |
| V. | NO. 4:82-cv-866-DPM | |
| **PULASKI COUNTY SPECIAL SCHOOL DISTRICT NO. 1, ET AL.** | | **DEFENDANTS** |
| **EMILY McCLENDON, ET AL.** | | **INTERVENORS** |

**PCSSD'S AND JNPSD'S REPLY IN SUPPORT OF THEIR
MOTION *IN LIMINE* TO PROPERLY ALLOCATE THE BURDEN OF PROOF**

Pulaski County Special School District (PCSSD) and Jacksonville North Pulaski School District (JNPSD) for their Joint Reply in Support of their Joint Motion *in Limine* to properly allocate the burden of proof at the upcoming trials, state:

Looking past all of the tangential history and inadmissible hearsay, despite its length Intervenors' response at no point identifies any opinion finding that PCSSD violated the Constitution in the areas of student achievement, discipline, and monitoring. In the joint Motion *in Limine*, PCSSD and JNPSD wrote:

> With half a century's worth of settlements, decrees, stipulations, legal opinions, and agreements to review in preparing this motion, undersigned has engaged in a good faith search for any legally binding document showing unconstitutional conduct by PCSSD in the areas of student achievement, discipline, and monitoring. None could be found. ***To rebut this motion, Intervenors must identify this critical missing link which is the keystone to allocating the burden of proof at the trial of this matter***.

(Doc. 5611, p. 12) (emphasis added). Conspicuously absent from Intervenors' response is anything that identifies this critical missing link. Shouldering the Districts with the burden of proof is warranted where there is a presumption of unconstitutionality, which stems from a past finding of unconstitutionality. Intervenors did not identify any such finding with regard to student

achievement, discipline, or monitoring. Thus, they have conceded that there is nothing in this record which shows that the Districts have the burden on these issues. For this reason alone, the districts' motion *in limine* should be granted.

The Supreme Court has stated that the causal presumption of unconstitutionality diminishes "[a]s the *de jure* violation becomes more remote in time." *Freeman,* 503 U.S. at 496, 112 S.Ct. 1430; *see also id.*, 503 U.S. at 506, (Scalia, J., concurring) ("the rational basis for the extraordinary presumption of causation simply must dissipate as the *de jure* system and the school boards who produced it recede further into the past"); *Jenkins III,* 515 U.S. at 118, 115 S.Ct. 2038 (Thomas, J., concurring); *Jenkins v. Missouri*, 216 F.3d 720, 744 (8th Cir. 2000) (Loken, J., dissenting).

Advocating the exact opposite of the aforementioned precedent, the Intervenors urge this Court to find a causal presumption of unconstitutionality that ***strengthens and grows*** as the *de jure* violation becomes more remote in time. The *Zinnamon* decree and Judge Woods's 1984 opinion in this case spelled out very discrete and particularized constitutional violations. These did not include student achievement, discipline, and monitoring. Intervenors now allege that the presumption of unconstitutionality stemming from these old decisions has expanded over the years to now cover issues not included in those original findings. In other words, Intervenors would have the presumption of unconstitutionality grow over the decades, not diminish. Such a legal fiction expressly contrary to the Supreme Court precedent cited above is suspect.

Intervenors acknowledge that student achievement, discipline, and monitoring entered the case in the 1989 settlement. (Doc. 5643, p. 25). Although Intervenors do not seem to appreciate it, this is the fatal concession to their argument that the Districts bear the burden of proof. Anything that entered the case in the course of settlement discussions and settlement documents does not

necessarily equate to a constitutional violation. As explained in the districts' original brief, a proposal by parties "does not reflect the considered judgment of a judicial officer: it has been forged by them alone as an adjustment of conflicting claims and is not a tempered determination of fact and law after the annealment of an adversary trial." *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 538 (5th Cir. 1978) ("Such a consent decree, however, is not identical in effect to the conclusion reached by a judge after a trial."). The Eighth Circuit's 1990 opinion in this case confirms that this applies to the Districts: the 1990 agreements were "settlements" they were not "contested matter." *LRSD 1990*, 921 F.2d 1371, 1383 (8th Cir. 1990). In other words, student achievement, discipline, and monitoring are issues stemming from a settlement document approved by the Court in 1990, not a finding of unconstitutionality. The most recent finding of unconstitutionality was Judge Woods' 1984 opinion. *LRSD v. PCSSD*, 584 F. Supp. 328, 353 (E.D. Ark. 1984).

Intervenors' response is problematic in that it makes no distinction between Plan 2000 and the *Zinnamon* decree:

> Judge Henry Woods found that "[t]he Pulaski County Special School District Board has failed to demonstrate any efforts or intentions to comply with the directives of the *Zinnamon* [now Plan 2000] decree or to eliminate the last vestiges of segregation as required by Judge Henley's order." 584 F.Supp at 337. That still holds true today.

(Doc. 5643, p. 8) (bracketed text added by Intervenors). This statement would make sense if Plan 2000 lined up on all fours with the *Zinnamon* decree. However, it does not. For example, the *Zinnamon* decree contains no finding that PCSSD was constitutionally deficient in the areas of student achievement, discipline, and monitoring.

Intervenors do identify one place in Judge Woods' 1984 opinion that mentions "curricular and extracurricular programs." Judge Woods did not elaborate on what this meant, and the Eighth Circuit did not provide any additional insights. Presumably, because the reference to "curricular"

3

is conjoined to "extracurricular" this refers to programs outside the classroom setting; meaning programs such as gifted and talented or Advanced Placement classes. These are areas where PCSSD has been unitary for a long time. Either way, it is not possible to determine exactly what this statement describes. This points out another problem with forcing the Districts to prove they have remedied what was never found to be a constitutional violation: there is no standard or description of the constitutional violation to guide the analysis. The Districts would be required to remedy a problem that was never found to exist.

Intervenors make the core assumption that because PCSSD was found to be a constitutional violator in some respects, for example in staffing, it is unconstitutional in all other respects as well. In other words, a hint of unconstitutionality spoils the entire pot. This is seen where Intervenors' wrote that "[t]he PCSSD was found to have been a constitutional violator. This is a designation that the district cannot easily shed." (Doc. 5643, p. 15). PCSSD was indeed found to be a constitutional violator, but only in some areas. Taking Intervenors' core assumption to its logical conclusion leads to some bizarre outcomes. The reasoning goes that because PCSSD was found to be unconstitutional in the area of staffing, then it must also have been unconstitutional in the area of discipline. But why stop there? Reasoning with this premise, arguendo, there would be no reason that PCSSD is not also unconstitutional in providing due process if Intervenors can relate that concept back to desegregation. The same could be said for First, Fourth, and Eighth Amendment constitutional rights. Under Intervenors' logic, PCSSD would then be unconstitutional in its compliance with all other areas of the constitution. Or more likely not every area of the constitution, but any area that Intervenors claim. Advocating for such a boundless presumption of unconstitutionality smacks of "scope creep."

Although not using the word "waiver," Intervenors have essentially argued that PCSSD waived the ability to make this argument because of the way that Judge Miller applied the burden

4

of proof in the 2010 trial. However, this issue was not brought before Judge Miller or the Eighth Circuit, so it was not briefed for their consideration. Also, as the Districts pointed out in their initial brief, over the last ten years the posture of this case has changed substantially. Many areas of Plan 2000 have been stipulated or adjudicated to be unitary and released from Court supervision. Setting aside the issue of facilities, the issue of staffing—the last tendril of constitutional malfeasance, traceable over the decades by the trellis of settlements culminating in Plan 2000—came to an end in 2017. (Doc. 5306). Staffing was a *Green* factor and one traceable back to constitutional findings in *Zinnamon*, but student achievement, discipline, and monitoring are not. And while facilities is traceable back, the facilities inquiry is extremely narrow at this juncture. (Doc. 5619). All of that emphasizes that the instant motion has tremendous impact at present, an impact that would not have been as crucial a decade ago. Further, this issue is intertwined with this Court's continuing subject matter jurisdiction and cannot be waived. (Doc. 5611, p. 10).

Intervenors failed to rebut this motion by identifying a finding of unconstitutionality in the areas of student achievement, discipline, or monitoring. Therefore, PCSSD and JNPSD respectfully request that the Court enter an order setting the proper allocation of proof in this matter: i.e. that (as they did in 2001 versus LRSD) the Intervenors bear the burden of proof to demonstrate non-compliance in the areas of student achievement, discipline, and monitoring.

Respectfully submitted,

Devin R. Bates (2016184)
M. Samuel Jones III (76060)
Amanda G. Orcutt (2019102)
MITCHELL, WILLIAMS, SELIG,
  GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
Phone: (501) 688-8800
Fax: (501) 688-8807
aorcutt@mwlaw.com
dbates@mwlaw.com
sjones@mwlaw.com

*and*

Jay Bequette (87012)
Cody Kees (2012118)
BEQUETTE BILLINGSLEY & KEES, P.A.
425 West Capitol Ave., Suite 3200
Little Rock, Arkansas 72201
Phone: (501) 374-1107
Fax: (501) 374-5092
jbequette@bbpalaw.com
ckees@bbpalaw.com

*Attorneys for Pulaski County Special School District*

And

Scott P. Richardson (2001208)
MCDANIEL, WOLFF &BENCA, PLLC
1307 West 4th St.
Little Rock, AR 72201
501.954.8000
scott@mwbfirm.com

*Attorney for Jacksonville/North Pulaski School District*