## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

**LITTLE ROCK SCHOOL DISTRICT,** *et al.*                              **PLAINTIFFS**

**v.**                          **No. 4:82-cv-866-DPM**

**NORTH LITTLE ROCK SCHOOL DISTRICT,**                    **DEFENDANTS**
et al.

**LORENE JOSHUA, et al.**                              **INTERVENORS**

**BRIEF OF LAW IN SUPPORT OF MOTION FOR UNITARY STATUS**

Jacksonville/North Pulaski School District (JNPSD), through its attorneys Scott P. Richardson, states as follows for its Brief of Law in Support of Motion for Unitary Status in Staffing, Academics, Facilities, and Monitoring:

Much writing has already been done regarding the unitary status of JNPSD and PCSSD. JNPSD incorporates by reference it's Notice of Unitary Status and Brief in Support filed nearly a year ago. DE ## 5534, 5535. JNPSD also agrees with and incorporates by reference PCSSD's Motion for Unitary Status and Brief in Support as applicable. DE ## 5621, 5622. In particular, JNPSD agrees with PCSSD's discussion of the applicable legal standards (DE # 5622 p. 6-10), the proper allocation of the burden of proof in this case (DE # 5622 p. 10), and the limited role of "the achievement gap" in this case (DE # 5622, p. 14-20) without limitation, JNPSD assumes the argument in these sections as background to this Motion and Brief.

### 1.    Request for Relief Under Rule 60(b)(5)

JNPSD requests that it be declared unitary and released from Plan 2000 and court supervision in the remaining areas: academics, student discipline, and staffing.

JNPSD further requests that it be released from Plan 2000's monitoring provisions. JNPSD acknowledges that its facilities remain in the status established by the Court's September 25, 2018, Order. DE # 5445. In the unlikely event that the Court declines to release JNPSD in these remaining areas, JNPSD requests that its obligations be modified to directly address whatever remaining constitutional violations the Court finds and to address changed circumstances as demonstrated in the proof at trial rather than continue Plan 2000.

Federal Rule of Civil Procedure 60 provides as follows:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. Pro. 60(b). JNPSD asserts that (a) it has satisfied the terms of Plan 2000, (b) that applying Plan 2000 prospectively is no longer equitable, and (c) that many other reasons justify relieving JNPSD from Plan 2000, primarily, that there is no evidence of any intentional discrimination in the provision of education to black scholars in JNPSD; that is, whatever prior violation of the constitution justified continuing court supervision no longer exists in JNPSD.

Rule 60 requires that courts evaluating release of a long-standing, institutional reform decree must apply "a flexible standard that seeks to return control to state and local officials as soon as a violation of federal law has been remedied." *Horne v. Flores*, 557 U.S. 433, 450-51, 129 S.Ct. 2579, 2595 (2009) (internal quotations

omitted).

A motion based on plan compliance (that is, that the terms of the judgement have been satisfied) require a reviewing court to examine whether the District has substantially complied with the obligations in its desegregation plan. *LRSD*, 664 F.3d 738, 744-745 (8th Cir. 2011). When weighing whether a District should be released from a consent decree on the ground of "inequity of continued oversight, a court must determine not only whether changed circumstances exist, but also whether the 'objective' of the decree—that is, whether compliance with federal law—has been attained." *Jackson v. Los Lunas Community Program*, 880 F.3d 1176, 1201 (10th Cir. 2018). In other words, if JNPSD is operating "in compliance with federal law"—here the 14th Amendment's equal protection clause—it must be released from Plan 2000 whether that was achieved through compliance with Plan 2000 or for other reasons. *Id*. at 1202.

Whether the motion is based on a consent decree or a judicial decree without input from the parties, it is still a court decree and the standard for release is the same. *Jackson*, 880 F.3d 1176, 1201-04.  JNPSD is not aware of any authority for the proposition that a federal court may retain control over a school district that is operating in conformance with the Constitution.[1]

---

[1]     We are aware of the history in this case of enforcing consent decrees as "contracts" without regard to whether they flow from or maintain a real connection to a pre-existing violation of the Constitution. In those prior proceedings, however, no one has challenged the practice as JNPSD and PCSSD do now.

**2.    Background   of   PCSSD's   Desegregation   Obligations   in Academics and Discipline**

During discovery in this case PCSSD's counsel located and shared with the parties' documents from the original *Zinnamon* case.  Those documents demonstrate clearly that there has never been a finding of any violation of the 14th Amendment in the areas of academics or discipline. Quite the opposite. The original *Zinnamon* Complaint filed on August 7, 1968, was never amended, it is the sole operative complaint in this case against PCSSD. Ex. D, Complaint. It contained no allegations regarding discrimination in administration of student discipline. As for academics, it alleged only that "[s]everal high schools operated by defendants for Negro pupils are not accredited by the N[orth]  C[entral]  A[ssociation]  of  Secondary  Schools  and Colleges, while all of the white high schools are accredited by the North Central Association." Ex. D, p. 3-4. PCSSD's August 27, 1968, Answer asserted the following:

> "one or two schools which are located in areas where the residents are predominately negro are attended mostly by negro students and that these schools are not fully accredited by the North Central Association of Secondary Schools. However, the defendants are now in the process of bringing these schools up to requirements for accreditation. There are no all-white schools within the District which are accredited.

Ex. E, Answer para. VII. Judge J. Smith Henley presided over the trial of this complaint and found: "that the District is to be commended for having made sincere and  realistic  efforts  to  meet  its  constitutional  obligation  in  the  field  of  school desegregation." Ex. F, Order p. 5-6.  He described PCSSD's efforts at desegregation as producing "substantial progress." *Id.* Not once did he find any violation of the Constitution in the area of academics.

4

The only time student discipline was brought up in the case was on a Petition filed November 28, 1973. This related to the expulsion of a student from Jacksonville High School a month before. The next day, November 29, 1973, Judge Henley entered an order "On motion of the plaintiff" dismissing the Petition without prejudice. It was never refiled. The record does not reveal why the Petition was dismissed. But clearly there was never a finding of a constitutional violation by PCSSD in student discipline.

It is a "bedrock principle that 'federal-court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate the Constitution or does not flow from such a violation.'" *Jenkins*, 515 U.S. 70, 97-98, 115 S.Ct. 2038, 2054 (1995). "The vestiges of segregation that are the concern of the law in a school case may be subtle and intangible but nonetheless they must be so real that they have a causal link to the *de jure* violation being remedied." *Id.* at 97.

Not once in the fifty-two-year history of this case has there been a finding of any constitutional violation in PCSSD (or JNPSD) in the areas of academics or student discipline. In JNPSD's Brief in Support of its Notice of Unitary Status it noted that the constitutional violation in academics and discipline had been "lost in the mists of time." It is now clear that it was never lost. It never existed. This indisputable legal fact bears a legal consequence: that portion of Plan 2000 that springs from something other than a violation of the federal constitution must be dismissed.

3.    **Other Potential Causes of The Achievement Gap and Differences in Discipline Rates**

During PCSSD's case the Intervenors made much of the difference in performance on the State's ACT Aspire test between black and white (or non-black) students (i.e. the achievement gap) and the difference in discipline rates (suspensions and expulsions) between black and white (or non-black) students. It was as if discrimination could be the only possible explanation for the differences. Not so.

There are potentially numerous factors external to the school systems that could cause gaps in student achievement. *Hampton v. Jefferson County Bd. of Educ.*, 102 F.Supp.2d 358, 366-367 (W.D. Kent. 2000)(noting that "[m]ost federal courts looking at the achievement gap issue have declined to even consider it as a vestige" of past segregation). Disproportionate rates of poverty being chief among the potential causes. *Wessmann v. Gittens*, 160 F.3d 790, 803-804 (1st Cir. 1998); *U.S. v. City of Yonkers*, 197 F.3d 41, 54-55 (2nd Cir. 1999) (noting numerous factors that potentially affect achievement gap); *Coalition to Save our Children v. State Bd. of Educ. of State of Del.*, 90 F.3d 752 (3rd Cir. 1996); *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 330-332 (4th Cir. 2001); *Cavalier ex rel. Cavalier v. Caddo Parish Sch. Bd.*, 403 F.3d 246, 258 fn. 14 (5th Cir. 2005); *People Who Care v. Rockford Bd. of Educ.*, 111 F.3d 528, 537-538 (7th Cir. 1997); *Missouri v. Jenkins*, 515 U.S. 70, 118-119 (1995)(J. Thomas, concurring); *Berry v. Sch. Dist. of City of Benton Harbor*, 195 F.Supp.2d 971, 980 (W.D. Mich. 2002)(crediting testimony that the "black-white achievement gap exists in every school district in the United States, including those

6

never found to have operated a segregated system"). Indeed, academic studies have long recognized the significant impact that poverty has on student achievement and that poverty disproportionately affects black students. Armor, David J., <u>Forced Justice</u> (1995). Other risk factors affect students' academic performance including parent IQ, parent educational attainment, family structure, and parental instruction or cognitive stimulation. Armor, David J., <u>Maximizing Intelligence</u> p. 6 (2005). The effects of these factors on academic achievement differences have been documented in Pulaski County in this case. DE # 4704-4 Achievement Trends and Gaps in Pulaski County School Districts. Indeed, desegregation is not generally associated with improved academic achievement for black students. Armor, David J., <u>Forced Justice</u> p. 98-99 (1995)("To the extent that black achievement has improved since 1970, the improved socioeconomic condition of the black family and federal compensatory programs appear to be considerably more important contributors than school desegregation."). David J. Armor, Desegregation and Academic Achievement, in <u>School Desegregation in the 21st Century</u>, p. 147-187 (C.H. Rossell, D.J. Armor, & H. Walberg eds, 2002). There is simply no basis in research or in law for concluding that any level of the achievement gap correlates to inequality in educational opportunity or compliance with a given desegregation plan. *See LRSD 2002*, 237 F.Supp.2d 988, 1036-1040 (E.D. Ark. 2002).

The same analysis regarding any academic achievement gap applies to alleged disparities in student discipline rates. *Hampton*, 102 F.Supp.2d at 366 fn. 12; *LRSD 2002*, 237 F.Supp.2d at 1054-1055; *see also* Charles M. Achilles, Racial Disparities in

School Discipline, <u>School Desegregation in the 21st Century</u>, p. 235-266 (C.H. Rossell, D.J. Armor, & H. Walberg eds, 2002).

### 4.    JNPSD is Unitary in Student Discipline

JNPSD's explanation of its unitary status in its Brief in Support of Notice of Unitary Status remains. DE ## 5535 p. 8-13.  Discovery has not changed any of the assertions, except to bolster JNPSD's assertion of unitary status.  JNPSD should be released from section F of Plan 2000 because it has substantially complied with section F (i.e. the judgment has been satisfied), because applying it prospectively is no longer equitable, and because other reasons justify relief. Fed. R. Civ. P. 60(b)(5) & (6).

### 5.    JNPSD is Unitary in Academics

Again, JNPSD's explanation of its unitary status in its Brief in Support of Notice of Unitary Status remains. DE ## 5535 p. 14-19. JNPSD should be released from section M of Plan 2000 because it has substantially complied with section M (i.e. the judgment has been satisfied), because applying it prospectively is no longer equitable, and because other reasons justify relief. Fed. R. Civ. P. 60(b)(5) & (6).

### 6.    JNPSD Has Complied with the Remaining Staffing Portion of Plan 2000

It is not clear from what constitutional violation this obligation flows. Even so, JNPSD has enhanced its efforts to provide these incentives, its advertising for the incentives, and recruitment efforts. JNPSD should be declared unitary in this remaining area as well.

7.    **Monitoring**

As noted in Ms. Powell's report and JNPSD's Notice of Unitary Status a number of monitoring measures were implemented to track its compliance with the remaining desegregation obligations. JNPSD would request that as it is released from Court supervision in these remaining areas, that it would be released from the monitoring obligations as well.

8.    **Conclusion**

JNPSD has substantially complied with Plan 2000, remedied whatever constitutional violations may have existed in the areas of student discipline and academics. It has also substantially complied with its remaining obligation in the area of staffing as well.  Moreover, changed circumstances since 1999 (when Plan 2000 was originally adopted) support the release of the District. JNPSD asserts that (a) it has satisfied the terms of Plan 2000, (b) that applying Plan 2000 prospectively is no longer equitable, and (c) that many other reasons justify relieving JNPSD from Plan 2000, primarily, that there is no evidence of any intentional discrimination in the provision of education to black scholars in JNPSD; that is, whatever prior violation of the constitution justified continuing court supervision no longer exists in JNPSD.

WHEREFORE, JNPSD respectfully requests that it be declared fully unitary and released from Plan 2000 and court supervision with the sole exception of its facilities obligations, and for all other relief to which it is entitled.

Respectfully Submitted,


By:     Scott P. Richardson (2001208)
        McDaniel, Wolff, & Benca, PLLC
        1307 West 4th St.
        Little Rock, AR 72201
        501.954.8000
        866.419.1601 fax
        scott@mwbfirm.com

        Attorney for Jacksonville/North Pulaski
        School District