IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LITTLE ROCK SCHOOL DISTRICT                                                        PLAINTIFF

VS.                                    CASE NO. 4:82-CV-00866 DPM

PULASKI COUNTY SPECIAL SCHOOL
DISTRICT, ET AL.                                                                 DEFENDANTS

EMILY MCCLENDON, ET AL.                                                          INTERVENORS

INTERVENORS' BRIEF IN SUPPORT IN OPPOSITION TO THE
SEPARATE DEFENDANT'S JACKSONVILLE/NORTH PULASKI SCHOOL DISTRICT'S
MOTION *IN LIMINE*

Introduction

Separate defendant Jacksonville/North Pulaski School District has filed a motion *in limine* for the following reasons: a) limiting the testimony of Rep. Joy Springer to matters based on personal knowledge, b) to prohibit the participation of Robert Pressman, c) prevent testimony of arrests of students on campus, d) prohibit testimony relative to implicit bias. The Court should deny the separate defendant's motion *in limine* for the reasons as stated herein.

Statement of Law

Jacksonville/North Pulaski School District attempts to limit the trial of this matter "[f]rom its creation in November 2014, through its final detachment on June 30, 2016, to today." [**Doc. # 5688, ¶ 1**]. What the Jacksonville/North Pulaski School District fails to realize is that it is a child of the Pulaski County Special School District, and that the Court has the obligation to judge the child by "visiting the iniquity of the fathers on the children. . . ." **Exodus 34:7**. Therefore, Jacksonville/North School District's compliance with Plan 2000 is not based solely on what it did

1

from 2014 to the present, but what the Pulaski County Special School District has done prior to Jacksonville/North School District's conception.

### Testimony of Joy Springer

Intervenors are not offering Joy Springer to testify in this matter as an expert. As the Court is well aware, Ms. Springer has been the lead monitor for African-American children in the case at bar for almost thirty (30) years. Ms. Springer has a wealth of knowledge and experience that she has gained from her many years of experience in monitoring the efforts of the various school districts that were involved in this case. Jacksonville/North Pulaski argues that Ms. Springer is only able to provide testimony based on her "personal knowledge," which is not the case.

Rule 701 of the Federal Rules of Evidence governs the testimony of lay witnesses. Rule 701 provides that:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a)   rationally based on the witness's perception;
>
> (b)   helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c)   not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Based on Rep. Springer's extensive work in this case, that has allowed her to gain extensive knowledge, her testimony will certainly be based on her perception, and will be helpful in assisting the court in determining a fact in issue, and is not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Through her many years of monitoring initially Pulaski County Special School District, thereafter also the Jacksonville/North School District, Ms.

2

Springer has attended hundreds of meetings with district officials, and has reviewed thousands of pages of documents and reports.

> The district court has broad discretion in determining whether to admit opinion testimony and we overturn a ruling only for abuse of discretion. Brewer v. Jeep Corp., 724 F.2d 653, 657 (8th Cir. 1983); Scheib v. Williams-McWilliams Co., 628 F.2d 509, 511 (5th Cir. 1980). A lay witness' testimony in the form of opinions or inferences need only be rationally based on perception and helpful to a determination of a fact in issue. Greenwood Ranches, Inc. v. Skie Construction Co., 629 F.2d 518, 522 (8th Cir. 1980); *see also* Fed.R.Evid. 701. *Personal knowledge or perception acquired through review of records prepared in the ordinary course of business, or perceptions based on industry experience, is a sufficient foundation for lay opinion testimony. See, e.g.* Farner v. Paccer, Inc., 562 F.2d 518, 520 (8th Cir. 1997) (allowing lay opinion testimony of truck operator with extensive experience in the industry regarding the proper use of safety chains); Gravely v. Providence Partnership, 549 F.2d 958, 961 (4th Cir. 1977) (allowing lay opinion testimony of company's president regarding relative safety of conventional versus spiral staircase).
>
> The railroad executives' testimony, based on knowledge derived from supervising railroad operations, years of experience in the industry, and review of employee accident reports prepared in the ordinary course of business, satisfies the foundation requirements for lay opinion testimony. The fact that some knowledge was gained from employee accident reports does not, in this case, render the testimony hearsay. Given the close question presented by the safety issue in this case, we believe this testimony was highly relevant. We conclude that the district court's failure to consider this evidence was an abuse of discretion.

Burlington Northern Railroad Company v. State of Nebraska, et al., 802 F.2d 994, 1004-1005 (8th Cir. 1986) (emphasis added); *see also*, American Bank of St. Paul v. TD Bank, N.A., 713 F.3d 455, 464-465 (8th Cir. 2013).

In the case at bar, Joy Springer has been involved in this case for almost 30 years, and has a great deal of experience in monitoring the school districts' performance when it comes to Plan 2000. Her testimony will be helpful in assisting the court to decide the fact in issue – the district's effort in complying with Plan 2000. Therefore, she should be permitted to testify in this matter, and offer lay opinions pursuant to Rule 701 of the FRCP.

Participation of Robert Pressman by Telephone

This issue has already been put to bed by the Court. Jacksonville/North Pulaski contends that technical difficulties made it hard for Mr. Pressman's participation, which was not the case. Although there were brief moments when the Court requested Mr. Pressman to repeat himself, these were far and in between. The Court limited Mr. Pressman's participation to that of making arguments. Mr. Porter conducted all of the examination of witnesses – direct and cross, with the exception of the AVID Expert, which was conducted by Shawn Childs. Mr. Porter made some arguments, with Mr. Pressman conducting the lion share of the arguments. Mr. Pressman has extensive experience and knowledge of this case, and his participation has been invaluable, and extremely beneficial to the intervenors.

Evidence of Campus Arrests

Jacksonville/North Pulaski School District is requesting the Court to bar the Intervenors from mentioning students who have been arrested on campus. There has been much discussion about the "school-to-prison pipeline." In an email that was sent to many educators (including Superintendent Bryan Duffie), courthouse staff, law enforcement officials, and others discussing this issue of school-to-prison pipeline. In referring to the JDAI meetings, Martha O. Carder stated, "[m]uch discussion was had about efforts to reduce the number of school-based arrests. Ultimately, it was decided that Judge Warren would reach out to the Jacksonville North Pulaski School District, Jacksonville Police Department and relevant stakeholders to facilitate meetings aimed at reduction of school-based arrests." (**See Exhibit "A"**).

During Jacksonville/North Pulaski County Planning Meeting that took place on September 27, 2018, there was discussions that centered around truancy. It was mentioned by Renee Parker that when a child has missed five (5) days of school, a letter is sent to the home. When the child

has missed ten (10) consecutive days, a letter is sent to the prosecuting attorney. (**See Exhibit "B", JNPSD00005382**).  During the October 25, 2018 District Leadership Strategic Planning Renee Parker reported to the team that the school registrar often calls the courts to get a status on truancy hearings. (**See Exhibit "C" JNPSD00005422**).  Ms. Biggs mentioned that she felt a strong need to add more security to her building. (**See Exhibit "D" JNPSD00005458**).

Implicit Bias

Undersigned counsel has shared his experience with a white high school counselor when asked about possible career choice.  While in the 11th grade at McClellan High School back in 1977, this counselor asked Mr. Porter what he would like to become.  Porter advised that he wanted to become a lawyer.  The counselor advised Porter that he needed to consider a career choice that required working with his hands.  This implicit bias served as a motivator, rather than a deterrent. Unfortunately, many white teachers still have these same types of stereotypical views about African American children, and in particular African American males.  The testimony of Chris Foy really brought this home, because it demonstrated that he was not challenged at Mills University.  It was only until he went to Donaldson Scholars program, after graduating from Mills, where he was challenged and motivated, and saw his self-worth.

Jacksonville/North Pulaski School District has conducted several District Leadership Strategic Meetings.  During some of the District Leadership Strategic Meetings conducted in 2020, Associate Superintendent Dr. Tiffany Bone has mentioned implicit bias, and the book *Whistling Vivaldi*, which as the Court knows was talked about extensively by Dr. McNulty during the Pulaski County Special School District's unitary status hearing.

During the January 27, 2020 meeting, Dr. Bone mentioned the book *Whistling Vivaldi*, specifically talking about Chapters 1-3.  During this meeting the following remarks were made:

5

> Some of the remarks made were, 'Some students' are impacted by their own self-esteem.  Dr. Jones shared an incident she had with a high school counselor.  She had a 3.8 GPA, but yet the counselor did not encourage her to apply to Emory.  This was discouraging to her, and she remarked that we should support every student run after their dream.  She also said that she ignored the counselor's advice, applied to Emory anyway, and was accepted.  She decided on a different school, but she didn't feel like the counselor represented her well because of her race and a stereotype.  Ms. Biggs shared a story where her son was looked at differently because of his hairstyle.

Also, Dr. Bone led a lengthy discussion about implicit bias, and asked the team to write down the first three (3) words that come to mind when asked "what does poor look like?"

See **Exhibit "E"**.

In a District Leadership Meeting that took place on February 10, 2020, Dr. Bone led a discussion about the book *Whistling Vivaldi: How Stereotypes Affect Us and What We Can Do*. "Dr. Bone asked the group to share their own experiences they [sic] may have resulted from a stereotype, and then asked what they were actually doing in the buildings to address possible bias in the classroom."  See **Exhibit "F" JNPSD00005421**.  Also, during a District Leadership Meeting that took place on February 24, 2020, "the book" was again discussed, and Dr. Bone asked the group "[w]hat is your level of comfort in sharing and discussing racial issues in this group?"  Dr. Bone noted the following remarks were shared:[1]

- Uncomfortable – The book shows that everyone has experienced stereotyping.
- Most of our teachers are white, middle-class females, so if we all have a bias, so how can or can we reflect on how these affect our students?
- White people have a fear of being perceived as racist.  Be honest without succumbing to fear.

See **Exhibit "G"**.

---

[1] There was a total of 16 comments noted by Dr. Bone.

Jacksonville/North Pulaski School District now wants to bar this implicit bias testimony, which district officials concede, as they must, still exists not only within their school district, but society at large.  Certainly, this evidence is relevant regarding consideration of achievement and discipline outcomes in the district. Why else would Assistant Superintendent Bone include three discussions of implicit bias in leadership committee meetings, and inquire about "what were they actually doing in the buildings to address possible bias in the classroom?" **See Exhibit "F", Bates No. JNPSD00005421**.  as to whether the district has complied with Plan 2000.  Although the following case is one that involves employment discrimination, it certainly has relevancy to the case at bar.

The court in Estes v. Dick Smith Ford, Inc., 856 F.2d 1097 (8th Cir. 1988) stated that a "plaintiff's ability to prove discrimination indirectly, circumstantially, must not be crippled by evidentiary rulings that keep out probative evidence because of crabbed notions of relevance. . . ." Id. at 1103.  In Riordian v. Kempiners, 831 F.2d 690 (7th Cir. 1987), Judge Posner explained:

> Defendants of even minimal sophistication will neither admit discriminatory animus nor leave a paper trail demonstrating it . . .  The law tries to protect average and even below-average workers against being treated more harshly than would be the case if they were a different race . . . , but it has difficulty achieving this goal because it is so easy to concoct a plausible reason for . . . firing . . . a worker who is not superlative.

Id. at 697-98.

The Montgomery County Board of Education decision is significant for two reasons.  *First*, the Court notes that faculty desegregation  is  required and will also be a stark change. [ 395 U.S. at 229].  *Second*, Justice Black's decision for a unanimous Court, well-describes  important aspects of the roots and branches of the  required, longstanding segregated  and discriminatory educational system.

> [M]any others States had for many years maintained a completely separate system of schools for whites and nonwhites, and the laws of these states, both civil and criminal, had been written to keep this segregated system of schools inviolate. The practices, habits, and customs had for generations made this segregated school system a fixed part of the daily life and expectations of the people. Recognizing these indisputable facts, we neither expected nor ordered that a complete abandonment of the old and adoption of a new system be accomplished overnight. The changes were to be made 'at the earliest practicable date' and with 'all deliberate speed.': *Id.*, at 300, 301, 75 S.Ct. at 756. We were not content however to leave this task in the unsupervised hands of local school authorities, trained as most would be under the old laws and practices, with loyalties to the system of separate white and Negro schools.

United States v. Montgomery County Board of Education, 395 U.S. at 227.

Jacksonville/North Pulaski School District makes the argument that an expert witness is needed to connect the dots with implicit bias, which is not the case. The district further makes the argument that there is no proof that implicit bias is evidenced within its school district, and if it is, no evidence that it has resulted in discrimination to African American students. This flies in the face of the evidence. African American students lag significantly behind white students in test scores with the Jacksonville/North Pulaski School District. African American students are disproportionately disciplined more so than their white counterparts. As was pointed out in our brief in support in opposition to the district motion for unitary status, during the 2018-2019 school year, African American students make up 56.4% of the student enrollment, but make up 78.4% of the total in-school suspensions. [**Doc. # 5694, pp. 19-20**]. Dr. Tiffany Bone talked about implicit bias in the team meetings, and specifically asked the teachers or team leaders "what they were actually doing in the buildings to address possible bias in the classroom." **See Exhibit B, JNPSD00005421**.

Documents and Exhibits

Jacksonville/North makes the arguments that the district is unaware of any of the intervenors witnesses and exhibits. Mr. Richardson sat through, and participated in a limited

capacity in the PCSSD unitary status hearing. Mr. Richardson participated in several depositions conducted in the PCSSD case. Mr. Richardson took the deposition of Joy Springer, and Ms. Springer delivered several pages of documents to him prior to and after her deposition. Mr. Richardson has seen many of the exhibits that the intervenors will be using in this case. Mr. Richardson is also scheduled to take the depositions of two (2) of the class representatives – Linda Morgan and Tiffany Ellis. Therefore, the district's argument is disingenuous.

Furthermore, during the course of discovery, the Jacksonville/North Pulaski School District has provided several pages of documents (*albeit* not nearly enough as it should have). The Intervenors' brief filed in support of their opposition to unitary status has provided a substantial overall factual picture. [**Doc. # 5694**]. There were many exhibits that were identified in the brief, and charts were created based on data provided by the district. The 2019 test results came from documents that the district provided to Margie Powell, who then in turn provided them to the intervenors. Other exhibits will come when the district fully responds to the Intervenors' discovery response. The district also provided the Intervenors with the number of students participating in the AVID program, and the process by which students are allowed to participate. The Intervenors are in the process of preparing our *Pre-Trial Conference Information Sheet*, which will further identify documents.

Jacksonville/North Pulaski County further complains that the Intervenors were late in revealing the identity of documents that the district provided during the course of discovery, or to Margie Powell in their reporting process. The Intervenors have been laser focused during the months of March, April, May, June, and early July getting ready for the unitary hearing involving the Pulaski County Special School District.

Cell Phones

Of course, the Intervenors have no objection to Dr. Tiffany Bone and Superintendent Bryan Duffie having access to their cell phones. This is something that is totally within the Court purview.

In conclusion the Court should allow Rep. Joy Springer to testify in the trial of this matter, and offer lay opinions pursuant to Rule 701 of the Federal Rules of Evidence. Furthermore, the Court should allow Mr. Pressman to continue his participation by way of telephonic means, as his role to this case is vital.

                                    Respectfully submitted,

                                    Austin Porter Jr., No. 86145
                                    PORTER LAW FIRM
                                    323 Center Street, Suite 1035
                                    Little Rock, Arkansas 72201
                                    Telephone: 501-244-8200
                                    Facsimile: 501-372-5567
                                    Email: aporte5640@aol.com

                                    Robert Pressman
                                    22 Locust Avenue
                                    Lexington, MA  02421
                                    Telephone: 781-862-1955
                                    Email: pressmanrp@gmail.com

                                    Shawn G. Childs
                                    Lawrence A. Walker
                                    JOHN W. WALKER, P.A.
                                    1723 S. Broadway
                                    Little Rock, Arkansas 72206
                                    Telephone: 501-374-3758
                                    Facsimile: 501-374-4187

                                    johnwalkeratty@aol.com
                                    schilds@gabrielmail.com
                                    lwalker@jwwlawfirm.com

ATTORNEYS FOR INTERVENORS

## **CERTIFICATE OF SERVICE**

I, Austin Porter Jr., do hereby certify that a copy of the foregoing pleading was electronically filed with the Clerk of the United States District Court for the Eastern District of Arkansas, on this 9th day of September 2020, by using the CM/ECF system, which is designed to send notification of such filing to the following person:

M. Samuel Jones III.  
Devin R. Bates  
MITCHELL, WILLIAMS, SELIG,  
GATES & WOODYARD, PLLC  
425 West Capitol Avenue, Suite 1800  
Little Rock, Arkansas 72201  

sjones@mwlaw.com  
dbates@mwlaw.com  

Jay Bequette  
Bequette, Billingsley & Kees, P.A.  
Attorneys at Law  
425 West Capitol Avenue, Suite 3200  
Little Rock, Arkansas 72201-3469  

jbequette@bbpalaw.com

Scott P. Richardson  
McDaniel, Richardson & Calhoun PLLC  
1020 West 4th Street, Suite 410  
Little Rock, Arkansas 72201  

scott@mrcfirm.com