

Devin R. Bates
Direct Dial: 501-688-8864
Fax: 501-918-7864
E-mail: dbates@mwlaw.com

425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201-3525
Telephone: 501-688-8800
Fax: 501-688-8807

July 29, 2021

**VIA EMAIL ONLY**

Austin Porter: aporte5640@aol.com
Robert Pressman: pressmanrp@gmail.com
Shawn Childs: schilds@gabrielmail.com
Tony Walker: lwalker@jwwlawfirm.com
Rep. Joy Springer: jspringer@gabrielmail.com; johnwalkeratty@aol.com

    Re:    *Little Rock School District, et al. vs. Pulaski County Special School District, et al.*
              U.S. District Court, Eastern District of Arkansas, No. 4:82-cv-866-DPM

Austin:

    I am in receipt of your letter received yesterday afternoon, on July 28, 2021. I understand this to be a response to the school board meeting that occurred over two weeks ago on July 13th. Further, your letter relates to the facilities proposal that you know we will be filing in Court tomorrow. I regret that I am just now receiving your letter, as the timing of it makes a meaningful response challenging at best. Nonetheless, I have done my best to respond below.

    First, I think it deserves acknowledging that in approving the proposal, PCSSD has made a substantial financial commitment to invest in Mills University Studies High School. The proposal is not a low ball offer. Nor is it an opening offer. It is not a negotiating tactic. It reflects PCSSD working diligently to develop a plan to do everything that it can practically do for Mills. This is good faith in action. While I understand that the history of an adversarial relationship between Intervenors and PCSSD makes it such that you continue to point out perceived shortcomings, I sincerely hope that you see this substantial commitment for what it is. You are witnessing a new chapter in PCSSD history. Being ever mindful of the district's past, this proposal is ***not***, in the words of Judge Marshall, "more of the same: unequal facilities based on race." *Doc. 5730, p. 29*. Rather, the facilities proposal reflects the functioning of a unitary school district dedicated to the proposition that ***all*** students deserve an equal chance regardless of the zip code into which they are born, or the color of their skin.

    Next, the timing of your letter received yesterday. Your letter raises several substantive objections to the facilities proposal. Some of this has been expressed previously by Intervenors. However, to the extent that this is intended to be a newly submitted substantive objection to which you desire a substantive response, I am perplexed as to why you would send this now. In my June 30, 2021 letter, I explained the process that PCSSD was going through to finalize its proposal. Further, in that June 30th letter, I expressed to you that "that process is effectively

**EXHIBIT**

**9**

Response to Intervenors' letter of July 28, 2021
July 29, 2021
Page 2

nearing its end." I invited you into the process, but advised that time was of the essence. The PCSSD School Board met, and voted to approve the proposal. That proposal will be filed tomorrow. Now, over two weeks after the proposal was approved by the Board, and approximately 48 hours prior to when the facilities proposal will be filed with the Court, I am unclear what you think can be accomplished at this eleventh hour.

Format of the Facilities Proposal

Much of your concern seems to be over a perceived lack of a "final" facilities plan. First, it must be acknowledged that nothing about the plan is "final" until Judge Marshall issues a ruling. Judge Marshall tasked PCSSD with presenting a "proposal." *Doc. 5730, p. 31*. Over the better part of the past three months, PCSSD has sought to put together the "proposal" that Judge Marshall ordered. Such a procedural reality, coupled with the Court's use of the word "proposal" necessarily contains a lack of finality until the Court addresses the District's submission.

Because Judge Marshall asked for a "proposal" and PCSSD had less than three months to put it together, the district did its best to understand what His Honor requested and deliver. This short timeframe, and the ordering of a "proposal" did not call for hard numbers and architectural deliverables that could be included as exhibits. Additionally, it would not make sense to spend large amounts of money and time drawing up formal and final plans for facility improvements that had not yet been approved by the Court. Quite frankly, had PCSSD taken all of those steps, it would have opened the district up to criticism from Intervenors that the district had acted presumptuously and in derogation of the authority of federal court oversight. The district respects Judge Marshall and his ability to make the final call on whether the proposal remedies past wrongs to the extent practicable. I have no doubt that you also hold His Honor in similar high regard.

As you are aware, what the district did was develop a proposal in the form of a four part plan. On July 13, 2021, the PCSSD Administration presented that four part plan to the PCSSD School Board. The same components of that proposal had already been provided to Intervenors on June 30, 2021. The Board approved the proposal by unanimous vote. Intervenors were invited to this July 13th meeting. Rep. Joy Springer was in attendance. As such, there was no "final" notice to be provided, because Rep. Springer was in attendance and witnessed the passing of the four part proposal. As Rep. Springer is aware, the proposal put to the School Board for a vote was substantially similar to the one that Intervenors were provided on June 30th.

Ultimately, Rep. Springer witnessed the final version of the proposal presented to the PCSSD board and she witnessed its unanimous approval. As such, Intervenors are in receipt of the final proposal because they were present to hear what was proposed and approved. To the extent that Intervenors now seek the same proposal in a different format, such as in a written format, I have provided this below. Although I must note, this is the first I am hearing that Rep. Springer's attendance at the meeting was allegedly insufficient and Intervenors would like the

Response to Intervenors' letter of July 28, 2021
July 29, 2021
Page 3

same content in another written document. Had this been raised sooner, I would have happily provided such written confirmation.

Beyond that, as has been shared with you throughout the process and as was already mentioned above, there are no final budgets, drawings, or other architect documents to share at this early stage. It seems as though you perceive that PCSSD is holding something back from Intervenors, when in reality, we do not yet have any such documents. At this stage, architects have not completed final designs, plans, or drawings. If approved by Judge Marshall, and upon completion of same, it is possible that some detail of the facilities proposal may need to be adjusted. Once professional architects draw up formal plans, modification is possible. PCSSD hopes this will not happen, but the possibility must at least be acknowledged here.

<u>The Facilities Proposal Approved by the School Board on July 13, 2021</u>

As requested for the first time in your letter yesterday, you will see below a written version of the proposal that the PCSSD School Board approved on July 13, 2021. I will note, this is substantially similar to the version of the proposal that Intervenors were provided June 30, 2021. Also, it is substantially similar to the version of the proposal that Rep. Springer witnessed while attending the community forum on July 12, 2021. As such, nothing about this is new to Intervenors.

At the July 13th meeting, PCSSD approved the following four initiatives:

1) 10 more classrooms that would be high tech (to support Driven and other courses);
2) improve the ROTC building;
3) a softball field; and
4) an arena for hosting state tournaments, as defined by the AAA, which means that Mills High would, at the end of the project, meet the following:
   - Seating capacity of 2,200 (seating capacity is based on a minimum width of 18 inches. Using the formula of number of feet times 12 divided by 18) (4A standards for tournaments are 1,400 seats for regional, and 1,800 seats for state).
   - Four dressing rooms, each with showers, hot water, toilets, and washbasins.
   - Two rest rooms for public use.
   - Floor dimensions equal to or in excess of 48 x 84 feet.
   - There shall be at least three feet of unobstructed space outside the court adjacent to the sidelines and at least five feet of unobstructed space outside the end lines.
   - There shall be a time clock visible from both directions of the playing court.
   - Compliance with gymnasium safety standards (AAA Bylaws, Article IV, Sec. 5, Rule 3).

Response to Intervenors' letter of July 28, 2021
July 29, 2021
Page 4

Notice to Intervenors and an Opportunity to be Heard

Your letter also takes issue with the process that PCSSD has followed to develop its facilities plan. To address that concern, I believe that it all starts with what is required of PCSSD under Plan 2000. Section H(3) reads in its entirety:

> The PCSSD shall notify the [McClendon] Intervenors of plans for constructing new schools and for adding capacity to existing schools. The notice shall identify the capacity of the proposed facility, the area of the system to be served, and the projected impact on the racial make-up of the students in each school expected to be affected by the new construction. The [McClendon] Intervenors shall have a period of 14 days in which to provide input concerning each such proposal.

On May 18, 2021, PCSSD provided formal notice to Intervenors under § H(3) of Plan 2000, announcing its intention to move forward with developing the Proposal. PCSSD invited Intervenors to provide their input on the Proposal in the time and manner contemplated by Plan 2000, § H(3).

On June 2, 2021, Intervenors sent a responsive letter. I will note that this response was outside of the 14 day window allowed under Plan 2000, however PCSSD did not object. There was only one substantive request submitted, which was to renew an earlier request that the Driven project be constructed as an attachment to the main Mills facility. There was a procedural request for a meeting.

On June 10, 2021, in response to a request from Intervenors for a meeting, PCSSD hosted a virtual meeting. Dr. Charles McNulty, Curtis Johnson, Austin Porter, Bob Pressman, Rep. Joy Springer, and I were in attendance. At the meeting, Intervenors identified several new substantive requests. Additionally, Intervenors made two additional procedural requests: (1) that counsel for PCSSD e-mail them a copy of notes from the meeting, and that (2) Intervenors receive an update on the status of the Proposal by June 30, 2021.

Following up from the June 10th meeting, counsel for PCSSD sent Intervenors a copy of the meeting minutes as requested. After receiving the minutes, Intervenors sent PCSSD a long list of substantive input on facilities that had not been discussed but which was nonetheless received over e-mail. Here again, this response was outside of the meeting previously requested, and outside of the 14 day window allowed under Plan 2000. PCSSD did not object.

On June 30, 2021, PCSSD sent Intervenors an update on the status of the Proposal. This was in the time and manner requested by the Intervenors. This was not technically required by Plan 2000, but nonetheless, in the spirit of collaboration and in its efforts to work with Intervenors in good faith, PCSSD coalesced. In that June 30th letter, PCSSD reiterated the following:

Response to Intervenors' letter of July 28, 2021
July 29, 2021
Page 5

> As PCSSD has stated from the very beginning of this process, please understand that PCSSD wants to hear your input. However, as I explained to you at our June 10th meeting, and as I will reiterate again here because it is true now more than ever, between now and August 1st, and more specifically ***between now and the July Board meeting, PCSSD has many steps to take in order to prepare a plan*** … [describing the many steps involved in the process]… But that process is effectively nearing its end. I say this not to discourage your input, but rather to emphasize that ***time is now, and has been throughout this process, of the essence***.

One week passed. There was no response to PCSSD's June 30th letter. At that time, and especially because we were less than one week away from the July board meeting, I advised the Administration of the "lack of objection received from Intervenors." Later, Intervenors sent a response noting objections.

On July 12, 2021, PCSSD held a public forum meeting in the community seeking to present the current draft of the Proposal and gather the community at large's input on what would be needed for the District to "comply … and square up" the Mills-Robinson Inequity. Rep. Springer, appearing on behalf of the Intervenors, was present. Rep. Springer fully ventilated all of the concerns that Intervenors wrote into their July 8, 2021 letter. PCSSD responded to those concerns at the meeting.

At bottom, this process is governed by Plan 2000, § H(3). Since May 6, 2021, PCSSD has absolutely met its obligations thereunder. Quite frankly, PCSSD has gone above and beyond what Plan 2000 § H(3) requires, and the facts above show that to be true. PCSSD did this because it desired to work with Intervenors in good faith, and PCSSD indeed did so throughout the process.

Conclusion

I hope that this responsive letter has revealed some of PCSSD's rationale for the decisions made and the process followed. I wish that your concerns had been raised prior to the final vote of the Board, or in a reasonable amount of time thereafter. Time was of the essence. But time has now passed.

        Best regards,

        MITCHELL, WILLIAMS, SELIG,
        GATES & WOODYARD, P.L.L.C.

    By: *Devin R. Bates* (signature)
        Devin R. Bates

cc:  (via email only)
     Margie Powell: mqpowell@att.net
     Scott Richardson: scott@mwbfirm.com
     Dr. Charles McNulty: cmcnulty@pcssd.org