IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LITTLE ROCK SCHOOL DISTRICT, et al.                    PLAINTIFF

VS.                          CASE NO. 4:82-CV-00866 DPM

PULASKI COUNTY SPECIAL SCHOOL
DISTRICT, JACKSONVILLE/NORTH PULASKI
SCHOOL DISTRICT, et al.                          DEFENDANTS

EMILY MCCLENDON, TAMARA EACKLES,
VALARIE STALLINGS, TIFFANY ELLIS,
and LINDA MORGAN                              INTERVENORS


INTERVENORS' RESPONSE TO PCSSD'S FACILITY PROPOSAL

[A.]  Introduction

PCSSD's proposal for four areas is an important opening. Four areas are

identified in  which the  need for remedies is agreed upon.  This response is an

essential next step. It addresses content needed to ensure that the remedies are

complete and in accord with the Court's elevated equality standards. Some other new

Mills High School  facility shortcomings are not addressed by the district; they are

discussed here.  Monitoring has revealed that neither Mr. Curtis Johnson, nor new

Mills High architects were involved in identifying the "criteria"  [5736 at 7, 16] set

forth. [Exh. A; Springer Dec., paras. 1-3; 15]  Their views on these elements and

other project parameters  should be available for Court consideration  prior to a

ruling.  This will help to ensure that the project descriptions and other content in  an initial Court ruling  later yield the desired outcome: implementation across the board satisfying the Court's equality standards.

One PCSSD embedded motion  [5736 at 17] seeks, in the event of Court approval of the Proposal, an immediate declaration of unitary status and termination of Court supervision.   The district's identification of a three year construction completion period  [5736 at 16] is one of multiple reasons for refusing to depart from the Court's practice to date (requiring completion of  an approved facility plan to precede unitary status and supervision termination rulings).   See [G.] below (full discussion of this point).

Regular reports on progress will be  a necessary safeguard.   Some status hearings focusing on progress  and with the opportunity for questions by counsel and the Court would  be helpful. This would add to the opportunity to learn of any problems and to provide  for corrective actions sooner rather than later.   Intervenors monitoring will continue. Facts learned by making inquires,  reviewing  plans and other documents, and  observing construction progress  might  well prompt a request for a status hearing or relief.

[B.] The Court's Standards for Equality and Approach to Facility Comparisons

Multiple elements of the case history identify the Court's equality standards

and overall approach.

On September 24, 2018, the Court made bench rulings concerning Intervenors' motion for facility relief. [5565; transcript] This followed the tours of Maumelle High School, and the new Mills High and Robinson Middle facilities. Aside from some athletic facilities, the Court found Maumelle to be "palatial" – "the equivalent of a college – almost a college facility." [At 15] While considering both new Mills and new Robinson to be "excellent" [at 13], the Court also concluded: " . . . neither – as good as they are . . .  is the equivalent of Maumelle. Yet Robinson is, I think, closer to that standard than Mills is." [At 15]

The Court posited that if a group of 12 parents were to tour the two schools, "that most, if not all, of the parents would say that the Robinson facility overall is superior to the Mills facility." [5565 at 16] Later, the Court stated: "Mills is - - has this advantage of the auditorium, but the Robinson Middle School is just a phenomenal facility."  [At 32] The Court recognized Intervenors' ability to introduce Sylvan Hills construction comparisons "in due course." [24]  The Court had alluded to "look[ing] forward to touring the other facilities in a couple of months, to have that bigger picture."  [At 14]

The next day, September 25, 2018, the Court filed the JNPSD ruling, including facility content.  [Doc. 5445] The Court identified the new Jacksonville High School, then "partly built, " and  the planned new middle school, as "state of the art

facilities." [At 4]   One paragraph of the Court's modification of JNPSD's 2018 Master Plan reads: "All new elementary facilities will be equal to the new elementary school that opened in August 2018." [At 7] This referred to Bobby Lester Elementary School.

During her many years of monitoring and assisting class members, Mrs. Springer, has observed and entered almost all schools in each Pulaski County school district, many on multiple occasions. This included many facilities when newly completed. [Springer Dec., para. 3]

On October 12, 2020, His Honor, counsel, JNPSD administrators, Mrs. Springer, the Court expert and others visited Bobby Lester Elementary. The statements and reactions of the group members indicated that all considered it "state of the art." [Springer Dec. , para. 11; also para. 12 (tour of Jacksonville High)]

The Court, counsel, Mrs. Springer and others had toured the three- part Sylvan Hills project on August 4, 2020. The group first visited the three floors of the completed classroom building. Visits to the auditorium and arena, where work continued, followed. During a break, His Honor commented: it is an "amazing facility; the district should be proud." The group then visited the Indoor Practice Facility, completed in 2019. This was a fourth state of the art facility, completed or nearing completion.   Overall, Mrs. Springer concluded that the enhanced Sylvan Hills complex was even more college campus-like than that at Maumelle High.

[Springer Dec. , paras. 7-10]

The PCSSD portion of the May 6, 2021 ruling discusses the new Mills, new Robinson saga extensively. It begins with the 2011 situation: "We find no clear error in the district court's factual findings that PCSSD has devoted a disproportionate share of its facilities spending to predominantly white areas. LRSD v. Arkansas, 664 F.3d at 753." [5730 at 24-25]   It includes, after discussion of  much of the implementation period: "[I]t was more of the same: unequal facilities based on race." [At 29] The Court observes: "The many fixes in the last two years are commendable. They are not, however, a complete cure for the resulting inequity." [5730 at 29]

Other aspects of the  recent facilities discussion are significant with regard to securing the best possible, future  equality outcomes. First. The Court describes its equality standard in another manner. "Mills High School and Robinson Middle School are both excellent facilities. But, if Mills High gets an A, Robinson Middle gets an A++." [At 29]  Second.  The Court praises Curtis Johnson three times.  See at  28 ("helpful and credible testimony at trial" regarding "upgrades at Mills High School" "directed" by the Court in September 2018);  at 29 (use of "apt word" "superior" in Robinson Middle/Mills High comparison); at 30 ("The various Mills fixes made under Curtis Johnson's leadership show what good stewardship can accomplish.") Third. The Court wrote: "careful attention to details improves school buildings and saves money." [At 29]   One finds at pages 29-30 mention of

approximately 15 "details" regarding the Maumelle High and new Mills and new Robinson facilities. Earlier, one part of the Court's September 24, 2018 bench ruling included discussion of "details " in a new Mills, new Robinson comparison. [5565 at 16-21] As shown above , the Court noted later remedial action regarding some of these "details."

Regarding present issues, Intervenors emphasize three aspects of the May 2021 ruling. These are the continued reliance on an elevated  global standard; the recognition of the efforts and the credibility of Mr. Johnson; and  one detail in particular, namely,  "[at new Robinson Middle] every teacher has a classroom, while at Mills High five teachers are in rotation with other teachers for classroom space; . . ." [5730 at 29-30]    Intervenors will show below that the classroom shortage problem is even more serious at this time.

[C.] The Four Areas Where the Parties Agree on the Need for a Remedy

[1.] Ten Additional Classrooms at New Mills High

On April 22, 2021, a PCSSD letter to Intervenors provided notice of its intention to pursue a "Driven Extension at Mills University High School." The district explained: ". . . PCSSD plans to request architectural designs that utilize the ROTC building site as a framework for the new facility. The Driven Extension is intended to house a blended instructional program with a 21st Century design for 6 to 8 additional classrooms." [Ints.' Exh. B hereto]  The Court  and others visited the

ROTC site on August 4, 2020. See Springer Dec., para. 6.

Mr. Porter's response for Intervenors on May 5, 2021 stated [Ints.' Exh. C at 1-2]:

. . . . It is our preference that the Driven project be constructed as an attachment to the main facility for the following reasons:

[a] Driven students would not have to leave one facility to go to another facility to take their electives;

[b] Driven students would not have to leave one facility to go to another facility for student assemblies;

[c] Driven students would not have to leave one facility to go to another facility  for events or programs that take place in the auditorium; and

[d] Driven students would not have to leave one facility to go to another facility to eat lunch in the cafeteria

Mr. Porter noted that "there [would be] other benefits" of adherence to Intervenors' position. [Exh. C at 2] Intervenors  now point out: Driven instructional personnel, who might well teach other students,  and school staff charged with observing instruction, with a main building home base,  would also avoid such movement.

Regarding Intervenors' position, another point made in this letter is central.

In that Mr. Johnson is the Executive Director of Operations for PCSSD, we expect to have periodic updates from him relative to the progress of these matters. We would also like to be kept abreast by Mr. Johnson relative to any proposed amendments or changes to the projects. [Exh. C at 2]]

PCSSD's Proposal notes its opening position and continues [5736 at 8]:

However, the Intervenors expressed strong opinions that the classroom space should be attached to the main Mills building, as opposed to being a standalone building. In large part due to this feedback from the Intervenors, the Proposal changed along the way and now it is envisioned that the 10 classrooms will be attached to Mills.  The thinking on the attached vs. detached question could possibly change when architects become involved. [emphasis added]

Respectfully, "the thinking" should not change, given the reasoning advanced by Intervenors, which the district has accepted. Intervenors' "[keeping] abreast" point comes into play should any such change be contemplated.  In addition, Mr. Johnson should have the role, described  in Section [A.], regarding the six "specifications" regarding individual classrooms.  [5736 at 8]

Results of a monitoring visit to Mills High by Mrs. Springer on August 19, 2021  reemphasize the need for additional classrooms. The principal informed her that 11 teachers are sharing classrooms. Mrs. Springer observed a Spanish class on the cafeteria stage and a choir class on the auditorium stage, with the risers placed there.  The principal also informed her that the choir room is, for a second school year, being used by a consumer science teacher. [Springer Dec. , para.16]

The classroom addition matter is pivotal; it deals with academics.  Intervenors' 2020  hearing exhibit  41 consists of  alternative, early stage  designs for additional Mills High instructional space, requested by Mr. Johnson in 2019 and  prepared by the  Mills High project architects . The exhibit  includes a design for space attached

to the main, new Mills High building.  Given the importance of the classroom component,  Intervenors respectfully request that the Court's initial ruling require preparation of  comparable material  for additional classroom space attached to the main building. Intervenors suggest that the Court identify the timing of this submission, after hearing the district's  position, developed with Mr. Johnson's participation. The possibility of making changes early on will help avoid any recurrence of the prior scenario.

[2.] A High Quality Facility for the ROTC Program

New Mills University High School serves grades 9 to 12, not grades 6 to 8 (new Robinson Middle and formerly old Robinson Middle  School, now repurposed).  PCSSD's 2020 hearing  document production 19-0924 shows, for the latter facility:  one 1953 structure, five 1959 structures, one 1973 structure, and  a 2009 gymnasium. PCSSD identifies a room at old Robinson Middle as a comparator for its new Mills ROTC approach. [5736 at 9-11]  Consideration of this concept in the light of the Court's equality standards and the district's approaches at new Robinson Middle and Sylvan Hills  High establishes its inadequacy. See also Springer Dec., para. 6 (tour of  and description of old ROTC building).

Intervenors' position: a district seeking to identify a high quality model for a program offered at only one of its high schools does  not limit its search for the model solely to  its own boundaries.

On June 30, 2021, PCSSD provided Intervenors a letter updating its movement toward a proposal. The letter is Proposal [5736] Exhibit 6. The letter includes a one-line reference to the ROTC building and details regarding the arena. The letter refers to a meeting with Intervenors on June 10, 2021. It also refers to meeting "with other stakeholders and community members to gather multiple other perspectives" on what to them "it means to 'comply . . . and square up' the Mills High/Robinson Middle inequity. (Doc. 5730)."   [Exh. 6 at 1.] The meeting with stakeholders and community members was on June 21, 2021. See 5736 at 2, para. 7.

In monitoring , Mrs. Springer learned that the persons present on June 21 included Mr. Johnson and the PCSSD employee responsible for the district ROTC program, as well as other district employees and citizens. The employee described the Mills High ROTC program as award-winning and cited the ROTC space at Jacksonville High School as a suitable model for a new PCSSD facility. The group's consensus was that the Jacksonville High School ROTC space was a proper model for a new PCSSD ROTC facility. The group's consensus was that a new Mills High arena should be equal in quality to the new Sylvan Hills High arena.   [Springer Dec., para. 13; see also para. 14 (description of second meeting held by PCSSD to discuss new facilities at Mills High School; comments by district officers and employees and Mrs. Springer's identification of her personal facility priorities). ]

After the Bobby Lester visit on October 12, 2020, His Honor, counsel, Dr. Duffie, Assistant Superintendents Bone and Hodges, and  Jacksonville High School Principal  LeGail Biggs toured that school's facilities: the classroom building, where a huge media center was prominent; the auditorium, including a restaurant, one form of training for interested students; the auto body and ROTC area; the arena; and the indoor practice facility.  Jacksonville High School  is a state of the art facility. [Springer Dec., para. 12]

On June 10, 2021, an Intervenor's email to PCSSD counsel provided: "Need sufficient space and other accommodations for ROTC program to ensure accreditation." See Doc. 5736, Exh. 5. Mr. Porter's letter to PCSSD counsel on July 30, 2021, includes this ROTC facility content: "the ROTC facility should be equal in quality to the one at Jacksonville High School, not an 'improve[ment] [to] the [current] ROTC building.'" See 5736, Exh. 8.

 [3.] A Softball Field

The Proposal includes a softball field. Six criteria  are identified. The district refers to a field at "Robinson."  [5736 at 11] Intervenors' 2020 hearing Exhibit 31 is a "Schematic Estimate -- New High School for Wilbur D. Mills Campus" (5-6-16). It includes: "Baseball, Softball & Practice Fields") (third page). The  softball field  was not constructed.  Mr. Johnson has identified the Robinson field as a high quality field. [Springer Dec., para. 17] Intervenors request that before initial Court

action, his Honor hear his  views on the six criteria and any other parameters he suggests for inclusion at the outset to enhance the likelihood of a successful conclusion.

[4.] An Arena

"The [PCSSD] Proposal includes a multi-purpose arena capable of hosting state tournaments, as defined by the Arkansas Activities Association  . . . ." [5736 at 12] A seating capacity of 2,200 is specified.  Six criteria are set forth.  [At 12]

Much of the discussion in this section of the Proposal relates to the  seating capacity of the arena at Robinson Middle School. New Mills is a High School. The district has completed a state of the art arena at Sylvan Hills High School with a capacity of 2,200. [Springer Dec., paras.  7, 9 (state of the art facility with a capacity sufficient to house a basketball tournament)] At this point, this edifice is the most appropriate comparator for a new Mills arena.  Meeting Sylvan Hills arena quality will "square up [this element of] the Mills High School/Robinson Middle school inequity." [5730 at 30-31]  Each school will have a state of the art arena suitable for its grade level.

The content of the stakeholder and community member meeting on June 21, 2021, supportive of this result, has been discussed. See also Springer Dec., paras. 13.-14.

The Proposal also provides in its arena discussion: "To the extent that some

of the above is already in place at Mills (i.e.: two public restrooms), brand new construction is not necessarily required." [At 12-13] Intervenors  request that the Court hear from Mr. Johnson regarding the meaning and import of this  qualification. Intervenors request that the Court also hear his views on the six  arena criteria and other  parameters  for  designing this facility considered necessary, if any.

[D.] The Three Areas which PCSSD Does Not Address

[1.] Inadequate Seating in the Mills High Performing Arts Center

The Court's May 6, 2021 ruling found that new Mills High has a "magnificent auditorium, which is a smaller version of the singularly impressive Maumelle High School auditorium" and superior to the new Robinson Middle School "cafetorium." [5730 at 29] The Court  found that "[o]verall capacity [of new Mills High] was reduced from seven hundred and fifty students to seven hundred."  [At 27]   A report of "value engineering" consideration for new Mills High dated 1-6-17 shows acceptance of this change: "Reduce Theatre Seating to 699." [PCSSD documentary production 19-08840]

Intervenors' early monitoring at new Mills High disclosed that there were fewer than 699 seats in the Performing Arts Center (auditorium). Mrs. Springer noticed when on the second visit to new Mills High with the Court and others that additional seats had been added in the auditorium. She recently counted the seats; they number 700.  [Springer Dec. , para. 5]  PCSSD's Proposal states: ". . . the

addition of 10 classrooms to Mills . . . would increase its capacity from 700 to at least 800 students." [5736 at 8] See also Intervenors' 2020 hearing exhibit 37 at 4 (PCSSD  October 2016 notice letter states regarding new Mills High: "The new high school will have classroom space for up to 750 students; the interior common areas are designed for 1000 students.")

The capacity of the arena presents a serious problem requiring attention.

[2.] The Water Fountain Issue at New Mills High School [and Lockers]

Monitoring by Mrs. Springer in March 2019 revealed that in both the 200 and 300 halls (both floors) in new Mills High School water fountains were present on the west side, but not the east side of the building. At the school board meeting on July 13, 2021, during a report by Mr. Johnson to the board,  Mrs. Springer learned that Mr. Johnson was overseeing a water fountain replacement project in district schools. When later contacted by Mrs. Springer and informed of the Mills High issue,  Mr. Johnson expressed willingness to address  the problem,  noting that if there were existing water lines in the area, the problem could be resolved.[Springer Dec., para. 4]

The district's  Proposal does not address this issue. Mrs. Springer mentioned the matter during the July 12, 2021 meeting convened by the district. [Springer Dec. , para. 14]

During her March 2019 monitoring at new Mills High School,  Mrs. Springer

also observed that student lockers were only located on the west side of the building as well. "[Springer Dec., para. 4]  Documentation regarding value engineering on "1-11-2017" is  pertinent regarding this point.  PCSSD   documentary production 19-06936  includes this content: "122  Reduce Student Locker Count to 700 . . . accepted . . . " The district's "addition of 10 classrooms" discussion refers to "increas[ing]  [Mills High] capacity from 700 to at least 800 students." [5736 at 8] Intervenors have not identified the locker issue recently. Any PCSSD reply can address it; and Intervenors have raised the need for a hearing before the Court provides initial approval of a  facility remedial approach.

[3.] Location of the Office for the Registrar Serving Mills High School

During the course of her  monitoring at new Mills High, Mrs. Springer has learned that the school's "registrar" is located at Mills Middle School. This is unsatisfactory.   The State requires that each district school enter its enrollment data into the state triad system on a regular basis. Accuracy is necessary to insure proper funding  for the school based on enrollment. A school registrar fulfills the data entry function. Intervenors' monitoring has revealed that the registrar's being located at Mills Middle has led to some unfamiliarity  by the registrar with Mills High students' grade levels and courses, inaccurate reporting to the state school computer system regarding student enrollment, and assignment of students to classes not in accordance with school standards.  [Springer Dec., para. 18]

The Court's  found that multiple forms of downsizing of the new Mills High facility resulted from racial discrimination.  [5730 at 27, 29] Intervenors' position is that the apparent absence of space for a registrar at new Mills High is also a consequence of the "downsizing."

 Intervenors raised this issue in a June 10, 2021 meeting with PCSSD counsel ( 5736,  Exh. 3) and during the meeting convened by PCSSD on July 12, 2021, which Mrs. Springer attended. [Springer Dec., para. 14]

[E.] PCSSD's Discussion of Funding [5736 at 13-15]

PCSSD writes:

> Although there are no final budgets, drawings, or other architect documents to attach at this early stage, PCSSD estimates that the total cost of the proposal would be approximately $19 million. PCSSD believes that spending to '[f]inish the job at Mills' will not 'hobble' PCSSD's many needs including the 'other pressing facility needs.' Doc. 5730, p. 31.

Intervenors respectfully request that an Order obligate PCSSD to promptly notify Intervenors and the Court of funding events, both positive and problematical. Intervenors' monitoring will also include this matter.

[F. ] The  BELATED Request to Modify the "Equal" Standard [5736 at 6-7]

PCSSD "requests that under Rule 60 the Court modify the word 'equal' in Plan 2000 to become 'equal to the extent practicable.' " [5736 at 6 ] The request lacks merit.

Judge Wright gave final approval to Plan 2000, including the "equal"

requirement in Section H.(1), on March 20, 2000. [Doc. 3347] In her earlier Order on February 22, 2000, Her Honor found that "the proposed plan arises from the joint efforts of Joshua and PCSSD" and that "PCSSD and Joshua agree that the District's current desegregation plan should be replaced with a more effective plan. Plan 2000. " [Doc. 3337 at 4]. On November 17, 2019, PCSSD had moved for an order establishing Plan 2000 as the remedy for the district. [Docs. 3309, 3310] The current PCSSD motion is made 21 years and 4 months after final approval of Plan 2000. Is it time for this change? No.

The case history demonstrates that replowing this ground is unnecessary. The Court has been able to apply the H.(1) standard multiple times regarding each district. The Court has employed summary or overview terms and identified particular disparities. Dr. Warren, a district staff member assisting her, school directors, the Court expert, and Mr. Johnson were, like the Court, able to discern disparities in the facilities available at new Mills High for athletics and physical education, compared to Robinson Middle School. The latter point is established by testimony in the August 2020 hearing and a Court expert report. See 5343 (11-9-17) (Report attached).

[G.]PCSSD's Rule 60 Unitary Status, End of Supervision Approach Lacks Merit

PCSSD focuses on "the criteria" in its "Proposal." [5736 at 7, 16] It asserts

that compliance with them "will conclusively cure the facilities component of the existing Mills-Robinson Inequity."  [At 16] It then offers, at page 17,  a series of propositions.  "By committing itself to the projects set out in the Proposal, according to the specifications above, PCSSD should be considered completely unitary."  If the proposal were approved by the Court, PCSSD would move forward with it in good faith. "[O]ngoing federal court supervision  [would] not [be] needed  in order complete  the Proposal."  The Court could consider "[the] submission" of the Proposal "as PCSSD renewing the denied portion of the Motion for Unitary Status, Doc. 5621."  "PCSSD believes" based upon "submitting the Proposal" "it[is] appropriate to enter a complete and final declaration of unitary status, which would include the finding that PCSSD is unitary in facilities." [[5736 at 17. ]

This startling approach fails for many reasons.

This response shows that the four  proposals  offered are not fully adequate; and that other needs are not addressed.  Bad faith is present. The district has minimized the role of Curtis Johnson, whose efforts the Court applauded in the May 6th decision.  [Springer Dec., para. 15] The district has noted that elements of its approach  are subject to change and identified an extended implementation period. [5736 at 8, 14-15, 16  (E.g.:   ". . . PCSSD estimates that the proposal  will take approximately 36 months to complete." It  then notes various contingencies and writes: "At this point, no one can guarantee exactly when the Proposal will be

entirely completed assuming the Court approves it.")]  [At 16]

Regarding each of the  four projects, PCSSD has argued that a "cure" will occur when it completes the project as described. [5736 at 8, 11, 13]  This provides a point to pivot  to the Court's approach in this case.

In the September 25, 2018 JNPSD facility ruling, the Court approved the district's Master Plan as modified. [Doc. 5445 at 2,8] The Court did not then rule that JNPSD was unitary in facilities and terminate its oversight. Rather, its response was two-fold. The Court wrote [at  2 ]: "[JNPSD] is not unitary in facilities, but the District  will be if it complies with the current master plan, as modified by this Order." It reiterated [at 8 ]:  "If JNPSD implements and completes its 2018 master facilities plan, as modified, it will be unitary in facilities in approximately 2026." See also 5730 at 1, 67 (5-6-21) ("With the exception of completing its 2018 master facilities plan as modified, JNPSD is unitary.") Next, the Court imposed a reporting requirement, Doc 5445 at 7: "By July 1st each year starting in 2019, JNPSD must file a facilities report to the Court." See also 5730 at 67 ("[JNPSD] remains obligated to file its annual reports every July.")

The last paragraph of Part [A.]  suggests  an approach for case handling following   the  Court's  initial approval of a proposal. Intervenors submit that it accounts for the past problematical experiences and the multiple components of the remedy.  Given the many components, Intervenors request that PCSSD be required

to report progress  more often  than annually. Given the imperative of avoiding a repeat scenario, Intervenors request that reporting  on progress and any problems, regarding  all projects,  be required every 30 days.

<u>Conclusion</u>

The Court has focused  on both  identification of a lawful facility plan and completion of its implementation. Intervenors have sought to contribute to the achievement of each endeavor.  The  communities served by Mills High School deserve facilities of the same elevated quality as those constructed at new Robinson Middle and Sylvan Hills High School. In the next phase of the case, every effort must be made to complete projects "state of the art" in quality.

Respectfully submitted,

Austin Porter Jr., No. 86145
PORTER LAW FIRM
323 Center Street, Suite 1035
Little Rock, Arkansas 72201
Telephone: 501-244-8200
Facsimile: 501-372-5567
Email: aporte5640@aol.com

Robert Pressman
22 Locust Avenue
Lexington, MA  02421
Telephone: 781-862-1955
Email: pressmanrp@gmail.com

Joyce Raynor Carr
JOHN W. WALKER, P.A.
1723 S. Broadway
Little Rock, Arkansas 72206
Telephone: 501-374-3758
Facsimile: 501-374-4187

jraynorcarr@gmail.com

Shawn G. Childs
Lawrence A. Walker
WALKER & CHILDS, PLLC
1815 S. State Street
P. O. Box 3462
Little Rock, Arkansas 72206
Telephone: 501-287-8680
Facsimile: 501-222-8872

schilds@walkerandchilds.com
lwalker@walkerandchilds.com

ATTORNEYS FOR INTERVENORS

## CERTIFICATE OF SERVICE

I, Austin Porter Jr., do hereby certify that a copy of the foregoing pleading was electronically filed with the Clerk of the United States District Court for the Eastern District of Arkansas, on this 30th day of August 2021, by using the CM/ECF system, which is designed to send notification of such filing to the following person:

M. Samuel Jones III.
Devin R. Bates
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, PLLC
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201

Scott P. Richardson
McDaniel, Richardson & Calhoun
1020 West 4th Street, Suite 410
Little Rock, Arkansas 72201

scott@mrcfirm.com

sjones@mwlaw.com
dbates@mwlaw.com

Jay Bequette
Bequette, Billingsley & Kees, P.A.
Attorneys at Law
425 West Capitol Avenue, Suite 3200
Little Rock, Arkansas 72201-3469

jbequette@bbpalaw.com

Austin Porter Jr.