IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LITTLE ROCK SCHOOL DISTRICT, et al.                    PLAINTIFF

VS.                            CASE NO. 4:82-CV-00866 DPM

PULASKI COUNTY SPECIAL SCHOOL
DISTRICT, JACKSONVILLE/NORTH PULASKI
SCHOOL DISTRICT, et al.                             DEFENDANTS

EMILY MCCLENDON, TAMARA EACKLES,
VALARIE STALLINGS, TIFFANY ELLIS,
and LINDA MORGAN                                   INTERVENORS


INTERVENORS' SUPPLEMENTAL RESPONSE TO
JNPSD'S   SUPPLEMENT TO ANNUAL REPORT

[A.] Introduction

Intervenors' Doc. 5735 (7-29-21) identified incompleteness in JNPSD's required annual facility status report, Doc. 5731 (7-1-21). There is no discussion of Taylor/Bayou Meto replacement issues. The Court required JNPSD to rectify this problem. [Doc. 5744 (8-17-21)]   JNPSD's subsequent, initial coverage of these points in Doc. 5748 (8-31-21), in substance a Court-required supplement to the district's annual report,  continues to present issues. At their first chance to do so, Intervenors respond.

Intervenors' July 29, 2021 submission discussed JNPSD's earlier reporting on Division of Public School Academics Facilities & Transportation [DPSAFT's]

1

partnership funding decisions regarding Taylor and Bayou Meto, the district's unsuccessful appeals,  and the district's  varying descriptions over time of the perceived impact of the funding  outcomes on its ability to complete replacements in a timely manner.  See Doc. 5735 at 4-6 (most recent  district reporting in 2021 Preliminary Facility Master Plan). JNPSD now, in its  contemporaneously filed papers regarding its third - party complaint concept,  is even more negative regarding the timing  for Taylor Elementary replacement. See Doc. 5749, Paras.  8.-9 (Motion for Leave . . . ); Doc. 5750 at 1 (reference to 2031)  (Brief in Support . . ).

JNPSD's current position seems to be that its third-party complaint route is the only available, viable  avenue to secure a Taylor replacement earlier than some time after 2031. See Doc. 5748 at 5; Doc. 5749 at 1 (reference to 2031); at 3, para. 10.  JNPSD's submission does not   suggest/predict when its new complaint approach, if successful,  might yield  either availability of sufficient  partnership  or other funding for a Taylor replacement, or completion of the project.  If JNPSD prevailed here, a State appeal is more than likely.

Intervenors dispute the JNPSD  position that only its third-party complaint approach has sufficient promise at this point to justify further scrutiny.  Two other approaches also warrant careful consideration by the Court. These are  [a.] a renewed and more robust effort to secure adequate  partnership funding for the Taylor project and   an effort to secure the needed funds by [b.1] a millage rate increase or  [b.2]

debt extension. Intervenors are now able to provide information regarding the necessary millage increase, thanks to JNPSD counsel's responding on September 3, 2021 to earlier inquiries.

Respectfully, JNPSD's challenges to  date to  Intervenors' approaches are marked by assertion and lack depth. Intervenors' counsel cannot, responsibly, "place all of their eggs in [the new complaint] one basket."

[B.] <u>A Renewed Effort to Secure Full Partnership Funding for a Taylor</u> <u>Project</u>

JNPSD writes [5749, para. 2 (8-31-21): "<u>On September 6, 2019, JNPSD</u> <u>applied for funding</u> through the Arkansas Academic Facilities Program for the final two schools to be replaced Bayou Meto Elementary and Murrell Taylor Elementary." [emphasis added]  The result was unsatisfactory.  On October 25,2019,  DPSAFT gave notice of  reductions in the amounts sought as follows: Bayou Meto (approved $4,163,167 of $5,633,940 sought); Taylor (approved  $1,385,017 of  $6,240,672 sought).  [5735, Exh. C at 12]  <u>The important point here</u> is that JNPSD utilized a conference procedure set forth in Commission for Arkansas Public School Academic Facilities & Transportation [CAPSAFT] Rules 4.01and 4.08  for the partnership funding program to begin the process of seeking partnership funding for the two projects, which had been included in a  pending Facility Master Plan.

In its recent supplemental report,  JNPSD makes no reference to a like

affirmative effort, or any intention to undertake one. Rather, it asserts: "there is no expectation of any change in the State's position . . ." and "[i]t is unlikely that the State will agree to fund this project until Taylor Elementary reaches zero building value (50 years) in 2031.)" [5748 at 2]. This does not suffice.

In responding to JNPSD's incomplete annual report, Intervenors identified the strong factual case, which could be made in a renewed effort to secure the necessary partnership participation for a Taylor replacement project. This text cited both the content of the Taylor project form in the district's 2021 Preliminary Facility Master Plan and the hearing testimony of former Taylor principal, Ms. Loring, who revealed in part that Taylor houses the only elementary level CBI program; it serves students with severe disabilities. See Doc. 5735 at 3-4. JNPSD's recent supplemental report did not discuss the Doc. 5735 content. Importantly, JNPSD made no effort to show that its 2019 affirmative effort presented the full range of factors now demonstrable in seeking a different outcome.

Recognition that the COVID 19 problem may linger, as has the flu, also bears upon the strength of a fresh effort. DPSAFT "agreed to fund an amount based on the square footage that the existing Taylor Elementary fell below the building size determined to be adequate under the DPSAFT's Program of Requirements ('POR')." [5749 at 1-2] The current Taylor project form cites HVAC issues. [5735, Exh. A] Tab 12 of the 2021 Preliminary Facility Master Plan projects for the main building

at Taylor a need for HVAC expenditures  in a 20-year period of $667,370, with $527,818 of this total in years 0-5.  [Exhibit 1 hereto] These points relate to two COVID response factors, indoor distancing and improved air quality.

    [C.]  <u>The Approaches of Seeking a Millage Increase or Extension of Debt</u>

JNPSD responded to the millage increase  approach inadequately. The district did not  fulfill Intervenors' requests for the district's view of the amount of a millage increase  necessary  to  help  produce  a   funding  package  allowing  compliant replacement of  Taylor. [5748]  On this point, it did not provide the "more information" requested by the Court. [5744]

On  September  3,  2021,  JNPSD's  counsel   did  furnish  the  essential information. The district's "bonding agent" reported: "One mill generates about $409,233 per year assuming a 95% collection rate. Pulaski County's collection rate is typically around 80% as I understand it. A 30-year bond on one mill would generate about $6.6 million. 1.06 mills would generate about $7 million on a 30-year bond."  Clarification needed: collection rate utilized for these totals.

Intervenors continue to rely upon the  Court's ability to require a referendum regarding a millage increase, a remedy approved in <u>Liddell v. State of Missouri</u>,  731 F.2d 1294, 1323 (8thCir. 1984).  JNPSD wrote: "JNPSD does not believe that the voters would support increased millage to self-fund a replacement project." [5748 at 2]   JNPSD  also  noted  a  vote  which  "narrowly  passed."  [At  2]   Relying  on

speculation and a success with 53 percent of votes positive does not overcome Intervenors' Liddell-based position, particularly when a proposed increase would be in the vicinity mentioned by the bonding agent.  An effort must be made. Certainty of success is not required. The phrase "in the vicinity" is employed on the premise that the amount raised should also ensure completion of the full Bayou Meto project.

JNPSD's position regarding a millage vote outcome is unduly pessimistic. [a.] A millage increase could be identified ensuring, if successful,  timely availability of both the complete Bayou Meto and Taylor projects, thereby increasing the likelihood of support in two communities.  DPSAFT denied funding for the square footage of the Bayou Meto all-purpose structure. [5749 , para. 2] The district now includes Bayou Meto in its reference to 2031. [5749 at 2]  [b.]  The Court required monthly meetings of the parties. It could now require their making a joint, cooperative effort to secure voter approval. [c.]  With  timely replacement of Taylor in question, a high level of support among the district's Black voters, including with the backing of the Jacksonville NAACP, seems more likely than not.  [d.] All  voters will cast ballots in the context of an obvious fairness question:  should there be functioning,  state of the art replacements for six or seven of JNPSD's  eight  K-12 schools,  with delay for one or two others offering  the critical K to 5 grades, when a millage increase in the vicinity identified will resolve the matter.

JNPSD reported a successful debt extension vote. [5748 at 2] Information

regarding this approach should be available to Intervenors and the Court. The information requested is [a.] the duration and the magnitude of the successful debt extension and [b.] the same facts regarding the extension necessary to ensure the ability to complete in a timely manner the Bayou Meto and Taylor replacement projects.

[D.] <u>The Request to Move Forward on the Middle School Addition</u>

JNPSD reported current enrollment in the new middle school exceeding the capacity of 850 students, with a reported enrollment of "over 900 scholars." [5748 at 3] The district discussed an approach to move forward on an addition of 14,000 square feet to increase the capacity to 1050. JNPSD noted that the single-purpose spaces were built to be adequate for a capacity of 1,050. [5748] JNPSD related the providing of additional space to serving the COVID relief purpose of promoting social distancing. JNPSD posited moving forward on this addition project using part of its federal "Elementary and Secondary School Emergency Relief Fund" (ESSER) allocations. [5748 at 3-4] JNPSD recognized that this forward step will require "Court permission" [At 4]. See the Court's third modification of JNPSD's 2018 master plan. [5445 at 7 (order of construction of elementary schools and secondary level additions)]

On September 10, 2021, JNPSD provided Intervenors updated information on middle school enrollment, with this number being at 857 students. Other

7

information provided evidenced the planned use of a total of 33 percent of the first two ESSER allocations of $5,878,125, approaching $4,000,000, to pay for the addition. Given the updated enrollment data, Intervenors emphasize the many permissible uses of ESSER funds directed to remedying the educational and psychological harm to students caused by the COVID phenomenon, harm unfortunately not at an end. Exhibit 2 hereto is 8 pages of guidance provided districts regarding permissible uses of ESSER funds. Intervenors note, in particular, the approaches summarized at dashes 10-12 on page 1 of Exhibit 2. More detail appears thereafter in the full text.

In light of the revised enrollment figure of 857 scholars, Intervenors do not support the use of ESSER funds for the addition project. The balance tips in favor of utilizing funds for other authorized projects.

The Court ruled for JNPSSD on the student achievement unitary status issue. [5730 at 67] It also began "with some hard truths" and continued [at 56]: "According to the ACT Aspire test results, most of JNPSD's students are performing below grade level. JNPSD Exh. 134, 135, & 136. And, in general, the performance gap between black and non-black students is either holding steady or getting worse. JNPSD 190 & 191; Intervenors' Exh. 21." Respectfully, the Court's findings could have been more powerful, as almost all of JNPSD's black students were performing below grade level in both reading and science, with other students' scores not much better.

8

The step sought will involve the Court in "giving weight to public [federal laws] and private [students] considerations" as authorized in <u>Brown v. Bd. of Education</u>, 349 U.S. 294, 300 (1955).

Conclusion

Intervenors' position is as follows:

[1.] JNPSD should be required to seek a millage increase, or an extension of debt, with the choice to be made after information is presented on each alternative. The step requested should be designed to make available funds sufficient to ensure timely completion of both the Taylor and Bayou Meto replacements.

[2.] JNPSD should be required to begin promptly making a renewed effort to secure partnership funding sufficient to attain the same result, drawing on the factors discussed by Intervenors and others identified by the district.

[3.] Intervenors do not support the use of $4,000,000 of ESSER funds for the addition project.

[4.] This position is consistent with both the priorities established by the Court in 2018 and educational needs, as evidenced by the Court's May 2021 findings [5445 at 7] and COVID--caused harms.

Respectfully submitted,

Austin Porter Jr., No. 86145
PORTER LAW FIRM
323 Center Street, Suite 1035
Little Rock, Arkansas 72201

Telephone: 501-244-8200
Facsimile: 501-372-5567
Email: aporte5640@aol.com

Robert Pressman
22 Locust Avenue
Lexington, MA  02421
Telephone: 781-862-1955
Email: pressmanrp@gmail.com


Joyce Raynor Carr
JOHN W. WALKER, P.A.
1723 S. Broadway
Little Rock, Arkansas 72206
Telephone: 501-374-3758
Facsimile: 501-374-4187

jraynorcarr@gmail.com

Shawn G. Childs
Lawrence A. Walker
WALKER & CHILDS, PLLC
1815 S. State Street
P. O. Box 3462
Little Rock, Arkansas 72206
Telephone: 501-287-8680
Facsimile: 501-222-8872

schilds@walkerandchilds.com
lwalker@walkerandchilds.com


ATTORNEYS FOR INTERVENORS

## **CERTIFICATE OF SERVICE**

I, Austin Porter Jr., do hereby certify that a copy of the foregoing pleading was electronically filed with the Clerk of the United States District Court for the Eastern District of Arkansas, on this 13th  day of September 2021, by using the CM/ECF system, which is designed to send notification of such filing to the following person:

M. Samuel Jones III.
Devin R. Bates
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, PLLC
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201

sjones@mwlaw.com
dbates@mwlaw.com

Jay Bequette
Bequette, Billingsley & Kees, P.A.
Attorneys at Law
425 West Capitol Avenue, Suite 3200
Little Rock, Arkansas 72201-3469

jbequette@bbpalaw.com

Scott P. Richardson
McDaniel, Richardson & Calhoun
1020 West 4th Street, Suite 410
Little Rock, Arkansas 72201

scott@mrcfirm.com

Austin Porter Jr.