IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LITTLE ROCK SCHOOL DISTRICT, *et al.*                    PLAINTIFFS

VS.                          CASE NO. 4:82-CV-00866 DPM

PULASKI COUNTY SPECIAL SCHOOL
DISTRICT, JACKSONVILLE/NORTH
PULASKI SCHOOL DISTRICT, *et al.*                       DEFENDANTS

EMILY MCCLENDON, TAMARA EACKLES,
VALERIE STALLINGS, TIFFANY ELLIS,
and LINDA MORGAN                                       INTERVENORS

<u>Declaration of Robert Pressman</u>

Robert Pressman states as follows:

[1.] This declaration and its attachments are in support of the of Intervenors'
motion for an award of attorney's fees and costs for the period subsequent to the
last relevant PCSSD award.

[2.] Attachment One sets forth my PCSSD time for the period from
September 16, 2017 through August 9, 2021. I prepared this document by use of
contemporaneous notes of the tasks I performed and reference to case materials.

[3.] The Court has ruled on fee award issues on multiple occasions since
transfer of the case to His Honor's docket.  One such decision, Doc. 5095  (4-2-
25), concerned a  successful Joshua motion seeking an award  against the State. I
prepared a detailed Declaration in support of this motion.  See Attachment Two.

1



Sections A. and B. describe my work in this case from 1995 through the declaration's date, January 20, 2014. Section C. describes my prior work on school desegregation and other civil rights issues in the period from August 1965 through September 1995. I am utilizing this earlier, detailed filing in order to minimize additional work at this time.

[4.] I believe that the Court has the ability, to the extent deemed necessary, to assess my performance in the case in the period between the beginning of 2014 and September 16, 2017.

[5.] The opinion in <u>Little Rock School District v. Arkansas</u>, 674 F.3d 990 (8thCir. 2012) addresses the awarding of fees and costs to our side, for success on the appeal decided in 2011. About 10 years ago, that Court utilized a rate of $325 per hour for the 90.3 hours in which I assisted the Legal Defense Fund counsel. [final paragraph of opinion] The Court wrote: "Mr. Pressman began his civil rights work in 1965 for the Civil Rights Division of the United Staes Department of Justice, working on desegregation cases in Mississippi, Illinois, and Alabama, before spending twenty-five years with the Center for Law and Education, where he continued to serve as counsel in desegregation cases in Boston, and Omaha, among other locations. He has been working with Mr. Walker on the instant case since at least 1997. The billing rates charged by Mr. Walker and Mr. Pressman thus represent those charged by the most senior and skillful attorneys in the local

2

community." [fourth paragraph from end of opinion]

[6.] Attachment One at 18 includes the entire time that I listened to the July 2020 PCSSD hearing. This is appropriate. As there indicated, I made 149 pages of handwritten notes as I listened. In addition, I believe that the two closing arguments which I made evidenced a best effort, using those notes and my overall knowledge of the case, to present Intervenors' position in a clear and comprehensive manner.

[7.] Due to the passing of Mr. Walker, the magnitude of the pre-trial tasks, including responding to challenging motions *in limine*, and the duration of the hearing, this work occurred in a lengthy, pressure-packed period.

Pursuant to 28 U.S.C. Sec. 1946, I declare under pains and penalties of perjury that the foregoing, including the content of my time records and two declarations, is true and correct to the best of my knowledge and belief.

/s/ Robert Pressman

August 9, 2021

3

<u>Robert Pressman PCSSD Time</u>

[TIME CLAIMED IS IN THE MOST RIGHT COLUMN ON THE PAGE]

| | | |
|---|---|---|
| 9-6-17 | work with JS on pub. recs. request  to state agency regarding Mills and Robinson facility projects [.16]; study SJ supp. status report (Doc.5322; 9-5-17)  (report advising Court of issues arising in construction of new Mills High and  new Robinson Middle projects)  [.33] | .49 |
| 9-8-17 | prepare for status hearing on PCSSD facilities [.50]; hearing (PCSSD facility portion) [.84] | 1.34 |
| 10-9-17 | study PCSSD facility report  (Doc. 5337) required by Order of 9-8-17 (Doc. 5327) | .33 |
| 10-10-17 | review and organize Mills and Robinson docs. secured by FOIA from Div. of Ac. Sch. Facils. and Transportation [.66]; work with JS on FOIA to PCSSD regarding Mills and Robinson projects [.33] | .99 |
| 10-13-17 | study PCSSD FOIA response [.25]; work with JS on follow-up to  initial FOIA to PCSSD [.20] | .45 |
| 10-17-17 | begin work on Joshua facility report required by the Order of  9-8-17; this work continued through 10-23-17, yielding Doc. 5338 filed on 10-24-17;  <u>time claimed for this document is</u> (10-17:  3.00;  10-18:  3.00;  10-19:  work on report [4.25]; read JWW memo; ideas for report [.16]  4.41; 10-21:  .83; 10-22: 10.20 (including writing, emailing  JWW and JS,  reading 2 hearing transcripts supplied by JS, and identifying exhibits to be appended  to report);  10-23 complete report [1.75] ; provide corrections | 23.44 |
| 10-23-17 | to JS  [.25] 2.00) | |
| 10-26-17 | read AP memo re PCSSD facilities and discuss with him | .33 |
| 10-27-17 | monthly  meeting with topic PCSSD facility issues; [JWW, JS, RP, Sam J., Dr. Warren, M. Powell, Scott R.] | 1.16 |
| 10-30-17 | discuss 2 follow-up questions with Margie Powell | .10 |
| 11-9-17 | study Margie Powell report on PCSSD facilities required by Court; appended to Court's Order of 11-9-17 (Doc. 5343) | .25 |

EXHIBIT
Attach 1

11-10-17    discuss  Margie Powell report with her                                      .25

4-19-18     review two detailed reports provided by JS regarding  observations
            during visits to new Mills  High and new Robinson Middle construction
            projects  (tour on 4-18 organized by Dr. Warren); email to JS followed
            by second report                                                          .50

4-20-18     email response by JS regarding elements of M. Powell approach during
            tour (responding to RP query)                                            .08

4-26-18     email to JS  regarding site visits                                       ----

5-15-18     reviewed "field report" concerning progress in  Robinson Middle
            project; furnished by  SJ (25 pages including photographs) (only
            such Robinson report provided)                                           .25

5-18-18     reviewed weekly report concerning progress in new Mills High project
            project; furnished by SJ (22 pages including photographs)                .16

6-7-18      read draft  enforcement motion prepared by JWW, including 5 pages of
            facility content                                                         .75

6-8-18      study draft motion [.25]; discuss draft with JWW and JS [1.25]

6-11-18     develop ideas for  a facility motion                                     .50

6-12-18     study JWW draft motion [.33]; discuss facility approach with JWW
            and JS  [.33]                                                            .66

6-14-18 through 7-5-18: work yielding Docs.  5404, 5405, and 5406, Intervenors'
            motion for facility relief and supporting memorandum and 17
            exhibits <u>total time claimed for this work</u>:                        39.00

        6-14-18     work on facilities memo, including ideas for content 1.25

        6-18-18     work on memo including consultation with JS    1.50

        6-19-18     read transcripts of Ct. status hearings  (facility content) .50

        6-20-18     work on facility memo    3.58

        6-21-18     work on facility memo, including discuss facts with JWW

and JS    2.00

6-22-18    work on memo [1.50]; email JS seeking documents
[.08]; discuss with Ms. Powell visits to school projects
on Dr. Warren--led tour  (MP repetitively extolls quality of
new Robinson and its superiority to new Mills, with
latter described as obviously smaller than plan called
for) [.33]    1.91

6-23-18    work on memo   2.50

6-24-18    work on memo    1.00

6-25-18    work on memo    3.50

6-26-18    work on memo [1.00]; consult with JS regarding facts,
including emails [.33]   1.33

6-27-18    study 3 parts of PCSSD 2018 Facility Master Plan
provided by JS, email her, work on draft and send
to counsel and JS   4.00

6-28-18    study JWW ideas for memo [.50]; work with JWW
and JS regarding  memo [1.50]   2.00

6-29-18    discuss facts for memo with JS [.25]; work on memo
[.50]    .75

7-2-18    work on memorandum; consult with JWW and  JS  2.50

7-3-18    work on memorandum    2.00

7-4-18    work with JS  on exhibits [2.00]; complete memo in
support of motion for facilities relief [6.00]  8.00

7-5-18    write Intervenors' motion for facilities relief  5.50

6-22-18    read  Doc. 5402, joint status report of PCSSD and Joshua regarding
school tours                                                                                          ----

7-10-18    new Mills  High field  observation rept dated 7-5-18 provided by SJ
(progress on construction with narrative and photographs)                .25

| | | |
|---|---|---|
| 7-23-18 | study draft of responses to PCSSD discovery, propounded with regard to Ints.' facilities motion | .55 |
| 7-24-18 | work with JS on the discovery responses [2.50]; read Doc. 5414, SJ letter to Court regarding school tours [----] | 2.50 |
| 8-1-18 | study case Docs. 5417 and 5418, PCSSD response to Ints.' facility motion | .50 |
| 8-7-18 | work with JS on responses to PCSSD facilities motion discovery | 1.25 |
| 8-15-18 | discuss Intervenors' PCSSD facility strategy with JWW | .25 |
| 9-13-18 | discuss with Margie Powell her observations on tours of PCSSD facilities (visits with Court and counsel) | .33 |
| 9-14-18 | discuss PCSSD facilities issues with JWW and AP [.25]; discuss PCSSD facilities issues with JS [.20] | .45 |
| 9-16-18 | reviewed docs. secured earlier from PCSSD by pub. recs. request regarding new Mills High and new Robinson Middle | .25 |
| 9-24-18 | court's bench ruling regarding Ints.' motion for facility relief; prepare for hearing [.33]; hearing [1.25]; discuss with JWW and JS [.10] | 1.68 |
| 10-16-18 | read SJ email to Court regarding Sylvan Hills tour, Doc. 5452 | ---- |
| 11-3-18 | study docs. on: stakeholders' complaints regarding new Mills High facility, comments by Curtis Johnson, and District's response; also docs. regarding Court's second school tour | .50 |
| 11-9-18 | discuss with JWW possible contempt approach to PCSSD facility problems [.33]; contact with JS regarding facilities issues [.16] | .50 |
| 11-11-18 | study information provided by PCSSD on expenditures for facility projects and email questions to JS [projects: new Robinson Middle; new Mills High; old Mills High conversion; a multi-page chart for each] | .66 |

| | | |
|---|---|---|
| 11-12-18 | work with JS on facility issues (amounts spent, docs. to secure, witness ideas); statements by new Mills and then-Robinson principals) | 1.20 |
| 12-3-18 | study Doc. 5474, initial  (1st) PCSSD facility report, required by Court on 9-24-18; and emails to colleagues | 1.00 |
| 12-8-18 | study substitute exhibit 4 to 5474, filed by PCSSD | .50 |
| 2-1-19 | study Doc. 5493, second PCSSD facility report,  required by Court [.33]; discuss follow-up with JS [.08] | .41 |
| 2-7-19 | work with JS on letter to SJ regarding shortcomings of  first two facility reports;  RP preparation [.20]; work with JS [1.50] | 1.70 |
| 3-6-19 | read  JS letter comparing new Mills High and new JHS ; study facts on PCSSD chart (part of periodic facilities  reports) | .25 |
| 3/--/19 | study SJ response  of 3-7-19 to Ints.' 2-7-19 letter re facility concerns | .20 |
| 3/--/19 | study JS facility monitoring  report, geared to 3-7-19 SJ letter (very detailed report regarding new Mills High and old Mills High conversion project; based on JS observations and discussions with staff) | .40 |
| 3-19-19 | preparation to speak to JS  [.25]; discuss PCSSD facility facts with JS [1.33] | 1.58 |
| 3-25-19 | work on  PCSSD facility proof ideas | 1.50 |
| 3-26-19 | work on PCSSD facility proof ideas | 1.00 |
| 3-27-19 | send  several page outline on "Mills proof ideas and approach" to JWW, AP, and JS  (much of outline points to develop; written 3-25/3-26) | |
| 3-28-19 | discuss facility proof ideas with JS | .33 |
| 3-29-19 | study  Doc. 5495, third PCSSD  facility report, required by Court | .25 |
| 4-2-19 | work on facilities proof outline [subsequent work through 4-15 yielded a 21 page  document titled | 2.33 |

"PCSSD facilities Evidence and Ideas"; sections addressed: strategic concerns; "Chronology";  "Listing of Ideas for Factual Development";  and "Contempt and Supplemental Motion Approaches"

| | | |
|---|---|---|
| 4-3-19 | facility proof outline | 1.33 |
| 4-4-19 | discuss facility approach with JS (content of her monitoring report and possible use of photographs) | .25 |
| 4-9-19 through 4-15-19  contemporaneous time records show 12.16 hours on "PCSSD Facilities Evidence and Ideas " memo (time from 4-5 to 4-8 not recorded) | | 12.16 |
| 4-17-19 | send   21 page document to JWW, AP, and JS | .08 |
| 6-4-19 | study Doc. 5498, fourth PCSSD facility report,  and email to co-counsel regarding content | .33 |
| 8-1-19 | study Doc. 5509, fifth PCSSD facility report, required by Court | .20 |
| 10-1-19 | study Doc. 5522, sixth PCSSD facility report, required by Court | .20 |
| 10-3-19 | discuss details of PCSSD  facility report with JS and request monitoring of  new Center for Innovation | .25 |
| 10-16-19 | filed Doc. 5528, "Intervenors' Comments on PCSSD's Facility Reports"; total time claimed  (detailed in the entries from 10-4 through 10-15) is | 17.93 |

10-4-19  discussion with JWW, AP, and JS re approach to PCSSD facility issues 2.00

10-7-19  work on response to first 6  periodic PCSSD facility reports,  which Court  had required on 9-24-18   3.00

10-8-19  work on response  2.00

10-9-19  work on response to reports  3.00

10-10-19  work on response to reports [3.00]; email JWW and JS re replacement of  glass in new Mills High project in media center and  JS reply [.08]   3.08

10-11-19  work on response [3.50]; work with JS on facts  (her  report updating conditions in new Mills High) and content of draft [.20]   3.70

10-12-19  email to JS identifying 5 exhibits to be submitted with response   .16

10-15-19  additional work on response  document, including work with JS on facts  [.66] and discussion of content with JWW, AP and JS  [.33]   .99

10-18-19   provide PCSSD facility plan documents to AP (multiple "narrative" sections  of annual Master plans)                                          .10

11-19-19   review new Mills High docs.  received  from JS  (regarding master schedule and staff assignments to rooms; showing room shortage)                                                                      .50

11-22-19   Intervenors filed Response to PCSSD's Notice of Unitary Status, Ints.' Doc. 5543 (facilities content at 4-11);  PCSSD filing  was Doc. 5533; total time on  Doc. 5543 was 19.25 hours, as follows: 10-30: .20;  11-6: .25; 11-7: 2.50; 11-8:  3.00;  11-9: 3.00;  11-10: 3.00;  11-11: 2.00; 11-12: 5.00; 11-15: .10;  11-18: .20                                                19.25

11-23-19   work on questions for interviewing Mills High principal [1.50]; interview principal with JS 1.75                                           3.25

11-25-19   completed work on "Intervenors' 1st Set of Requests for Production of Documents to PCSSD regarding 2020 Unitary Status Hearings" (8 requests regarding facilities facts); emailed to JS, then served on DB and SJ; [3.00];   12-27-19  study PCSSD response dated 12-20-19 [.50];   prepared memo detailing inadequacies of PCSSD response, work on 1-5-20, 1-7-20, and 1-8-20 totaling [5.25] ;   PCSSD First Supplemental Response on 1-31-20 continued to be incomplete [.25];   3-12-20  second memorandum to DB and SJ  including content on inadequacies of responses [.25];  subsequently discussed with DB,  with AP present and other discovery issues addressed; time claimed is                                                           8.50

11-26-19   study Doc. 5548, seventh PCSSD facility report                      .33

12-2-19   write memo on changes to Mills High capacity  in references to project

|  | over  time | .25 |
|---|---|---|
| 12-3-19 | review Mills High addition alternatives prepared by architects; emails to AP and JS; other work regarding new Mills High | .80 |
| 12-4-19 | work with AP on facts, legal standards, and status report | 2.00 |
| 12-5-19 | work on writing of discipline discovery  to serve on PCSSD;  read discovery drafted by JS | 1.33 |
| 12-12-19 | work on response to M. Powell draft of her  mon. report regarding PCSSD facilities | 5.75 |
| 12-13-19 | continue work on  M. Powell draft report | 4.00 |
| 12-14-19 | complete work on response to M. Powell and email to JS | 4.50 |
| 12-18-19 | work on comment to M. Powell regarding  her final PCSSD facility report version | 3.50 |
| 12-19-19 | complete work on comment to M. Powell final report version and provide to JS for submission to MP | 4.00 |
| 12-23- 19 through 12-31-19 | prepared substantive responses to  PCSSD interrogatories  8 to 10 concerning Intervenors' contentions  as to discipline, achievement and facilities; 12-23: 2.66;  12-24:  3.00; 12-26:  2.50; 12-27: 1.75; 12-30: 2.50; 12-31: .50 | 12.91 |
| 1-1-20 | consult with AP on facilities, Court expert, and case | .25 |
| 1-9-20 | speak to AP re facilities and logistics | .20 |
| 1-16-20 | discuss 1-17 monthly meeting agenda with AP and JS for PCSSD | .25 |
| 1-17-20 | monthly meeting; PCSSD facilities | .58 |
| 1-19-20 | email to AP and JS regarding new Mills High facility facts (stakeholder complaints, Mills' alternative plans, Curtis Johnson statement) | .33 |
| 1-22-20 | read email  memo  from JS re Curtis Johnson statements at 1-21 public meeting held by PCSSD, a required element of 2020 Master Plan process; looked at  CJ presentation slides; email to JS re content of | |

|  | her memo and additional questions; AP also attended | .33 |
|---|---|---|
| 1-23-20 | work with JS regarding PCSSD facilities | .50 |
| 1-31-20 | read Doc. 5562, eighth PCSSD  Court-required facility report | .10 |
| 2-2-20 | study PCSSD response, on 1-31,  to Ints.' interrogatories  and document requests[2.50];  also  2-14: [.50]; 2-15: [.50] | 3.50 |
| 2-13-20 | through 2-18-20; work on ideas for Curtis Johnson deposition questions;  provided to AP and JS by emails; part of this time  (my notes  show  7.00 plus hours); time claimed: | 3.00 |
| 2-15-20 | review PCSSD response to Ints.' achievement discovery | 1.40 |
| 2-16-20 | speak to JS regarding Dr. Warren and logistics | .33 |
| 2-17-20 | speak to AP and JS regarding PCSSD discovery responses and  CJ deposition questions | .75 |
| 2-19-20 | discuss this day's  later CJ deposition with AP and JS  [.84]; listen to  CJ deposition [3.25 hours] | 4.09 |
| 3-7-20 | review docs. provided by PCSSD, which were requested  by AP during Curtis Johnson deposition | .16 |
| 3-13-20 | begin careful review of C.Johnson deposition and exhibits, with note-taking, to facilitate drawing on content; [continuation of this work: 3-14: 1.00 (send cites to AP and JS); 3-30-20 .75; 3-31: 1.33; time claimed: | 3.08 |
| 3-25-20 | with AP, meeting with DB regarding discovery disputes (follow-up letter by AP on 3-27; and response by DB on 3-31) | .84 |
| 3-26-20 | AP and RP meeting with DB regarding discovery responses, including on facilities;  preparation for meeting [.50];  meeting [.80] | .80 |
| 3-27-20 | study Doc. 5576, ninth  PCSSD facility report  and discuss with Charles Bolden facts regarding ROTC building | .25 |
| 3-31-20 | work on ideas for facility questions for Dr. Warren's deposition | .25 |

[******]

Intervenors filed on  4-2-20  Doc.  5583  titled "Intervenors' Facilities Status Report
Concerning JNPSD and PCSSD." 5583 addressed  JNPSD Doc. 5575, titled "Status
Report,"  as well as PCSSD issues.  All RP time entries regarding response to JNPSD
5575 and to produce the content in Ints.' 5583  concerning the two districts is  shown
below. Based on these entries,  7.00 is claimed  here  for PCSSD. [5.00 is  claimed for
JNPSD in a separate document.]

| | | |
|---|---|---|
| 3-21-20 | first examination of JNPSD Doc. 5575 and related exhibits; email to SR --- | .25 |
| 3-22-20 | research regarding facility funding issue | .50 |
| 3-23-20 | query to SR; email response regarding construction  of Taylor and Bayou Meto projects | .08 |
| 3-24-20 | work on JNPSD response (read Ms. Freno's brief; email to SR ---; work on ideas for response) | .75 |
| 3-25-20 | email to SR regarding Taylor issue [,20]; email to JS regarding millage vote [---];  work on response to JNPSD status report  [1.50]  1.70 | |
| 3-30-20 | work on facilities status brief [1.25]; review portion of CJ deposition [.75] | 2.00 |
| 4-1-20 | work on facility status response | 8.00 |
| 4-2-20 | complete facility status response and send to AP | 2.50 |
| | Time claimed for Doc. 5583 for PCSSD is | 7.00 |

[******]

In response to Intervenors' requests for document production and other requests for
documents, I ultimately received by mail 8 disks, the first mailed on 1-14-20 and the last
delivered to my home on 6-30-20 at 1:30 p.m. The total number of pages was 18,061.
At least 1-3[rd] of these documents concerned the new Mills High and  new Robinson
Middle projects and other facility matters.  My time records include the following:

| | | |
|---|---|---|
| 4-2-20 | review documents regarding "change orders" | 1.33 |
| 4-3-20 | review documents regarding "value engineering" [.16]; records regarding  Mills and Robinson projects [2.50] | 2.66 |
| 4-4-20 | review facility documents | 2.75 |
| 4-5-20 | additional review of change order documents | .50 |
| 4-6-20 | additional Robinson and Mills documents reviewed [1.00];  discussed helpful content of document with JS [1.50] | 2.50 |
| 4-20 | 5442--5557    master plan material | .75 |
| 4-21 | 5555--5757    master plan material | .50 |
| 4-23-20 | review  PCSSD disc with facility documents and videos | 2.50 |
| 5-15-20 | review additional PCSSD facility documents on disk; seventh disk with files 10,517-- 15,440 mailed to me on 5-5-20; this included at 12,700 –772 "PCSSD New Middle School Schematic Design," dated 11-25-15, which became our trial exhibit 30 | 3.33 |

various dates  reviewing other content of these disks                    7.00

<u>time claimed</u>          30.82

[****]

| | | |
|---|---|---|
| 4-3-20 | discuss with JS issues regarding blueprints for the new Mills High project and her interview of architect Chilcote regarding new Mills High project; included notes of interview  of Chilcote | .58 |
| 4-5-20 | work on Dr. Warren  deposition questions and discuss with JS [1.25]; additional work and provide to AP [1.00] | 2.25 |
| 4-7-20 | discuss with JS her review of  Curtis Johnson binders with facility documents  (at his office) | .33 |
| 4-8-20 | listen to deposition of Dr. Warren  4.25 | 4.25 |
| 4-9-20 | critique of Dr. Warren's deposition with JS | .16 |

| | | |
|---|---|---|
| 4-13-20 | study PCSSD 2020 Facility Master Plan content | .75 |
| 4-14-20 | additional study of Master Plan content | 2.20 |
| 4-16-20 | discuss multiple topics with AP, including PCSSD facilities questions, one being PCSSD's  Plans A and B approach [.50]; also discussed seeking delay in one of two hearings  [.16] | .66 |
| 4-15-20 | review Robinson Middle  School documents secured by JS | 1.00 |
| 4-25-20 | study multiple year narrative sections of PCSSD Facility Master Plans | .50 |
| 5-17-20 | study documents regarding the new Mills High and Sylvan Hills schools/projects | .25 |
| 5-18-20 | study facility topics: read transcripts regarding Plan B; check RP chronology regarding this issue; Sylvan Hills High School documents; millage vote results for 2015 and 2017, using materials provided by Charles Bolden showing voting by precinct | 2.50 |
| 5-20-20 | check docs. For PCSSD's statements of position regarding College Station and Harris Elementary Schools | .33 |
| 5-22-20 | discuss various issues with JS, including new Robinson Middle project, in the light of  schematic design; also Duckery facts | .33 |
| 5-24-20 to 5-27-20  read Dr. Warren's deposition and made notes to facilitate use (part of time) | | 1.50 |
| 5-26-20 | participated in call of counsel and JS regarding school tours | ---- |
| 6-2-20 | PCSSD filed a motion in limine and brief regarding discipline (Docs. 5617 and 5618); Ints. Replied (Docs. 5632 and 5633) | 2.00 |
| 6-2-20 | began work on responses to PCSSD Docs. 5619 and 5620 (in limine motion and brief regarding facilities); total time claimed for study of PCSSD papers and preparation of responses to motion and brief (designated 5634 and 5635) is | 38.00 |

(recorded more than 38.91  hours from 6-2 through 6-15-20; reduction of

|  |  |  |
|---|---|---|
|  | 6.91 hours; time as follows: 6-2: 2.00; 6-3: 8.00;  6-4: 3.00;  6-5: 3.00; 6-6: 3.00; 6-7: 2.50;  6-8: 8.50; 6-9: 2.33; 6-10: 3.16; 6-11: 2.50; 6-12: .92;  6-15: additional work, time for day on all topics, 10.00, not sub-divided in my contemporaneous notes: | 10.00 |
| 6-9-20 | discussed with JS and read her notes regarding Earnest Duckery's testimony in a deposition concerning reductions made in the scope and quality of the new Mills High School  during the planning/ design phase | .66 |
| 6-10-20 | study PCSSD stipulation proposal (not agreed upon) | .33 |
| 6-15-20 | Intervenors' Pretrial Disclosure Sheet, Doc. 5628, filed;  total time on this Disclosure was 17.47  hours: 6-7: 2.00 with JS; 6-9:  3.64 (part with JS); 6-10 2.00; 6-11 1.67 (part with JS); 6-12 4.00 (part with JS); 6-13 3.00 (part with JS); 6-14: 1.16; 6-15: additional time time not sub-divided (discussed above in 6-2 entry) | 17.47 |
| 6-16-20 | Review PCSSD Pretrial Disclosure Sheet, Doc. 5631 | 2.50 |
| 6-22-20 | on or about 6-1-2020, the Districts filed a joint motion and a joint brief regarding allocation of the burden of proof; Intervenors responded to the motion, with a supportive brief, Docs. 5642 and 5643, on this date; time records show a total of 35.90 hours in responding, as follows: 6-1:2.50; 6-16: 1.33; 6-17: 7.75; 6-18:  8.33;  6-19: 8.33; 6-21: 1.75; 6-22: 4.75; one half of the time is allocated to PCSSD and one half to JNPSD | 17.95 |
| 6-29-20 | On 6-1-20 PCSSD filed a motion for unitary status (Doc. 5621)  and a very lengthy and detailed  supporting brief (Doc. 5622); Ints. responded with a motion and brief,  Docs. 5648 and 5649;  work on 5648 and 5649: 5-22: .75; 5-23:   3.00; 5-24: 3.33;  5-27: 1.00; 5-28: .50; 6-24: .50; 6-25: 7.00; 6-26: 7.50;   6-27: 11.75; 6-28: 5.50 (includes sending draft to colleagues);  6:29: response to PCSSD motion [1.25]; work with AP on brief [1.00]  2.25;  total time is | 41.58; |
| 7-7-20 | distributed Ints.' exhibit list and exhibits. RP work: 6-30: 1.50 (with JS); 7-2: 1.00; 7-3: 6.00 (with JS); 7-4: 1.00 (with JS); total time is 9.50; 25 facility exhibits; time claimed is | 9.50 |
| 7-7-20 | listen to status conference conducted by Court | 1.00 |
| 7-8-20/ | review PCSSD trial exhibits; total time 19 hours, including work |  |

| Date | Description | Hours |
|---|---|---|
| 7-11-20 | with AP and JS;  19 hours was as follows: 7-8  4.50; 7-9  5.00; 7-10  4.50 and 1.50 with AP; 7-11: 3.5 with AP and JS) (discussed content with colleagues as we worked) | 19.00 |
| 7-12-20 | study PCSSD documents relating to the  teacher/staff "cohorts" identified; communicate with AP and JS | 3.50 |
| 7-13-20 | various hearing preparation steps; contact with AP, SC, JS | 6.75 |
| 7-14-20 | memorandum to AP, JS and SC setting forth chronology of  costs identified for new Robinson Middle and  new Mills High projects (1 and 2/3 pp) (background information for hearing) | 1.50 |
| 7-15-20 | email questions to AP [.75]; discuss AVID with SC[.25] | 1.00 |
| 7-16-20 and 7-17-20 | prepare for closing argument on PCSSD achievement issue on Friday afternoon 7-17-20  (notes regarding testimony; prepare charts showing students in test score "In Need of Support "category) | 3.00 |
| 7-17-20 | argument  of  counsel of 3 parties ; estimate of time | 3.00 |
| 7-19-20 | discuss discipline area and logistics with JS | 2.50 |
| 7-20-20 | prepare  before court and provide to AP ideas for discipline questions | 2.33 |
| 7-21-20 | prepare analysis of discipline statistics and send to JS [1.50]; discuss disc. with JS [.25]; email AP regarding achievement chart; after court, discuss approach to identifying disc. disparity with AP [.25] | 2.00 |
| 7-23-20 7-28-20 | PCSSD witness  No. 11 Curtis Johnson; listened and took notes; Ints.' witness No. 5 Curtis Johnson; listened and took notes; (testimony concerned facility issues)  time included in Court's total of 67 hours of Court in session cited below) | ----- |
| 7-15-20 7-27-20 | PCSSD witness Dr. Janice Warren; listened and took notes; Ints.' witness Dr. Warren; listened and took notes; (part of testimony concerned identification of discrimination affecting new Mills High and actions taken)  (her testimony included in Court's total of 67 hours of Court in session) | ----- |

| | | |
|---|---|---|
| 7-28-20 | Ints." witness Earnest Duckery; listened and took notes; (testimony regarding modifications in new Mills High project) (testimony included in Court's total of 67 hours of Court in session) | ------ |
| 7-28-20 | Ints.' witness Duane Clayton; listened and took notes (Principal of new Mills High School) (testimony included in Court's total of 67 hours of Court in session) | ----- |
| 7-31-20 | final arguments; preparation [1.75]; arguments [4.50] | 6.25 |
| 8-5-20 | read  Doc. 5684, PCSSD very brief periodic facility report | ------ |
| 8-6-20 | study very detailed email from JS regarding observations during tour with Court of Sylvan Hills site, new construction and other facilities; includes Court's characterization of project quality | .33 |
| 8-15-20 | memorandum to AP, JS, SC  regarding facts on Sylvan Hills High construction projects (2 and 1-4 pp) | 1.50 |
| 8-31-20 | first reading and study of Doc. 5690, PCSSD 9-1-20 Facils. Status Report | .50 |
| 9-22-20 | Intervenors filed Doc. 5699, a reply to PCSSD's August 31, 2020 facilities status report; total time on this project was 14.75 hours, as follows: 9-16: 1.25;  9-17:  2.75;  9-18:  3.50;  9-20: .75; 9-22:  6.50 (send to AP and JS); time claimed is | 14.75 |
| 10-30-20 | read PCSSD Doc. 5721, very brief facilities status report | .08 |
| 11-20-20 | study PCSSD Doc. 5723 titled "Special Status Report" [.33]; discuss with AP; later read Int. Doc. 5724, filed 12-4-20 by AP, Motion to Strike 5723 | .33 |
| 12-7-20 | read PCSSD Doc. 5725, response to motion to strike | .20 |
| 12-29-20 | read Doc. 5726, PCSSD 12-31-20 facilities status report | .16 |
| 2-26-21 | read Doc. 5727, PCSSD 2-26-21 facilities status report (mentions Sylvan Hills projects total is under budget); very brief report | .08 |
| 2-27-21 | read media article provided by JS; PCSSD Board approved 2021 | |

|  | Facility Master Plan; article noted projects discussed at meeting, including $25 million for Robinson High expansion | .08 |
|---|---|---|
| 3-3-21 | email from DB re meeting to discuss current PCSSD facility plans; this followed email of 3-1-21 from AP to DB about PCSSD facility concepts not discussed with Ints. | .08 |
| 3-5-21 | meeting with DB, Curtis J., Dr. McN, AP, RP, JS; discuss 2021 Master Plan and a Driven facility at new Mills High School | .66 |
| 4-21-21 | study docs. from PCSSD re bonds supporting Sylvan Hills projects; surplus available for a Driven project? Contact AP and JS about this | .33 |
| 4-22-21 | PCSSD notice letter re facilities, mentioning new Mills Driven and Maumelle High (track) projects, along with PCSSD legal theories | .20 |
| 4-27-21 | study Doc. 5729, PCSSD 60-day facility report (for 4-30-21) | .25 |
| 4-28-21 | work with AP on Mills Driven facility issues in prep. for meeting | .33 |
| 4-28-21 | bi-monthly meeting; Curtis J. reports: moving ahead on Driven; bonding dollar balance, ideas for use, permissible use (part of meeting) | .33 |
| 5-5-21 | work with AP and JS re reply to PCSSD 4-22 facility notice letter (.33); read AP draft and work with J.S. on one change to draft utilized by AP (.08) | .41 |
| 5-7-21 plus | study PCSSD parts of Court's ruling re facilities; Doc. 5730 at 24-31, 67-68 | 1.50 |
| 5-18-21 | letter from DB re PCSSD's initial pursuing of proposed construction at new Mills High, following Court's ruling | .08 |
| 6-2-21 | work with JS on text of Ints.' response to PCSSD letter of 5-18-21 (JS forwarded draft to AP for his use) | .20 |
| 6-10-21 | meeting of DB, Dr. McN, CJ, AP, JS and RP; comprehensive discussion of Ints.'requests for new Mills High equalization steps; funds available; time lines for moving forward | .84 |

| | | |
|---|---|---|
| 7-1-21 | study 6-30 letter from DB regarding PCSSD facility approach [.16]; read JS memo regarding her follow-up on facts pertinent given DB 6-30 letter [.08] | .24 |
| 7-7-21 | discuss content of 6-30 letter and Ints.' position with AP and JS | ..33 |
| 7-12-21 | meeting of DB, AP, JS and BP regarding possible fee settlement | --- |
| 7-12 & 7-13 | emails of JS and DB regarding school board meeting to include facilities discussion | .08 |
| 7-14-21 | discuss with JS school board facility meeting content on 7-13 | .20 |
| 7-15-21 | read JS memo on school board meeting  (facility content) and documents provided to Board (including on raising funds) | .25 |
| 7-23-21 | draft proposed text  of letter to PCSSD for AP and JS regarding content on material provided to school board on 7-13  (drawn upon by AP in longer letter he sent to PCSSD on 7-28) | 2.00 |
| 8-2-21 | study PCSSD facility plan | .33 |
| 8-3-21 | study PCSSD facility plan | .50 |
| 8-9-21 | makes notes on parts of record and decisions to cite in response to facility plan [.75]; discuss with AP motion for additional time to reply [–] | .75 |

additional time for listening to hearing, during which I took 149 pages of notes, then drawn upon in my closing arguments; Court identified courtroom in session time for PCSSD hearing as 67 hours; 7.50  hours have been listed above on following dates: 7-17:  3.00; and 7-31: 4.5; these are my estimates.

Additional claim for in courtroom time                                               59.50

Total time: 545.59   hours

[**]   areas of unrecorded time: working alone or with JS to draft  PCSSD discovery; communications with AP and JS by email and phone; reviewing parts of the 18,000

pages of documents provided by PCSSD on disks.

[B] <u>Bob Pressman Monitoring Time for PCSSD</u>

| | | |
|---|---|---|
| 8-29-17 | review PCSSD annual monitoring report provided by JS | .50 |
| 12-4-19 | review M. Powell PCSSD discipline report | .25 |
| 12-10-19 | review M. Powell PCSSD achievement report | .33 |
| 12-23-19 | work with JS on response to M. Powell PCSSD monitoring report draft | 2.25 |
| 1-10-20 | read final M. Powell final report on PCSSD monitoring | .16 |
| 1-16-20 | discuss with AP and JS agenda for  parties' monthly meeting | .25 |
| 1-17-20 | discuss  at monthly meeting Plan 2000 continuing obligations | .58 |
| 2-15-20 | email to AP and JS regarding MP whisper to SJ during lunch at a monthly meeting that College Station and Harris not part of remaining case | .33 |
| 4-29-20 | work regarding monthly meeting; work with JS on topics  for discussion; participation (part of PCSSD time) | .50 |
| 4-28-21 | bi-monthly meeting (portion of discussion  re  federal relief funds) (Dr. McN, C.J. and J.S, AP, RP.) | .25 |

<u>Total time:</u> 5.41 hours


[C.]  <u>Bob Pressman Time relating to Preparing PCSSD Fee Request</u>

<u>part of time</u>                                                                          8.00

[D.] <u>Amount</u>

559.00  hours times $350     is     $195,650

Declaration of Robert Pressman
ADE



Robert Pressman declares as follows:

A. Time on the ADE Motion for Release and Other ADE Work

1.] My participation in the representation of the Joshua class, which began in May 1996, is discussed below. Exhibit 1, attached to this Declaration, shows my work and time relating to the ADE Motion for Release [time from January 2013 through January 20, 2014], as well as some earlier ADE-related work and time [2000 and 2001]. It includes work involved in the effort to secure an award of fees and costs for the overall ADE-related work of Joshua counsel. Exhibit 1 documents 308.48 hours.

[2.] My participation in Joshua's work addressing the Motion for Release included the following areas: communicating with John W. Walker and Joy Springer on the handling of the case; responding to ADE's written discovery to Joshua; preparing written discovery directed to ADE; reviewing ADE's responses and participating in following-up with ADE counsel, where Joshua viewed responses to be incomplete; participating along with Mr. Walker in 6 meetings of counsel for the parties opposing the release motion [discussions of legal theories, proof, and settlement]; looking to a hearing, building my knowledge of pertinent facts [reading expert reports, identifying articles by ADE experts, reading depositions conducted in 2011; participating in some of the most important current depositions; reading other parties' discovery responses]; writing Joshua's trial brief; preparing Joshua's pre-trial sheet; providing comments on the two notices to the class; listening to the three hearings conducted by the court concerning settlement [a necessity given my need in the circumstances to understand fully all aspects of the litigation]; preparing documents for a fee petition.

B. Earlier Work in this Case

[3.] I first participated in court in this case in May 1996, before Judge Wright, in a hearing which her honor scheduled to hear expert testimony on racial achievement disparity. Doctors David Armor and Herbert Walberg provided testimony in this hearing. This testimony was cited at later points in the litigation. Mr. Walker was unable to attend this hearing due to an important argument in the Court of Appeals for the Eighth Circuit.

[4.] When the LRSD moved for unitary status, I assisted Mr. Walker in opposing the motion, including in hearings conducted by Judges Wright and Wilson. The court [Judge Wilson] ruled in favor of the LRSD, except in the area of assessment/evaluation of programs, where the court entered a compliance remedy. This remedy led to formal evaluations of some programs with regard to effectiveness in reducing achievement disparity. I assisted Mr. Walker in efforts, at first successful, to defeat LRSD motions to end the compliance remedy. Judge Wilson ultimately ruled that LRSD had earned unitary status in this area; and the Court of Appeals affirmed that ruling [decisions in 2007 and 2009]. Nevertheless, Joshua's efforts in securing the text of the revised LRSD desegregation plan and in court proceedings yielded formal program evaluations during the duration of the remedy and the creation of a Department in the system [PRE], which continued to prepare formal program evaluations after the district achieved unitary status.

[5.] Turning to PCSSD. In 1997-98 and 1999, I prepared memoranda and other documents utilized by Mr. Walker in the overall effort to respond to two PCSSD motions for unitary status. See case documents 3211 [9-28-98] and 3282 [7-19-99], Orders of Judge Wright concerning theses

motions. In 1998 and 1999, I participated in the drafting of a revised PCSSD desegregation plan, "Plan 2000." Judge Wright approved this Plan in Orders entered in February and March 2000. See Documents 3337 [2-22-2000] and 3347 [3-20-2000]. In the period November 2005 through March 2007, I worked with Mr. Walker and Ms. Springer in negotiations resulting from Joshua's written complaint, pursuant to Plan 2000, that PCSSD had not adequately implemented multiple features of Plan 2000. As of March 1, 2007, my PCSSD work encompassed 308.91 hours.

[6.] PCSSD filed another motion for unitary status in 2007. In the period August 2009 through May 20, 2011, I worked 495.38 hours in assisting Mr. Walker on the PCSSD unitary status issues tried by Judge Miller. My work included preparing and responding to discovery; writing documents, including proposed findings of fact and conclusions of law; and questioning 9 witnesses during the hearing held in March, 2010.

[7.] Regarding the NLRSD. NLRSD filed a motion for unitary status in 2007. In the period August 2009 through June 2010, I worked 395.14 hours in assisting Mr. Walker on the NLRSD unitary status issues tried by Judge Miller. My work included preparing and responding to discovery; writing documents, including legal memoranda and proposed findings of fact and conclusions of law; and questioning 6 witnesses during the hearing held in January-February of 2010.

[8.] When both PCSSD and NLRSD appealed from Judge Miller's May 2011 rulings on their motions for unitary status, I assisted the Legal Defense Fund attorneys who prepared Joshua's responsive brief. This entailed 90.3 hours of work on the PCSSD issues and 32.58 hours on the single area, where Judge Miller had found inadequate plan compliance by NLRSD.

[9.] Since the beginning of 2013, I have worked 84.42 hours on issues directly related to PCSSD compliance with the continuing elements of Plan 2000.

[10.] As shown in the remainder of this declaration, I began working on school desegregation issues in 1966 and had very considerable experience in that area prior to the work described in paragraphs [1.]-[9.].

## C. My Prior Experience in School Desegregation Issues and the Federal Courts

[11.] Following my graduation from the Columbia Law School in June 1965, I worked for 5 years in the Civil Rights Division, United States Department of Justice [8-2-65 through 7-31-70]. My work involved enforcement of the various civil rights mandates, including for the desegregation of schools. My first desegregation-related experiences in federal court, in 1966, concerned the Carroll County [Mississippi] schools, once involving non-compliance with a court order and once regarding revision of the desegregation plan to conform to newly articulated standards. I also investigated the status of desegregation in other Mississippi systems (Lee County, Pontotoc County, Tunica County, City of Corinth). Later, I developed the facts leading to the filing of the government's first northern school desegregation case, United States v. School District 151 of Cook County, Illinois, and participated in two lengthy hearings, with successful results. See 286 F.Supp. 786, 787 (N.D.Ill. 1968); 301 F.Supp. 201, 205 (N.D.Ill. 1969). In calendar 1970, as a part of the Division's "education section," I was the lead counsel for the United States in Lee v. Macon County Board of Education, a case involving the desegregation of more than 100 Alabama school districts. A three-judge court [Circuit Judge Richard Rives, and District Judges Frank M. Johnson, Jr. and H.H. Grooms] handled this case, filed in the Northern District of Alabama. During the period of my involvement, the court revised many desegregation plans to conform to the standards, which the Supreme Court had set forth in Green v.

County School Board (1968). I prepared separate memoranda for the court regarding necessary revisions in more than 30 school districts and frequently appeared before the court. I also appeared before Judge Johnson in the separate Montgomery County school desegregation case and prepared for the Department briefs in two appeals from the decisions of the three-judge court in the Lee case. See, for example, Lee v. Macon County Board of Education, 448 F.2d 746, 747 (5thCir. 1971).

[12.] On December 15, 1969, in the Attorney General's Twentieth Annual Awards Ceremony, I received a Certificate of Award for outstanding work. The Department honored four of the Division's ninety attorneys at this time.

[13.] In the period from August 1970 through September 1995, I was employed at the Center for Law and Education, a component of the federally-funded program of legal services for low income persons, located in Cambridge, Massachusetts. The Center, "a back-up center," provided assistance to legal services attorneys in local programs throughout the country to strengthen the representation of clients presenting education problems. My work included: providing assistance on individual client's problems; writing materials (including on racial discrimination issues and school desegregation litigation); providing training; and serving as co-counsel in some cases. While employed at the Center for Law and Education, I had very considerable involvement in cases involving racial segregation in public education at both the elementary-secondary and higher education levels.

[a] In the period from 1972 through 1995, I was one of the attorneys representing the plaintiff class in the Boston school desegregation case. With co-counsel, I worked many thousands of hours on the case, although there were periods when I was relatively inactive and other attorneys had the laboring oar. I had a substantial role in developing the evidence underlying the court's liability findings. See, for example, Morgan v. Hennigan, 379 F.Supp. 410, 414 (D.Mass. 1974) (liability opinion) and Morgan v. McDonough, 540 F.2d 527, 528 (1stCir. 1976) (argued appeal in which court upheld placing of a high school in receivership).

[b] See Exhibit 2 (declaration of Thomas I. Atkins, a past General Counsel of the NAACP, concerning my work; Mr. Atkins provided this declaration in 1996, for our use in seeking attorneys' fees for my work in this case).

[c] In the 1970s, I worked more than 1,000 hours to assist local legal services attorneys in the representation of plaintiffs-intervenors in the Omaha school desegregation case, United States v. School District of Omaha. This work included participation in the initial hearing on liability, a successful appeal to the Court of Appeals for the Eighth Circuit after the district court ruled for the school district, and a later district court hearing. See 389 F.Supp. at 293 (dismissal of action by district court); 521 F.2d 530 (reversing adverse ruling on liability; the court drew heavily on the factual portion of the intervenors' brief of which I was the principal writer).

[d] In January 1987, I began assisting the North Mississippi Rural Legal Services program in the representation of the plaintiffs and class members in the case then styled Ayers v. Allain, Civ. Action No. 4:75CV009-B-O, Northern District of Mississippi. Ayers addressed the obligations of Mississippi officials regarding the State's eight public universities, three historically black and five historically white, a system long operated in a racially discriminatory and racially segregated manner. I have worked more than 8,000 hours on this case, with some monitoring of a consent decree continuing to the present. My overall work has also included: discovery; participating in lengthy liability hearings in April 1987 and May-June 1994, with the latter hearing more than 40 days; writing appellate briefs and arguing appeals; and participating in writing a successful petition for Supreme Court review and the brief on the merits [see United States v. Fordyce, 112 S.Ct. 2727 (1992) (dismissal of case reversed and governing remedial standard set forth)]. See the following citations evidencing my participation in the Ayers case: 893 F.2d at 732 (argued in panel appeal after first district court hearing); 914 F.2d at 676-77 (argued before Fifth Circuit en banc); 879 F.Supp at 1423 (district court ruling after hearing

following Supreme Court decision); 111 F.3d at 1188 (on brief for appeal to Fifth Circuit).

[e] The parties ultimately settled the Ayers case, with the financial aspects of the State's obligations requiring expenditures of of 384 million dollars. In July 2002, Trial Lawyers for Public Justice honored my co-counsel and me as "Trial Lawyer of the Year," for our work in attaining this settlement. See Exhibit 3 hereto.

[14.] In October 1995, I began working with John W. Walker and other persons in his firm. In my Arkansas work, overall, I have appeared before eight federal district court judges and five magistrate judges. In addition to school desegregation matters, I have worked on cases involving employment discrimination, voting rights, and citizens' Fourth and Fourteenth Amendment rights (arrest and detention, search, and use of force issues). See Taylor v. Howe, 225 F.3d 993 (8thCir. 2000) (voting rights); Young v. City of Little Rock, 249 F.3d 730 (8thCir. 2000) (continued detention and strip search, after court determined plaintiff not the subject of warrant and ordered her release).

I swear under the pains and penalties of perjury that the foregoing information, including that in my time records, is truthful to the best of my knowledge.

January 20, 2014

/s/ Robert Pressman
22 Locust Avenue
Lexington, MA 02421
781-862-1955
EHPressman@Verizon.net
Mass. Bar 405900