IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| **LITTLE ROCK SCHOOL DISTRICT,** *et al.* | **PLAINTIFFS** |
| v.     No. 4:82-cv-866-DPM | |
| **NORTH LITTLE ROCK SCHOOL DISTRICT,** et al. | **DEFENDANTS** |
| **EMILY McCLENDON, et al.** | **INTERVENORS** |

**MOTION FOR LEAVE TO FILE THIRD-PARTY COMPLAINT**

Comes now Defendant Jacksonville North Pulaski School District by and through its attorney, Scott P. Richardson, McDaniel, Wolff & Benca, PLLC, and states for its *Motion for Leave to File Third-Party Complaint*:

**REPLY TO STATE'S RESPONSE TO
MOTION FOR LEAVE TO FILE THIRD-PARTY COMPLAINT**

1. It is law of the case that the settlement agreement approved by the Court in 2014 is more than a contractual settlement agreement. It is a consent decree of this Court. The Court has jurisdiction to interpret and enforce the consent decree. 8/8/16 Transcript p. 86-89; DE # 5239, Order; *Liddell v. State of Missouri*, 731 F.2d 1294, 1304-05 (8th Cir. 1984).

2. The State is mistaken about JNPSD's status in the agreement. It is not a party to it. It did not exist when the agreement was negotiated and no Jacksonville (much less JNPSD) party advocated for JNPSD in the drafting, acceptance, or confirmation of the agreement. *Local Number 93, Int'l Ass'n of Firefighters v. City of*

*Cleveland*, 478 U.S. 501, 529 (1986)("*Firefighters*")("parties who choose to resolve litigation through settlement may not dispose of the claims of a third party"). JNPSD is not a signatory to the Agreement. DE # 5063, Consent Judgment p. 9-10. At best, JNPSD stands as a third-party beneficiary of the agreement. In pure contract terms, a third-party beneficiary may have rights to "recover for damages from breach of contract when that party is a third-party beneficiary to the contract." *Perry v. Baptist Health*, 358 Ark. 238, 244-246, 189 S.W.3d 54, 58-59 (2004) *but see Elsner v. Farmers Ins. Group, Inc.*, 364 Ark. 393, 395, 220 S.W.3d 633, 635 (2005). But, JNPSD is not aware of any authority for the proposition that a contract terminates rights possessed by a non-party to the contract. *Contra, Firefighters, supra.*

What cuts through this potential legal thicket is this Court's authority over a desegregation case: "If school authorities fail in their affirmative obligations under these holdings, judicial authority may be invoked. Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte Mecklenburg Sch. Dist.*, 402 U.S. 1, 15 (1971).

Why is JNPSD a party to this case? Because "vestiges of state-imposed segregation" remained in JNPSD and the Court was obliged to continue remedying those violations. *Id.* Technicalities of state contract law do not override this obligation that arises under the Fourteenth Amendment. *Firefighters*, 478 U.S. at 526 (holding that parties to consent decree "cannot take action that conflicts with or violates the [law] upon which the complaint was based.") *accord Frew v. Hawkins*, 540 U.S. 431,

438-439 (2004)(holding consent decrees must "be directed to protecting federal interests"). JNPSD for its part stepped to the challenge immediately seeking to be added as a party and within five years of its creation successfully attained unitary status where it could. *LRSD v. PCSSD*, 344 F.Supp.3d 1016 (E.D. Ark. 2018); *LRSD v. PCSSD*, 2021 WL 1823137, DE # 5730 (E.D. Ark. 2021). Light speed compared to the other parties and the State (which has never been declared unitary).

One area remains, facilities, that JNPSD will be unable to fully remedy without State assistance. In desegregation terms: (1) a constitutional violation remains in facilities that this Court held requires replacement of all JNPSD K-12 facilities;[1] (2) a remedial decree has issued "designed as nearly as possible to restore the victims of discriminatory conduct to the position they would have occupied in the absence of such conduct;" and (3) this Court, in devising that remedy, has taken "into account the interests of state and local authorities in managing their own affairs, consistent with the Constitution." *Missouri v. Jenkins*, 515 U.S. 70, 88 (1995) *quoting Milliken v. Bradley*, 433 U.S. 267 (1977).

The parties and JNPSD had hoped that the State's historic posture of resisting desegregation would not impede the remedying of this last vestige of desegregation, but it appears that is not the case. *See Cooper v. Aaron*, 358 U.S. 1, 17 (1958); *LRSD v. PCSSD*, 664 F.3d 738, 743-744, 758 (8th Cir. 2011)(holding State could not discharge its desegregation obligations by proceedings "cobbled together").

---

[1] This ruling is also law of the case. *Liddell*, 731 F.2d at 1304-05.

3. This is all why it made sense for the Court, in adopting the consent decree, to carve out a reservation of jurisdiction as to JNPSD: "The Court also retains jurisdiction as necessary should a Jacksonville/North Pulaski Area School District be created by the State." DE # 5063, Consent Judgment p. 2. The State ignores this reservation of jurisdiction.

4. A prior settlement agreement in this case required the dismissal of the State in 1990. *LRSD v. PCSSD*, 921 F.2d 1371, 1391 (8th Cir. 1990)("the District Court's order of December 11, 1989, is reversed, and the order of December 15, 1989, is vacated, *with instructions to enter a fresh order dismissing the State as a party* pursuant to the terms of the parties' settlement agreement.")(emphasis added); DE # 1418, Jan. 18, 1991 Order dismissing State as a party. But, that was not the end of the State's involvement or additional orders against the State, some very expensive. *See e.g.* DE # 1442, Feb. 28, 1991 Order requiring State to fund ODM; *LRSD v. PCSSD*, 83 F.3d 1013 (8th Cir. 1996); *LRSD v. PCSSD*, 148 F.3d 956 (8th Cir. 1998).

5. At bottom, the State's argument is tantamount to: the parties bargained away any desegregation obligation the State may have had subsequent to the settlement agreement, and a third-party beneficiary to the agreement is bound by the discharge of those rights. The State provides no authority for such a bold assertion. *Contra* U.S. Const. Art. VI, cl. 2 ("This Constitution . . . shall be the supreme Law of the Land"). A poison at the root of the State's argument is that the rights and guarantees of the Constitution may be bargained and sold. This is not the case as a matter of State law. Ark. Const. Art. 2 § 12.

6.     The Fourteenth Amendment requires States to assist school districts' pursuit of desegregation and elimination (to the extent practicable) of the vestiges of segregation that remain in the school districts. *Brown v. Board of Education*, 347 U.S. 483 (1954); *Cooper v. Aaron,* 358 U.S. 1, 17 (1958)(holding that Arkansas officials cannot nullify the constitutional guarantee of equal educational opportunities to children on grounds of race or color either "openly and directly by . . . state executive or judicial officers, nor nullified indirectly by them through evasive schemes").

7.     The State retains the benefit of its bargain even if JNPSD is ultimately successful on this claim. It discharged an ever-increasing payment obligation that was up to approximately $60 million per year in 2013. It ended its funding obligation for the unitary status efforts of the districts and secured the removal of two of its school districts (LRSD and NLRSD) from desegregation litigation. It also ended the uncertainty of the 1989 Settlement Agreement moving forward and did so while avoiding a contentious trial. Yes, the State has provided funding under the Partnership Program for schools in JNPSD. It's funding argument, however, ignores the actual educational needs in the District. The State should not get credit for funding less than half the amount required to replace school facilities in such meager condition; facilities that languished even while the State was directly in control of PCSSD.

8.     Accordingly, JNPSD respectfully requests that it be allowed to proceed on the tendered Third-Party Complaint.

**REPLY TO INTERVENORS' SUPPLEMENTAL RESPONSE (DE# 5752)**

9. With the Court's indulgence, JNPSD will respond to a few points raised by the Intervenors.

10. Yes, JNPSD will apply again for Partnership Program funds for Taylor Elementary School. This year is a Master Plan cycle, so it is time for that. The timeline is as follows: The deadline for preliminary review submission is November 1, 2021. Once submitted, DPSAFT must conduct a Review Conference for the application within 75 days of submission of the preliminary application. At that Review Conference, the District learns if the application is complete, tentative approval/disapproval status, and preliminary funding amount, if any. Master Plans are due February 1, 2022. Final project applications, if any corrections need to be made, are due by March 1, 2022. DPSAFT must make funding decisions on those Master Plans by May 1, 2023. *Cf.* DE # 5445, Order ("JNPSD will apply for state funding . . . no later than year one of the 2023-2025 project funding cycle"). JNPSD will make the arguments for funding with the guidance of Dr. Chuck Stein, taking into consideration the Intervenors' suggestions. The application will require JNPSD to release the award of funds it was previously granted for the 2021-23 funding cycle for the amount of space that Taylor Elementary falls below that recommended by DPSAFT's Program of Requirements ("POR"). This is based on enrollment, which the pandemic has caused a drop in enrollment. So, it is possible that JNPSD will again be denied funding and what was allowed will be reduced.

11. Another millage election (whether increasing the amount or extending

the current millage sunset) is highly unlikely to succeed. JNPSD's current millage rate was adopted at a special election on February 9, 2016. With all of the good will of a new school district, the millage passed by 392 votes out of 3,798 cast or 55.16% of the vote.[2] Three years later, on May 21, 2019, JNPSD asked the voters for an extension of the millage so JNPSD could fund additional bonds to support construction. The extension passed by 103 votes out of 1,723 cast, or 53%.[3] The Jacksonville NAACP opposed the millage extension.[4] Ex. A. Every year, school millage appears on the ballot for a vote. If it fails, the millage continues on the same terms. In 2018, JNPSD's millage failed: 2018: 992 For, 1,615 Against.[5] PCSSD has attempted several times in the past decade to increase its millage or extend its millage sunset and failed each time. While the Intervenors suggest another millage election, they give no reason

12. The Court does have "broad equitable powers to remedy the evils of segregation" which "include[s] a narrowly defined power to order increases in local tax levies on real estate." *Liddell v. Missouri*, 731 F.2d 1294, 1320 (8th Cir. 1984). But that power may "be exercised only after exploration of every other fiscal alternative." *Id.* The proposed Third-Party Complaint allows for the "exploration" of another "fiscal

---

[2] https://votepulaski.net/Elections/2016_Elections/EL45JAX.html
[3] https://votepulaski.net/Elections/2019/Jax2019/05212019%20Official%20Election%20Summary.pdf
[4] Rep. John Walker travelled to Jacksonville personally to openly oppose the 2016 millage increase. None of the Intervenors or their counsel attempted to support the 2019 millage extension.
[5] https://votepulaski.net/Elections/2018/05222018PrefPrimary/officialResults/05222018%20OFFICIAL%20Summary%20Report.pdf

alternative," i.e. Partnership Program funding. With respect, JNPSD's stakeholders have committed enough funding for school construction. They did so with the understanding that the State would provide assistance in the effort. Before they are burdened with additional taxation, the Court should address the State's refusal to honor this Court's order that replacement of Taylor Elementary School is necessary to remedy the vestiges of segregation that remain in JNPSD.

13. The middle school extension: JNPSD will bring this issue before the Court by separate motion. Now is not the time to weigh that question. The Intervenors are incorrect in their understanding of ESSER funding and how it may be used. At the appropriate time, JNPSD will address the question.

WHEREFORE, JNPSD requests permission to file the Third-Party Complaint, and for any and all other just and proper relief to which it may be entitled.

Respectfully Submitted,

Scott P. Richardson (2001208)
McDaniel, Wolff, & Benca PLLC
1307 West 4th St.
Little Rock, AR 72201
501.954-8000
866.419.1601 fax
scott@mwbfirm.com


Attorney for Jacksonville/North Pulaski School District