IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**LITTLE ROCK SCHOOL DISTRICT**                                                               **PLAINTIFF**

**V.**                              **NO. 4:82-cv-866-DPM**

**PULASKI COUNTY SPECIAL SCHOOL**
**DISTRICT NO. 1, ET AL.**                                                                   **DEFENDANTS**

**EMILY McCLENDON, ET AL.**                                                                  **INTERVENORS**

**PCSSD'S RESPONSE IN OPPOSITION TO**
**INTERVENORS' PETITION FOR FEES**

Pulaski County Special School District ("PCSSD"), for its Response in Opposition to Intervenors' Petition for Fees, *Doc. 5754*, submits the following:

**I.      Statement of Controlling Law**

The Court provided the following guidance regarding Intervenors' entitlement to fees: "Reasonable attorney's fee for monitoring [PCSSD] since the last fee award, as well as for the litigation about PCSSD facilities issues, on which Intervenors have prevailed." *Doc. 5730, p. 68*. Previously, this Court also provided the following: "the Court is frugal-some might say stingy-with other people's money." *Doc. 5254*. In that instance, the Court ultimately did not engage in detailed scrutiny and instead deferred to an unopposed petition for fees because PCSSD (operating under state control) agreed to pay Intervenors $1.4 million. More recently, when Intervenors sought fees against JNPSD in 2019, the Court reduced the request by 46%. *Doc. 5507*. The facts and circumstances of those two recent historical chapters were different, but those examples do provide precedent in this case to show that there is no entitlement to a full fee award claimed unless it is justified under the circumstances. As will be explained below, here, it is not.

1

## II.     Hourly Rates Claimed

In their petition for fees, Intervenors have sought compensation at the following rates: John Walker ($450/hour), Austin Porter ($350/hour), Bob Pressman ($350/hour), Joy Springer ($137.50/hour), and monitors ($70/hour). These rates are claimed uniformly for all work performed between 2017 and 2021. The problem lies in the fact that for some of this same time period, this Court already awarded fees against JNPSD at the following rates: John Walker ($350/hour), Austin Porter ($300/hour), Bob Pressman ($300/hour), Joy Springer ($100/hour), and monitors ($70/hour). *See* Doc. 5507. In light of that precedent in this case, what Intervenors have effectively done is sought to bill PCSSD for higher rates than those billed to JNPSD for some of the same tasks on this same case for the same time period. If Intervenors disagreed with this Court's decision to award the 2019 rates and establish that precedent in this case, then the time to address that disagreement was by filing an appeal. No appeal was filed. Those 2019 rates represent precedent established in this case just a short time ago, and that precedent should be followed now. Of course the Court is not bound to this precedent as a matter of law, but the precedent should be highly persuasive authority and no good cause was shown to deviate therefrom.

Without getting into an extensive debate with Intervenors on the fairness of the rates claimed, PCSSD also notes that other than the affidavits signed by Intervenors' counsel themselves, there is no affidavit from a third party establishing that the rates claimed are fair, reasonable, and reflective of market rates in Little Rock, Arkansas for the work performed in this case. As the counsel seeking a rate increase over and above those already established in this case in 2019, such proof could have potentially been instructive.

On the question of rates, PCSSD respectfully suggests that this Court should only consider awarding Intervenors' counsel rates at the Court's rates established in 2019 in this case. *See* PCSSD's quantitative analysis of hourly rates, attached hereto as **Exhibit 1**. The columns in red show the fee request as originally submitted by Intervenors. The columns in blue show the fee request calculated using the rates set by this Court in 2019. This exhibit analyzes the hourly rate issue in isolation of all other argument below.

### III.     "Litigation about PCSSD Facilities Issues, on Which Intervenors Have Prevailed"

The Court previously stated that Intervenors are entitled to a "[r]easonable attorney's fee … for the litigation about PCSSD facilities issues, on which Intervenors have prevailed." *Doc. 5730, p. 68*. Intervenors' request for attorneys' fees made no attempt to focus on this directive, and instead represents a 100% fee request for 100% of the litigation, including student achievement, discipline, monitoring, and facilities. Herein, PCSSD will seek to outline several possible methods for measuring "litigation about PCSSD facilities issues, on which Intervenors have prevailed," because the full fee award that Intervenors sought is a nonstarter.

#### A.     Methodology

PCSSD carefully reviewed Intervenors' entire fee petition. PCSSD sought to determine whether each billing entry was an entry about monitoring, or litigation. PCSSD employed the following analytical framework. Each time entry submitted by Intervenors was manually reviewed. Most of the time entries before 1 January 2020 were classified as "monitoring" unless the description made it clear that it was applicable to "litigation" in which case it was coded as such. Most of the time entries after 31 December 2019 were classified as "litigation" unless the description made it clear that it was applicable to "monitoring" in which case it was coded as such. If any error was made here, this end of 2019 dividing line was favorable to Intervenors, as

the Court's then operative scheduling order technically opened discovery on 15 November 2019. *Doc. 5503*. PCSSD would have been justified in making 15 November 2019 the dividing line, but seeking to err on the side of fairness to Intervenors, and in part because the billing entries seemed to support it, PCSSD instead used a later date.

      B.      **How to Measure Time Spent on Facilities**

The last fee award against PCSSD came in 2017 right around the time when PCSSD became completely unitary in staffing. Since that time, there remained four PCSSD issues in this case: student achievement, discipline, facilities, and monitoring. Intervenors did not prevail on student achievement, discipline, and facilities, and so they are entitled to no fee award for litigation efforts in those areas. On facilities, Intervenors did not have a complete victory. Intervenors spent significant time in litigation arguing about, among other issues, a replacement for College Station Elementary and facilities issues at Harris Elementary. *Doc. 5635*, *Doc. 5649, pp. 11, 23-24*. Those issues did not appear in the Court's ruling. Of course, Intervenors prevailed on the issue of proving inequity between Mills University Studies High School and Robinson Middle School. While this does not represent a complete victory on the topic of facilities, that issue is very important.

One way to approximate the time spent on facilities litigation would be to take the total time spent on litigation, and divide it by four. There were, after all, four issues and facilities is but one of them. Another way to make an approximation would be to divide the total litigation time by three, if one were to assume that monitoring is more of a derivative area and less of a stand-alone topic. *See* PCSSD's quantitative analysis of an "extent prevailed" adjustment, attached hereto as **Exhibit 2**. The chart on the top divides litigation fees by four (a 25% payout rate), while the chart on the bottom divides litigation fees by three (a 33.33% payout rate).

Following from the section on monitoring below, this exhibit shows monitoring fees as paid completely (a 100% payout rate). Considering the time actually spent in the courtroom at trial, a 25% or 33.33% payout rate for facilities would, if anything, overestimate the percent of litigation devoted to facilities. PCSSD's case on facilities lasted one morning at trial, whereas its cases on student achievement, discipline, and monitoring were far lengthier, involving many more witnesses and documents. The facilities litigation was certainly important, but the case that PCSSD put forward in support of its quest for unitary status on facilities was actually quite narrow, and was more of a legal argument than anything else. *See Doc. 5619, Doc. 5620*. PCSSD did ***not*** argue that there was no inequity between Mills and Robinson, just that alternatively, there was a contractual basis on which to decide the case. In any event, it would not be unreasonable to use a 25% payout rate for litigation.

To share PCSSD's determinations about whether each billing entry was an entry about monitoring, or litigation, PCSSD also attaches the following documentation. *See* PCSSD's monitoring/litigation classification of the billing of John Walker, attached hereto as **Exhibit 3**. *See* PCSSD's monitoring/litigation classification of the billing of Joy Springer, attached hereto as **Exhibit 4**. *See* PCSSD's monitoring/litigation classification of the billing of Austin Porter, attached hereto as **Exhibit 5**. *See* PCSSD's monitoring/litigation classification of the billing of Bob Pressman, attached hereto as **Exhibit 6**.

Some discrepancies will be addressed below, and some need to be conceded. In any event, Exhibit 2 is supported by Exhibits 3, 4, 5, and 6.

**John W. Walker**. For Mr. Walker, Intervenors use the figure of 173.88 total hours. *Doc. 5754, p. 2*. However, Intervenors' documentation in support of John Walker adds up to 173.98, as best PCSSD can determine. *See Doc. 5754-3, pp. 50-60*. Intervenors' methodology for

reaching 173.88 is never explained. Nonetheless, given the closeness of these numbers, with regard to John Walker, in its Exhibit 2, PCSSD uses the figure of 173.88 total hours, as shown on Exhibit 3.

**Joy Springer**. For Rep. Springer, Intervenors use the figure of 843.94 total hours in "monitor fees." *Doc. 5754, p. 2*. Of course, Rep. Springer is the lead monitor, but she also functions in this case as a paralegal. *See* **Exhibit 7**, 46:8-15, 75:14-17 (transcript of deposition); *see also Doc. 5754-3, p. 1, ¶ 3* (affidavit of Joy Springer describing litigation functions that she performs in the case). In other words, just because Rep. Springer performed a task does not mean that it was a monitoring task, as the task may well have supported litigation instead of monitoring. It takes an examination of the billing entry, using the methodology described above, to divide Rep. Springer's tasks into monitoring or litigation. As far as Rep. Springer's affidavit claiming 843.94 total hours worked, PCSSD finds itself unable to replicate the math that led to that total figure. Intervenors' methodology for reaching 843.94 is never explained. Working with what is replicable, Exhibit 4 shows that 49.84% of Rep Springer's time was spent on monitoring, and 50.16% of her time was spent on litigation. 49.84% of 843.94 total hours is 420.66 hours for monitoring, and 50.16% of 843.94 total hours is 423.30 hours for litigation. Nonetheless, for sake of argument, with regard to Rep. Joy Springer, in its Exhibit 2, PCSSD uses the total figure of 843.94 total hours (roughly 420.66 hours for monitoring + 423.30 hours for litigation), as determined on Exhibit 4. In other words, PCSSD defers to Intervenors' math even though it cannot be replicated.

**Bob Pressman**. Mr. Pressman is the only Intervenor representative that designated some time as "monitoring." *Doc. 5745-5, p. 21*. However, that only accounted for 5.41 hours, and some of the other time entries from 2017, 2018, and 2019 are obviously also monitoring related.

6

Thus, while respecting Mr. Pressman's designation of 5.41 hours of time as monitoring, PCSSD did not automatically label all other time as "litigation" because that would not be fair to Mr. Pressman or consistent with the methodology described above. The same methodology described above was applied here as well. For Mr. Pressman, Intervenors use the figure of 559 total hours. *Doc. 5754, p. 2*. PCSSD finds itself unable to replicate the math that led to that total figure. Intervenors' methodology for reaching 559 is never explained. Working with what is replicable, Exhibit 6 shows that 34% of Mr. Pressman's time was spent on monitoring, and 66% of his time was spent on litigation. 34% of 559 total hours is 187.81 hours for monitoring, and 66% of 559 total hours is 371.19 hours for litigation. Nonetheless, for sake of argument, with regard to Mr. Pressman, in its Exhibit 2, PCSSD uses the figure of 559 total hours (187.81 hours for monitoring + 371.19 hours for litigation), as determined on Exhibit 6. In other words, PCSSD defers to Intervenors' math even though it cannot be replicated.

**Austin Porter**. There is no discrepancy to report. For Mr. Porter, Intervenors use the figure of 366.05 total hours. *Doc. 5754, p. 2*. Mr. Porter's documentation submitted in support of this claim adds up perfectly to 366.05 total hours. *Doc. 5754-1, pp. 9-15*. Mr. Porter's 366.05 hours consists of 49.25 hours of monitoring, and 316.8 hours of litigation. *See* Exhibit 5.

**Marva Smith and Charles Bolden**. For Marva Smith and Charles Bolden, PCSSD accepts Intervenors' submission as presented. This is monitoring time only.

Intervenors may respond by suggesting that a more precise method be used to determine what percent of litigation was devoted to facilities, such as a classification of each billing entry as litigation devoted to student achievement, discipline, monitoring, and facilities. First, Intervenors' billing practices do not allow for this level of detailed analysis, given that many tasks are not identified as such, or some tasks that are more detailed also happen to be in the

7

middle of a large block of billed time. Second, this would not allow for a breakdown of tasks such as depositions where multiple areas are covered. Third, if Intervenors wanted to present facilities litigation fees in a manner separate and apart from monitoring fees or litigation in other areas, they could have included this analysis with their fee petition. They did not (except for the 5.41 hours from Mr. Pressman). The methodology outlined by PCSSD above is fair, objective, and seeks to approximate the fee award that the Court directed the parties toward. It should be followed.

**IV.     "Reasonable attorney's fee for monitoring."**

The Court previously stated that Intervenors are entitled to a "[r]easonable attorney's fee for monitoring [PCSSD] since the last fee award." *Doc. 5730, p. 68*. For sake of picking its battles, PCSSD concedes that all billed monitoring activities and the length of time recorded for each are reasonable and compensable (once litigation tasks are separated from monitoring tasks as explained above, and with the notable exception of non-case related activities improperly billed as "monitoring" as described below). Once the rates are adjusted as argued above, and except where exceptions are noted, PCSSD concedes that the request for monitoring should be paid as presented.[1] This concession is noted in Exhibit 2 by the fact that PCSSD projected a 100% payout rate for monitoring activities. *See* PCSSD's quantitative analysis of an "extent prevailed" adjustment, attached hereto as **Exhibit 2**.

---

[1] There is much more that could be argued about monitoring charges and whether some of the billed tasks are proper or not, but getting to the bottom of all of that would be an extensive undertaking. PCSSD is ever mindful in its effort to adhere to the Court's directive that fees are to be awarded according to the following: "Reasonable attorney's fee for monitoring [PCSSD] since the last fee award, as well as for the litigation about PCSSD facilities issues, on which Intervenors have prevailed." *Doc. 5730, p. 68*. PCSSD is aware that it cannot file an extensive brief on every little point, and the Court has not opened discovery on these issues. So PCSSD will make a strategic concession, and focus on roughly approximating what the Court already stated it was inclined to award.

## V.     Other Billing Issues

Finally, Intervenors' billing practices do not fully support that they are entitled to all of the time claimed, at least as against PCSSD. For example, one of Joy Springer's billing entries from 4 June 2020 claims fees against PCSSD for 3.8 hours for the following: "Review of my deposition transcript – over 350 pages." *Doc. 5754-3, p. 11*. However, at her deposition Rep. Springer was questioned by attorneys for both PCSSD and JNPSD, which is part of why her deposition transcript was lengthy. Yet she billed PCSSD in full for this. Also, Rep. Springer's deposition transcript was in fact only 252 pages long, not the 350+ pages that her billing entry claims. *See* copy of Rep. Joy Springer's deposition transcript, attached hereto as **Exhibit 7**.

The billing submitted also reflects a blurring of the line between the desegregation case, and legal services provided to private clients of the John W. Walker P.A. law firm. This is illustrated, for example, in billing entries from 19 December 2019 submitted by Rep. Springer. *Doc. 5754-3, p. 19*. Rep. Springer billed a total of 2.9 hours for appearing at a PCSSD hearing for a 504 student. As the Court is aware from handling the high volume of ADA/special education cases on the Federal dockets, this is a robust area of law practice in which private practice attorneys represent students and charge fees to the families. In some instances, federal statutes allow for a fee petition to be filed against school districts when the student experiences success in litigation. There is nothing about Rep. Springer's 19 December 2019 entries that show her work as being part of the desegregation case, as opposed to the provision of ADA/special education legal services for a private client, in which the Walker firm could provide services to a family, and then bill the family or the school if they were successful. Instead, this separate private practice of law has been shoehorned into the desegregation case.

This chronic issue was discussed in Rep. Springer's deposition, in which she admitted that she considers the aiding of ADA/special education students in hearings to be "monitoring" in the desegregation case. *See* Exhibit 7, Transcript of Joy Springer's Deposition, 65:17 to 69:22. In one revealing exchange, Rep. Springer testified about this issue as follows:

> Q: Were there any meetings? Was there any sort of follow-up? What else did you do in response to--
> A: ...A lot of [parents] don't have means, and Mr. Walker has instructed us to assist them as best that we can with going through the process. And so we do those sort of things … And so Charles [Bolden] has this relationship. He went with them and was able to work something out with him. And I'm thinking I attended a, a hearing on his behalf…
> Q. So your attendance at any sort of hearing for this student, and Mr. Bolden's work with this student, that was all part of the monitoring efforts; is that correct?
> A. I would say so, yes…

Exhibit 7, 67:25 to 69:8. Regarding the specific student that Rep. Springer discussed in the exchange above, she billed PCSSD for services provided to that family. *Compare Exhibit 7, 65:9-13 with Doc. 5754-3, p. 27.* Intervenors have effectively been providing pro-bono legal services free of charge to parents, but then billing PCSSD under the guise of the desegregation case as shown by the above examples. This is another illustration of "scope creep."

Time, space, and judicial efficiency do not allow for PCSSD to highlight every example of billing irregularities and inaccuracies contained in Intervenors' submissions. To get to the bottom of that would involve discovery on the question of Intervenor billing practices, which is something that the Court has not ordered and may not be the best use of everyone's time at this juncture. The above examples are meant to be illustrative, not exhaustive. An appropriate and efficient way for the Court to handle this would be to apply a discount off-the-top to monitoring, to account for the fact that the Intervenors' billings practices do not allow for a completely cohesive fee petition against PCSSD. This approach is illustrated in **Exhibit 9**.

This all supports PCSSD's argument that the Court should apply a slight discount off-the-top, to account for the fact that the Intervenors' billing practices have issues.

## VI. Payment Over Time

Finally, PCSSD respectfully requests that the Court order PCSSD to pay the fee award in twelve monthly installments over a one year period. Whatever the sum ends up being, this represents a large and unbudgeted payment out of PCSSD's operations account. At this time, PCSSD is uncertain whether it could make such a large one-time payment without making cuts elsewhere. This issue ultimately became a sticking point in the negotiation over fees between Intervenors and PCSSD. *See* letter to Intervenors, attached hereto as **Exhibit 8**. As the Court will see in that letter, the other sticking point became the issue of finality. If the Court is able to offer some guidance as to finality that would be appreciated, but in the interest of keeping the instant petition for fees as streamlined as possible, PCSSD will not develop that request into a pillar of this response.

## VII. Costs Incurred by Intervenors

PCSSD does not dispute the costs that Intervenors have presented for payment. PCSSD has not disputed these and has conceded as such throughout the negotiation. *See* letter to Intervenors, attached hereto as **Exhibit 8**.

## VIII. Conclusion

WHEREFORE, the Pulaski County Special School District respectfully requests that the Court DENY Intervenors' Petition for Fees as requested, and instead enter fees against PCSSD in the modified way as described above.

11

Devin R. Bates (2016184)
M. Samuel Jones III (76060)
Amanda G. Orcutt (2019102)
MITCHELL, WILLIAMS, SELIG,
  GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
Telephone: (501) 688-8800
Facsimile: (501) 688-8807
sjones@mwlaw.com
dbates@mwlaw.com

and

Jay Bequette
Cody Kees
Bequette Billingsley & Kees, P.A.
425 West Capitol Ave., Suite 3200
Little Rock, Arkansas 72201
Telephone: (501) 374-1107
Facsimile: (501) 374-5092
Mobile: (501 590-4500
jbequette@bbpalaw.com
ckees@bbpalaw.com

***Attorneys for Pulaski County Special School District***