IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LITTLE ROCK SCHOOL DISTRICT, *et al.*      PLAINTIFFS

No. 4:82-cv-866-DPM

PULASKI COUNTY SPECIAL SCHOOL
DISTRICT, JACKSONVILLE/NORTH
PULASKI SCHOOL DISTRICT, *et al.*      DEFENDANTS

EMILY McCLENDON, TAMARA EACKLES,
VALERIE STALLINGS, TIFFANY ELLIS,
and LINDA MORGAN      INTERVENORS

## ORDER

"What must PCSSD do to comply with § H(l) (as supplemented) and square up the Mills High School/Robinson Middle School inequity?" *Doc. 5730 at 30-31.* That was the question the Court left unanswered in its May 2021 Order on the remaining facilities issues under Plan 2000. As requested, the Pulaski County Special School District consulted with the McClendon Intervenors (and other community members) and promptly offered a proposal. The Intervenors agree with the proposal, though they also request much oversight and suggest additional Mills projects. PCSSD seeks unitary status now based on its proposal. Intervenors object to that step.

The Court approves PCSSD's proposal for completing substantial compliance with Plan 2000's obligations on facilities. Here are the new Mills High School projects:

1. Ten additional classrooms, attached to the current facility if practicable;
2. Improvements to the ROTC building to meet Cadet Command Regulation 145-2;
3. A softball field; and
4. A 2200-seat arena.

The details are specified in *Doc. 5736 at 8-13*. These improvements will cost approximately nineteen million dollars.

The proposal as a whole is impressive, another indication of the District's strong commitment to equal educational opportunities for all students. The Court particularly commends the good faith shown in the additional classrooms and the arena project. The classrooms are needed; and the large arena tracks the new Sylvan Hills facility, plus will accommodate Mills's eventual transition to a 5A school. On the classrooms and softball field, Robinson Middle provides the benchmark. But the Court encourages PCSSD's intention to do even better for this high school, having the benefit, as it does, of recent experience with innovative practices in facilities, including remote-learning capabilities. The Court is not persuaded that the other issues identified by Intervenors—auditorium seating, the location of some

water fountains and lockers, as well as where the registrar's office is currently situated — are essential parts of the Plan-2000-required true-up. The auditorium seating has been expanded. And the other matters are details, which are committed to PCSSD's discretion.

After full implementation of this comprehensive and responsive proposal, PCSSD will be in substantial compliance on facilities. But the Court declines the District's request for a unitary declaration based on the proposal alone; it must be implemented in good faith. The Court is confident that it will be, but retains oversight, as it has done on the Jacksonville North Pulaski School District's facilities master plan.

The proposal reflects that the District will pay for these upgrades in a variety of ways. Those particulars, too, are for PCSSD to sort as a good steward of taxpayer dollars. The Court will not make any prescription about funding.

The Court directs PCSSD to refine its proposal into a firm plan. The District must file the plan by 1 July 2022. It must also file a status report by 1 December 2022, and in early July and early December of every year thereafter as the plan is implemented. The goal should be completion as soon as practicable, which the Court hopes will be no later than July 2025. Sooner would be better, of course. The Court needs more information, though, before setting the finish line. The

Court looks forward to hearing the District's best estimate on the timetable. Please provide it this summer.

PCSSD has involved community members in addressing the Mills/Robinson disparities, and the Court directs more of this collaboration. The District must hold quarterly public meetings to provide information and gather feedback. These should be hybrid remote/in-person events, which should increase participation and will safeguard public health during the COVID-19 pandemic. All meeting-related documents should be posted on the internet at least two weeks in advance of each meeting. These gatherings, the Court hopes, will promote accountability, increase community involvement, and build goodwill between citizens and their schools. PCSSD must keep the Court informed about these meetings in its biennial reports.

Intervenors' monitoring should continue. But, just as the remaining issues have narrowed, the amount and scope of monitoring should narrow, too. The quarterly public meetings will provide the Intervenors with much information and a forum for making suggestions. In addition, the Court authorizes two site visits and two requests for information each calendar year. These can be combined or separate. And, of course, Intervenors' counsel should respond to the biennial reports each July and December. All told, the Court expects that no more than 150 hours a year will be spent on monitoring-related activities, including Court filings. That should

meet the need. This ceiling anticipates continued good faith implementation by PCSSD, which has been manifest in recent years.

*   *   *

Proposal, *Doc. 5736*, approved as specified. Future monitoring limited as specified. PCSSD's status report with implementation details due by 1 July 2022.

So Ordered.

*[signature]*
D.P. Marshall Jr.
United States District Judge

*26 January 2022*