IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LITTLE ROCK SCHOOL DISTRICT, *et al.*            PLAINTIFFS

No. 4:82-cv-866-DPM

PULASKI COUNTY SPECIAL SCHOOL
DISTRICT, JACKSONVILLE/NORTH
PULASKI SCHOOL DISTRICT, *et al.*            DEFENDANTS

EMILY McCLENDON, TAMARA EACKLES,
VALERIE STALLINGS, TIFFANY ELLIS,
and LINDA MORGAN            INTERVENORS

ORDER

The Pulaski County Special School District and the McClendon Intervenors tried to resolve the attorney's fees issue, as the Court requested, but were unable to do so. The Court appreciates those efforts. (The Court has ignored the snippets of the parties' negotiations that made it into the record.) The Intervenors have amended their fee motion twice, which has complicated the Court's review. PCSSD's motion to strike those amended papers, however, is denied. The District's helpful charts and comprehensive analysis of the original request have helped the Court sort the updated materials. Out-of-pocket expenses are undisputed. The Court directs

reimbursement of the $5,968.75 incurred. The Court also awards a reasonable attorney's fee of $319,129.38. The total is $325,098.13.

As the District requests, and to reduce the effect on PCSSD's operating funds, the Court orders payment in twelve monthly installments. Intervenors have not objected to this arrangement. PCSSD must make the first payment by 15 February 2022.

Intervenors' motion, as amended, seeks approximately $600,000 for monitoring and litigation connected with PCSSD between 2017 and 2021. Right at $400,000 of this is for lawyers' work and the rest is for paralegal and monitor work. The requested hourly rates range from $450 to $70.00. In fixing a fee, the Court must start with the request, then make adjustments, taking into account the particulars in this part of this long-running case. *Hensley v. Eckerhart*, 461 U.S. 424, 433-40 (1983); *Little Rock Sch. Dist. v. Arkansas*, 674 F.3d 990, 994-99 (8th Cir. 2012).

The requested hourly rates are too high in the circumstances. The Court has awarded fees against the Jacksonville North Pulaski School District for work done by Intervenors during 2017 and 2018. *Doc. 5507 at 2-5*. Fairness requires equal treatment. But, much of the work involving PCSSD was done between 2019 and 2021. The Court can draw on its own experience about hourly rates in the Eastern District for this kind of work; it does not need affidavits from local lawyers. Hourly rates have increased in recent years. To reflect that

circumstance, the Court will use blended rates. These embody some increases, but also the fact that earlier PCSSD-related work should be compensated at the rates used for JNPSD-related work for the same period. These blended hourly rates are:

| | | |
|---|---|---|
| John W. Walker | - | $360 |
| Austin Porter Jr. | - | $310 |
| Robert Pressman | - | $310 |
| Joy Springer | - | $110 |
| Charles Bolden | - | $80 |
| Marva Smith | - | $80 |

The next issue is the amount of time reasonably spent. PCSSD's careful assessment and charts are particularly helpful here. It makes good sense to divide the evaluation into monitoring and litigation.

First, monitoring. Intervenors are the prevailing party in the case as a whole, and they're entitled to fees for reasonable monitoring of PCSSD's compliance in the Plan 2000 areas that remained under Court supervision. *Cody v. Hillard*, 304 F.3d 767, 773-74 (8th Cir. 2002). PCSSD acknowledges all this. And before Intervenors' amendments, PCSSD expressed a willingness to pay almost all the monitoring-related fees requested at the previously awarded hourly rates. Doc. 5761 at 8-11. Two things have changed. First, the Court has nudged the hourly rates up. Second, Intervenors' amendments add more than

$60,000 for work done by the three monitors. So, the Court takes this issue as agreed in principle and disputed in details.

The Court awards all of counsel's time spent in monitoring. The lawyers investigated and ventilated the Mills/Robinson issues, and other PCSSD matters, as needed. They also participated in the Court-ordered monthly meetings and in hearings.

The monitoring fees sought for work by Springer, Bolden, and Smith must be reduced to achieve a reasonable award. The Court starts at the end with the additional fees requested in the two amendments.

Springer's additional fifty-odd hours are fine, subject to a caveat explained below. Much of Bolden's additional time is for his participation in Dr. Charles W. Donaldson Scholars Academy events and activities. As the Court explained in 2019 in its Order about JNPSD-related fees, Donaldson Scholars work is commendable but not fully compensable as monitoring of Plan 2000 compliance. *Doc. 5507 at 4*. Plus, as PCSSD noted in response to the original motion, assistance to students in general and to § 504 students in particular, is likewise laudable but not compensable monitoring work. The Court approves one hundred hours of the additional four-hundred-plus hours requested for Bolden's work. Unlike for Bolden, Intervenors have not (insofar as the Court can find) submitted any timesheets for the approximately four hundred hours of additional time requested

-4-

for Smith's work. There is a summary, which provides monthly and annual totals for 2017 and 2018. *Doc. 5764-1 at 1-4.* Nearly seven years ago, the Court highlighted the usefulness of detailed and contemporaneous time records. *Doc. 5095 at 7.* Intervenors have almost always provided them since. Smith, for example, prepared timesheets starting in December 2018. *Doc. 5754-4 at 4-7.* It is clear from the record as a whole, however, that Smith spent some time before then on core monitoring. The Court therefore approves fifty additional hours for Smith.

The original request for monitor's fees is approved with a ten-percent reduction across the board. That reduction accounts for the thread of non-monitoring work—mostly § 504 help and student/parent assistance—throughout the timesheets. (This is the caveat about Springer's fees.) As PCSSD agrees, the true monitoring work by Springer, Bolden, and Smith is compensable. *Cody*, 304 F.3d at 773-74.

Next, litigation-related fees. What is a reasonable fee for the lawyers' and paralegal's work during the recent litigation about whether PCSSD was unitary in discipline, facilities, student achievement, and monitoring? All the lawyers, including Intervenors' counsel, worked hard getting the case ready and presenting it well during the three-week bench trial held in July 2020. Ms. Springer did too. The issues were complicated. The Court's comprehensive May

2021 Order owes much to counsel's efforts. Intervenors press that they were duty bound to oppose PCSSD's request for unitary status on all issues, and therefore seek payment for all their work, even though they prevailed in one of four areas. PCSSD responds that success carries the most weight under precedent, and Intervenors' success was limited, which should be reflected in the fee award.

Both sides are right in some measure. Intervenors prevailed only on facilities. The result will be approximately nineteen million dollars of further improvements at Mills High School. This is a signal achievement. A fee award of 25% of the amount sought would reflect these results. Having considered the matter further, however, the Court is not persuaded that such an award would be the most reasonable one. The issues were somewhat intertwined. Though student achievement and discipline were focal points at the trial, the Mills High School/Robinson Middle School facilities issues were focal points of earlier hearings, many filings, and all the school tours. This effort spanned several years. The Court disagrees with Intervenors that they had to oppose unitary status in all four areas. But, thoughtful people of good will disagreed about the faithfulness of PCSSD's efforts to eliminate the vestiges of segregation to the extent practicable in these areas. That disagreement needed to be explored through evidence and decided. The public interest was served by putting all the facts on the record so the Court could apply the

governing law to those facts. In this sense, a trial was necessary. And there is a timing issue. The fees look back across several years' work, and it will be another year until Intervenors are paid in full. All material things considered, the Court awards Intervenors 40% of the time their lawyers and paralegal spent litigating the PCSSD unitary status issues.

The Addendum summarizes the Court's rulings.

\* \* \*

Motion for fees and costs, *Doc. 5754*, partly granted and partly denied. Motion to amend, *Doc. 5762*, granted. Motion to strike, *Doc. 5765*, denied.

So Ordered.

*[signature]*
D.P. Marshall Jr.
United States District Judge

28 January 2022

## Addendum

|  |  | Original Hours Claimed | Amended Hours Approved | Total Hours Awarded | Approved Rate | Subtotal | Percentage Approved | Final Award |
|---|---|---|---|---|---|---|---|---|
| John Walker | Monitoring | 173.88 |  | 173.88 | $360 | $62,596.80 | 100% | $62,596.80 |
| Robert Pressman | Monitoring | 187.81 |  | 187.81 | $310 | $58,221.10 | 100% | $58,221.10 |
| Austin Porter Jr. | Monitoring | 49.25 |  | 49.25 | $310 | $15,267.50 | 100% | $15,267.50 |
| Joy Springer | Monitoring | 420.66 | 52.12 | 472.78 | $110 | $52,005.80 | 90% | $46,805.22 |
| Charles Bolden | Monitoring | 149.75 | 100 | 249.75 | $80 | $19,980.00 | 90% | $17,982.00 |
| Marva Smith | Monitoring | 148.90 | 50 | 198.90 | $80 | $15,912.00 | 90% | $14,320.80 |
|  |  |  |  |  |  |  |  |  |
| Robert Pressman | Litigation | 371.19 |  | 371.19 | $310 | $115,068.90 | 40% | $46,027.56 |
| Austin Porter Jr. | Litigation | 316.80 |  | 316.80 | $310 | $98,208.00 | 40% | $39,283.20 |
| Joy Springer | Litigation | 423.30 |  | 423.30 | $110 | $46,563.00 | 40% | $18,625.20 |
|  |  |  |  |  |  |  |  |  |
| TOTAL |  |  |  |  |  |  |  | $319,129.38 |