IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LITTLE ROCK SCHOOL DISTRICT, *et al*.                                        PLAINTIFFS

VS.                             CASE NO. 4:82-CV-00866 DPM

PULASKI COUNTY SPECIAL SCHOOL
DISTRICT, JACKSONVILLE/NORTH
PULASKI SCHOOL DISTRICT, *et al*.                                           DEFENDANTS

EMILY MCCLENDON, TAMARA EACKLES,
VALERIE STALLINGS, TIFFANY ELLIS,
and LINDA MORGAN                                                            INTERVENORS

| | |
|---|---|
| Austin Porter Jr., No. 86145<br>PORTER LAW FIRM<br>323 Center Street, Suite 1035<br>Little Rock, Arkansas 72201<br>Telephone: 501-244-8220<br>Facsimile: 501-372-5567<br>Email: Aporte5640@aol.com<br><br>Attorney for Intervenors | M. Samuel Jones III., No. 76060<br>Devin R. Bates, No. 2016184<br>MITCHELL, WILLIAMS, SELIG,<br>GATES & WOODYWARD, PLLC<br>425 West Capitol Avenue, Suite 1800<br>Little Rock, Arkansas 72201<br>Telephone: 501-688-8864<br>Facsimile: 501-918-7864<br><br>sjones@mwlaw.com<br>dbates@mwlaw.com<br><br>Attorney for Pulaski County Special School District (PCSSD) |
| Robert Pressman<br>22 Locust Avenue<br>Lexington, MA  02421<br>Telephone: 781-862-1955<br>Email: pressmanrp@gmail.com<br><br>Attorney for Intervenors | Scott P. Richardson, No. 2001208<br>McDaniel, Wolff & Benca, PLLC<br>1307 West 4th Street<br>Little Rock, Arkansas 72201<br>Telephone: 501-954-8000<br>Facsimile: 866-954-1601<br><br>scott@mwbfirm.com<br><br>Attorney for Jacksonville/North Pulaski School District |
| | Jay Bequette, No. 87012<br>Cody Kees, No. 2012118<br>Bequette Billingsley & Kees, P. A. |

1

|   | 425 West Capitol Avenue, Suite 3200<br>Little Rock, Arkansas 72201<br>Telephone: 501-374-1107<br>Facsimile: 501-374-5092<br><br>jbequette@bbplaw.com<br>ckees@bbplaw.com<br><br>Attorneys for Pulaski County Special School District |
|---|---|

Intervenors' Response to PCSSD' "Facilities Plan and Update" (5798, 8-15-22)

A. Court Rulings and PCSSD Submissions through the Plan of 8-15-22

In a ruling on May 6, 2021, the Court agreed with Intervenors' position regarding a comparison of the new Mills High School and Robinson Middle School projects. In summary terms, "it was more of the same: unequal facilities based on race. LRSD v. Arkansas, 664 F.3d at 758. " (5730 at 29) The Court described many areas in which Robinson was "superior," as well as multiple Mills construction shortcomings. (At 29-30) One element of Robinson Middle superiority was that there, "every teacher ha[d] a classroom, while at Mills High five teachers [were] in rotation with other teachers for classroom space; . . ." (At 29-30)

The Court identified PCSSD's compliance obligation as "squaring up the Mills High School/Robinson Middle School inequity." (At 29-30) While declining "to dictate particulars at this point," the Court cited "various possibilities . . . mentioned at trial – new and dedicated space for the Driven program, new space for the ROTC program, more classrooms, or an arena." (5730 at 31) The Court required a PCSSD "proposal on the Mills/Robinson issue by 1 August 2021." (At 67)

PCSSD filed its "Facilities Proposal" on July 30, 2021. (5736) Section B. is titled "Addition of 10 Classrooms." Its text includes: "The proposal includes the addition of 10 classrooms to Mills which should increase its capacity from 700 to at least 800 students. The classroom space will

2

support the driven program, but not exclusively. The classroom space will be used to fill other academic needs at the discretion of the administration." (At 8) The proposal identifies five "specifications" for the classrooms. PCSSD reports honoring Intervenors' preference for an addition attached to "the main Mills building." (At 8)

On January 26, 2022, the Court approved the PCSSD proposal, summarizing its elements as "ten additional classrooms, attached to the current facility if practicable"; "improvements to the ROTC building to meet Cadet Command Regulation 145-2"; "a softball field;" and "a 2200-seat arena." (5776, 1/26/22 at 2) The Court wrote in part: "The classrooms are needed; and the large arena tracks the new Sylvan Hills facility, plus will accommodate Mills' eventual transition to a 5A school." (At 2) "The Court direct[ed] PCSSD to refine its proposal into a firm plan. ." (At 3) The initial filing date was later extended to August 15, 2022.

The PCSSD "Facilities Plan and Update" (5798, 8/15/22) consists of text and 6 pages of exhibits. Its timeline includes: work by architects with completion of blueprints by Jan. 1, 2023; construction expected to commence on April 3, 2023; "under this anticipated schedule, the new spaces would be complete for use in the 2024-2025 school year." (At 1-2)

The "Addition of Classrooms" Plan section (5798 at 2-4) and the first two pages of its exhibits are, at this juncture, the most significant of its elements. Facts regarding the Arena proposal, are also important in two ways, explained below (potential for aiding resolution of classroom shortfall in existing facility and Intervenors' ideas for Arena enhancement).

The first paragraph of the classrooms discussion provides a method for identifying the two floors of the addition (on pages 1-2 of the exhibits). Critical to recognize: the classroom discussion acknowledges at four points that this Plan segment differs from that set forth by PCSSD in its "Facilities Proposal (5736 at 8) and described by the Court (5776 at 2). These acknowledgments

3

are in 5798 at 2 ("For the most part, the Plan tracks the Proposal but with a few deviations."); at 3 (". . . but with a slight adjustment in the number and type of classrooms."); see also first sentences of third paragraph at 3 and first paragraph at 4).

This submission's description of the current Plan (5798) states that it includes "six standard rectangular classrooms" meeting "the itemized criteria set out in the Proposal. Doc. 5736, p. 8." PCSSD first adds that "the remaining space devoted to academics is the functional equivalent of 4 more classrooms." (5798 at 3) Suggestions of other possible instructional spaces follow. (5798 at 3) PCSSD offers a justification for the changes. (At 3) Noteworthy: the Plan does not mention the DRIVEN Program; use of some DRIVEN facility space for other academic programs; or curing the classroom sharing problem described by the Court in the May 6, 2021 ruling.

B. Discussion and Conclusion Regarding the Classroom/Driven Program Issue

Two categories of information serve to introduce this discussion based on our interpretation of the Master Schedule that was provided by PCSSD and information provided online. First. Intervenors have learned from Mills High School that more than six teachers are having to teach classes without the benefit of an individually assigned classroom, other teachers are having to teach courses in spaces that are not appropriate for the courses that are being taught. Second, Intervenors identified on the PCSSD web site a 4 page description of the elements of the DRIVEN program, titled "DRIVEN: A SCHOOL OF OPPORTUNITY Student Handbook." The Court may find it helpful to review this material. The document includes a "Menu" of accessible topics, one being "Apply for DRIVEN: School of Opportunity." This bucket did not have substantive content.

On September 9, 2022, the parties had, virtually, a positive in tone and informative meeting. The participants were Austin Porter Jr., Bob Pressman, Joy Springer, Devin Bates, Curtis Johnson, Mills High Principal Duane Clayton, and Brad Chilcote and Earnest Duckery of the architectural

firm working on the project.

During the meeting, the PCSSD employees and the architects stated that the planned use of the two-floor addition is for the DRIVEN program. The architects, utilizing the diagrams on 5798 exhibits 1 and 2, stated that on each of floors one and two there will be 3 classrooms with 4 walls and a door, which will satisfy the state standard for classroom square footage (850 square feet). They then stated that the first floor includes 7 nontraditional instructional spaces and the second floor 3 nontraditional spaces. During their explanation, Mr. Bates created numbered versions of the floor plans depicting the presentation. The traditional classrooms were numbered 1, 2, and 3 in each instance. See attachments hereto (photographs of this presentation made by Mrs. Springer). Mr. Johnson and Mr. Clayton did not dissent from the architects' presentation. The PCSSD representatives and the architects referred to visits to and reliance on observations of facilities utilized in other school districts for similar programming. They mentioned Springdale, Arkansas and a district in Utah.

During the meeting, Intervenors learned/discussed the following: [a] Currently, four regular classrooms in new Mills are used for the DRIVEN Program and would be available for use by other teachers, if DRIVEN moved to the addition. [b] In 2021-22, DRIVEN enrollment was 92. [c] In the current school year to date, total enrollment is 603, including 200 ninth graders. [d] Current DRIVEN enrollment is 85 students. [e] PCSSD is required to provide enrollment data as of October 1 to the Department of Education. An increase in both total enrollment and DRIVEN participation can be expected. This data could be used to determine, by racial group, total school enrollment, as well as, separately, DRIVEN enrollment, and remaining school enrollment. [f] The Mills Principal explained that guidance counsellors are proactive regarding DRIVEN enrollment. They evaluate the records of students completing middle school and recruit for the

program those whose characteristics evidence a promising match with DRIVEN curriculum and requirements.

During the meeting, Intervenors' representatives tested reaction to/acceptance of two concepts designed to insure that when the addition is complete teachers of students not in the DRIVEN program have adequate classroom space. The first drew upon PCSSD's initial discussion of an "addition of 10 classrooms." (5736 at 8) Intervenors posed use of some classrooms in the addition for teachers and students not in the DRIVEN program, with the assumption that the remainder, and majority of the space, would be for DRIVEN. This suggestion did not receive any support/acceptance. Mr. Johnson did express the goal of eliminating what he described as "teaching from a cart."

The second concept referred to the planned arena. Viewing the arena plan on the first page of the 5798 exhibits, one observes near the bottom of the plan two white rectangles. These are planned "all purpose rooms." The discussion of use of some of this space to supplement main building classrooms was incomplete. (**See Page 3 of Attached Exhibits**).

The Mills High Principal alluded to the school's DRIVEN program being in its fifth year of operation. He described its positive results for participants with enthusiasm; Intervenors do not challenge such outcomes. This in 4 regular classrooms. Availability of 2 additional regular classrooms and as many as 10 other nontraditional spaces in a state-of-the-art area of the school, wholly dedicated to the DRIVEN program, would be an obvious plus. There are however facts which Intervenor's representatives can not ignore regarding the scope of advocacy. First, current DRIVEN enrollment is approximately 14.1 percent of total enrollment. Second, 86 percent of students are educated in a facility, which despite Mr. Johnson's efforts, remains, as expressed by Intervenors' monitor at the meeting, unequal to the school in West Little Rock, with a full remedy

not possible.

PCSSD refers to "public meetings." (5798 at 7) To date, there is insufficient detail for the Court to rely on this discussion, for a conclusion that parents and students, overall, support the current proposed distribution of benefit from the project.

Intervenors request that the Court directs PCSSD to revise the Plan [**Doc. # 5798**] in a way which eliminates entirely, or sharply reduces the continuing problem of classroom shortages. This step will promote fairness regarding different groups of PCSSD students. Compare  LRSD v. PCSSD, ORDER, 5445 at 7 (JNPSD; affirmative relief addressing fairness as to students at different levels of the system and in different elementary school zones);  ORDER, 5786 (JNPSD; reiterating applicability of relief addressing fairness as to students at different levels of the system).

C. Intervenors' Points Regarding the Arena Proposal

Intervenors raised two points regarding the arena proposal, as such. First. The absence of "team meeting rooms" in this Plan component. An architect's representative called attention to a long white rectangle on the right side of the arena plan, appearing on the first page of the 5798 exhibits.  He noted that this area could house team meeting rooms, a referees' room, and other appropriate spaces. Intervenors request a revision including the team room element.  Second. The Plan also has two (2) "all purpose rooms" in the arena, that PCSSD noted could be used as additional classroom space to make up for the deficit number of classrooms.  However, the Intervenors expressed concerns that if these "all purpose rooms" would be used for educational purposes, then the noise of sports activity would be a distraction to the educational setting.  The potential for recreation/sports activity related noise adversely affecting educational activities in the two "all purpose rooms." Intervenors await a response on this point.

D. Funding Issues (5798 at 5-6)

Intervenors join in the need for PCSSD to update the Court (and Intervenors) regarding funding problems. (At 5) PCSSD discusses complications regarding use of ARP funds. (At 6) When, at the meeting, Intervenors inquired as to their nature, the response suggested that there are new developments. PCSSD mentioned follow-up. The results might be an occasion for updating.

Conclusion

In conclusion, the Court should require the PCSSD to further explain the reduction of ten (10) classrooms to six (6), and how this would adversely impact the educational goals of the district, particularly as it relates to the equity deficiency as it exists between the Mills facilities and those facilities in the Western portions of Pulaski County, Arkansas. If the parties are unable to agree that the inequity has been remedied, the Court should consider having a hearing to address this matter.

Respectfully submitted,

Austin Porter Jr., No. 86145
PORTER LAW FIRM
323 Center Street, Suite 1035
Little Rock, Arkansas 72201
Telephone: 501-244-8200
Facsimile: 501-372-5567
Email: aporte5640@aol.com

Robert Pressman
22 Locust Avenue
Lexington, MA  02421
Telephone: 781-862-1955
Email: pressmanrp@gmail.com

ATTORNEYS FOR INTERVENORS

**CERTIFICATE OF SERVICE**

I, Austin Porter Jr., do hereby certify that a copy of the foregoing pleading was electronically filed with the Clerk of the United States District Court for the Eastern District of Arkansas, on this 13th day of September 2022, by using the CM/ECF system, which is designed to send notification of such filing to the following person:

M. Samuel Jones III.
Devin R. Bates
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, PLLC
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201

sjones@mwlaw.com
dbates@mwlaw.com

Scott P. Richardson
McDaniel, Richardson & Calhoun PLLC
1020 West 4th Street, Suite 410
Little Rock, Arkansas 72201

scott@mrcfirm.com

Jay Bequette
Bequette, Billingsley & Kees, P.A.
Attorneys at Law
425 West Capitol Avenue, Suite 3200
Little Rock, Arkansas 72201-3469

jbequette@bbpalaw.com

                                        Austin Porter Jr.