IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LITTLE ROCK SCHOOL DISTRICT, *et al.*                                    PLAINTIFFS

VS.                           CASE NO. 4:82-CV-00866 DPM

PULASKI COUNTY SPECIAL SCHOOL
DISTRICT, JACKSONVILLE/NORTH
PULASKI SCHOOL DISTRICT, *et al.*                                         DEFENDANTS

EMILY MCCLENDON, TAMARA EACKLES,
VALERIE STALLINGS, TIFFANY ELLIS,
and LINDA MORGAN                                                          INTERVENORS

| | |
|---|---|
| Austin Porter Jr., No. 86145<br>PORTER LAW FIRM<br>323 Center Street, Suite 1035<br>Little Rock, Arkansas 72201<br>Telephone: 501-244-8220<br>Facsimile: 501-372-5567<br>Email: Aporte5640@aol.com<br><br>Attorney for Intervenors | M. Samuel Jones III., No. 76060<br>Devin R. Bates, No. 2016184<br>MITCHELL, WILLIAMS, SELIG,<br>GATES & WOODYWARD, PLLC<br>425 West Capitol Avenue, Suite 1800<br>Little Rock, Arkansas 72201<br>Telephone: 501-688-8864<br>Facsimile: 501-918-7864<br><br>sjones@mwlaw.com<br>dbates@mwlaw.com<br><br>Attorney for Pulaski County Special School District (PCSSD) |
| Robert Pressman<br>22 Locust Avenue<br>Lexington, MA 02421<br>Telephone: 781-862-1955<br>Email: pressmanrp@gmail.com<br><br>Attorney for Intervenors | Scott P. Richardson, No. 2001208<br>McDaniel, Wolff & Benca, PLLC<br>1307 West 4th Street<br>Little Rock, Arkansas 72201<br>Telephone: 501-954-8000<br>Facsimile: 866-954-1601<br><br>scott@mwbfirm.com<br><br>Attorney for Jacksonville/North Pulaski School District |
| Joyce Raynor Carr<br>JOHN W. WALKER, P.A. | Jay Bequette, No. 87012<br>Cody Kees, No. 2012118<br>Bequette Billingsley & Kees, P. A. |

1


| 1723 S. Broadway<br>Little Rock, Arkansas 72206<br>Telephone: 501-374-3758<br>Facsimile: 501-374-4187<br><br>jraynorcarr@gmail.com<br><br>Attorney for Intervenors | 425 West Capitol Avenue, Suite 3200<br>Little Rock, Arkansas 72201<br>Telephone: 501-374-1107<br>Facsimile: 501-374-5092<br><br>jbequette@bbplaw.com<br>ckees@bbplaw.com<br><br>Attorneys for Pulaski County Special School District |
|---|---|

INTERVENORS' RESPONSE TO PCSSD'S "FACILITIES STATUS REPORT

Introduction

The Pulaski County Special School District (PCSSD) facilities report [Doc. # 5805] regarding the four elements of its Plan and funding. Intervenors respond, with the bulk of the discussion to the district's "Addition of Classrooms" section. Intervenors' Conclusion includes requests for additional steps by the Court.

A.      The Softball, the ROTC, and the Arena Elements

PCSSD by its report text and its first exhibit, designated "Exhibit 6," presents ideas for revised locations on the site for three of the four elements of its Plan (softball field, ROTC facility, arena). (**ECF No. 5805, pp. 2-4**). The report also identified "the potential to add brand new building space for ROTC." (**ECF No. 5805, p. 4**). A caution is in order regarding Intervenors' response to these changes. Monitoring subsequent to the PCSSD Facilities Report filing has revealed that PCSSD and the architect team continue work on Plan elements.

With the following caveats, the softball proposal is acceptable.

PCSSD reports on discussion of the new ROTC proposal, including with "the district's ROTC instructors" who "provided input." (**ECF No. 5805, p. 5**). By monitoring: Intervenors' view is that the new facility approach is the District's current, preferred solution and that the

2

instructors will view the proposal as positive, if their input is honored. The input concerned the configuration of the space shown on "Exhibit 6" and the ability to continue to offer the program now in place. The district is seemingly moving to the identification of an approvable ROTC approach.

The upper portion of the arena containing the court and seating, as shown on "Exhibit 6," appears to be compliant. In the district's submission on November 7, 2022, approving with comments the PCSSD plan, the Court wrote: the as-yet unallocated arena spaces should likewise be firmed up with input from the district's many constituents." (**ECF No. 5804, p. 2**) (emphasis added). Monitoring reveals that while progress has been made regarding these spaces on the first floor of the arena, discussion and allocation work continue. [Information learned during attendance at November 30, 2022 community meeting and by other monitoring].

      B.      <u>The Evolution and the Design of the "Classroom Addition" Proposal Evidence at Planned Use Only for the Driven Program</u>

PCSSD is terse regarding this addition: "PCSSD has no changes or updates to report." (**ECF No. 5805, p. 2**). Identification of both the nature of the classroom addition which PCSSD plans and its proposed use are essential. PCSSD's "Exhibit 6" is the first page of a 7-page set of similar stage plans for the project developed by the architects and provided to Intervenors on November 30, 2022. Two pages of this set, depicting the floor plans of the "classroom addition," are attached herein. (**See Exhibits "A" and "B"**). Intervenors submit, as explained in this following sections of this response, that these exhibits show the first and second floors of an addition designed solely for the DRIVEN program.

Another page of the 7-page set, is important. (**See Exhibit "C"**). This page shows, adjacent to a gymnasium, the two rooms cited earlier by Intervenors and discussed by the Court. (**ECF No. 5804, p. 2**). When magnified, the word "classroom" is visible, on each. A space

3

designated "Team Room" is also shown on Exhibit C.  The Intervenors expressed concerns over this space designated as the "Team Room" during a meeting with the PCSSD and its representatives, and its legal team, along with the district's architect.  The Intervenors expressed concerns about the two (2) rooms being designated as "classroom" within the space of the gymnasium, because the sound of basketballs and other activities would make it difficult to carry on any meaningful education. The District's Status Report is silent in regards to the concerns that the Intervenors raised, which demonstrates the fruits of ongoing work.

Earlier on July 30, 2021, PCSSD filed its "Facilities Proposal" which "includes the addition of 10 classrooms to Mills, which would increase its capacity from 700 to 800 students.  This classroom space will support the DRIVEN program, but not exclusively.  The classroom (**ECF No. 5736, p. 8**).  The Court  "approved [the Proposal] as specified."  (**ECF No. 5776, p. 8**) The Court wrote: "The proposal as a whole is impressive, another indication of the District's strong commitment to equal educational opportunities for all students. [emphasis added].  The Court further noted: "The classrooms are needed" and also "direct[ed] PCSSD to refine its proposal into a firm plan."  (**ECF No. 5776, p. 3**).

The Court's classroom needs finding was not limited to the DRIVEN program.  Beyond this, doing so would have been incompatible with the stated concern for "all students."  The Intervenors do not want a Central High School "school within a school" problem to be created.

PCSSD filed its "firm plan" on August 15, 2022.  (**ECF No. 5798**).  The plan identified revisions to its 10 classrooms proposal.  (**ECF No. 5798, p. 3**).  "The [proposed plan] includes six (6) standard rectangular classrooms, three on the first floor, and three directly above them on the second floor.  (**Compare pages 1 and 2 of Exhibit "1"**).  These six (6) classrooms will meet the itemized criteria set out in the Proposal.  (**ECF No. 5736, p. 8) (See also ECF No. 5798, p. 3).**

The district further stated that "[t]he remaining space devoted to academics is the functional equivalent of four (4) more classrooms" – or even more "academic space." (**ECF No. 5798, pp. 3-4**). The Facilities Plan does not indicate whether the district envisions using this substantial added space in a way benefitting "all students," some in the DRIVEN program and some not. PCSSD is silent on this point.

On November 7, 2022, the Court in ruling wrote: "Facilities plan, Doc. 5798, approved as specified." (**ECF No. 5804, p. 3**). The specification includes praise, but also particular emphasis on one of two concerns advanced by Intervenors. (**ECF No. 5804, pp. 1-2**). The Court noted:

> . . . . And, more importantly, they're concerned about the change ─ candidly highlighted by PCSSD ─ from ten new walled classrooms to six such spaces and several open-concept academic spaces. Depending on how one counts, six to eight smaller areas are planned. PCSSD emphasizes that these academic spaces will be full of technological capacity, versatile and adaptable ─ akin to a university setting. <u>The Court endorses both the innovation and the Intervenors' long-standing concern about capacity. Making sure that these useful new spaces, as well as the traditional classrooms, meet students' and teacher needs should be one focus of the District's planning and the ongoing community meetings. Of course the growing and salutary DRIVEN program should be accommodated in all of this. . . .</u> (emphasis added).

Intervenors submit that the Court is clear. Planning for use of the addition should address capacity concerns and student and teacher needs generally, not only the DRIVEN program. Intervenors continue demonstrating why the content of the status report is insufficient in this regard.

      C.    <u>Currently 10.1% of Mills High Enrollees Participate In DRIVEN</u>.

Mills High total enrollment was 603 as of December 2022. DRIVEN student participation was 61, only 10.1 percent of the total. DRIVEN participation by grade was 9th grade - 7; 10th grade – 20; 11th grade – 19; and 12th grade – 15. [Data from Mills and registrar.] Respectfully, these numbers do not seem to suggest a growing program.

The current Mills High Master Schedule, also provided in December 2022, shows: DRIVEN courses are taught in rooms 205, 206, 207 and 208.  One teacher uses each room for the entire 7-period day.  Each teacher teaches three (3) DRIVEN periods and has 1 DRIVEN "Prep period."  These teachers also teach, in total, 8 other courses.  The remaining periods are designated: 1 RTI period; 1 RTI prep period; and 2 other prep periods.  This currently, only 16 of the 28 total periods are DRIVEN – defined according to the schedule.  (See Exhibit "D" – Master Schedule).

It had been hoped that movement of the DRIVEN program to an addition would free-up regular classrooms.  Not so.  Only about 2 regular classrooms and two periods would be added to educate students not in the DRIVEN program.

### D.     The Scope of the Educational Program Sheds Light on Facility Needs

Intervenors note initially that new Mills High School offers four grades, not three as in the case of Robinson Middle School  The Master Schedule identifies many program elements: [i] core and elective courses for both enrollees in DRIVEN and other students; these elements require laboratory rooms for science courses and specialized spaces for music, stagecraft, and art programs; [ii] AVID programming; [iii] physical education and health programming; [iv] shop and ROTC programs; [v-vi] programs for students in special education programs, both those with individual Education Plans (IEPs) and Section 504; [vii] English as a Second Language programming for students whose first language is Spanish; [viii] a Credit Recovery program, [viii] an Alternative Learning Environment program,[ix] space for the in-school suspension program; [x] the RTI program, the JAG program, and Teen Court.

Two space needs warrant emphasis.  First.  The special education program has multiple facets beyond the two overarching categories cited.  The "Life Skills" element serves students with severe needs.  There are classes for core courses which have class size limits of "1:8" and "1:15".

One teacher during six periods a day teaches 20 to 30 students who have extremely deficient reading skills. Many have dyslexia and others have IEP's. Second. A "Prep[aration]" period is scheduled for 57 of the 62 teachers identified on the Master Schedule. [**Based upon monitoring and Exhibit "D"**].

      E.  <u>Monitoring Has Revealed Many Adverse Effects of Facility Limitations</u>

The PCSSD Status Report does not discuss the many ways in which the existing facility falls short of that needed to provide, adequately, the comprehensive program described in part [C]. Intervenors' list of such factors is based on monitoring, and content of the Master Schedule.

In early December 2022, Mils High staff identified 9 teachers who were sharing classrooms. **See Exhibit E**.

> The Media Center/Library is being utilized for four periods a day for English as a Second Language (ESL) instruction. This teaching takes place in a temporarily partitioned area of the space. Sound from this instruction of students whose first language is Spanish is heard throughout the space. Protection of instructional support materials is problematic. The Media Center is also used for other functions beyond its intended purpose due to space limitations.
>
> The Life Skills program for severely handicapped students is provided in Room 309. The space is not adequate to accommodate students who use wheel chairs or are bed ridden.
>
> Three additional special education "resource rooms" are needed.
>
> Resource room teachers must use the Performance Hall stage to provide math and science content to special education students.
>
> An Alternative Learning Environment class takes place in the Choir Room.
>
> A teacher provides instruction in Professional Communications and Stagecraft on the Cafeteria stage.
>
> Two additional laboratory classrooms are needed for Physical Science instruction.

The Seminar Room is approximately the size of two regular classrooms.  The initial planned use of this space was for staff development seminars and meetings for school leadership.  It was used for ROTC classes before the current space, a part of the former Fuller Elementary School, became available.  A teacher now offers there: Freshman Seminar (2 periods) and US History, World History, World History, and "Civics/Econ" (1 period each).

F.      Additional Reporting Would be Beneficial

The Court included, in its discussion of a PCSSD facility remedy in the Memorandum Opinion and Order of May 20, 2021 (**ECF No. 5730, p. 31**), this text.

 "And schools, of course, are more than buildings.  The District must also be a faithful steward of teachers, curriculum, and everything necessary to educate students."

Later, the Court referred to "equal educational opportunities for all students" (**ECF No. 5776, p. 2**) (approving Facility Proposal)] Lastly, in approving the PCSSD Plan, the Court wrote: "Making sure that these useful new spaces, as well as the new traditional classrooms, meet students' and teachers' needs should be one focus of the district's planning and the ongoing community meetings."  (**ECF No. 5804, p. 2**).

The Court has found PCSSD to be proceeding in good faith.  Yet, there are current inadequacies and complexity here.   Intervenors suggest that there should be reporting by the District sooner than in early July 2023.  (**ECF No. 5776, p. 3**).  Doing so will help to ensure upon availability of the additional facilities, that the concepts articulated by the Court are infused in the School's operation.

Intervenors respectfully requests that the Court require reporting as follows: (a) prompt submission, when available, of the next version of the Plan for providing the four elements (classrooms addition: arena; ROTC component; softball field); the submission should show the designs with at least the detail of PCSSD's "Exhibit 7" and Exhibits A, B, and C hereto; and (b) a

8

submission discussing approaches for remedying the current space limitation problems at Mills High School; the submission should draw upon: space to be freed up in the existing facility when the new "classrooms" are available, at least a portion of the new "classrooms addition" cited by the District, and other additional classroom space to be created as part of the overall project.

G.  PCSSD Does Not Question Its Obligation to Fund the Mills High Remedy

Although the district cites "formidable cost challenges" and writes that "cost is still a moving target," it does not question its obligation to implement the four-part Mills High remedy. (**ECF No. 5805, p. 4**). The Status Report includes as "Exhibit 7" a Democrat – Gazette Article. (**ECF No. 5805, p. 6**). The cited article notes a District planned construction program of "at least $80 million" with $35 million at Robinson High School. It is Intervenor's understanding that in addition to this $80 million, the District has the ability to raise additional funds by reliance on second lien bonds. See reference to this technique in the Minutes of the PCSSD Board of School Directors meeting on July 13, 2021. (**See Exhibit "F", p. 4**).

The Court has been explicit regarding funding: "The Court appreciates the PCSSD's note about new projects at other campuses. Of course, the District's facility needs continue to change and no stand-still order exists. The Court's directive is simply to keep prioritizing the Mills projects, as the District has done." (**ECF No. 5805, pp. 2-3**) (emphasis added). A Robinson High School, project, in particular, ought be approached with this admonition in mind.

CONCLUSION

Intervenors is requesting that the Court provide for the reporting discussed in Section G. Also, in view of current DRIVEN enrollment, Intervenors respectfully request that the Court required the District, to include in its efforts, identification of uses of the new classroom addition, which will benefit students not in the DRIVEN program. Intervenors monitoring will continue.

9

This will include: (a) the completion of the four-part facility design, with emphasis on its educational components; these are the configuration and the planned used of the 10 classroom addition; the identification of other, additional educational spaces, and the completion of the ROTC space design; (b) the extent to which the existing facility, the product of discrimination, frustrates the "meet[ing] of students' and teachers' needs (**ECF No. 5804, p. 2**) in a four-grade high school, striving to provide a comprehensive program; and (c) the district's funding plan.

        Respectfully submitted,

        Austin Porter Jr., No. 86145
        PORTER LAW FIRM
        323 Center Street, Suite 1035
        Little Rock, Arkansas 72201
        Telephone: 501-244-8200
        Facsimile: 501-372-5567
        Email: aporte5640@aol.com

        Robert Pressman
        22 Locust Avenue
        Lexington, MA  02421
        Telephone: 781-862-1955
        Email: pressmanrp@gmail.com

        Joyce Raynor Carr
        JOHN W. WALKER, P.A.
        1723 S. Broadway
        Little Rock, Arkansas 72206
        Telephone: 501-374-3758
        Facsimile: 501-374-4187

        jraynorcarr@gmail.com

        ATTORNEYS FOR INTERVENORS

## **CERTIFICATE OF SERVICE**

      I, Austin Porter Jr., do hereby certify that a copy of the foregoing pleading was electronically filed with the Clerk of the United States District Court for the Eastern District of Arkansas, on this 30th day of December 2022, by using the CM/ECF system, which is designed to send notification of such filing to the following person:

| | |
|---|---|
| M. Samuel Jones III. | Scott P. Richardson |
| Devin R. Bates | McDaniel, Richardson & Calhoun PLLC |
| MITCHELL, WILLIAMS, SELIG, | 1020 West 4th Street, Suite 410 |
| GATES & WOODYARD, PLLC | Little Rock, Arkansas 72201 |
| 425 West Capitol Avenue, Suite 1800 | |
| Little Rock, Arkansas 72201 | scott@mrcfirm.com |

sjones@mwlaw.com
dbates@mwlaw.com

Jay Bequette
Bequette, Billingsley & Kees, P.A.
Attorneys at Law
425 West Capitol Avenue, Suite 3200
Little Rock, Arkansas 72201-3469

jbequette@bbpalaw.com

                                                                             Austin Porter Jr.