IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| **LITTLE ROCK SCHOOL DISTRICT** | **PLAINTIFF** |
| V. | NO. 4:82-cv-866-DPM |
| **PULASKI COUNTY SPECIAL SCHOOL DISTRICT NO. 1, ET AL.** | **DEFENDANTS** |
| **EMILY McCLENDON, ET AL.** | **INTERVENORS** |

### REPLY TO INTERVENORS' RESPONSE TO FACILITIES STATUS REPORT

Pulaski County Special School District ("PCSSD"), for its Reply to the Intervenors Response,[1] *Doc. 5808*, (the "Response"), to PCSSD's Facilities Status Report, *Doc. 5805*, submits the following reply.

**I.      Objection to Intervenors' "Scope Creep."**

As it has done in the past, PCSSD must again file this objection to temper Intervenors' "scope creep"—repeatedly attempting to obtain modifications, concessions, et cetera, not included in the requirements of Plan 2000 nor in the now controlling modifications thereto. PCSSD objects to the Intervenors' Response to the extent that it advocates for an expansion of this case beyond the Proposal, *Doc. 5736,* the Plan, *Doc. 5798*, and the Court approval of same. *Doc. 5804*.

On May 6, 2021, the Court set the scope of this case by ordering PCSSD to develop a proposal for facilities work to be done at Mills University Studies High School to "comply … and square up" the inequity between Mills University Studies High School and Robinson Middle

---

[1] Intervenors have now apparently filed three separate responses to the facilities report. *Docs. 5808, 5809, 5810*. The Court ordered that the deadline to file the Response was 30 December 2022. *Doc. 5807*. The first Response was timely. The later two are not. This Reply is filed as to the Response that Intervenors filed by the deadline. *Doc. 5808*.

1

School (the "Mills-Robinson Inequity"). *Doc. 5730, p. 30*. PCSSD submitted a Proposal, *Doc. 5736,* and later a Plan. *Doc. 5798*. The Court approved the Proposal and the Plan and cleared PCSSD to move forward. *Doc. 5804*. The Plan and the recent Court Orders set the remaining scope of Plan 2000 to be adjudicated in this forum. Specifically, in pursuing the Proposal and the Plan PCSSD set out a series of objective and observable criteria for each part of the ongoing facilities work. These criteria were designed to measure the squaring up of the Mills-Robinson Inequity. By meeting the criteria that the Court approved, PCSSD believes that it will: (1) eliminate the Mills-Robinson Inequity to the extent practicable such that it has achieved unitary status, and (2) demonstrate its good faith in a manner that creates a legal presumption of good faith. *Doc. 5736, p. 7*.

Intervenors' recent response raises a hodgepodge of issues not found in previous filings. For example, Intervenors make statements such as "[t]hree additional special education 'resource rooms' are needed" and "[t]wo additional laboratory classrooms are needed for Physical Science instruction." *Doc. 5808, p. 7*. The quoted examples are illustrative only, and PCSSD will not undertake a categorization of the expansive items in Intervenors' response. In raising all of these various issues and in making the demands now put forth, Intervenors' are implicitly advocating for a departure from the objective and observable criteria that are now the yardstick against which PCSSD's progress is planned to be measured.

PCSSD has undertaken facilities work designed to wind down the final phase of the case. *Doc. 5736, p. 7*; *Doc. 5751, p. 1*. PCSSD's facilities proposal laid the groundwork for future facilities resulting in finality. PCSSD respectfully submits that it is staying the course on this tack toward finality, and requests that the Court not expand the scope of this case beyond the already controlling Court orders.

II.     **<u>Objection to Intervenors' Attempt to Dictate Certain Uses of the School Space.</u>**

PCSSD further objects to the Intervenors' response to the extent that it attempts to demand and dictate certain uses of facility space. This is a case about righting constitutional wrongs, not about controlling a district's programmatic and pedagogical decisions about the use of its space. As already emphasized above, to measure success on this facilities work, PCSSD set out a series of objective and observable criteria for each part of the ongoing facilities work. Those criteria set the finish line in this case. Beyond that, the issue of how to use school space is a complex question best left to the discretion of school administrators.

Analysis of the Intervenors' desire to dictate uses of school space at this juncture can be aided by analogy to another historical chapter in this case. In 1996, PCSSD was facing a teacher strike. Judge Webber-Wright enjoined the strike, following the logic that without teachers PCSSD could not hold school, and if it could not hold school at all, it could not carry out the desegregation plan. The Eighth Circuit rejected this approach. After making a comparison to the district paying hypothetically exorbitant utilities, Chief Judge Richard S. Arnold explained that "[s]o long as the settlement agreement is complied with, the school district must make its own way through the ordinary difficulties of life as an employer." *Knight v. Pulaski Cnty. Special Sch. Dist.*, 112 F.3d 953, 955 (8th Cir. 1997). While this historical illustration does not line up completely with the Intervenors' demands to control the use of facility space, there is a common principle to be distilled. School administrators routinely face demands and competing opinions from various stakeholders about how school space should be used. Satisfying everyone is sometimes impossible. Describing the job as "thankless" would be an understatement. To borrow from Judge Arnold, PCSSD "must make its own way through the ordinary difficulties of life as [a school administrator]."

Allowing Intervenors leeway to demand certain uses of certain school spaces also comes part and parcel with the risk of transmogrifying this case into a 21st century *Jenkins*. *See Jenkins by Agyei v. State of Mo.*, 19 F.3d 393, 404 (8th Cir. 1994) (Beam, J., Bowman, J.,Wollman, J., Loken, J., and (Morris Sheppard) Arnold, J., dissenting) ("In my view, this case, as it now proceeds, involves an exercise in pedagogical sociology, not constitutional adjudication."); *see also Missouri v. Jenkins*, 495 U.S. 33, 77, 110 S. Ct. 1651, 1677, 109 L. Ed. 2d 31 (1990) (Kennedy, J. concurring) (grappling with the line between education policy and constitutional adjudication, and warning that certain elaborate school facilities "are a part of legitimate political debate over educational policy and spending priorities, not the Constitution's command of racial equality."). The Court has implicitly already rejected Intervenors' attempts at any such demand by adopting PCSSD's approach of instituting objective and observable criteria for each part of the ongoing facilities work. PCSSD objects to this new approach set out by Intervenors.

### III. <u>Objection to Commentary on Classroom Space.</u>

Specifically for classroom space, PCSSD set out criteria in its Proposal, *Doc. 5736, p. 8*, and PCSSD solidified and adopted much of the Proposal in Plan, but with some deviations. *Doc. 5798, pp. 2-4*. The Court largely approved this approach. *Doc. 5804*. The Intervenors' have now submitted many pages on the topic of classroom space, including a nearly three page section titled "The Evolution and the Design of the 'Classroom Addition.'" *Doc. 5808, pp. 3-5*. This reads almost as if the Intervenors are now attempting to file a motion to reconsider the Court's earlier order adopting the Plan put forth by PCSSD on the issue of classroom space. To the extent that the Response implicitly asks the Court to reconsider its earlier decision narrowing the scope of facilities issues to those previously brought out through the pleadings, PCSSD objects to same.

4

### IV. Objection to Increased Monitoring and Reporting.

PCSSD objects to the recent request for increased monitoring, increased reporting, etc. The Court previously set appropriate metes and bounds on compensable monitoring work. *Doc. 5776, pp. 4-5*. The Court previously set the frequency and deadlines of reports that must be filed by PCSSD. *Doc. 5776, p. 3*. No good cause has been shown to justify expanding the scope of these activities already set by Court order. To the extent that additional reporting is needed, PCSSD will timely file same. *See e.g. December 2022 Facilities Update, Doc. 5805, p. 4* (discussing possible changes to the ROTC part of the facilities work, and noting that "it would be a material change to the Proposal and Plan approved by the Court such that if PCSSD were to pursue this, a more detailed special addendum would be forthcoming."). In other words, to the extent that a special report or special motion is needed, one will be filed. But at this point, Intervenors have not shown good cause to mandate extra filings.

### V. Conclusion.

The Response filed by Intervenors is not a motion, and it requires no action to be taken by the Court. To the extent that the Court believes that some action is needed, PCSSD is more than willing to cooperate and comply with a Court order, however, under the circumstances presented by the Response, PCSSD respectfully submits that no good cause has been shown to alter the previous Court orders summarized above.

Devin R. Bates (2016184)
M. Samuel Jones III (76060)
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
Telephone:  (501) 688-8800
Facsimile:  (501) 688-8807
dbates@mwlaw.com
sjones@mwlaw.com

and

Jay Bequette
Cody Kees
Bequette Billingsley & Kees, P.A.
425 West Capitol Ave., Suite 3200
Little Rock, Arkansas 72201
Telephone:  (501) 374-1107
Facsimile:  (501) 374-5092
Mobile: (501 590-4500
jbequette@bbpalaw.com
ckees@bbpalaw.com

***Attorneys for Pulaski County Special School District***