IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**LITTLE ROCK SCHOOL DISTRICT**                                         **PLAINTIFF**

V.                       **NO. 4:82-cv-866-DPM**

**PULASKI COUNTY SPECIAL SCHOOL
DISTRICT NO. 1, ET AL.**                                 **DEFENDANTS**

**EMILY McCLENDON, ET AL.**                                     **INTERVENORS**

## **REPLY SUPPORTING 1 JULY 2023 FACILITIES STATUS REPORT**

Pulaski County Special School District ("PCSSD"), for its reply to Intervenors' Response, *Doc. 5827*, to PCSSD's Facilities Status Report, *Doc. 5821*, submits the following.

In reply to the Intervenors' response, two points of clarification may prove helpful. First, a District employee spoke at the 8 August 2023 meeting about another layer of Federal Court approval being necessary, but upon later consultation with the District's counsel PCSSD wishes to offer this clarification. PCSSD submitted a Proposal, *doc. 5736, pp. 11-13*, and later a Plan. *Doc. 5798*. The Court approved the Proposal and the Plan and cleared PCSSD to move forward. *Doc. 5804*. The Court ordered PCSSD to file biannual status reports. *Doc. 5776, p. 3*. PCSSD has been complying with that order and intends to continue compliance. Following the Court's previously issued guidance, PCSSD does not plan to make additional filings absent some material change in the approved plan. *Doc. 5812, p. 1*. For example, consistent with that guidance, PCSSD has once already sought leave of Court to make a material deviation from the approved plan with regard to the ROTC space. *Doc. 5813*. At this point, however, absent material change PCSSD does not plan to again petition the Court for approval of the work to be done at Mills.

1

Yet there are still other layers of approval needed, and this gets to the second point of clarification needed. While the desegregation process is subject to oversight and approval of this Honorable Court, state education laws and administrative processes must still be followed by PCSSD.  For example, approval is needed from the State of Arkansas, specifically the Arkansas Department of Education, Division of Public School Academic Facilities & Transportation. More to the point of the Intervenors' criticism, a multi-million-dollar construction contract cannot be signed by the District until the appropriate levels of approval have been obtained from the elected PCSSD Board of Education. The Board chose the prudent approach of initially approving a preliminary motion to proceed with pricing, subject to another vote later once a final estimate has been received. By implying that this is a delay tactic, Intervenors seem to be arguing that none of this is necessary and the Board should have instead summarily given the administration a blank check to move forward with the project. As previously summarized, PCSSD's financial situation is not that simple. *Doc. 5821, p. 4*.

While the District understands, and in fact shares, the Intervenors' frustration about the speed of this process, PCSSD has not shied away from the fact that it is now behind on the timeline originally presented to the Court, a fact that the District disclosed. *Doc. 5821, p. 5*. PCSSD is balancing many competing demands on its finite resources. These decisions are not easy ones to make. What the District fails to understand, however, are the allegations and personal attacks made by Intervenors, asserted as if the only possible explanation of a delay that Intervenors' considered is a nefarious one. They are wrong. This is laid bare by the unsupported nature of their allegations.

They allege that "Superintendent McNulty and Mr. Johnson next spoke. The positions stated and omissions were wholly out-of-sync with their responses/pledges to Intervenors two weeks earlier." *Doc. 5827, p. 9*. That would be true if Intervenors' summary of the 25 July 2023

meeting were complete and accurate. It is not. A point-by-point refutation of Intervenors' summary of the 25 July 2023 meeting is beyond the scope of this reply, but suffice it to say PCSSD respectfully disagrees with the Intervenors summary of the 25 July 2023 meeting. And even if the nuances of the procedure did change between the 25 July 2023 meeting and the 8 August 2023 Board vote, that is not necessarily problematic. Intervenors' summary, however, speaks of "pledges made," *id., at p. 7*, and levies the accusation that the administration "promised something different," *id. at p. 11*, than what took place at the 8 August 2023 meeting. Intervenors had no criticism of the construction plans or physical attributes of the buildings, and rather the disagreement is one that elevates procedure over substance. But the tone and tenor coming out of the 25 July 2023 meeting is disappointing. As per the Court's prior limitation placed on monitoring, the 25 July 2023 private meeting held for Intervenors at their special request was a concession by PCSSD that goes beyond the monitoring authorized by the Court. *Doc. 5776, p. 4*. PCSSD made this concession because it has nothing to hide and because it was making every effort to be transparent with Intervenors. In short, PCSSD was attempting to cooperatively work with Intervenors so there was no allegation that they failed to get something that they requested. It is unfortunate that such a conciliatory step by PCSSD has now been pivoted into personal attacks questioning the veracity of district leaders and implicitly assigning them iniquitous motives.

Finally, Intervenors alleged that "[a]fter the August 8, 2023 Board meeting, it is apparent that certain members of the board are not committed to ensuring that the Court's order to remedy the inequities of the Mills High School project is fully implemented." *Doc. 5827, p. 11*. The Intervenors' own report shows the opposite, stating the following facts that occurred at the 8 August 2023 Board meeting: (1) the Board President "mentioned the higher priority of the Mills High project due to its 'federal court tag,'" *id. at 8*; (2) the Board President "recognized … the

3

district's obligation," *id. at 9*; (3) the Board President "referred to submission of Plan B to Mr. Bates to compare it to the plan the district presented to the Court … [and] [Mr. Bates'] report was also before the board" *id. at 9*; and (4) the Board approved the Mills project "unanimously." *Id. at 11*. Of PCSSD's seven Board members, 100% were present and 100% voted to move forward. The Intervenors' conclusion attacking the intentions of the PCSSD Board of Education fails to find support even in Intervenors' own summary of the 8 August 2023 Board meeting.

At bottom, Intervenors' opinions as to procedure are not overly relevant in terms of criticism. Conspicuously absent from the Response is any substantive criticism of the facilities work that PCSSD is pursuing. The Court should find this reassuring because Intervenors have the most recent drawings, they have the memo written from counsel to the PCSSD Board, and they had access to the district personnel. In short, they had access to everything that they requested. They make no allegations to the contrary. PCSSD agrees that progress has been slower than what was originally anticipated, but the path forward has not been easy. What matters now is that PCSSD is on the path and PCSSD is moving.

No "loud wake-up call" is needed as the Intervenors requested. *Doc. 5827, p. 12*.

Devin R. Bates, Ark. Bar No. 2016184
Sharnae Y. Diggs, Ark. Bar No. 2018130
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
Telephone: (501) 688-8800
Facsimile: (501) 688-8807
dbates@mwlaw.com
sdiggs@mwlaw.com

and

Jay Bequette
Cody Kees
Bequette Billingsley & Kees, P.A.
425 West Capitol Ave., Suite 3200
Little Rock, Arkansas 72201
Telephone:  (501) 374-1107
Facsimile:  (501) 374-5092
Mobile: (501 590-4500
jbequette@bbpalaw.com
ckees@bbpalaw.com

***Attorneys for Pulaski County Special School District***