**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**LITTLE ROCK SCHOOL DISTRICT** **PLAINTIFF**

**V.** **NO. 4:82-cv-866-DPM**

**PULASKI COUNTY SPECIAL SCHOOL DISTRICT NO. 1, ET AL.** **DEFENDANTS**

**EMILY McCLENDON, ET AL.** **INTERVENORS**

**SPECIAL FACILITIES STATUS REPORT**

Pulaski County Special School District ("PCSSD"), for its Special Facilities Status Report, submits the following.

## I. Introduction

On May 6, 2021, the Court ordered PCSSD to develop a proposal for facilities work to be done at Mills University Studies High School to "comply … and square up" the inequity between Mills University Studies High School and Robinson Middle School (the "Mills-Robinson Inequity"). *Doc. 5730, p. 30*. PCSSD submitted a Proposal, *Doc. 5736, pp. 11-13*, and later a Plan. *Doc. 5798*. The Court approved the Proposal and the Plan and cleared PCSSD to move forward. *Doc. 5804*.

The Court ordered PCSSD to file biannual status reports. *Doc. 5776*, p. 3. Because the circumstances outlined below have been alleged by some to be relevant to this case, even though PCSSD disagrees, PCSSD herein submits this special facilities status report out of an abundance of caution.

## II. Background

The only issue in which PCSSD has not been declared fully unitary is facilities, and once PCSSD becomes unitary in facilities it will be completely and fully unitary. The current chapter of this desegregation case turned a page on May 6, 2021, when the Court set the scope of this case by ordering PCSSD to develop a proposal for facilities work to be done at Mills University Studies High School to "comply … and square up" the inequity between Mills University Studies High School and Robinson Middle School (the "Mills-Robinson Inequity"). *Doc. 5730, p. 30*. PCSSD submitted a Proposal, *Doc. 5736,* and later a Plan. *Doc. 5798*. The Court approved the Proposal and the Plan and cleared PCSSD to move forward. *Docs. 5776, 5804*. These are the filings that define the scope of this case. This work to be done at Mills consists of (1) adding classrooms, (2) building a softball field, (3) adding an arena, and (4) adding an ROTC space in the arena. Summarizing what will happen upon completion of this work, the Court stated as follows: "After full implementation of this comprehensive and responsive proposal, PCSSD will be in substantial compliance on facilities." *Doc. 5776, p. 3*. The Court has explained, and the law is clear, that to get to this point, the plan must be implemented in good faith. Additionally, the Court's directive to PCSSD at this juncture, while balancing other facilities projects, has been as follows: "the District's facility needs continue to change and no stand-still order exists. The Court's directive is simply to keep prioritizing the Mills projects, as the District has done." *Doc. 5804, pp. 2-3.*

While other campuses and other projects have historically been a part of this litigation, the Court's recent orders have narrowed down the scope of the case as summarized above. The Court has declined to expand the scope of the case to cover other issues despite being invited to do so, and the Court has also limited the time that can be spent on this case by the intervenors' attorneys, all because the Court has explained that the "remaining issues have narrowed." *Doc. 5776, pp.*

*2, 4*. This means that PCSSD does not need to build or improve facilities at other campuses and sites to obtain unitary status. *Doc. 5730, pp. 28-29.*

**III. The District's Other Facility Needs**

The work to be done at Mills University Studies High School is being done in the same general timeframe as other facilities work to be undertaken at PCSSD. This is an unavoidable reality that PCSSD has reported to the Court previously. *Doc. 5821, p. 3*. This work comes part-in-parcel with the district-wide campaign to restructure or extend existing bonds. *Doc. 5736, p. 14*. This funding proposal was presented to, and approved by, the voters. *Doc. 5798, p. 6*. This was not a change in the millage rate and did not result in a tax hike. However, it did make an alternative and more favorable funding source available to PCSSD to fund the work at Mills University Studies High School.

From that district-wide bond campaign, PCSSD generated approximately $80 million. *Doc. 5821, p. 3*. As PCSSD previously reported, this successful bond restructuring campaign made funds available to do some additional facilities work in the district, anticipated at Maumelle High School, Sylvan Hills High School, Harris Elementary School, College Station Elementary School, Robinson High School, and Baker Elementary School. *Doc. 5798, p. 6*. Back in 2023, PCSSD reported to the Court the District's view that while these other campuses and other projects are not part of the comparison between Mills University Studies High School and Robinson Middle School that is now the controlling legal inquiry, *Doc. 5730, pp. 30-31*, these other projects are related with the task at hand to the extent that there is a finite amount of funds. *Doc. 5821, p. 3*. The relationship to the desegregation case is that the District must continue to prioritize the ongoing work at Mills. PCSSD has done so. This position taken by PCSSD now is not novel or new, and is largely a summation of prior filings.

The $80 million district-wide bond campaign was never earmarked exclusively for Mills, nor exclusively for any particular campus. Those funds were generated from the entirety of the District, and the entirety of the voters of the District had to approve the restructuring or extending of the existing bonds. As it turns out, nearly half of that sum will end up being spend on Mills. *Doc. 5837, p. 3* (reporting PCSSD's $37.8 million commitment to Mills). Following the Court's guidance that there is no "stand-still order" in place, PCSSD has moved forward with other facility needs to be paid for out of the funds from the district-wide bond campaign. *Doc. 5804, pp. 2-3.*

**IV. <u>Update</u>**

On 8 October 2024, at its October Board Meeting, the District took up the issue of what to do with its remaining funds from its $80 million district-wide bond campaign. The District voted to proceed with the design and bidding phase on the following: (1) $19.5 million toward an expanded and improved Robinson High School, and (2) $500,000 toward athletic facility needs at Robinson High School. Intervenors have now seemingly taken the position that because of this desegregation case, the remaining bond funds must be spent on projects of their choosing, as opposed to projects which the Board voted to allocate the funds. At the October 8th Board Meeting, Rep. Joy Springer invoked the desegregation case, and made the following statement:

> So the question now is that schools within the county have to be equal. I mean, I believe that's the standard. So I'm here this evening to let you all know that there were promises made to the people at College Station and at Harris well in advance of these items that we were having discussions about. I understand that you have millions of dollars that are left over, you're constructing over there at Mills, but ***College Station and Harris should be considered prior to any of the other facilities***. Mr. Porter asked me to come here. He wanted me to let you all know that he's watching this, and I have been too … I remind you, this is the case for there should be equal facilities, and you all know what happened with respect to Mills and Robinson. That's a perfect example … So all that has to be done is to make the comparison and present that information to the Court … What took place at

> Robinson and Mills, and now we have College Station that you all promised to address.[1]

This assertion from Intervenors is believed to be another instance of scope creep. If the case proceeds in this manner, this 42-year-old case will seemingly never end. PCSSD believes that in light of the foregoing history and context, these issues are beyond the scope of this desegregation case. Nevertheless, out of an abundance of caution, and in good faith, PCSSD is reporting here that it intends to move forward with the action taken at its 8 October 2024 Board Meeting.

PCSSD believes that this is consistent with existing Court orders. PCSSD respectfully suggests that the most germane ruling to date from this Court on this issue is the following: "the District's facility needs continue to change and no stand-still order exists. The Court's directive is simply to keep prioritizing the Mills projects, as the District has done." *Doc. 5804, pp. 2-3.* Absent the Intervenors securing from this Court an Order to the contrary, PCSSD intends to follow that directive and move forward with its other facility needs while continuing to prioritize the important ongoing work at Mills. PCSSD will follow Court orders, guidance, and any directive given that alters the above.

PCSSD is filing this special status report to keep the Court, the Intervenors, and the public, appraised of its plans, share its reasoning for pursuing same, and give anyone an opportunity to file for preliminary injunctive relief to the extent that someone believes it is warranted under the Court's controlling desegregation orders.

---

[1] The full 8 October 2024 Board meeting is recorded and available here. The link is reported here for anyone reading this filing that is interested in watching the meeting, but PCSSD is not submitting the link to suggest that the Court must review it. Rep. Joy Springer's comments begin at 00:46:36, available here: https://www.youtube.com/watch?v=hPqBYSPBj-U

Devin R. Bates (2016184)
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
Phone: (501) 688-8800
Fax:  (501) 688-8807
dbates@mwlaw.com

*and*

Jay Bequette
Cody Kees
Bequette Billingsley & Kees, P.A.
425 West Capitol Ave., Suite 3200
Little Rock, Arkansas 72201
Telephone:  (501) 374-1107
Facsimile:  (501) 374-5092
Mobile: (501 590-4500
jbequette@bbpalaw.com
ckees@bbpalaw.com

***Attorneys for Pulaski County Special School District***