IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LITTLE ROCK SCHOOL DISTRICT, *et al*.                              PLAINTIFFS

VS.                         CASE NO. 4:82-CV-00866 DPM

PULASKI COUNTY SPECIAL SCHOOL
DISTRICT, JACKSONVILLE/NORTH
PULASKI SCHOOL DISTRICT, *et al*.                                  DEFENDANTS

EMILY MCCLENDON, TAMARA EACKLES,
VALERIE STALLINGS, TIFFANY ELLIS,
and LINDA MORGAN                                                   INTERVENORS

INTERVENORS' RESPONSE TO THE PCSSD STATUS REPORT

Come the intervenors, Emily McClendon, Tamara Eackles, Valarie Stallings, Tiffany Ellis, and Linda Morgan, by and through their attorneys **Austin Porter Jr., d/b/a PORTER LAW FIRM**, and **Robert Pressman**, and for their response to the Pulaski County Special School District's respond to Pulaski County Special School District, they state the following:

I.      Introduction

The Pulaski County Special School (PCSSD) on October 10, 2024 submitted its "Special Facilities Status Report."  In an effort to receive "brownie points," the PCSSD advises the Court that it is in the process of doing what it was *ordered* to be done by the Court in its Memorandum Opinion and Order of May 6, 2021. [**Doc. # 5730**].  The PCSSD has a custom, policy, and practice of neglecting those schools in predominantly black areas of Pulaski County.  The PCSSD has proven historically that it will only address the schools in the predominantly black Southeast quadrant of Pulaski County, Arkansas when ordered to do so.  In its latest filing, the PCSSD is once again demonstrating that unless *ordered* to do so, it *will not* address the inequities that

1

currently exist in the schools located in the predominantly black areas of Pulaski County, Arkansas, specifically Baker Elementary, College Station Elementary, and Harris Elementary.

II.     Background

As was pointed out by Judge Brian S. Miller, the PCSSD had violated its commitment to provide "equal" facilities within its district as required by *Plan 2000*, Section H.(1). [**Doc. # 4507, at pp. 75-78**]. Judge Miller's findings were upheld by the Court of Appeals for the Eighth Circuit, stating *inter alia* that "[w]e find no clear error in the district court's factual findings that PCSSD has devoted a disproportionate share of its facilities spending to predominantly white areas." *See* LRSD v. State of Arkansas, et al. , 664 F.3d 738, 753 (8th Cir. 2011). The Eighth Circuit also stated that "[w]e also agree with the district court that these findings demonstrate an absence of good faith in PCSSD's efforts to comply with the facilities requirements of Plan 2000." 664 F.3d at 753.

*Plan 2000* requires the PCSSD to make sure that its existing schools are "clean, safe, attractive, and equal." *See* Plan 2000, (H)(1). Nevertheless, College Station and Harris in particular are schools that are in deplorable condition. In the case of College Station, a school that was built approximately in 1958, half of the school is not useable, due to straight line winds that occurred during the summer of 2022. Despite the fact that this weather-related event occurred during the summer of 2022, the school has not been repaired due to insurance disputes and mold developing from the water damage that resulted due to damage to the roof. However, the PCSSD with the pushing of Curtis Johnson, is almost to the point of getting the damaged part of the school repaired. According to the PCSSD's 2021 Facilities Master Plan, there are plans in place for renovations to be made to Baker, College Station, and Harris; however, those plans have not come to fruition.

Derek Scott, who is a Caucasian male, was the former Director of Operations for the PCSSD.  As the Court noted, the PCSSD was in the process of constructing a New Robinson Middle School and the Court ordered Mills High School.  Then Director of Operations Derek Scott "favored the Robinson [Middle School] project and squeezed the Mills project."  [**Doc. # 5730, p. 27**].  During the unitary status hearing for the PCSSD during July 2020 the term "valued engineering" was used to describe the construction of the Mills High School.  The testimony revealed that in order to reduce the construction costs for the Mills project, so that more money could be used for the Robinson Middle School, which as the Court pointed out was the "functional equivalent of a high school," [**Doc. # 5730, p. 30**] cheaper materials were used in the Mills High School project.  Once this matter was brought to the attention of Interim Superintendent Dr. Janice Warren in August 2017, she "gave [Derek Scott] a little assistance" in his resignation.  [**Doc. # 5730, p. 28**]

In August 2018 Curtis A. Johnson was hired to replace Derek Scott as the Director of Operations.  Mr. Johnson is an African male.  Although Mr. Johnson has attempted to ensure that the PCSSD complies with *Plan 2000* relative to facilities, he has run into some resistance by members (some former) of the Pulaski County Special School District's Board of Education.  Mr. Johnson stated that shortly after testifying truthfully, during the desegregation hearing that was held in July 2020, he started experiencing retaliation from district officials, including Dr. Linda Remele.  (*See* **Deposition of Curtis Johnson attached herein as Intervenors Exhibit "A", depo., p. 65**).  Dr. Remele had the attitude that the PCSSD could do whatever it wanted to do, because the federal judge would not care. (**Johnson's depo., p. 71**).  This resistance and retaliation led to Mr. Johnson filing a lawsuit against the PCSSD.  *See* Curtis Johnson v. Pulaski County Special School District, United States District Court No. 4:22-CV-0977 KGB.

In February 2022, the defendant school district was found to have committed unlawful employment practices against its Interim Superintendent – Dr. Janice Hargrove Warren, who is an African American female, in the case of *Janice Hargrove Warren v. Pulaski County Special School District*, United States District Court No. 4:19-CV-00655 BSM, when it failed to consider her for the vacant superintendent position that was awarded to a Caucasian male by the name of Dr. Charles McNulty.[1]

When Dr. Warren assumed the role of Interim Superintendent, she discovered that Derek Scott, who is a Caucasian male, and was employed as the Executive Director of Operations had diverted funds away from Mills High School, which was being constructed pursuant to Judge D. Price Marshall's orders, and said funds were being sent to the Robinson Middle School in the predominantly white area of Highway 10.  Mills High School is located in the predominantly black communities of Sweet Home, Wrightsville, College Station, which are located in the Southeast sector of Pulaski County.  Dr. Warren discovered that Derek Scott told the architects and contractors to reduce the square footage of the Mills High School, so that the predominantly white school of Robinson Middle School could be bigger and built with superior materials. (**See Deposition of Janice Warren attached herein as Plaintiff's Exhibit "B", p. 143-147**).  Dr. Warren reported the actions of Derek Scott to district attorney Sam Jones, who was required to report these violations to Judge Price Marshall.  Dr. Warren stated that after the actions of Derek Scott in diverting funds from the Mills Project to the Robinson Middle School, he knew that he was finished.  When Dr. Warren became the interim superintendent in July 2018 after the departure of Dr. Jerry Guess, Scott just simply offered his resignation. (**Warren's depo., p. 145, lns. 14-22**).

---

[1] The jury awarded Dr. Warren $656,000.00.  However, this case was overturned on appeal when the Eighth Circuit ruled that Dr. Warren was not the victim of retaliation because she had not engaged in protected activity, because she had not complained about an employment practice.  Warren v. Kemp, et al., 79 F.4th 967 (8th Cir. 2023).

When Dr. Warren reported the inequities that existed between the Mills High School construction projects and Robinson Middle School, project which appeared in the *Arkansas Democrat-Gazette*, this caused Dr. Remele to become angry towards Dr. Warren. After a board meeting that took place shortly after this matter was published in the newspaper, Dr. Remele chastised Dr. Warren by stating, "we don't air our dirty laundry in public!" Despite the fact that Dr. Warren was told that she was performing admirably in her role as Interim Superintendent, after the newspaper published a story about the Mills inequities, the PCSSD refused to consider Dr. Warren for the superintendent's position. This led to Dr. Warren filing a lawsuit against the PCSSD, which resulted in a large jury verdict on the plaintiff's claim of retaliation.[2]

Although Dr. Warren and Mr. Johnson have been committed to ensuring that the PCSSD is in compliance with Plan 2000, they have received push back. Once the inequities were brought to the attention of Dr. Warren, she caused an investigation to be conducted between the two (2) construction projects – Robinson Middle School and Mills High School. Once Dr. Warren discovered the inequities, she reported her findings to Sam Jones, then district attorney, who in turn reported this matter to the Intervenors and the Court. Mr. Johnson tried to make some fixes to the Mills High School project. As the Court noted, "[t]he various Mills fixes made under Curtis Johnson's leadership show what good stewardship can accomplish." [**Doc. # 5730, p. 30**].

> Plan B was in good faith. Plan B's implementation was not. The fits and starts at Mills High School, and the favoritism toward the Robinson Middle project, did not demonstrate to the public, students, and parents that PCSSD was committed to Plan 2000 § H)(1), as supplemental, and righting the District's prior wrongs on facilities. *Freeman*, 503 U.S. at 491. Instead, it was more of the same: unequal facilities based on race. *LRSD v. Arkansas*, 663 F.3d at 753. The many fixes in the last two years are commendable. They are not, however, a complete cure for the resulting inequity.

[**Doc. # 5730, p. 29**].

---

[2] Undersigned counsel served as co-counsel in the case of <u>Janice Warren v. Pulaski County Special District</u>.

5

III.   Current Status

As the Court mentioned in its ruling, the PCSSD committed to ask the patrons for a millage increase. If the millage passed, then the PCSSD put forth a Plan A to construct new high schools at Mills and Robinson at a cost of $50 million each, with the conversion of the old Mills High School to Mills Middle School and Robinson Middle School at a cost of $5 million each. The PCSSD also committed under Plan A to do a complete overhaul of Sylvan Hills at a cost of approximately $50 million. The PCSSD did come up with a Plan B in case the millage failed, which is did. Plan B consisted of constructing a new Mills High School at a cost of approximately $50 million and converting the existing Mills High School to a middle school for approximately $5 million.

Despite the fact that the millage did not pass, the PCSSD was able somehow to come up with funds to do those things that were part of Plan A. Without a millage increase, the PCSSD was able to do the following: a) New Mills High School (with valued engineering), b) Mills Jr. High conversion; c) New Robinson Middle School, d) New Sylvan Hills High School.[3] As the Court pointed out:

> PCSSD spent more and got less at Mills High School than at Robinson Middle School. Scott's favoritism is part of the explanation. Notwithstanding its inability to follow Plan A because the proposed millage had failed, through him [Scott] the District decided that the new Robinson Middle School would be the functional equivalent of a high school.

[**Doc. # 5730, p. 30**].

Once the PCSSD was found to have not live up to its commitment by providing "equal" facilities to its black students as it had for its predominantly white students by cutting costs on the Mills project to get a superior product in the Robinson Middle School, then the Court told PCSSD that

---

[3] The late great John W. Walker referred to this school as the *Taj Mahal*.

it needed to "true up" the Mills High School construction project. This forced the PCSSD to have to spend more money to meet its commitment to providing an "equal" facility as enjoyed by its white students. Again, the PCSSD has demonstrated over and over again, that unless ordered, it will not provide facilities in the black areas of the county that are equal to those schools as enjoyed by its white students in the predominantly white areas of the county.

The PCSSD undertook an initiative to restructure or extend its existing bonds in order to "truing up" the Mills project. As was noted by opposing counsel,

> [f]rom that district-wide bond campaign, PCSSD generated approximately $80 million. Doc. 5821, p. 3. As PCSSD previously reported, this successful bond restructuring campaign made funds available to do some additional facilities work in the district, anticipated at Maumelle High School, Sylvan Hills High School, Harris Elementary School, College Station Elementary School, Robinson High School, and Baker Elementary School. Doc. 5798, p. 6.

[**Doc. # 5859, p. 3**].

According to the PCSSD "Special Facilities Status Report" the district held a board meeting on October 8, 2024 to discuss what would be done with the remaining bond money after the "truing up" of Mills High School as ordered by this court. The PCSSD is proposing to spend $19.5 million on an expansion project of Robinson High School, and to spend another $500,000.00 on athletic facility needs at Robinson High School. [**Doc. # 5859, p. 4**]. According to a document entitled "Pulaski County Special School District: Detailed Statement of Changes In Fund Balances" dated October 22, 2024, the PCSSD outlines the following construction projects:

- Mills High Arena ………………………………… $ 15,000,000.00
- Maumelle Indoor Ballfield ………………………. $ 11,000,000.00
- Sylvan High School Bandroom ………………….. $  1,000,000.00
- Harris Retrofit ……………………………………. $  3,000,000.00
- New NW Transportation Pound (?) ………………. $  4,000,000.00

7

- Robinson High School Expansion ……………….. $ 35,000,000.00

- District Integration ……………………………….. $   1,000,000.00

- District Lights Upgrade ………………………….. $   2,000,000.00

- College Station Retrofit ………………………….. $   3,000,000.00

[**See Intervenors' Exhibit "C"**]

As stated in "Special Facilities Status Report" filed on October 10, 2024 the district indicates that it is hellbent on proceeding with these projects, with a large expenditure of these funds going into predominantly white areas of the PCSSD. Same song, difference verse. The PCSSD stated, "[a]bsent the Intervenors securing from this Court an Order to the contrary, PCSSD intends to follow that directive and move forward with its other facility needs while continuing to prioritize the important ongoing work at Mills. PCSSD will follow Court orders, guidance, and any directive given that alters the above." [**Doc. # 5859, p. 5**]. Judge Miller's findings were upheld by the Court of Appeals for the Eighth Circuit, stating *inter alia* that "[w]e find no clear error in the district court's factual findings that PCSSD has devoted a disproportionate share of its facilities spending to predominantly white areas." *See* LRSD v. State of Arkansas, et al. , 664 F.3d 738, 753 (8th Cir. 2011). The Eighth Circuit also stated that "[w]e also agree with the district court that these findings demonstrate an absence of good faith in PCSSD's efforts to comply with the facilities requirements of Plan 2000." 664 F.3d at 753. Again, same song, second verse.

      Schools in the white areas of Pulaski County get new schools, and then a few years later with major upgrades and expansions, while schools in the black areas of the county have to be satisfied with repairs and minor upgrades. As Curtis Johnson stated during the unitary status hearing these types of repairs and minor upgrades are like putting "lipstick on a pig." Mr. Johnson stated that the only way College Station and Harris can be considered "equal" to the other

8

elementary schools in the more affluent areas of the county, i.e., Robinson and Sylvan Hills areas, the schools would have to be completely torn down and rebuilt. Again, College Station was built in 1958. The cafeteria is the original cafeteria along with the kitchen. Half of the classrooms are the original classrooms. As the Court noted, "[s]chools of course, are much more than buildings." Schools represent an integral part of the communities. The school is a reflection of the community, and presently Harris, which serves McAlmont and College Station, which serves College Station, are poor representations of those communities. PCSSD takes the position that as long as they bring Mills up to par, it does not matter if College Station and Harris, and other schools in the mostly populated African American areas of the district are unequal, it can resort back to spending most of its money in the white areas of the district, and leave the black schools to die on the vine. PCSSD cites to the court's language found on page 28 of Docket No. 5730. Intervenors do not believe that the Court share in the district's position.

> The Court has recognized that in enacting the 1866 Act, Congress took aim at discrimination in employment, from whatever source. Discrimination must be eliminated if the 'badges and incidents' of slavery are to be fully eradicated, particularly within the context of employment:
>> Racial discrimination in all areas, and particularly in the areas of education and employment, is a devastating and reprehensible policy that must be vigilantly pursued and eliminated from our society:
>>> Racial discrimination can be the most virulent of strains that infect a society and the illness in any society so affected can be quantified. Exposure to embarrassment, humiliation, and the denial of basic respect can and do cause psychological trauma to its victims. The disease must be recognized and vigorously eliminated wherever it occurs. But racial discrimination takes its most malevolent form when it occurs in employment, for prejudice here not only has an immediate economic effect, it has a fulminating integrant that perpetuates the pestilences of degraded housing, unsatisfactory neighborhood amenities, and unequal education.

Edwards v. Jewish Hospital of St. Louis, 855 F.2d 1345, 1349 (8th Cir. 1988), *quoting*, General Building Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 413, 102 S.Ct. 3141, 3161-62, 73 L.Ed.2d 835 (1982).

Intervenors request that this Court enter an order directing the PCSSD to make it a priority to provide equal schools to the citizens of McAlmont and College Station. These schools are old and have simply been patched up for the past thirty years or more. The children of these communities deserve to have schools that are equal, which is a requirement of *Plan 2000*. Federal Courts have an obligation to root out discrimination where it is found.

> The citizens in the southeast quadrant certainly deserve modern new facilities like those found in the more affluent areas of the PCSSD. Plan 2000 states: 'The PCSSD shall prepare, with the help of consultants, as necessary, a plan so that existing school facilities are clean, safe, attractive and equal.' The operative word in this current state of litigation being 'equal.' While the efforts to make the existing schools (especially those in the southeast quadrant) equal to the newer schools in the district are admirable, those efforts are Sisyphean at best, unless one defines equal as comparable in this case. Old buildings can be renovated and retrofitted with all of the latest bells and whistles, but they cannot be equal to brand new schools.
> . . .
> In my opinion, the proposed supplement to the Plan mainly serves to hold the district's feet to the fire with respect to following through on its commitment to the patrons in the southeast quadrant, no matter what happens in the future. This is only fair, since the schools in that area have been patched, painted, and repaired repeatedly at great expense to the district. As they now stand, they will never be 'equal.'

[**Margie Powell's report, Doc. # 5087, p. 2**].

Therefore, Intervenors request that this Court enter an order directing the PCSSD to honor its commitment to *Plan 2000* by finally providing children in College Station and McAlmont communities with schools that are equal to those provided to students in the predominant white areas in the district.

Respectfully submitted,

Austin Porter Jr., No. 86145
PORTER LAW FIRM
323 Center Street, Suite 1035
Little Rock, Arkansas 72201
Telephone: 501-244-8200
Facsimile: 501-372-5567
Email: aporte5640@aol.com

Robert Pressman
22 Locust Avenue
Lexington, MA  02421
Telephone: 781-862-1955
Email: pressmanrp@gmail.com

ATTORNEYS FOR INTERVENORS

## CERTIFICATE OF SERVICE

I, Austin Porter Jr., do hereby certify that a copy of the foregoing pleading was electronically filed with the Clerk of the United States District Court for the Eastern District of Arkansas, on this 7th day of November 2024, by using the CM/ECF system, which is designed to send notification of such filing to the following person:

| | |
|---|---|
| M. Samuel Jones III. | Scott P. Richardson |
| Devin R. Bates | McDaniel, Richardson & Calhoun |
| MITCHELL, WILLIAMS, SELIG, | 1020 West 4th Street, Suite 410 |
| GATES & WOODYARD, PLLC | Little Rock, Arkansas 72201 |
| 425 West Capitol Avenue, Suite 1800 | |
| Little Rock, Arkansas 72201 | scott@mrcfirm.com |

sjones@mwlaw.com
dbates@mwlaw.com

Jay Bequette
Bequette, Billingsley & Kees, P.A.
Attorneys at Law
425 West Capitol Avenue, Suite 3200
Little Rock, Arkansas 72201-3469

jbequette@bbpalaw.com

Austin Porter Jr.

11